No. 26-4167

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

JOHN ANDREW, AUTUMN ELLANNA, and TERERESA FERGUSON,
on behalf of themselves and all those similarly situated,
*Plaintiffs-Appellants,*

*v.*

HEIDI HEDBERG, in her official capacity as Commissioner
of the Alaska Department of Health,
*Defendant-Appellee.*

---

On Appeal from the United States District Court for the District of Alaska
Case No. 3:23-cv-00044-SLG • Hon. Sharon L. Gleason

---

# EXCERPTS OF RECORD

## Volume 4 of 4, Pages 635 to 919

---

GORIUNE DUDUKGIAN
NICHOLAS FERONTI
MIYE D'OENCH
NORTHERN JUSTICE PROJECT, LLC
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395

SAIMA AKHTAR
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967

JACOB I. CHEFITZ
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
(212) 335-4500

CHRISTOPHER M. YOUNG
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
(619) 699-2700

*Attorneys for Plaintiffs-Appellants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| DELLA KAMKOFF, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HEIDI HEDBERG, in her official capacity as Commissioner of the Alaska Department of Health,<br><br>Defendant. | Case No. 3:23-cv-00044-SLG |

**ORDER RE AMENDED MOTION FOR STAY, MOTION FOR CLASS CERTIFICATION, AND MOTION FOR PRELIMINARY INJUNCTION**

Before the Court at Docket 21 is Defendant's Amended Motion for Stay.[1] Plaintiffs responded in opposition at Docket 22, to which Defendant replied at Docket 23. A previous stay in this case expired on October 31, 2023.[2] Thus, also ripe are Plaintiffs' Motion for Class Certification at Docket 7-21—with respect to the Language Access Class only[3]—and Plaintiffs' Motion for Preliminary Injunction at Docket 7-22.[4] Oral argument was not requested for any of these motions and was not necessary to the Court's determinations at this time.

[1] Defendant's original Motion for Stay is at Docket 17.

[2] *See* Docket 14.

[3] Pursuant to the parties' stipulation, the Court has certified two subclasses: an Untimely Eligibility Class and a Right to File Class. There has been no stipulation for certification as to the proposed Language Access Class. *See* Docket 13; Docket 15.

[4] *See also* Docket 7-18 (Mem. of Law in Supp. of Mot. for Class Certification); Docket 7-19

## BACKGROUND

This case is about the State of Alaska's ("State") administration of the federally funded Supplemental Nutrition Assistance Program ("SNAP" or "Program"), which was established by the Food Stamp Act of 1964.[5] The Program, codified at 7 U.S.C. §§ 2011-2036d, is meant "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households."[6] The Program is overseen by the Food and Nutrition Service ("FNS") within the U.S. Department of Agriculture ("USDA").[7] In Alaska, the Department of Health ("DOH"), Division of Public Assistance ("DPA"), administers the Program.[8] Households must meet certain eligibility requirements and apply to participate in the Program, which is administered by the states in accordance with federal laws and regulations.[9] The regulations provide for numerous procedures in administering the Program, including application processing procedures and

---

(Mem. of Law in Supp. of Mot. for Prelim. Inj.).

[5] *See* Docket 1-1 at ¶¶ 1-4, 32-37; Food Stamp Act of 1964, Pub. L. No. 88-525, § 4, 78 Stat. 703, 704 (1964). Originally called the Food Stamp Program, the program was renamed in 2008 to the Supplemental Nutrition Assistance Program. *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001-02, 122 Stat. 1651 (2008).

[6] 7 U.S.C. § 2011.

[7] *See* 7 C.F.R. §§ 271.2, 271.3(a).

[8] *See* Alaska Department of Health, Division of Public Assistance, *Supplemental Nutrition Assistance Program (SNAP)*, https://health.alaska.gov/dpa/Pages/SNAP/default.aspx (last visited Jan. 23, 2024).

[9] *See* 7 U.S.C. §§ 2014, 2020; 7 C.F.R. § 271.1 *et seq.*

timelines, and language access requirements, among other things.[10] If a state is not in compliance with the federal regulations, then the Secretary of the USDA will give the state a period of time to correct the failures, but if the failures continue, the federal government may seek injunctive relief requiring compliance.[11] Courts have also recognized a private right of action pursuant to 42 U.S.C. § 1983.[12]

Plaintiffs bring this suit on behalf of themselves and "three proposed classes of similarly situated low-income Alaskans," which consist of (1) an "Untimely Eligibility Class," "comprised of all Alaska residents who since January 20, 2021 have applied, are applying, or will apply for SNAP benefits through an initial application or an application for recertification and did or will not receive an eligibility determination within the legally required timeframes"; (2) a "Right to File Class," "comprised of all Alaska residents who since January 20, 2021, were or will be denied the right to file a SNAP application the first time they contact the agency"; and (3) a "Language Access Class," "comprised of all Alaska residents with limited English proficiency who since January 20, 2021, did or will not receive

[10] *See, e.g.*, 7 C.F.R. § 273.2(a)(2), (g), (h); 7 C.F.R. § 272.4(b).

[11] 7 U.S.C. § 2020(g).

[12] *See Briggs v. Bremby*, 792 F.3d 239, 245-46 (2d Cir. 2015); *Gonzalez v. Pingree*, 821 F.2d 1526, 1531 (11th Cir. 1987); *Victorian v. Miller*, 813 F.2d 718, 724 (5th Cir. 1987); *Barry v. Lyon*, 834 F.3d 706, 717 (6th Cir. 2016); *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 71-73 (D.D.C. 2018).

application materials or vital eligibility documents in their primary language and/or access to oral interpretation services, as required by the SNAP Act."[13]

Plaintiffs allege six causes of action, the first five of which allege violations of federal law: (1) failure to timely process SNAP initial and recertification applications; (2) failure to ensure that Alaskans can submit SNAP applications on the first day they contact the agency; (3) "failure to provide interpretation services, bilingual personnel, or translated written certification materials necessary for SNAP participation"; (4) "failure to provide written notice and opportunity to request a fair hearing to SNAP applicants whose eligibility was not determined within legally mandated timeframes"; and (5) violation of the Due Process Clause of the Fourteenth Amendment; the sixth cause of action alleges a violation of the Due Process Clause of Article I, section 7, of the Alaska Constitution.[14] Plaintiffs seek injunctive and declaratory relief against Defendant.[15]

Plaintiffs originally filed their complaint in Alaska state court in January 2023.[16] That same month, they also filed a Motion for Class Certification and Motion for Preliminary Injunction in the state court.[17] Defendant removed the case

---

[13] Docket 1-1 at ¶¶ 4, 19.

[14] Docket 1-1 at ¶¶ 297-310.

[15] Docket 1-1 at 42-46.

[16] Docket 1-1.

[17] Docket 7-21; Docket 7-22.

to federal court in March 2023.[18] The parties then stipulated to two stays of the case; the second stay ended on October 31, 2023.[19] They also stipulated to class certification of the Untimely Eligibility Class and the Right to File Class, but not the Language Access Class.[20] Thus, Plaintiffs' Motion for Class Certification—with respect to the Language Access Class only—and Plaintiffs' Motion for Preliminary Injunction became ripe for review when the second stay expired. However, Defendant filed the instant Motion for Stay in November 2023, requesting an additional stay "for a maximum of six months" or until the State finalizes a new Corrective Action Plan ("CAP") with FNS, whichever occurs first. Plaintiffs oppose the requested stay.[21]

## JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law: the Food Stamp Act and its implementing regulations, together with the Fourteenth Amendment of the Constitution.[22] The Court may exercise supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

[18] Docket 1.

[19] Docket 8; Docket 14.

[20] *See* Docket 13; Docket 15.

[21] *See* Docket 17; Docket 21 at 29; Docket 22.

[22] *See* Docket 1 at 2.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[23] "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."[24]

In deciding whether to grant a stay, the Ninth Circuit instructs courts to weigh "the competing interests which will be affected," which include (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."[25] "The

---

[23] *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

[24] *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (citations omitted).

[25] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

proponent of a stay bears the burden of establishing its need"[26] and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to some one else."[27] "Generally, stays should not be indefinite in nature" and "should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time."[28]

## DISCUSSION

In its Motion for Stay, the State explains that Alaska has been and is currently subject to a Corrective Action Plan ("CAP") with FNS to address the backlog in processing SNAP applications.[29] The State asserts that it has "demonstrated commitment to resolving the backlog while this case has been stayed," and it points out that "FNS has unique expertise in the administration of the SNAP program and . . . [can] impose significant monetary sanctions on the State if the State fails to comply with the CAP."[30] Because it "expects the process

[26] *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citation omitted).

[27] *Landis*, 299 U.S. at 255.

[28] *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citations omitted).

[29] Docket 21 at 2. Because Defendant Heidi Hedberg is sued in her official capacity as the Commissioner of the Alaska Department of Health, the Court will refer to Defendant and the Department of Health as the "State" for simplicity. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) ("A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself.").

[30] Docket 21 at 2-3.

of updating the CAP to be complete within the next six months, likely sooner," the State requests that the Court stay the proceedings "for a maximum of six months to allow the State to finalize the CAP with FNS."[31] Specifically, the State asserts that the doctrine of "primary jurisdiction" applies and that staying this litigation would "avoid[] the inefficiency of parallel proceedings covering the same ground and avoid[] the risk of conflicting obligations."[32]

The Court first addresses the stay motion with regard to the proposed certification of the Language Access Class and then with regard to the Motion for Preliminary Injunction.

## I. Stay as to Motion for Class Certification

The Court does not find a basis to stay the determination of whether the remaining proposed subclass, the Language Access Class, should be certified. With respect to Plaintiffs' language access claims, the State asserts that it "has already complied with many of the specific requests and continues to make efforts at improvement," with the result that "DPA [now] has a healthy and active language access program" such that the matter does not "requir[e] urgent attention."[33] While the State maintains that "it would be most efficient to litigate [these] claims concurrently with" the preliminary injunction claims, the State also acknowledges

[31] Docket 21 at 3.

[32] Docket 21 at 3. The doctrine of primary jurisdiction is discussed *infra* Section II.

[33] Docket 21 at 27; Docket 23 at 9-10.

that the Court could "bifurcate the language access claims for separate litigation if this Court chooses."[34] The Court finds that further delaying the resolution of this issue could cause potential damage to the proposed class members and that there would be no apparent hardship to the State in proceeding with the resolution of this issue at this time. Accordingly, Defendant shall file a response to that portion of Plaintiffs' Motion for Class Certification addressing the proposed Language Access Class within 14 days of the date of this order.

**II. Stay as to Motion for Preliminary Injunction**

The State asserts that the Court should stay the issues in Plaintiffs' Motion for Preliminary Injunction "for a maximum of six months or until finalization of the FNS CAP" because the doctrine of primary jurisdiction applies.[35] "Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'"[36] When evaluating whether primary jurisdiction should apply, courts consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative

---

[34] Docket 23 at 10.

[35] Docket 21 at 21, 28.

[36] *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).

body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."[37] However, "courts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims," because "efficiency is the deciding factor in whether to invoke primary jurisdiction."[38]

The State contends that the doctrine "is squarely on point" in this case, because "the SNAP Act subjects all state agencies participating in SNAP to FNS's comprehensive regulatory authority," "determining how best to resolve the SNAP backlog requires both expertise and uniformity in administration," and "FNS has unique expertise and authority to craft the resolution of this situation that it considers best, in light of the entire program administration within Alaska and nationwide."[39] The State asserts that there are complex policy questions on how best to bring the State back into compliance, such as: balancing effort between clearing the backlog and processing new applications; "balancing swift processing of applications against the possibility of inaccurate decisions or inaccurate benefit amounts"; and how to measure the State's progress and compliance.[40] The State

[37] *Id.* (quoting *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002)).

[38] *Id.* (citations and internal quotation marks omitted).

[39] Docket 21 at 21-22.

[40] Docket 21 at 22-23.

contends that primary jurisdiction is "particularly suitable . . . in this case where FNS is actively and deeply engaged on the issue," only a limited duration stay is sought, and a stay of the issues would be efficient because "[l]itigation of the plaintiffs' preliminary injunction motion would cover all the same ground that FNS is already comprehensively covering."[41]

The State also maintains that "DPA is doing everything possible to resolve the backlog," but that doing so has been complicated by a variety of factors such as understaffing and the need to choose between clearing the backlog or processing new applications.[42] The State explains that while it had cleared the entirety of the first backlog of 10,598 cases by October 20, 2023, the time and focus it took to clear that backlog resulted in "a new backlog of 'younger' cases."[43] It notes that it has been "actively working on an online application portal, which [it indicated was] scheduled to go live at the end of December 2023," and that it has recruited and trained additional employees to process applications.[44] Given its efforts and its expectation of a finalized CAP in the near future, the State contends that, should the Court deny the motion to stay and issue an order that runs contrary

---

[41] Docket 21 at 23-25 (citing *Astiana*, 783 F.3d at 760-61 (holding that "even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation," and that "'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction")).

[42] Docket 23 at 10; Docket 21 at 22-23.

[43] Docket 23 at 8.

[44] Docket 21 at 20.

to the CAP, it would put the State in the "impossible position" of trying to meet two different sets of requirements.[45] The State thus asserts that the Court should stay the case until the CAP is finalized.[46]

In response, Plaintiffs assert that the primary jurisdiction doctrine does not apply because SNAP issues "are not matters of first impression, nor do they raise issues requiring the specialized competence of FNS."[47] Plaintiffs assert that "[c]ourts have routinely issued declaratory and injunctive relief in instances where state agencies have failed to comply with the SNAP Act and controlling federal regulations."[48] Plaintiffs maintain that a court order enforcing compliance with federal law is "straightforward" and "requires little technical expertise to know whether DOH has processed applications in a timely manner or offered language access as required under the law."[49] Plaintiffs assert that because Defendant "has no concrete timeline for FNS's amendment of the CAP[,] . . . [a]sking the Court to defer its authority indefinitely . . . is against the interests of efficiency."[50] Plaintiffs also point out that multiple courts have recognized "a private right of action under

[45] Docket 21 at 25.

[46] Docket 21 at 25.

[47] Docket 22 at 9, 11.

[48] *See* Docket 22 at 11 & n.49 (citing to a collection of cases in which courts have addressed SNAP application processing).

[49] Docket 22 at 12.

[50] Docket 22 at 13.

42 U.S.C. § 1983, wholly separate and apart from FNS's oversight functions," and that the State's position "leaves Plaintiffs unsure of which claims a resolution through FNS will address" and "wholly fails to discuss the claims that FNS has not raised thus far."[51] Thus, Plaintiffs contend that "concurrent resolution would be most efficient and best serve the interests of Alaskans."[52]

This case began over a year ago and was already stayed for several months so that the State could try to resolve its SNAP applications backlog under federal oversight.[53] While the parties dispute the applicability of the primary jurisdiction doctrine, the Court declines to apply the doctrine because it finds that further delay in this case would be inefficient, particularly given that FNS may not address all of Plaintiffs' claims in the forthcoming CAP.[54] However, the Court recognizes Defendant's concern of "being subject to conflicting orders from this Court and FNS."[55] Thus, if necessary, the Court intends to amend any order it may issue to address any conflicting obligations with the CAP, once complete. In addition, Plaintiffs' Motion for Preliminary Injunction, applying the state standard for

---

[51] Docket 22 at 14-16.

[52] Docket 22 at 16.

[53] *See* Docket 6; Docket 12.

[54] *See Astiana*, 783 F.3d at 760 (holding that "'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction").

[55] Docket 21 at 21.

preliminary injunctive relief, was filed over one year ago in the Alaska state court.[56] In light of the age of the motion, its application of Alaska law, and the subsequent changes by DPA, the Court finds that the pending Motion for Preliminary Injunction should be denied without prejudice to Plaintiffs' filing of a renewed motion for preliminary injunctive relief applying the federal standard for preliminary injunctive relief and articulating the relief now sought in light of the current status of the SNAP program in Alaska.

**CONCLUSION**

In light of the foregoing, IT IS ORDERED that Defendant's Amended Motion for Stay at Docket 21 is DENIED. Defendant shall file a response to the portion of Plaintiffs' Motion for Class Certification concerning the proposed Language Access Class at Docket 7-21 within 14 days of the date of this order. Furthermore, Plaintiffs' Motion for Preliminary Injunction at Docket 7-22 is DENIED without prejudice to its renewal.

DATED this 5th day of February, 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

[56] *See* Docket 7-19 at 14 (first citing *Alsworth v. Seybert*, 323 P.3d 47, 54 (Alaska 2014); then citing *State v. Arctic Vill. Council*, 495 P.3d 313, 319 (Alaska 2021); then citing *Randle v. Bay Watch Condo. Ass'n*, 488 P.3d 970, 974 (Alaska 2021); and then citing *State, Div. of Elections v. Metcalfe*, 110 P.3d 976, 978 (Alaska 2005)).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

DELLA KAMKOFF, *et al.*,

Plaintiffs,

v.

HEIDI HEDBERG, in her official capacity as Commissioner of the Alaska Department of Health,

Defendant.

Case No. 3:23-cv-00044-SLG

**ORDER RE STIPULATION ON CLASS CERTIFICATION**

Before the Court at Docket 13 is the parties' *Stipulation on Class Certification*. Good cause being shown, the stipulation is APPROVED and IT IS ORDERED as follows:

1. This action is certified as a class action with the following two subclasses:

a) An **Untimely Eligibility Class** comprised of all Alaska residents who since January 20, 2021, have applied, are applying, or will apply for SNAP benefits through an initial application or an application for recertification and did not or will not receive an eligibility determination within the legally required time frames;

b) A **Right to File Class** comprised of all Alaska residents who since October 1, 2022, were or will be denied the right to file a SNAP application the first time they contact DPA during office hours.

2. This Court finds that both classes meet the threshold certification requirements of Fed. R. Civ. P. 23(a) because the classes are so numerous that joinder is impracticable.
3. This Court find that there are questions of law and fact common to each of the two plaintiff classes as required by Fed. R. Civ. P. 23(a)(2).
4. This Court finds that the typicality requirement, as set forth under Fed. R. Civ. P. 23(a)(3), is met and authorizes:
   a) Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Nataliia Moroz, and Rhonda Conover to serve as representatives of the Untimely Eligibility Class; and
   b) Autumn Ellanna to serve as representative of the Right to File Class.
5. This Court finds that the named plaintiffs and their counsel will fairly and adequately protect the interests of the plaintiff classes as required under Fed. R. Civ. P. 23(a)(4).
6. This Court finds that the requirements of Fed. R. Civ. P. 23(b)(2) are met because the requested relief, if ordered, will inure to all members of the plaintiff classes.
7. This Court finds that notice under Fed. R. Civ. P. 23(c)(2)(A) is not required.

8. The Northern Justice Project, LLC, National Center for Law and Economic Justice, and DLA Piper, LLP are appointed as class counsel.

DATED this 9th day of May, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*admitted *pro hac vice*

Attorneys for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated, *Plaintiffs*, <br><br> v. <br><br> Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health, *Defendant*. | Case No. 3:23-cv-00044-SLG <br><br> **PLAINTIFFS' NOTICE OF FILING SIGNED DECLARATIONS** |

Pursuant to this Court's request at the December 18, 2025, hearing, Plaintiffs hereby file signed copies of declarations for Tereresa Ferguson and Zoya Jenkins which were initially submitted in unsigned form on January 20, 2023. *See* ECF No. 7. The executed declarations of Tereresa Ferguson and Zoya Jenkins are attached hereto as Exhibits D and E, respectively. The signed versions reiterate the substance of the previously filed declarations. Signed declarations for the remaining Plaintiffs are forthcoming and will be filed when received.

DATED this 4th day of May, 2026.

Attorneys for Plaintiffs

*/s/ Sean P. Fulton*

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*appearing *pro hac vice*

**Certificate of Service**

I hereby certify that on May 4, 2026, true and correct copies of the foregoing document were served on all parties via the CM/ECF electronic filing system.

*/s/ Sean P. Fulton*

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No. 3:23-cv-00044-SLG<br><br>**DECLARATION OF <u>TERERESA FERGUSON</u>** |

I, Tereresa Ferguson state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this declaration. This declaration is in support of Plaintiffs' Renewed Motion for Preliminary Injunction, filed on May 8, 2024, ECF 35, and Plaintiffs' Motion for Class Certification, filed January 20, 2023. These facts were true as of January 20, 2023, and are the same facts that were alleged in the unsigned affidavit initially filed in this matter on January 20, 2023, ECF 7-8.

2. My name is Tereresa Ferguson.

3. I am 37 years old and live in Anchorage, Alaska.

4. I live with my husband and four kids. My kids are 17, 15, 13, and 11 years old.

5. My husband and I currently have no income or savings. We have been using the money we received from last year's Permanent Fund Dividend to cover our rent and electricity. We have been able to prepay our rent through March of this year, but starting in April we will have to pay $1450 per month.

6. My sister will occasionally give me a little money to watch her daughter. My husband will occasionally do odd jobs in the community.

7. We have a cell phone under a friend's phone plan.

8. During the pandemic, my kids got computers through the school district to be able to attend classes remotely. This is our only access to the internet. However, the internet is not reliable and will often shut off by itself.

9. My family has received SNAP for the last 3 years.

10. In or about early October, 2022 I received my recertification packet in the mail.

11. The recertification was due to the agency November 30, 2022.

12. On or about November 15, 2022, I submitted my recertification application for SNAP.

13. I submitted my recertification application by going to the Anchorage SNAP office.

14. The office was not physically open and I had to put my application in the drop box.

15. I have not received any notifications about my SNAP case since submitting my recertification application.

16. I have tried to call the call center about three times a week since the second week of December, 2022 multiple times to get an update on my application. At the end of December, 2022, I was calling the call center multiple times a day, every day.

17. When I called, I would get directed to an automated line that would confirm that my recertification had been received. On multiple occasions, when I tried to call back to get to a real person, the line would get disconnected.

18. I have never been able to speak to a representative, and often will wait for up to 45 minutes.

19. On or around December 13, 2022, I tried to go in person to the Anchorage office, but was told I could not speak to anyone face-to-face.

20. Not having SNAP has been really hard. I have four kids to feed in addition to my husband and myself. I have had to rely on my sister who has been cooking meals and bringing them over for us for the last few weeks. My kids are able to get free lunch at school. I was able to go to a food bank once at the end of

December, but otherwise have not been able to travel to the food bank because gas is too expensive.

21. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

22. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 9th, 2026
Anchorage, Alaska

[signature]
Tereresa Ferguson

# Exhibit E

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
maggie.craig@us.dlapiper.com
kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270

Sacramento, CA 95814-3976
Tel.: (916) 930-3200
Fax: (916) 930-3201
micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Tel.: (713) 425-8400
Fax: (713) 425-8401
bethany.bunge@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

**pro hac vice to be filed*

**Attorneys for Plaintiffs**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No. 3:23-cv-00044-SLG<br><br>**DECLARATION OF <u>ZOYA JENKINS</u>** |

I, Zoya Jenkins state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this declaration. This declaration is in support of Plaintiffs' Renewed Motion for Preliminary Injunction, filed on May 8, 2024, ECF 35, and Plaintiffs' Motion for Class Certification, filed January 20, 2023. These facts were true as of January 20, 2023, and are the same facts that were alleged in the unsigned affidavit initially filed in this matter on January 20, 2023, ECF 7-10.

2. My name is Zoya Jenkins.

3. I am 36 years old and live in Bethel, Alaska. I am an Alaska native.

4. I live with my husband and two daughters. One of my daughters is 15 years old and the other is 1 year old.

5. Although Yup'ik is my first language, I am also fluent in English and Sign Language.

6. I do not currently have a job. My last day of work was on December 27, 2022. Last year, I made $21,000.

7. I am currently interviewing for a new job.

8. I am also currently in school. I want to increase the amount of money that I can make. Living in Bethel is very expensive and we cannot continue to survive on the $15-20/hour that I have been able to make in my previous jobs.

9. All four of us also receive our native corporation shares twice per year. In April, we each receive $200 for a total of $800. In November, we each receive $100 for a total of $400.

10. My ex-boyfriend is supposed to pay me monthly child support for my fifteen-year-old daughter. He often does not pay. I usually receive payments twice a year that are taken out of his native corporation shares in May and December. In December 2022, I received $200 in child support.

11. We have very little money available to us at this time. I have approximately $100 cash at home and another $100 in the bank.

12. We rent our home. Our rent is $1,200 a month. I am concerned about paying rent while I am unemployed.

13. I have received SNAP for about ten years until September 2022. The SNAP benefits helped me cover most of our food. I covered the rest with my employment income.

14. At the beginning of September 2022, I received my recertification application in the mail.

15. I was supposed to submit the recertification to DOH before the end of September 2022.

16. I submitted my recertification application by fax and e-mail on September 23, 2022 and provided my paystubs. Unfortunately, I do not have copies of the e-mails anymore because I used the email address from my previous employer (zoya_jenkins@ykhc.org).

17. I tried to call the call center one time sometime in October. I was given the option to request a callback. Unfortunately, no one ever called me back.

18. The recording said the fastest way to contact them was to e-mail them.

19. At the end of October, I e-mailed DOH to check on the status of my application.

20. On November 11, 2022, Heather W from the Department of Health responded by e-mail and told me DOH was back logged at this time. She told me

that I would receive a letter if they needed anything else. A copy of this e-mail is attached as Exhibit 1 to this affidavit. I have not received a letter.

21. In either the end of the October or the beginning of November, I tried to visit the Bethel District Office to find out about the status of my application. The doors were locked and nobody answered when I knocked.

22. I have heard from other members of my community that when they tried to go to the office that either no one was there or that no one answered the door when they knocked.

23. I have also tried to call the local Bethel office but they did not answer the phone.

24. We have been really struggling since we stopped receiving SNAP benefits.

25. Food is very expensive in Bethel.

26. The only store that I can buy food at is Alaska Commercial Company.

27. A typical trip to the Alaska Commercial Company for a few items can cost over $100.

28. Buying all meat, except chicken, is really expensive. One steak cost approximately $20.

29. A gallon of milk is about $14.

30. A small jar of mayonnaise is about $8.

31. The food banks in Bethel also do not give out as much food as in other parts of Alaska.

32. The cost of living is very high in Bethel.

33. For example, it costs me approximately $100 to buy a box of 116 diapers for my younger daughter. A box of wipes is an additional $70.

34. Our fuel and electricity bills are also very expensive. These bills usually runs about $150 a month even though I try to use as little as possible.

35. Life has been really hard since we stopped receiving our SNAP benefits. I have to prioritize how I am spending money. I have bills to pay. Children to take care of. Rent to pay. Food to buy. All with only my income.

36. There are days where I prefer my kids to be able to have milk or juice instead of being able to eat myself.

37. I sometimes only eat once in a day so that I make sure I have enough food for my children. They come first.

38. Some days, my husband starves himself for the whole day until I finally can convince him to eat.

39. Fortunately, my older daughter is also able to get some free food when she is at school.

40. I am starving in my own home. Fortunately, my parents are sometimes able to give us meat. They harvest their own meat and fish.

41. We would benefit from having a freezer. A freezer would allow us to store extra food. Unfortunately, we are not able to save for a freezer at this time because the cost of food is so high and we do not currently have SNAP. Until we can buy a freezer, we will have to keep buying small amounts of food at a time. It is much more cost efficient to buy large amounts of food and to store it in the freezer in food savers to last longer.

42. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

43. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/4/26, 2026
Bethel, Alaska

Zoya Jenkins

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*admitted *pro hac vice*

Attorneys for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated, *Plaintiffs*, <br><br> v. <br><br> Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health, *Defendant*. | Case No. 3:23-cv-00044-SLG <br><br> **PLAINTIFFS' NOTICE OF FILING SIGNED DECLARATIONS** |

Pursuant to this Court's request at the December 18, 2025 hearing, Plaintiffs hereby file signed copies of declarations for Autumn Ellanna and John Andrew which were initially submitted in unsigned form on January 20, 2023. *See* ECF No. 7–6. The executed declarations of Autumn Ellanna, Nataliia Moroz, and John Andrew are attached hereto as Exhibits A, B, and C, respectively. The signed versions reiterate the substance of the previously filed declarations. Signed declarations for the remaining Plaintiffs are forthcoming and will be filed when received.

DATED this 17th day of March, 2026.

Attorneys for Plaintiffs

*/s/ Sean P. Fulton*

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*appearing *pro hac vice*

**Certificate of Service and Word Count**

I hereby certify that on March 17, 2026, true and correct copies of the foregoing document were served on all parties via the CM/ECF electronic filing system.

*/s/ Sean P. Fulton*

# EXHIBIT A

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
maggie.craig@us.dlapiper.com
kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270

Sacramento, CA 95814-3976
Tel.: (916) 930-3200
Fax: (916) 930-3201
micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Tel.: (713) 425-8400
Fax: (713) 425-8401
bethany.bunge@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

**pro hac vice to be filed*

**Attorneys for Plaintiffs**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No. 3:23-cv-00044-SLG<br><br>**DECLARATION OF**<br>**AUTUMN ELLANNA** |

I, Autumn Ellanna, state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this declaration. This declaration is in support of Plaintiffs' Renewed Motion for Preliminary Injunction, filed on May 8, 2024, ECF 35, and Plaintiffs' Motion for Class Certification, filed January 20, 2023. These facts were true as of January 20, 2023, and are the same facts that were alleged in the unsigned affidavit initially filed in this matter on January 20, 2023, ECF 7-1.

2. My name is Autumn Ellanna.

3. I am 29 years old and live in Nome, Alaska. My daughter and I are enrolled with the King Island Native Corporation.

4. I live with my mother, father, younger brother, and my three-year-old daughter.

5. After my parent's SNAP case was closed, I decided to apply for SNAP benefits as a separate household for my daughter and I.

6. I prepare and purchase food separately for my daughter and me.

7. Nobody who lives in my parent's home has received SNAP benefits since October 2022.

8. Sometime in November 2022, I helped my dad apply to recertify for SNAP.

9. Sometime in the beginning of January 2023, my father and mother took our four-wheeler to the Nome District Office, which is almost a mile away, to check on the status of the SNAP application because we had not heard anything or gotten SNAP benefits in three months. I could not go with them because the four-wheeler only fits two people. We have no other transportation.

10. The worker at the District Office told them that the SNAP case had been closed due to missing the deadline for submitting additional pay stubs.

11. He never received any notice of the denial of the recertification in the mail.

12. He had no way to request a hearing or appeal the decision.

13. My parents asked for help to reapply for SNAP.

14. The worker told my parents that since they were enrolled with the Eskimo Community that they should instead go apply for General Assistance at the Eskimo Community Center.

15. On January 13, 2023, I tried to apply for SNAP benefits by calling the call center. Around 3pm, I called the call center. I was told the wait time was under two hours.

16. It was not clear which option on the call center would be best for applying.

17. I picked option 7 which was for general questions.

18. The automated system informed me that my wait time was under two hours.

19. About ten minutes later, I was informed the wait time was less than an hour and fifteen minutes.

20. About ten minutes later, I was told that I was number 127 in the queue and that my wait should be less than 55 more minutes.

21. About twenty minutes later, I was told that I was 34th in the queue and that my wait should be less than 15 more minutes.

22. About ten minutes after that, I was told that I was number 5 in the queue.

23. After waiting approximately an hour, I spoke with a call center worker named Kathleen.

24. I told her I wanted to apply for SNAP benefits.

25. She told me that she could not help me apply for SNAP over the phone. She said my only option was to have them send me an application through the mail or by e-mail. She also told me the hours of operation for the call center.

26. These were not good options for me. I only have access to the internet through my phone and it would likely take a long time for the application to reach our home by mail.

27. I was frustrated because I would not be able to do anything else to get SNAP until Tuesday when the Nome office is supposed to be open, because Monday is a holiday.

28. On January 17, 2023, I went to the Nome District Office at 1:45 PM to submit my paper application.

29. The office was closed. All of the lights were off. I did not see anyone in the office.

30. I placed my application in the drop box.

31. When I called the call center, I had $5.01 in the bank and no cash at home. I have to leave the $5.01 in the bank or the bank will close my account.

32. I do not currently have any income. In the past, I have done some seasonal work but that is not available right now.

33. I was recently hired by Hansons Trading Co. to work as a liquor store clerk. I will begin working on January 23, 2023. I will make $14 per hour.

34. Because I have no income and less than $100 in the bank, I believe I should be eligible for expedited processing of my SNAP application.

35. I currently purchase almost all of the food for my daughter and I using only WIC benefits. The foods we can buy with WIC are extremely limited. We can only buy the items that are approved for the WIC program. As a result, we eat mainly cereal and eggs. We are carnivores. We need to eat meat too.

36. We sometimes get food from the food bank.

37. My daughter is young and growing up. She is developing preferences for food. I want my daughter to be able to try new foods. I do not want to have to deny her anything.

38. My daughter's father sometimes gives me a little bit of money for food. But it is not enough.

39. I have had to ask one of my other relatives for some money for food. She gives me $20 here and there to help out.

40. Food has also been extremely expensive recently.

41. My whole family is currently struggling to get by. We do not have enough food to eat.

42. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

43. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

44. I declare under penalty of perjury that the foregoing is true and correct.

Executed on 02-06, 2026
Nome, Alaska

[signature]
Autumn Ellanna

# EXHIBIT B

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
maggie.craig@us.dlapiper.com
kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976

Tel.: (916) 930-3200
Fax: (916) 930-3201
micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Tel.: (713) 425-8400
Fax: (713) 425-8401
bethany.bunge@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

**pro hac vice to be filed*

**Attorneys for Plaintiffs**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No. 3:23-cv-00044-SLG<br><br>**DECLARATION OF NATALIIA MOROZ** |

I, Nataliia Moroz state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this declaration. This declaration is in support of Plaintiffs' Renewed Motion for Preliminary Injunction, filed on May 8, 2024, ECF 35, and Plaintiffs' Motion for Class Certification, filed January 20, 2023. These facts were true as of January 20, 2023, and are the same facts that were alleged in the unsigned affidavit initially filed in this matter on January 20, 2023, ECF 7-5.

2. My name is Nataliia Moroz.

3. I am 24 years old and live in Delta Junction, Alaska. I am Ukrainian and a white female.

4. I live with my husband and our two kids, who are 1 and 3 years old.

5. My husband and I have lived in Alaska since April, 2022. We came to the United States from Poland on Humanitarian Parole.

6. For a while, we did not have any income.

7. Last week, my husband got a new job. He is now working at a car repair shop making $20 per hour.

8. We live approximately 2 hours by car from Fairbanks, Alaska. I do not have a driver's license. If my husband were to take me to the office, he would have to take off a full day of work. It would also be very difficult because we would have to bring the children with us.

9. We have received SNAP since May, 2022.

10. On or about September 4, 2022, I received a notice of expiration and recertification packet in the mail. The notice was dated August 18, 2022, and stated that I had to submit my recertification by September 5, 2022. However, since I did not receive the packet until September 4, 2022, I was unable to submit the recertification prior to the due date.

11. On or about September 13, 2022, I submitted a recertification application for SNAP. A family member brought my application to the DOH office in Fairbanks and told me that she submitted it to the drop box. She lives nearby to

my husband and I, and we live about a 2-hour drive from Fairbanks. She brought our application with her on a day she was going to the city for other purposes.

12. I have gone to the office in Fairbanks myself two times since my application was submitted. I went once at the end of October to check on the status of my application and was told that I had to keep waiting. I went again on January 10, 2023, to drop off other requested information, and was again told that my application was pending and I had to keep waiting.

13. I last received SNAP in September 2022.

14. Not having SNAP has been really hard.

15. We cannot good to a food bank because the nearest one is in Fairbanks, Alaska.

16. One time we received food from a Ukrainian Orthodox Church Mission.

17. We have also received food from another charity. Unfortunately, they could only give us canned food. This is not very good for the children.

18. I would like to feed the children fresh produce.

19. My primary language is Russian.

20. I am not comfortable speaking in English. I am only able to read and write in English with the use of translation on my phone.

21. My husband also is not comfortable speaking in English.

22. Because I do not feel comfortable communicating in English, I have relied on informal support from my uncle's wife, my aunt, to help me navigate our SNAP benefits. She is able to communicate in English

23. Since the only papers I have ever gotten were in English, my aunt helped me fill out my application in May of 2022 and again with my recertification in September, 2022.

24. Furthermore, since I have been uncomfortable calling the call center in English, I have never called the helpline myself.

25. Instead, I have relied on my aunt to call the call center on my behalf. She has called twice on my behalf in order to get a status on my application.

26. When I initially applied for SNAP in May 2022, I indicated that English was not my first language and that I was not comfortable reading and writing in English.

27. I have only ever received notices in English. I have never received notices or information in my preferred language.

28. When I went to the office to get a status update on my paperwork, the conversation with the DOH representative was very difficult because we had trouble understanding each other.

29. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

30. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 3, 2026
Delta Junction, Alaska

Nataliia Moroz

# EXHIBIT C

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
maggie.craig@us.dlapiper.com
kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270

Sacramento, CA 95814-3976
Tel.: (916) 930-3200
Fax: (916) 930-3201
micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Tel.: (713) 425-8400
Fax: (713) 425-8401
bethany.bunge@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

**pro hac vice to be filed*

**Attorneys for Plaintiffs**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No. 3:23-cv-00044-SLG<br><br>**DECLARATION OF <u>JOHN ANDREW</u>** |

I, John Andrew state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this declaration. This declaration is in support of Plaintiffs' Renewed Motion for Preliminary Injunction, filed on May 8, 2024, ECF 35, and Plaintiffs' Motion for Class Certification filed January 20, 2023. These facts were true as of January 20, 2023, and are the same facts that were alleged in the unsigned affidavit initially filed in this matter on January 20, 2023, ECF 7-3.

2. My name is John Andrew. I am 52 years old and live in Marshall, Alaska. I am a male Alaskan native.

3. I am the sole parent in my household. I have three sons that live in my household ages 18, 22, and 26. I have a daughter aged 8 that also lives in my household. I have a second daughter aged 16 who predominantly lives with her mother, but on occasion lives with me.

4. I earn $32,000 per year as a transportation director. I am the person in my household who is employed. We struggle to live off of my single income.

5. An example of our difficult financial state is that I cannot afford reasonable transportation. I own an ATV, but it is broken and not operational. I cannot afford repairs nor afford to purchase a new vehicle. My primary mode of transportation is walking.

6. I have been receiving SNAP benefits for 26 years. I have never before had any issue receiving my benefits. I have applied for recertification for my SNAP benefits numerous times and have always had my application timely processed.

7. My prior SNAP certification expired October 31, 2022. Same as before, I submitted an application for recertification for SNAP benefits well before the expiration date, on October 11, 2022. Attached to this declaration as Exhibit 1 is a true and correct copy of the recertification application I submitted.

8. Also on October 11, 2022, I called the Call Center for the Department of Public Assistance DOH of the Department of Health ("DOH"). There was an

option to receive a call back instead of waiting on hold, and I chose the callback option. About five hours later I received a callback and spoke to someone at the Call Center. That person confirmed that the DOH has received my recertification application.

9. I have received SNAP before and was required to participate in an interview to get my benefits. However, the person I spoke to on October 11, 2022 said that the DOH would likely waive the interview requirement. Despite this statement from the DOH representative, I was interviewed on January 16, 2023. I have not received any more communication from the DOH since that interview.

10. Since the phone call on October 11, 2022, I have called the Call Center another four or five times to check on my application. I would use the callback option each time, and each time receive a callback hours later. The person at the Call Center would again confirm they received my application, but that there are thousands of applications being processed and very few case workers.

11. I have not visited a DOH office in person because the nearest office to my location is 100 miles away in Bethel, and I would need to take a plane to get there, which is prohibitively expensive. I am completely reliant on the Call Center or receiving mail communication from the DOH to receive information about my SNAP benefit.

12. Not having SNAP benefits has substantially increased the financial difficulties of my household. Since losing my SNAP benefits, I have to decide each month whether to pay for housing, water, sewer, and other bills, or to spend the money on food. Accordingly, I have been late each month on my water and sewer bills and my since I stopped getting SNAP benefits. When I was getting SNAP benefits, I paid these bills on time.

13. Not having SNAP benefits has also created difficulties in my families' ability to eat healthy food and to have enough food. I am not able to afford the same nutritional food that I could receive using SNAP benefits. The food prices in my area are incredibly high. One bag of groceries will cost around $70.

14. I, and my children, have needed to skip meals or have smaller portions than we need. This has left me and my sons with less energy to gather and cut firewood, and to complete other necessary household tasks. Further, without our SNAP benefits, we had no special holiday dinners for Christmas or New Years' Eve.

15. Not receiving SNAP benefits is also particularly difficult because I live in a small town. Marshall Alaska has a population of around 500. We do not have any food banks here that could provide my family with free food. Without SNAP benefits, my only option is to cut down on food intake and buy cheaper food.

16. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

17. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 7th, 2026
Marshall, Alaska

John Andrew

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
maggie.craig@us.dlapiper.com
kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
Tel.: (916) 930-3200
Fax: (916) 930-3201
micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Tel.: (713) 425-8400
Fax: (713) 425-8401
bethany.bunge@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

**admitted pro hac vice*

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br>*Plaintiffs*,<br>v.<br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No. 3:23-cv-00044-SLG<br>**DECLARATION OF KAYLA BIRCH** |

I, Kayla Birch state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this declaration. This declaration is in support of Plaintiffs' Renewed Motion for Preliminary Injunction, filed on May 8, 2024, ECF 35, and Plaintiffs' Motion for Class Certification, filed January 20, 2023. These facts were true as of January 20, 2023, and are the same facts that were alleged in the unsigned affidavit initially filed in this matter on January 20, 2023, ECF 7-4.

2. My name is Kayla Birch. I am 34 years old and live in Petersburg, Alaska. I am a female Caucasian.

3. I am a single mother of two minor children, ages 14 and 16.

4. I earn $18,000 per year from part time employment at Cornertstone home healthcare. I only work part time due to medical issues, including internal stomach issues that require surgery. I am waiting to receive the required surgery. I have medical insurance, but will need to pay a substantial portion of the surgery out of pocket.

5. I do not own a car and cannot afford one. Since I stopped receiving my SNAP benefits in October 2022, I have been late each month on paying my electric, cell phone, and internet bills because I have needed to spend that money on food. The pricing of food here is outrageous. As just one example, a gallon of milk costs $10.

6. To help get food, I have been able to receive help from the Salvation Army one time since losing my SNAP benefits. My friends also help out by buying me food, but I do not want to be a burden on my friends. I also am a deer hunter and for the past

few months my sons and I have largely lived off of deer meat that we hunted, and have not been able to afford much variation in food.

7. I first received SNAP benefits in May 2022. September 2022 was the last month I received benefits, and they were shut off without any prior notice to more or explanation from the Department of Public Assistance DOH at the Department of Health ("DOH").

8. I filled out renewal paperwork and submitted on or about September 2022. I did not hear anything from the DOH for three months. I would call the Call Center many times each week and would wait for two hours on hold. At approximately the two-hour mark, the phone would automatically disconnect. This happened each time I called up to the week of December 12, 2022.

9. The nearest DOH office to my location is over 100 miles away and I would need to use a plane to get there. This would cost $400 or more and so I cannot afford to try and go to an office in person. The only way I have to contact anyone about my SNAP benefits is through the Call Center or by mail, which is terribly slow.

10. The week of December 12, 2022, I called the Call Center and there was an option to receive a callback. I chose that option and receive a callback and spoke to someone at the DOH who confirmed my renewal application was received on October 3, 2022, but that I had to wait in line to get my benefits. There was no explanation as to why my benefits were shut off in the first place. She said that someone would call me to

schedule an interview once they get to my application. I have not received any communication from the DOH since this phone call.

11. When I got my benefits in May 2022, I did not need to interview. I received a card in the mail with my benefits and no mention of completing an interview beforehand.

12. Not having SNAP benefits has been really difficult. My sons and I relied on friends to supply our Thanksgiving and Christmas meals.

13. As a matter of nutrition, I was able to afford healthier food with SNAP benefits that I can no longer afford. I would use my SNAP benefits on vegetables and fruit, but I cannot afford fresh produce. I mostly purchase premade microwavable meals.

14. Without SNAP benefits, I am not able to eat as much food as I used to. I mainly just eat dinners so that my kids can have more food throughout the day. My kids are not able to pack a lunch for school. Sometimes we can afford the paid school lunch, which is seldom nutritious, and sometimes I know that my children's friends will take them off campus and buy them lunch. I do not want my sons to have to rely on their teenage friends to buy them food.

15. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

16. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 11, 2024

/s/ Nicholas Feronti for Kayla Birch___
Kayla Birch

**Certificate of Service**

I hereby certify that on June 11, 2024, true and correct copies of the foregoing declaration were served on all parties via the CM/ECF electronic filing system, and mailed to the declarant at P.O. Box 2031, Petersburg, AK 99833.

/s/ Nicholas Feronti_________________
Nicholas Feronti, AK Bar No. 2106069

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
maggie.craig@us.dlapiper.com
kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
Tel.: (916) 930-3200
Fax: (916) 930-3201
micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Tel.: (713) 425-8400
Fax: (713) 425-8401
bethany.bunge@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

**admitted pro hac vice*

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br>*Plaintiffs*,<br>v.<br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No. 3:23-cv-00044-SLG<br><br>**DECLARATION OF RHONDA CONOVER** |

I, Rhonda Conover state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this declaration. This declaration is in support of Plaintiffs' Renewed Motion for Preliminary Injunction, filed on May 8, 2024, ECF 35, and Plaintiffs' Motion for Class Certification, filed January 20, 2023. These facts were true as of January 20, 2023, and are the same facts that were alleged in the unsigned affidavit initially filed in this matter on January 20, 2023, ECF 7-6.

2. My name is Rhonda Conover.

3. I am 37 years old and live in Palmer, Alaska. We have only lived in Alaska since November 2022.

4. I live in a room of another family member's home with my 12-year old daughter, 4-year old son, and 2-year old daughter. The father of my children also lives with us.

5. Although some other members of our extended family live in other rooms of the home, we are separate from them. We do not purchase and prepare our food together.

6. My only access to the internet is on my phone.

7. On December 14, 2022, a representative from the Alaska Food Bank helped me to submit our family's SNAP application via e-mail. A copy of this e-mail and the attached SNAP application are attached as Exhibit 1 to this affidavit.

8. The Food Bank representative told me that we were eligible to have our application expedited.

9. This was our first time applying for SNAP in Alaska. Prior to moving to Alaska, we lived in South Carolina and received SNAP there.

10. I have not heard anything from the Department of Health since we submitted our application.

11. Since submitting the application, I have tried to call the call center around 15 times.

12. I have never reached a live representative.

13. Sometimes after waiting 30 minutes or more the phone call was just disconnected.

14. Other times, they give me the option to leave a message.

15. I have left about a dozen messages. No one has returned any of them.

16. I also tried to e-mail DOH about my SNAP application on January 3, 2023. A copy of this e-mail is attached as Exhibit 2. They did not respond to the e-mail either.

17. I cannot go visit an office in-person to ask for help. I think the closest office is in Anchorage. It would take us 45 minutes to an hour to get there by car. We do not own our own car. When we have to use a car, we have to borrow it from family.

18. We are barely getting by.

19. Since December, we have not had any money. We do not have any cash or money in the bank.

20. We do not have any income currently.

21. My husband and I try to do odd-jobs usually construction-related to earn money for our family. Unfortunately, we have not been able to do any jobs for at least the past thirty days. Fortunately, we are scheduled to do a few of these jobs soon. The next one should hopefully start in the next 4-6 weeks, towards the middle or end of February.

22. We do not have enough to eat.

23. We have to rely on our extended family to give us food because we cannot afford to buy any of our own.

24. Even with their help, we do not have enough food. We regularly skip meals.

25. Without a car, we are unable to go to a food bank. Only my 12-year old daughter is able to get lunch at school.

26. We are supposed to be paying $1,200 per month including utilities to live in this house. Fortunately, our family is giving us a little bit of a break right now since we do not have any money.

27. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

28. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 11, 2024

/s/ Nicholas Feronti for Rhonda Conover
Rhonda Conover

**Certificate of Service**

I hereby certify that on June 11, 2024, true and correct copies of the foregoing declaration were served on all parties via the CM/ECF electronic filing system, and mailed to the declarant at 8264 E. Magnificent View Dr., Palmer, AK 99645.

/s/ Nicholas Feronti
Nicholas Feronti, AK Bar No. 2106069

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
*Jordan Berger (New York Bar No. 5847827)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org
Email: berger@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com
*Bethany M. Bunge (Tex. Bar No. 24120730)

**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

**pro hac vice to be filed*

**Attorneys for Plaintiffs**

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No. 3AN-22-___________<br><br>**AFFIDAVIT OF DELLA KAMKOFF** |

STATE OF ALASKA ) ss.

THIRD JUDICIAL DISTRICT )

I, Della Kamkoff, being first duly sworn, state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this affidavit. This affidavit is in support of Plaintiffs' Motion for Preliminary Injunction and Plaintiffs' Motion for Class Certification, filed January 20, 2023.

2. My name is Della Kamkoff.

3. I am 40 years old and live in Anchorage, Alaska. I am a female Alaskan native.

4. I live with my husband and our four minor children, ages 2, 9, 11, and 14, in a condominium we rent.

5. My husband is a de-icing agent who helps to de-ice airplanes and is the sole earner in our household. His income is approximately $3,040 per month. I am a stay-at-home mom and I take care of my four children.

6. We have been struggling to get by without SNAP benefits and have been going to local food banks and relying on the charity of friends and family.

7. My family has received SNAP off and on for the last 2 years. We started receiving SNAP benefits around April of 2020.

8. My last SNAP certification ended October 31, 2022.

9. I did not receive any notice of expiration of my SNAP case or a recertification packet by mail.

10. I had expected my family's allotment of SNAP benefits on November 1, 2022, but was surprised when they weren't there.

11. Upon realizing that no SNAP benefits had been distributed, I called Alaska's Department of Public Assistance, in the Department of Health, at the beginning of November. There was an automated option to check my status, which I did, and the automated service informed me that my SNAP benefits were terminated. This was the first I knew of this.

12. My husband and I tried calling a number of times in the following weeks to see why my benefits had terminated, including on November 2nd, November 7th, November 9th, and December 23rd. There were always long wait times of at least an hour or more. On one occasion, I waited an hour and then the line cut me off.

13. Mid-November, 2022, I went to the SNAP office in Anchorage. No one was there, but I took a new application off the wall, filled it out, and submitted it.

14. Around November 23, 2022, I emailed Carrie Huck from the Alaska food bank about my SNAP benefits being terminated. On November 28, 2022, Ms. Huck informed me that my SNAP case appeared to have been closed on October 31, 2022 due to the failure to submit an Eligibility Review form. She instructed me to complete the Eligibility Review form and I did so that the same day on November 28, 2022 by sending it to Carrie Huck via email.

15. I received a notice from Alaska's Department of Public Health dated December 12, 2022 which provided a hotline giving me information to check on my application and information about the office. I took this to mean that the Department had received my application. A copy of this notice is attached hereto as Exhibit 1.

16. I know I have to interview for SNAP because I have received SNAP before and was required to participate in an interview to get my benefits. However, I have never received a notification of any interview.

17. Not having SNAP has been very challenging for my family. I have two teenage boys who both eat a lot. I am lucky to be an Alaskan Native because our family give us Alaskan Native food when they come into town and help us out. I can't rely on this as our primary food source because they aren't in town all the time.

18. I also feed my family by going to the Salvation Army foodbank twice a month and picking up food. There is a program called F.I.S.H. which occasionally delivers food to our home.

19. On Christmas, my family went to the Salvation Army for dinner, but they didn't have any food that day. One of my friends posted on Facebook that she was donating a Christmas dinner so I went there and we were able to get a ham for our family.

20. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

21. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

Dated: January 26, 2023
2023, Alaska

Della Kamkoff
Della Kamkoff

SUBCRIBED AND SWORN TO this 26th day of January, 2023.

JOHN WHITLOCK NOTARY PUBLIC STATE OF ALASKA

John Whitlock
Notary in and for the State of Alaska
My Commission expires: April 29, 2024

Affidavit of Della Kamkoff
*Della Kamkoff et al. v. Heidi Hedberg* (Case No. )

# Exhibit

# 1

DIVISION OF PUBLIC ASSISTANCE
ANCHORAGE DPA OFFICE 082
3901 OLD SEWARD HWY #131
ANCHORAGE AK 99503
(907) XXX-XXXX
(1-800) 478-7778
BENEFIT QUESTIONS:
(907) 269-5777 (ANCH ONLY)
(1-888) 804-6330

656
STATE OF ALASKA
DIVISION OF PUBLIC ASSISTANCE

CASE NUMBER: [redacted]
CASELOAD ID:

MAILING DATE: 12/12/22

DELLA M KAMKOFF
[redacted]
ANCHORAGE AK 99508

INFORMATION HOTLINE ANNOUNCEMENT

DEAR DELLA M KAMKOFF

Call the INFORMATION HOTLINE to hear about:
- Benefits you have applied for or are receiving
- The status of your Public Assistance case(s)
- General program Information
- Office location
- Information updates from the Division of Public Assistance

Hotline Numbers: 269-5777 if you live in the Anchorage area
1-888-804-6330 toll free

When you call, you will need your case number(s) and your security code. The security code for each case number is the last four digits of your Social Security Number. To get Medicaid eligibility information, you will need the Social Security Number for each person on the case.

The INFORMATION HOTLINE is available 24 hours per day, 7 days per week. Sometimes the INFORMATION HOTLINE will not be available because we are working on the system. If it is not available when you call, please wait and call later.

If you do not want your case and benefit information on the INFORMATION HOTLINE, contact your local District Office and request your case number(s) be blocked.

SEE OTHER SIDE

#N027

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

RECEIVED
JAN 27 2023
LAW-CIVIL-ANC

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634) **DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**

845 Texas Avenue, Suite 3800 Houston,
Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

**pro hac vice to be filed*

**Attorneys for Plaintiffs**

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellana, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br>*Plaintiffs*,<br>v.<br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No.3AN-22-________<br><br>**AFFIDAVIT OF ROSE CARNEY** |

STATE OF ALASKA )
) ss.
THIRD JUDICIAL DISTRICT )

I, Rose Carney, being first duly sworn, state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this affidavit. This affidavit is in support of Plaintiffs' Motion for Preliminary Injunction and Plaintiffs' Motion for Class Certification, filed January 20, 2023.

2. My name is Rose Carney.

3. I am 68 years old and live in Palmer, Alaska. I am a white woman.

4. I live in a house with my friend, but we have separate units. My friend and I split the rent.

5. In or around 2015, I suffered a heart attack and had to have quintuple bypass surgery. I also have asthma, COPD, and bronchitis.

6. I receive $1363 from Supplemental Security Income ("SSI") and Alaskan Adult Public Assistance ("APA") per month.

7. I have received SNAP for at least the last 7 years.

8. On or about October 28, 2022, I received my recertification application in the mail.

9. My recertification needed to be submitted to DOH before the end of October 2022.

10. On or about October 29, 2022, I submitted a recertification application for SNAP.

11. Because there was not enough time to mail the recertification before the end of the month, I submitted the application in person at the Wasilla DOH office.

12. When I did not get my benefits in November, I went to the Wasilla office again to get an update. I went on a Monday and the office was completely closed.

13. Initially I tried to call the call center multiple times to get an update on my application. Every time I called, I got an automated message saying to call a different number, and after about five attempts, I stopped calling.

14. On or around November 22, 2022, I went to the Joy Lutheran Church Food Bank at 10111 E Eagle River Loop Rd to get food for Thanksgiving. As I walked into the Church, a woman approached me in the parking lot to see if I wanted to sign up for Food Stamps. I told her I was waiting for my recertification to go through and she took my name and phone number. A

few days later, she called me and told me that my application had been submitted on October 29, 2022, but that the Department was backed up by four months.

15. Not having SNAP has been really hard. I have felt stressed since the beginning of November. I have had to rely on different food banks in order to get food. I usually get a box from the Palmer Food Bank at 221 S Valley Way every month. However, over the last few weeks the roads have been covered in snow and I have not been able to drive there. I also volunteer at the Harvest Christian Fellowship Food Bank at 17108 Hanson Dr, Eagle River two days a week and will get food from them about once a month.

16. I have had to use money that I usually spend on other necessities such as gas, toilet paper, and laundry detergent in order to pay for my food.

17. When I am able to afford it, I try to eat vegetables and other healthy food when I can. I buy meat that I can put into soups which will cover multiple meals. However, since I lost my SNAP I have had to eat primarily beans and potatoes.

18. Without SNAP, I have had to stretch the dollar in order to buy necessities and to survive day to day.

19. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

20. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

Dated: January 19th, 2023
Eagle River Alaska

Rose Lacy Carney

Rose Carney

SUBCRIBED AND SWORN TO this 19th day of January, 2023.

OFFICIAL SEAL
Michael Lawrence
Notary Public-State of Alaska
My Comm. Expires 08/01/2023

Michael Lawrence

Notary in and for the ~~State of~~ Alaska
My Commission expires: 08-01-2023

Affidavit of Rose Carney
*Della Kamkoff et al. v. Heidi Hedberg* (Case No. )

RECEIVED

JAN 27 2023

LAW-CIVIL-ANC

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
*Jordan Berger (New York Bar No. 5847827)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org
Email: berger@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com
*Bethany M. Bunge (Tex. Bar No. 24120730)

**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

**pro hac vice to be filed*

**Attorneys for Plaintiffs**

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br>*Defendant*. | Case No. 3AN-22-__________<br><br>**AFFIDAVIT OF TROY FENDER** |

I, Troy Fender, being first duly sworn, state as follows:

1. I am a Plaintiff in this matter and have personal knowledge of the contents of this affidavit. This affidavit is in support of Plaintiffs' Motion for Preliminary Injunction and Plaintiffs' Motion for Class Certification, filed January 20, 2023.

2. My name is Troy Fender.

3. I am 62 years old and live in Wasilla, Alaska.

4. I am currently unemployed and have no income. I was last employed around July of 2021 as a truck driver and I have been living off of my savings since then.

5. This is my second time applying for SNAP benefits. I first applied in April of 2022. I went to the Wasilla branch SNAP office and filled out the paperwork and dropped it in the office's dropbox. I never heard back after applying in April.

6. I was worried that I had filled out or submitted my application incorrectly, so I resubmitted another SNAP application around October 31, 2022 at the Wasilla office by physically handing the paperwork to the DOH staff.

7. In November, 2022, after I still had not heard back from DOH, I went back to the Wasilla branch office and asked the staff to verify that my application was correct and that it had been received. I almost left because it looked like the DOH office was empty. The lights were dim and it seemed like no one was there. Eventually someone came out and was able to verify that the system reflected my application had been submitted and remained pending. They told me to "be patient" and that my application would be processed.

8. It has been two months since I went in to the office to check on my application and aside from the DOH staff's assurance when I went in to the Wasilla branch office, I have not received any notice from DOH saying they have received my paperwork. I also have not been asked to provide any additional information to DOH, and I have not received any notice of an interview. As far as I am aware, my application remains pending.

9. Not having SNAP benefits has been really hard. My girlfriend and I live in my RV and pay around $300 per month for heating costs. I have had to make difficult decisions including deciding whether to use the limited funds I have left towards diesel fuel for heat or for food.

10. I have had to make sacrifices over the last year and have been reliant on foodbanks and on the good will of my family to survive. I am lucky that thus far I have been able to keep the heat going and that my daughter has been able and willing to provide diesel fuel for me. I am

indebted to my family for helping me to survive while I have been waiting for a decision on my SNAP application.

11. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy families living in Alaska who seek food stamps benefits to which they are entitled.

12. As a representative of a plaintiff class harmed by the same unlawful DOH conduct, I am willing to protect and advance the interests of the plaintiff class rather than acting in my own sole interest.

Dated: January ___, 2023
Wasilla, Alaska

______________________________
Troy Fender

SUBCRIBED AND SWORN TO this ___ day of January, 2023.

______________________________
Notary in and for the State of Alaska
My Commission expires: ______________

Affidavit of Troy Fender
*Della Kamkoff et al. v. Heidi Hedberg* (Case No. )

RECEIVED

JAN 27 2023

LAW-CIVIL-ANC

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
*Jordan Berger (New York Bar No. 5847827)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org
Email: berger@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com
*Bethany M. Bunge (Tex. Bar No. 24120730)

**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

**pro hac vice to be filed*

**Attorneys for Plaintiffs**

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br><br>*Defendant*. | Case No. 3AN-22-__________<br><br>**NOTICE OF FILING UNSIGNED AFFIDAVIT** |

Plaintiffs file herewith the unsigned Affidavit of Troy Fender. The undersigned certifies that Mr. Fender has reviewed this affidavit and agrees with its contents. The original signed and notarized affidavit will be filed with the court as soon as it is received.

DATED this 20th day of January, 2023.

**NORTHERN JUSTICE PROJECT, LLC**
Attorneys for Plaintiffs

*/s/ Nicholas Feronti*

Nicholas Feronti, AK Bar No. 2106069
Goriune Dudukgian, AK Bar No. 0506051

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
*Jordan Berger (New York Bar No. 5847827)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
akhtar@nclej.org
berger@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
maggie.craig@us.dlapiper.com
kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
Tel.: (916) 930-3200
Fax: (916) 930-3201
micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Tel.: (713) 425-8400
Fax: (713) 425-8401
bethany.bunge@us.dlapiper.com

**pro hac vice to be filed*

Attorneys for Plaintiffs

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

RECEIVED

JAN 27 2023

LAW-CIVIL-ANC

*Saima Akhtar (New York Bar No. 4661237)
*Jordan Berger (New York Bar No. 5847827)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org
Email: berger@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

**pro hac vice to be filed*

**Attorneys for Plaintiffs**

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br><br>*Defendant*. | Case No. 3AN-23-04259 CI<br><br>**DECLARATION OF NICHOLAS FERONTI IN SUPPORT OF PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND PRELIMINARY INJUNCITION** |

**DECLARATION OF NICHOLAS FERONTI IN SUPPORT OF PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND PRELIMINARY INJUNCTION**

Nicholas Feronti declares under penalty of perjury:

1. I am an attorney with the Northern Justice Project, one of the firms representing the Plaintiffs and proposed plaintiff classes in the above-entitled action.

2. I am familiar with the facts and circumstances of this case.

3. I make this declaration in support of Plaintiffs' motions for class certification and preliminary injunction pursuant to Alaska Rules of Civil Procedure 23 and 65(a).

4. For nearly a year, the firms who now seek to serve as class counsel in this matter have been gathering information and observing how the Alaska Department of Health ("DOH") handles Supplemental Nutrition Assistance Program ("SNAP") applications and recertifications by speaking with applicants and recipients of SNAP, as well as client advocates, and reviewing agency data and publicly available documents.

5. The Plaintiffs bring this civil rights action on behalf of three putative classes of similarly situated low-income Alaskans and allege that Defendant violated and continues to violate their rights under the SNAP Act, the Due Process Clause of the U.S. Constitution, and the Due Process Clause of the Alaska Constitution by failing to 1) timely process new and recertification SNAP applications and render SNAP eligibility determinations to eligible households on a timely basis; (2) provide applicants with appropriate written notice of delays in processing their application and opportunity to request a fair hearing; (3) ensure interpretation services and translated written materials are available to applicants and recipients of SNAP with limited English proficiency; and (4) ensure that SNAP applicants can make an application for benefits on the date of their first contact with DOH.

**Limitations on the Right to File a SNAP Application**

6. SNAP applicants and recipients who can physically reach one of the 11 DOH district offices may find it closed or may be directed to contact the Virtual Contact Center ("VCC") instead.

7. Callers to the VCC report multi-hour wait times to speak with a worker, as well as frequent closure of the VCC or "limited services" because of high call volumes.

**Failure to Provide Written Translations and Interpretation Services**

8. In January 2020, the Department of Health and Social Services ("DHHS"), the precursor agency to DOH, entered into a voluntary compliance agreement to address a number of concerns, including language access concerns, with the Civil Rights Division of the Food and Nutrition Service of the United States Department of Agriculture to address deficiencies identified in a SNAP program access review conducted in July and August of 2018. A copy of the compliance agreement and accompanying materials are attached as Exhibit 1.

**Application Processing Delays**

9. In responding to individuals who have asked for assistance when their SNAP applications and recertifications are delayed, counsel for the proposed classes have routinely encountered cases where the process of determining SNAP eligibility has taken 3-4 times the legally mandated 30-day processing time.

**DOH's Own Data Demonstrates Application Processing Delays**

10. Approximately 112,611 persons in Alaska participated in SNAP as of September 2022, a nearly a 24% increase from one year earlier and the most recent month for which this data is available. Attached hereto as Exhibit 2 is the referenced data table released by the United States Department of Agriculture (USDA) on the number of persons participating in the Supplemental Nutrition Assistance Program as of December 9, 2022, also *available at* https://fns-prod.azureedge.us/sites/default/files/resource-files/29SNAPcurrPP-12.pdf.

11. More than 27,000 new SNAP applications were filed between November 2021 and October 2022. Attached hereto as Exhibit 3 are the Monthly Caseload & Benefits Summary reports for the period from November 2021 through October 2022 published by the Alaska Department of Health & Social Services – Division of Public Assistance, also *available at*

http://dpaweb.hss.state.ak.us/files/reports/Csld&BeneSumm.pdf. Table 6 of this report identifies the total number of applications submitted to the DOH in a given month for each benefit program it administers, including SNAP.

12. In the current state fiscal year, DOH was only able to timely process 52.9% of initial SNAP applications, 40.6% of applications entitled to expedited processing, and 30.5% of recertification applications. Attached hereto as Exhibit 4 is the Internal Performance Measures: Year-to-Date Performance prepared on December 22, 2022 and published by the Alaska Department of Health & Social Services – Division of Public Assistance, also *available at* http://dpaweb.hss.state.ak.us/files/reports/DPA_All_Measures_YTD.pdf.

**Numerous Publicly Available Data Sources Indicate the Prevalence of Low-Income and Single-Language Minority Households in Alaska**

13. Data from the 2021 American Community Survey indicates that over 100,000 individuals in Alaska age of 5 and above speak a language other than English and describes the categories of languages. Attached hereto is Exhibit 5. This report is also *available* at https://data.census.gov/table?g=0400000US02&tid=ACSST1Y2021.S1601.

14. Data prepared by the federal Department of Justice in 2015 based upon mapping surveys in five areas of the State indicate that more than 33,000 individuals in Alaska identified as limited English Proficient or as speaking English less than very well. The most prevalent languages identified were: Tagalog, Spanish, Korean, Hmong and a combined category for Native American/Indigenous languages. This information is *available at* https://www.lep.gov/node/521 and a copy of the Department of Justice's map identifying the distribution of limited English proficient communities in Alaska attached as Exhibit 6.

15. The Anchorage School District Serves 43,000 students, 20% of whom speak a language other than English at home. The data is attached hereto is Exhibit 7, and also *available at* https://www.asdk12.org/aboutasd/.

16. In 2007, data from the Alaska Native Language Center at the University of Alaska Fairbanks indicated the most commonly spoken indigenous languages in Alaska. Attached hereto as Exhibit 8 is that data, also *available at* https://www.uaf.edu/anlc/languages-move/pop.php.

17. The Alaska Supreme Court Fairness and Access Committee issued an updated Language Access Plan in 2020 that identifies the most prevalent languages for which verbal interpretation services were sought in the Alaska State Courts for fiscal year 2018, attached hereto is Exhibit 9, and also *available at* https://courts.alaska.gov/language/docs/language-access-plan.pdf.

**Counsel Can Provide Fair and Adequate Representation of the Classes**

18. Class counsel in this matter are sufficiently experienced and qualified to protect the interests of the putative class members. The proposed classes are represented by attorneys from the Northern Justice Project, the National Center for Law and Economic Justice, and DLA Piper.

19. As the preeminent civil rights law firm in Alaska, Northern Justice Project ("NJP") has litigated numerous class action matters that include public benefits for low-income Alaskans. *See, e.g., Z.C., et al. v. State of Alaska, et al,* S-18259 (pending before Supreme Court representing class of foster children ); *Krone v. State,* 222 P.3d 250 (Alaska 2009) (representing class of Medicaid recipients); *Heitz v. State,* 215 P.3d 302 (Alaska 2009) (representing class of foster parents); *Dep't of Health & Soc. Servs. V. Okuley,* 214 P.3d 247 (Alaska 2009) (representing class of disabled Alaskans receiving Interim Assistance); *Baker v. State,* 191 P.3d

1005 (Alaska 2008) (representing class of Medicaid recipients); *Mulgrew, et al.; State of Alaska, et al.* Case No. 3AN-10-6273 CI (representing class of adoptive parents); *Paramore, et al. v. State of Alaska,* Case No. 3AN-10-9035 CI (representing class of Medicaid recipients).

20. The National Center for Law and Economic Justice has litigated numerous public benefits class actions, including matters relating to Food Stamps, in numerous state and federal courts throughout the country. Recent cases where NCLEJ is serving or has served as class counsel include: *Garnett v. Zeilinger*, No. 17-cv-01757 (D.D.C. filed Aug. 28, 2017) (certified class of SNAP benefits applicants and recipients challenging state's failure to timely process applications and provide timely notice of need to reapply prior to termination from program); *Brooks v. Roberts*, No. 16-cv-01025 (N.D.N.Y. filed Aug. 19, 2016) (certified class consisting of SNAP benefits recipients challenging state's administration of work requirements in SNAP program); *Rafferty v. Doar*, No. 13-cv-1410 (S.D.N.Y. filed Mar. 5, 2013) (certified class consisting of public benefits applicants with visual impairments denied reasonable accommodations in the application process for Medicaid, SNAP, and cash assistance); *Melanie K. v. Horton*, No. 14-cv-00710 (N.D. Ga. filed Mar. 11, 2014) (certified class of SNAP benefits applicants and recipients challenging state's failure to timely process applications)

21. DLA Piper is a large global law firm that handles hundreds of class action cases annually. The firm features one of the premier class action practices in the United States, having handled class action lawsuits in virtually every U.S. jurisdiction, including pro bono cases involving the rights of foster youth in Kansas, students in Georgia, and detainees in a St. Louis jail. Chris Young, in particular, has acted as class counsel in pro bono matters on behalf of two putative classes of incarcerated persons in California and Nebraska. *See, e.g., Hannah Sabata, et*

*al., v. Nebraska Dept. of Correctional Services, et al.*, Case No. 4:17-cv-03107-RFR-MDR (D. Neb. 2019); *Dunsmore v. State of California et al.*, Case No. 3:20-cv-00406 (S.D. Cal. 2020).

22. No previous application has been made to this or any other Court for the relief requested herein.

WHEREFORE, I respectfully request that the Court grant the relief requested in the accompanying motions for preliminary injunction and class certification.

DATED this 20th day of January, 2023 at Anchorage.

NORTHERN JUSTICE PROJECT, LLC
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
DLA PIPER, LLP
Attorneys for the Plaintiffs

/s/ Nicholas Feronti
Nicholas Feronti, AK Bar No. 2106069

# Exhibit 1

**VOLUNTARY RESOLUTION AGREEMENT**

**BETWEEN**

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**FOOD AND NUTRITION SERVICE**
**CIVIL RIGHTS DIVISION**

**AND**

**ALASKA DEPARTMENT OF HEALTH AND SOCIAL SERVICES,**
**DIVISION OF PUBLIC ASSISTANCE**

This Voluntary Resolution Agreement (Agreement) is entered into by and between the United States Department of Agriculture, Food and Nutrition Service, Civil Rights Division, and the Alaska Department of Health and Social Services, Division of Public Assistance collectively referred to as the "Parties".

## A. BACKGROUND

1. The United States Department of Agriculture (USDA), Food Nutrition Service (FNS), Civil Rights Division (CRD), ensures compliance with applicable Federal Civil Rights laws, regulations and directives by recipients of Federal financial assistance from USDA and of public entities administering FNS programs. FNS's enforcement authority is derived from Title VI of the Civil Rights Act of 1964, as amended, 42 USC 2000d (Title VI), Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 et seq., (Title IX) Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (Section 504), Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (ADA), the Age Discrimination Act of 1975, 42 U.S.C. § 6101 *et seq.* (Age Act), and all provisions required by the implementing regulations of USDA 7 CFR Part 15.

2. The State Agency is an agency in Juneau, Alaska. The State Agency receives Federal financial assistance from FNS and is a public entity that administers a FNS program.

3. CRD conducted a Civil Rights compliance review of the State Agency, Supplemental Nutrition Assistance Program, which occurred on July 31-August 3, 2018 (hereinafter referred to as "CRD Review").

4. To remedy concerns CRD identified during the CRD Review, the State Agency agreed to voluntarily develop and implement a written plan that will be accomplished within specified timeframes to ensure compliance with applicable Federal Civil Rights laws, regulations and directives. This Agreement does not constitute an admission of any violation of Federal laws, regulations or directives by the State Agency.

5. This agreement addresses all of the compliance concerns identified by CRD during the above referenced compliance review.

Initials___State Agency
Initials_____CRD

## B. AGREEMENTS

1. The parties agree that the State Agency enters into this Agreement voluntarily. The parties further agree that resolution of compliance concerns is in their mutual best interest and have agreed to set forth the terms of the Agreement in writing.

2. Parties agree to a full, complete and final mutual release and resolution of civil rights compliance concerns identified in the CRD Review based upon the negotiation efforts between both parties. This agreement is a joint effort to ensure full compliance with civil rights laws.

3. The Parties agree to work together to address any compliance concerns within designated timeframes.

4. The Parties agree that CRD will monitor the implementation of the corrective action plan to determine whether the State Agency is in compliance with the terms and conditions of the Agreement.

5. CRD agrees to provide appropriate technical assistance to the State Agency regarding compliance with this Agreement, as requested and as reasonably necessary.

## C. GENERAL PROVISIONS

1. **Entities and Programs Covered by This Agreement.**
U.S. Department of Agriculture, Food and Nutrition Service, Civil Rights Division, and the Alaska Division of Public Assistance.

2. **Effective Date and Computation of Time.** This agreement shall become effective on the last date signed by both parties (Effective Date). When the due date of a corrective action plan falls on a Saturday, Sunday, or a Federal holiday, the period shall run until the close of business of the next business day.

3. **Term of the Agreement.** This Agreement shall remain in effect until such time CRD determines that the State Agency has completed all actions required and a closure letter is issued.

4. **Failure to Comply with the Agreement.** Throughout the Term of this Agreement, if at any time CRD determines that the State Agency has failed to comply with any provision of this Agreement (hereafter referred to as Breach of this Agreement); CRD shall notify the State Agency in writing (hereinafter referred to as the Notice of Breach). The Notice of Breach shall include a statement of the basis for CRD's determination and shall allow ten (10) calendar days to either: (a) explain in writing the reason for the noncompliance and describe the remedial actions that have been or shall be taken to achieve compliance with this Agreement; or (b) dispute CRD's determination. If the State Agency does not respond to the Notice of Breach, or if, upon review of the State Agency's response CRD determines that the State Agency has not complied with the terms of the Agreement, CRD reserves the right to terminate the Agreement and issue a Civil Rights compliance

Initials SD State Agency
Initials_____CRD

review report with findings and required corrective actions.

5. **Effect on Other Compliance Matters.** The terms of this Agreement do not apply to any other issues, investigations, reviews, or complaints of discrimination that are unrelated to the subject matter of this Agreement and that may be pending before CRD, FNS or any other Federal agency. This Agreement does not preclude CRD or FNS programs from conducting future compliance reviews of the State Agency or from conducting investigations of complaints filed against the State Agency that are received after the Effective Date of this Agreement.

6. **Continuing Obligations.** Nothingin this Agreement is intended to relieve the State Agency of their continuing obligation to comply with other applicable Federal nondiscrimination statutes and their implementing regulations.

7. **State Agency's Compliance with the Agreement.** CRD may, at any time, review the State Agency's compliance with this Agreement. Throughout the term of this Agreement, the State Agency agrees to retain records required by CRD to assess the agency's compliance with the Agreement and to submit the requested documents and records upon request by CRD.

8. **Non-Waiver Provision.** Failure by CRD to enforce this entire Agreement or any provision thereof with respect to any deadline or any other provision shall not be construed as a waiver of CRD's right to enforce other deadlines or any provisions of this Agreement.

9. **Modification of Agreement.** This Agreement may be modified by mutual agreement of the parties in writing. The State Agency may, in advance of any due date set forth in this Agreement, submit a timely written request for an extension of time to perform any required act. A "timely written request" is defined as a request in writing received byCRD at least five (5) calendar days prior to the date such an act is required to be performed.

10. **Publication or Release of Agreement.** FNS CRD places no restrictions on the publication of the terms of this Agreement. In addition, FNS CRD may be required to release this Agreement and all related materials to any person upon request, consistent with the requirements of the Freedom of Information Act, 5 U.S.C. § 522, and its implementing regulation. CRD will maintain the confidentiality of all documents, files and records received from the State Agency and will not disclose their contents except where necessary in formal enforcement proceedings orwhere otherwise required or allowed by law.

11. **Authority of Signer.** The individual who signs this document represents that he or she is authorized to bind the State Agency to this Agreement.

12. **Binding on Successors.** This Agreement is binding on the State Agency and its respective successors, heirs, transferees, and assigns and shall be binding on any employee that takes any act that would qualify it as the State Agency during the term of this Agreement as set forth in section D.2.

13. **Third Party Rights.** This Agreement can only be enforced by the parties specified in this Agreement, their legal representatives, and assigns. This Agreement shall be unenforceable by

Initials_[initials]_State Agency
Initials_____CRD

third parties and shall not be construed to create third party beneficiary rights.

14. **Miscellaneous.** When FNS verifies that the State Agency has completed all actions contained in this Agreement, CRD shall consider all matters resolved and will issue a closureletter.

## D. VOLUNTARY MEASURES

Upon execution of this Agreement, the State Agency agrees to implement agreed upon plan that addresses the areas outlined in the Letter of Concern found in this Agreement as "Addendum A." Terms of Resolution are found within this Agreement as "Addendum B".

The State Agency will provide written, documented verification that each item in the Terms of Resolution (Addendum B) have been completed within 14 calendar days of the due date indicated. FNS may require midterm reports depending on the length of the Terms of Resolution.

Initials_____State Agency
Initials_____CRD

## E. AUTHORIZED REPRESENTATIVES

The State Agency has identified the following individual as its authorized representative and contact person regarding the implementation of this Agreement and for receipt and submission of notifications and reports:

Name: Jason Burke, Social Services Program Coordinator
Alaska Department of Health and Social Services, Division of Public Assistance

Address: Alaska Department of Health and Social Services
Division of Public Assistance
350 Main Street, Room 304
PO Box 110640
Juneau, Alaska 99811-0640

Phone: (907) 465-5843

Email: jason.burke@alaska.gov

The State Agency agrees to promptly notify CRD of any changes in its authorized representative(s) or contact persons, or other information provided above.

**State Agency**

Shawnda O'Brien (Signature) 1·31·20 (Date)

Shawnda O'Brien, Director
Alaska Division of Public Assistance

**FNS Civil Rights Division**

(Signature) (Date)

Roberto Contreras, Director
Civil Rights Division

Initials SO State Agency
Initials_____CRD

**Addendum A – Alaska Department of Health and Social Services, Division of Public Assistance VRA Letter and Compliance Concerns**

**Addendum B – Terms of Resolution**

**Addendum B – Terms of Resolution**
**Notation added and appended for status to FNS on July 9, 2021**

**The Alaska Division of Public Assistance intends to resolve all Areas of Concern from the Civil Rights Division's review within the planned timelines below, and provide periodic updates on its progress as needed.**

1. **The State Agency's subrecipient agreements do not contain the appropriate assurance of nondiscrimination language required by *FNS Instruction 113-1* and the Federal/State agreement.** *Citations: 7 CFR 15; 7 CFR 272; FNS Instruction 113-1 Sections X and XIII and Appendix A.*
   **Agency Plan Timeline:** June 30, 2021
   **Corrective Action:**
      i. Policy/Administrative Manual corrected as of this agreement.
      ii. Application for Services corrected as of this agreement http://dhss.alaska.gov/dpa/Pages/features/org/applications.aspx.
      iii. Website corrected as of this agreement at http://dhss.alaska.gov/dpa/Pages/SNAP/default.aspx.
      iv. Ongoing notice provided to subrecipients as needed, provision included in assurances for grant agreements.
      v. Needed updates to agreements will be completed in advance of the next award cycle in June 2021. The agreement template with the corrected assurances language for use in the next award cycle will be updated in February 2021.
   **Documentation:** Grant agreement with Food Bank of Alaska.

2. **The State Agency's public notification system needs to ensure the placement of the USDA Nondiscrimination Statement (NDS) in SNAP program materials and on its websites.** For the current NDS, please consult the FNS Civil Rights webpage at: https://www.fns.usda.gov/fns-nondiscrimination-statement. *Citations: 7 CFR 272; FNS Instruction 113-1, Section IX and Appendix A*
   *a.* Alaska DPA's SNAP outreach contractor, Food Bank of Alaska, does not have the NDS on their website.
      **Agency Plan Timeline:** December 31, 2020
      **Corrective Action:**
         i. Update attempted by Food Bank of Alaska as of this agreement but did not have correct statement and posting.
         ii. Reviewed updated statement with the Director of Public Engagement in July 2020 and discussed placement on websites and informational materials.
         iii. Planned updates to FBA manuals, webpages, and materials by the end of October 2020. Planned communication with local food banks regarding the same in September for completion by the end of 2020.
         iv. Followed up with FNS Civil Rights re: training material on FBA's website that includes the NDS.
         v. Followed up with Director of Public Engagement in June and July 2021 with clarifications and updates.
      **Documentation:** Email exchanges with Cara Durr

Initials ____State Agency
Initials ____CRD

*b.* The Alaska SNAP publication titled, 'Making America Stronger' does not contain the NDS.

**Agency Plan Timeline:** October 31, 2020

**Corrective Action:**

i. Change communicated with policy team member who updates brochures in July 2020.

ii. Updates to electronic brochure completed in September 2020 and updated to website at http://dpaweb.hss.state.ak.us/e-forms/pdf/FSP-313.pdf.

iii. Updates to paper brochure scheduled for replacement by the end of October 2020.

**Documentation:** Email exchange with Policy team member and updated brochure.

c. The Alaska SNAP application (in the section, *'How are my rights protected' on page 5)* has an incorrect NDS.

i. Corrective action completed as of this agreement.

ii. Application available online at http://dhss.alaska.gov/dpa/Pages/features/org/applications.aspx.

iii. Due to the May 2021 cyberattack on department's website, a link to the temporary website includes the updated application: http://dhss.alaska.gov/dpa/pages/default.aspx#apps.

iv. **Documentation:** The July 2021 application will be posted soon.

*d.* Alaska DPA's SNAP website at: http://dhss.alaska.gov/dpa/Pages/fstamps/default.aspx has an incorrect NDS.

i. Corrective action completed as of this agreement.

ii. Due to the May 2021 cyberattack on department's website, the temporary website includes the statement on the application, and the statement will be linked to the same page when restored. http://dhss.alaska.gov/dpa/pages/default.aspx#apps.

**3. The State Agency's Civil Rights Training is incomplete and does not include the requisite compliance areas outlined in FNS Instruction 113-1.** *Citation: Title VI of the Civil Rights Act of 1964; FNS Instruction 113-1, Sections XI and XIII (E).*

**Agency Plan Timeline:** December 31, 2020

**Corrective Action**

i. Coordinated scheduled timeline with the Division Operations Support Team and Staff Development and Training to create training plan annually for new and continuing employees.

ii. Received FNS training as a template.

iii. Attended webinar for school lunch programs on July 22, 2020.

iv. Review of materials on State of Alaska training website to complement training

v. Arrange content into training modules for creation and delivery.

vi. Meeting monthly with training team to draft and review materials.

vii. **Documentation:** Emails with Staff Development and Training re: training presentation and planned updates.

4. **4. State Agency staff do not collect ethnic and racial data on its SNAP applicants who do not self-identify.** *Citations: 7 CFR 272.6(g); 7 CFR 15; FNS Instruction 113-1 Section XII and Appendix A.*

   **Agency Plan Timeline:** December 31, 2020

   **Corrective action:**

   i. Draft communication for staff as a reminder of the procedure to collect required information by October 31, 2020.
   ii. Include procedure in training of staff by December 31, 2020 in explaining to such applicants that the data is used for statistical purposes and will not have bearing on their eligibility or standing in SNAP.
   iii. Notification was provided to offices before the pandemic to ensure staff were aware of the requirement. Since the transition and creation of a Virtual Contact Center, the Policy team is working with operations to apply to services delivered telephonically.

   **Documentation:** to Email from policy re: job aids and training for staff who provide services through the Virtual Contact Center.

5. **The State Agency does not cover all civil rights review areas, including complaint processing and language access, during management evaluations of its local agencies.** *Citations: 7 CFR 275; 7 CFR 15; FNS Instruction 113-1, Section XIII and Appendix* **Agency Plan Timeline:** December 31, 2020.

   **Corrective Action:**

   i. Coordination with Chief of Program Integrity and Analysis to update evaluations consistent with training materials.
   ii. Monthly check-ins to review and draft materials.
   iii. Due to major changes in division management and operations before and during the public health emergency, it has not been possible to fully implement this requirement.
   iv. Check-ins will resume in August 2021 with a plan to complete the update by September 30, 2021.

   **Documentation:** July 24, 2020 email exchange with Chief of Program Integrity and Analysis.

6. **The State Agency does not have a 504 Coordinator for the Division of Public Assistance (DPA) to monitor and ensure compliance with Section 504 and the American with Disabilities Act.** *Citations: 7 CFR 15; 28 CFR 35; Section 504 of the Rehabilitation Act; and the Americans with Disabilities Act (ADA)/Americans with Disabilities Act Amendments (ADAAA).*

   **Corrective Action Completed:** Notice provided to staff that Jason Burke, Social Services Program Coordinator was assigned this responsibility.

   **Documentation**: Email on October 25, 2019 with attached Newsletter from Director O'Brien.

Initials ____ State Agency
Initials ____ CRD

7. **The State Agency has incorrect information on where clients may file a discrimination complaint.** *Citations: 7 CFR 15; 7 CFR 271; 7 CFR 272; FNS Instruction 113-1, Sections XI, XV, XVI, XVII, Appendix A, and the USDA Nondiscrimination Statement.* **Agency Plan Timeline:** September 30, 2020
**Corrective Action:** Communicated change with Division Operations Support Team lead to include change in next update to the Administrative Manual.
**Documentation:** Transmittal showing manual change went into effect September 1, 2020.

8. **The State agency and the Food Bank of Alaska's SNAP information and materials are not accessible to persons with Limited English Proficiency (LEP).** *Citations: Title VI of the Civil Rights Act of 1964; 7 CFR 272; Executive Order 13166; FNS Instruction 113-1, Sections VII, XII and Appendix A; and USDA Guidance for Persons with LEP in Assisted Programs; and DOJ LEP Guidance.*
**Agency Plan Timeline:** December 31, 2020
**Corrective Action:**
   i. Assess LEP populations to determine whether threshold is met to produce materials in other languages.
   ii. Develop ispeak reference to accompany written materials for common LEP languages indicating the use of the language line for translation services, whether referred from Food Banks or other agencies or online.
   iii. Due to changes in service delivery during the coronavirus pandemic transitioning from in-person to telephonic services, the division is considering whether its contract with Food Bank of Alaska (FBA) for outreach will cover Telelanguage interpreter services. The division is also working on the updated translation of vital documents that will be shared by FBA stemming from its assessment.
**Documentation:** Contract agreement with FBA shows they are responsible for cost of services provided to LEP populations.

9. **Vital documents which impact program participation are only in English.** *Citations: Title VI of the Civil Rights Act of 1964; 7 CFR 272; Executive Order 13166; FNS Instruction 113-1, Sections VII, XII and Appendix A; USDA Guidance for Persons with LEP in Assisted Programs; and DOJ LEP Guidance.*
**Agency Plan Timeline:** June 30, 2021

**Corrective Action**
   i. Identify vital documents and languages, establish priorities.
   ii. Review low-cost services for translation of vital documents.
   iii. Budget for translation of documents.
   iv. Review accuracy of translations.

10. **The State Agency has not conducted an assessment to determine the language needs of eligible populations.** *Citations: Title VI of the Civil Rights Act of 1964; 7 CFR 272; Executive Order 13166; FNS Instruction 113-1, Sections VII, XII and Appendix A; USDA Guidance for Persons with LEP in Assisted Programs; and DOJ LEP Guidance.*
**Agency Plan Timeline:** January 31, 2021
**Corrective Action:**

i. Complete assessment using US Department of Justice Language Assessment and Planning Tool (May 2011) or similar tool by December 31, 2020.
ii. Use MPI data and current US Census data, Language Line data, feedback from division staff and the LEP community, and advice from compliance officials to determine language needs of eligible populations by January 31, 2021.
iii. Update LEP with 2020 Census data once available.
iv. Delayed to June 2021 and ongoing

**Documentation:** AK LEP assessment 0221 (PDF); LEP Assessment – Data – Translation email exchange with Research Unit (May-June); April 9, 2021 email from Becca Stovall with data from Telelanguage Line.

11. **The State Agency allows the use of minor children, family members and friends as interpreters.** *Citations: Title VI of the Civil Rights Act of 1964; 7 CFR 272; Executive Order 13166; FNS Instruction 113-1, Sections VII, XII and Appendix A; USDA Guidance for Persons with LEP in Assisted Programs; and DOJ LEP Guidance.*

**Agency Plan Timeline:** December 31, 2020

**Corrective Action:**

i. Provide guidance to staff on appropriate interpreters for LEP individuals and families.
ii. Provide a template of the content for guidance materials for review.

**Documentation:** Draft changes to September 1 update to Administrative Manual Sections 100-4 and 100-6 regarding Limited English Proficiency. Additional training and guidance are under development.

Initials ____ State Agency
Initials ____ CRD


STATE of ALASKA
Department of Health and Social Services
Division of Public Assistance
Telelanguage
Services Training
Te
Le
LANGUAGE

## Connecting to an interpreter when LEP (Limited English Profiency) client is with you in person:

- Dial **855.878.7423**
- Provide the agent with the *language needed*
- Provide the agent with your *department code*

  List of department codes:
  1: Field Services
  2: Policy
  3: PI&A
  4: SysOps
  5: WIC
  6: Child Care
  7: SD&T
  8: Director's Office
- Provide the agent with your *full name*
- After this you will be connected with your interpreter

TeLe LANGUAGE

STATE of ALASKA

Division of Public Assistance

Case: 26-4167, 09/09/2026, DktEntry: 17.4, (123 of 285)

## Connecting to an interpreter for LEP (Limited English Proficiency) client on the telephone:

- Dial **855.878.7423**
- Provide the agent with the *language needed*
- Provide the agent with your *department code*

**List of department codes:**

1: Field Services
2: Policy
3: PI&A
4: SysOps
5: WIC
6: Child Care
7: SD&T
8: Director's Office

When your interpreter is on the line, let them know you need to call a LEP client. They will gather the name, phone number and introduction you wish for the client, and then place the call for you. Once the client answers, the interpreter will introduce themselves and you can begin the conversation.

TeLe LANGUAGE

STATE of ALASKA

Division of Public Assistance

Case: 26-4167, 09/09/2026, DktEntry: 17.4, (124 of 285)

## Time to reach an interpreter

- Telelanguage' s interpretation services are on demand. You will not need to pre schedule calls, or hold for long.
- Average connect time should be between 10-12 seconds from the time the you provide necessary information.
- Always report any issues connecting to an interpreter to Field Services Support Unit at dpafield@alaska.gov
- FSSU will relay the information to the account manager.

Division of Public Assistance

Case: 26-4167, 09/09/2026, DktEntry: 17.4, (125 of 285)

## Call Tips

- There may be times where you connect to an interpreter, but the LEP client may speak a different dialect. Our interpreter will be able to tell you right away if they can assist. If they cannot, our interpreter will connect you back to our call center to connect you to the right language.

- Avoid excessive hold times. If you are in a conference with an interpreter on the line, and you don't need them for a part of the call, simply let the interpreter know you are done and to disconnect. Since the service is on demand, you will be able to call back when you need the interpreter again, and connect to an interpreter who will be able to pick up right where you left off.

Division of Public Assistance

Case: 26-4167, 09/09/2026, DktEntry: 17.4, (126 of 285)

# Tips for working with an interpreter

1. Brief the interpreter prior to the conversation
2. The interpreter is there to purely translate what is being said
3. The interpreter will not change or alter any part of the conversation
4. Speak clearly and in a normal tone
5. Allow more time for interpreted communication
6. Be aware of cultural factors
7. Refrain from using metaphors, acronyms, slangs or idioms
8. Remember to pause between sentences
9. Speak directly to the non-English speaker, not the interpreter
10. Treat the interpreter as a professional
11. Permit only one person to speak at a time

STATE of ALASKA

Division of Public Assistance

TeLe

## Telelanguage Reference Cards

This is a useful guide to use our telephonic services. We can send as many of these cards as your staff members need. They are customized with your Telelanguage phone number, access code/department code and steps to connect.

The back side has tips on how to use an interpreter.




Division of Public Assistance

## Language Poster:

States "please point to your language, we will call an interpreter" In 25 different languages.

This is very helpful to have in main areas like check in desk and waiting areas.




Division of Public Assistance

## Language List:




Contains most of the languages Telelanguage provides. This is not a complete list as language needs are always evolving and changing.

If you encounter a very rare language, please reach out to Telelanguage and we will be able to find that language for a prescheduled call if we can't offer it on demand.

Division of Public Assistance

## "Please Hold"

Phonetic transliterations of "One Moment Please"

| | |
|---|---|
| Arabic | Lou'h-that Waa-hdt, min Fad-lak |
| Armenian | Khntroom em Spasel |
| Cambodian | Som Can Mou Piet |
| Cantonese | Dung Ye Dung |
| Dutch | Ho Ann Ast-tebhes |
| Farsi/Persian | Lotfan Yek Dakeek-qun |
| French | Un mowmaunt See Voo Play |
| German | Ine moment Bitte |
| Hindi | Zarag Hold Karow |
| Hmong | Taw EE Pleh |
| Italian | Sia Prega Attenda Rey |
| Japanese | Sho Sho o-machi kudasai |
| Korean | Jam Can Man Yo |
| Mandarin | Dung Ye Dung |
| Mien | Zua Tang |
| Portuguese | Un Momento por favoree |
| Punjabi | Ick Sint Hold Har Nah |
| Russian | Od-Non Min-Utoo, Po-Zhal-u-eesta |
| Spanish | Oon Momento Por Fah-vor |
| Tagalog | Paki Hintay Sandali |
| Taiwanese | Deng Yi Deng |
| Vietnamese | Dai Moi Ti |

Telephone 503 488 2001
Facsimile: 503 246 6115
E-mail: info@telelanguage.com
www.telelanguages.com

Te Le LANGUAGE

## Transliterate:

To write or print (a letter or word) using the closest corresponding letters of a different alphabet or language. "names from one language are often transliterated into another"

The card to the left shows the phonetic transliterations of the phrase, "One Moment Please."

This can help if you have an idea of where the caller is from, or what language they speak. You can use the corresponding phrase to let them know you will call an interpreter in one moment.

Te Le LANGUAGE

STATE of ALASKA

Division of Public Assistance

Case: 26-4167, 09/09/2026, DktEntry: 17.4, (131 of 285)



## B. A Sample Self-Assessment

### 1. Understanding How LEP Individuals Interact with Your Agency

The following series of questions helps agencies understand how an LEP individual may come into contact with your agency:

| | | |
|---|---|---|
| 1. Does your agency interact or communicate with the public or are there individuals in your agency who interact or communicate or might interact or communicate with LEP individuals? | ☑ Yes | ☐ No |
| 2. Please describe the manner in which your agency interacts with the public or LEP individuals: | ☑ In-Person<br>☑ Telephonically<br>☑ Electronically (e.g. email or website) | ☑ Via Correspondence<br>☐ Other: (please specify) |
| 3. Does your agency provide federal financial assistance to any non-federal entities? (Federal financial assistance includes grants, training, use of equipment, donations of surplus property, and other assistance. Recipients of federal funds can range from state and local agencies, to nonprofits and other organizations.) | ☑ Yes | ☐ No |
| 4. If your agency does provide federal financial assistance to non-federal entities: | Yes ✓ | No |
| a. Do you have an active program in place to require your recipients of federal financial assistance to comply with Title VI and language access standards? | a. Yes | a. No |
| b. Does your agency inform recipients of federal financial assistance that they should budget for language assistance services? | b. Yes | b. No |
| c. Does your agency inform recipients of federal financial assistance about which grants can be used, in whole or in part, to improve language access? | c. Yes | c. No |

## 2. Identification and Assessment of LEP Communities

The following series of questions aims to identify the LEP population you serve:

| | | |
|---|---|---|
| 1. How does your agency identify LEP individuals? (Select all that apply) | ☑ Assume limited English proficiency if communication seems impaired<br>☑ Respond to individual requests for language assistance services<br>☑ Self-identification by the non-English speaker or LEP individual<br>☑ Ask open-ended questions to determine language proficiency on the telephone or in person<br>☑ Use of "I Speak" language identification cards or posters | ☑ Based on written material submitted to the agency (e.g. complaints)<br>☐ We have not identified non-English speakers or LEP individuals<br>☑ Other (Please specify): ______ |
| 2. Does your program have a process to collect data on:<br>a. The number of LEP individuals that you serve?<br>b. The number of LEP individuals in your service area?<br>c. The number and prevalence of languages spoken by LEP individuals in your service area? | Yes ✓<br>a. Yes<br>b. Yes<br>c. Yes | No ✓<br>a. No<br>b. No<br>c. No |
| 3. How often does your agency assess the language data for your service area? | ☑ Annually<br>☐ Biennially | ☐ Not Sure<br>☐ Other: |
| 4. What data does your agency use to determine the LEP communities in your service area? (Select all that apply) | ☑ Census<br>☐ US Dept. of Education<br>☐ US Dept. of Labor<br>☐ State Agencies | ☐ Community Organizations<br>☐ Intake information<br>☐ Other:______ |
| 5. Do you collect and record primary language data from individuals when they first contact your programs and activities? | Yes | No (circled) |
| 6. If you collect and record primary language | | |

| | | |
|---|---|---|
| data, where is the information stored? | | |
| 7. What is the total number of LEP individuals who use or receive services from your program each year? | See language line | |
| 8. How many LEP individuals attempt to access your programs or services each month? | | |
| 9. How many LEP individuals use your programs or services each month? | | |
| 10. Specify the top six most frequently encountered non-English languages by your program and how often these encounters occur (e.g., 2-3 times a year, once a month, once a week, daily, constantly). | Language<br>1. Spanish<br>2. Tagalog<br>3. Hmong<br>4.<br>5.<br>6. | Frequency of Encounters<br>1.<br>2.<br>3.<br>4.<br>5.<br>6. |

### 3. Providing Language Assistance Services

The following set of questions will help you assess how well your agency is providing language assistance services to LEP individuals:

| | | |
|---|---|---|
| 1. Does your agency currently have a system in place for tracking the type of language assistance services it provides to LEP individuals at each interaction? | Yes | No |
| 2. What data, if any, do you maintain regarding language assistance services? (Select all that apply) | ☐ Primary language of persons encountered or served<br>☑ Use of language assistance services such as interpreters and translators<br>☑ Funds or staff time spent on language assistance services | ☑ Number of bilingual staff<br>☑ Cost of interpreter services<br>☑ Cost of translation of materials into non-English languages<br>☐ Other (Please specify): |
| 3. Does your agency have a system to track the cost of language assistance services? | Yes | No |
| 4. What types of language assistance services does your agency provide? (Select all that apply) | ☑ Bilingual staff<br>☐ In-house interpreters (oral)<br>☑ In-house translators (documents)<br>☑ Contracted interpreters<br>☐ Contracted | ☑ Language bank or dedicated pool of interpreters or translators<br>☐ Volunteer interpreters or translators<br>☐ Interpreters or |

| | | |
|---|---|---|
| | translators<br>☑ Telephone interpretation services<br>☐ Video interpretation services | translators borrowed from another agency<br>☐ Other (Please specify): |
| 5. Does your agency a) have a certification or assessment process that staff must complete before serving as interpreters or translators for LEP individuals? b) Does the process include use of standardized language proficiency exams? | Contractor led<br>a) Yes<br><br>b) Yes | a) No<br><br>b) No |
| 6. Does your agency ask or allow LEP individuals to provide their own interpreters or have family members or friends interpret? | Yes | No Not unless authorized |
| 7. Does your agency have contracts with language assistance service providers (in-person interpreters, telephone interpreters, video interpreters, or translators)? | Yes | No |
| 8. Does your agency provide staff with a list of available interpreters and the non-English languages they speak, or information on how to access qualified interpreters? | Yes | No |
| 9. Does your agency identify and translate vital documents into the non-English languages of the communities in your service area? | Yes | No |
| 10. Which vital written documents has your agency translated into non-English languages? | ☐ Consent forms<br>☐ Complaint forms<br>☑ Intake forms<br>☑ Notices of rights<br>☐ Notice of denial, loss or decrease in benefits or services<br>☐ Notice of disciplinary action | ☑ Applications to participate in programs or activities or to receive benefits or services<br>☐ Other (please specify): |
| 11. Does your agency translate signs or posters announcing the availability of language assistance services? | Yes | No |
| 12. When your agency updates information on its website, does it also add content in non-English languages? | Yes | No |

## 4. Training of Staff on Policies and Procedures

The following series of questions will help you identify whether staff receive appropriate training on your language access policies and procedures:

| | | |
|---|---|---|
| 1. Does all agency staff receive initial and periodic training on how to access and provide language assistance services to LEP individuals? | Yes | No |
| 2. Who receives staff training on working with LEP individuals? (Select all that apply) | ☑ Management or senior staff<br>☑ Employees who interact with or are responsible for interactions with non-English speakers or LEP individuals | ☑ Bilingual Staff<br>☑ New employees<br>☑ All employees<br>☐ Volunteers<br>☑ Others (Please specify): Contractors<br>☐ None of the above |
| 3. Are language access policies and LEP issues included in the mandatory training curriculum for staff? | Yes | No |
| 4. Does your agency staff procedural manual or handbook include specific instructions related to providing language assistance services to LEP individuals? | Yes | No |
| 5. Does staff receive periodic training on how to obtain and work with interpreters? | Yes | No |
| 6. Does staff receive periodic training on how to request the translation of written documents into other languages? | Yes | No |
| 7. Do staff members who serve as interpreters receive regular training on proper interpreting techniques, ethics, specialized terminology, and other topics? | Yes | No |
| 8. Do staff members who serve as interpreters receive interpreter training from competent interpreters or other trainers familiar with the ethical and professional requirements of an interpreter? | Yes | No |

### 5. Providing Notice of Language Assistance Services

The following series of questions will help you assess how you provide notice of language assistance services to the LEP population in your service area:

| | | |
|---|---|---|
| 1. How do you inform members of the public about the availability of language assistance services? (Select all that apply) | ☑ Frontline and outreach multilingual staff<br>☑ Posters in public areas<br>☑ "I Speak" language identification cards distributed to frontline staff<br>☐ Website | ☐ Social networking website (e.g. Facebook, Twitter)<br>☐ E-mail to individuals or a list serv<br>☐ Other (Please specify):<br>☐ None of the above |
| 2. Do your translated program outreach materials inform LEP individuals about the availability of free language assistance services? | Yes | No |
| 3. Does your agency regularly advertise on non-English media (television, radio, newspaper, and websites)? | Yes | No |
| 4. Does your agency inform community groups about the availability of free language assistance services for LEP individuals? | Yes | No |
| 5. Does your agency inform current applicants or recipients about the availability of language assistance services? | Yes | No |
| 6. Does the main page of your agency website include non-English information that would be easily accessible to LEP individuals? | Yes | No |
| 7. Does your agency have multilingual signs or posters in its offices announcing the availability of language assistance services? | Yes | No |

### 6. Monitoring and Updating a Language Access Procedures, Policy, and Plan

The following set of questions will help you assess whether you have an effective process for monitoring and updating your language access policies, plan and procedures:

| | | |
|---|---|---|
| 1. Does your agency have a written language access policy? | Yes | No |
| 2. If so, is a description of this policy available to the public? | Yes | No |
| 3. How often is your agency's language access policy reviewed and updated? | ☐ Annually<br>☐ Biennially | ☐ Not Sure<br>☑ Other: |

| | | |
|---|---|---|
| 4. When was the last time your agency's language access policy was updated? | Month__________ | Year__________ |
| 5. How often does your agency update its data on the LEP communities in your service area? | ☐ Annually<br>☐ Biennially | ☐ Not Sure<br>☑ Other: |
| 6. Does your agency have a language access coordinator? | Yes | No |
| 7. Does your agency have a formal language access complaint process? | Yes | No |
| 8. Has your agency received any complaints because it did not provide language assistance services? | Yes | No |
| 9. Do you monitor the system for collecting data on beneficiary satisfaction and/or grievance/complaint filing? | Yes | No |
| 10. Do you obtain feedback from the LEP community on the effectiveness of your language access program and the language assistance services you provide? | Yes | No |

# Exhibit 2

| SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM: NUMBER OF PERSONS PARTICIPATING | | | | | |
|---|---|---|---|---|---|
| ( Data as of December 9, 2022 ) | | | | | |
| State / Territory | September 2021 | August 2022 *Preliminary* | September 2022 *Initial* | Percent Change September 2022 vs August 2022 | Percent Change September 2022 vs September 2021 |
| Alabama | 763,754 | 774,318 | 774,378 | 0.0% | 1.4% |
| Alaska | 90,854 | 111,299 | 112,611 | 1.2% | 23.9% |
| Arizona | 802,750 | 884,668 | 911,352 | 3.0% | 13.5% |
| Arkansas | 323,246 | 238,828 | 229,553 | -3.9% | -29.0% |
| California | 4,396,992 | 4,553,236 | 5,044,603 | 10.8% | 14.7% |
| Colorado | 536,718 | 601,114 | 572,893 | -4.7% | 6.7% |
| Connecticut | 371,752 | 383,809 | 383,490 | -0.1% | 3.2% |
| Delaware | 109,563 | 121,463 | 118,952 | -2.1% | 8.6% |
| District of Columbia | 141,772 | 142,764 | 141,450 | -0.9% | -0.2% |
| Florida | 3,125,813 | 2,834,015 | 2,815,431 | -0.7% | -9.9% |
| Georgia | 1,547,070 | 1,619,121 | 1,597,184 | -1.4% | 3.2% |
| Guam | 37,246 | 36,457 | 36,756 | 0.8% | -1.3% |
| Hawaii | 189,956 | 160,804 | 159,601 | -0.7% | -16.0% |
| Idaho | 126,843 | 122,810 | 121,941 | -0.7% | -3.9% |
| Illinois | 1,824,419 | 2,015,218 | 2,018,799 | 0.2% | 10.7% |
| Indiana | 622,712 | 614,575 | 602,455 | -2.0% | -3.3% |
| Iowa | 277,879 | 272,128 | 269,323 | -1.0% | -3.1% |
| Kansas | 196,987 | 196,273 | 193,457 | -1.4% | -1.8% |
| Kentucky | 521,657 | 559,402 | 552,037 | -1.3% | 5.8% |
| Louisiana | 972,648 | 801,103 | 841,236 | 5.0% | -13.5% |
| Maine | 157,460 | 166,683 | 165,233 | -0.9% | 4.9% |
| Maryland | 857,652 | 662,640 | 639,869 | -3.4% | -25.4% |
| Massachusetts | 973,777 | 1,050,682 | 1,057,692 | 0.7% | 8.6% |
| Michigan | 1,261,080 | 1,376,870 | 1,365,336 | -0.8% | 8.3% |
| Minnesota | 434,990 | 442,403 | 446,696 | 1.0% | 2.7% |
| Mississippi | 430,008 | 410,858 | 411,059 | 0.0% | -4.4% |
| Missouri | 683,546 | 670,652 | 670,276 | -0.1% | -1.9% |
| Montana | 91,062 | 87,629 | 86,648 | -1.1% | -4.8% |
| Nebraska | 154,544 | 156,229 | 156,140 | -0.1% | 1.0% |
| Nevada | 441,968 | 474,358 | 472,270 | -0.4% | 6.9% |
| New Hampshire | 68,920 | 70,851 | 70,668 | -0.3% | 2.5% |
| New Jersey | 881,905 | 789,866 | 771,705 | -2.3% | -12.5% |
| New Mexico | 545,421 | 498,944 | 507,206 | 1.7% | -7.0% |
| New York | 2,776,268 | 2,876,474 | 2,846,983 | -1.0% | 2.5% |
| North Carolina | 1,651,835 | 1,486,498 | 1,530,082 | 2.9% | -7.4% |
| North Dakota | 49,124 | 45,945 | 45,336 | -1.3% | -7.7% |
| Ohio | 1,490,681 | 1,487,242 | 1,470,665 | -1.1% | -1.3% |
| Oklahoma | 642,265 | 671,825 | 676,777 | 0.7% | 5.4% |
| Oregon | 678,166 | 743,363 | 732,387 | -1.5% | 8.0% |
| Pennsylvania | 1,816,279 | 1,836,059 | 1,871,300 | 1.9% | 3.0% |
| Rhode Island | 139,212 | 140,610 | 140,274 | -0.2% | 0.8% |
| South Carolina | 616,807 | 624,314 | 619,666 | -0.7% | 0.5% |
| South Dakota | 72,014 | 71,078 | 70,534 | -0.8% | -2.1% |
| Tennessee | 839,487 | 786,502 | 806,886 | 2.6% | -3.9% |
| Texas | 3,144,868 | 3,453,436 | 3,516,606 | 1.8% | 11.8% |
| Utah | 163,514 | 155,974 | 154,467 | -1.0% | -5.5% |
| Vermont | 65,624 | 70,475 | 70,970 | 0.7% | 8.1% |
| Virginia | 771,802 | 824,996 | 825,701 | 0.1% | 7.0% |
| Virgin Islands | 24,479 | 21,161 | 21,506 | 1.6% | -12.1% |
| Washington | 846,119 | 906,150 | 900,922 | -0.6% | 6.5% |
| West Virginia | 300,420 | 323,586 | 323,913 | 0.1% | 7.8% |
| Wisconsin | 765,074 | 695,036 | 692,414 | -0.4% | -9.5% |
| Wyoming | 29,831 | 28,615 | 29,607 | 3.5% | -0.8% |
| TOTAL | 40,846,833 | 41,151,409 | 41,665,298 | 1.2% | 2.0% |

**August and September 2022 data are preliminary and are subject to significant revision.**

Data may include disaster assistance.

The following areas receive Nutrition Assistance Grants which provide benefits analogous to the Supplemental Nutrition Assistance Program: Puerto Rico, American Samoa, and the Northern Marianas.

# Exhibit 3

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## October-22
## Statewide Program Information

**Table 1. CASELOADS**

| Program | Oct-22 | Oct-21 | Oct-20 | Oct-19 | Oct-18 | Oct-17 | Oct-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,252 | 1,572 | 2,180 | 2,184 | 2,539 | 3,051 | 3,109 |
| Native Family Assistance Programs (NFAPs) | - | 635 | 1,267 | 1,303 | 1,523 | 1,618 | 1,590 |
| Adult Public Assistance (APA) | 14,844 | 15,557 | 16,542 | 19,383 | 19,520 | 19,433 | 19,083 |
| Medicaid (ME) *(may vary from Health Care Services)* | 149,210 | 145,665 | 137,533 | 129,711 | 121,538 | 112,907 | 94,494 |
| Supplemental Nutrition Assistance Program (SNAP) | Unavail. | 42,013 | 37,484 | 38,114 | 38,052 | 44,907 | 36,556 |
| Senior Benefits (SB) | 10,046 | 11,484 | 11,204 | 10,723 | 11,492 | 11,312 | 11,784 |
| Heating Assistance Program (HAP) | 28 | 144 | 0 | 479 | 934 | 1,026 | 1,068 |
| General Relief Assistance (GA) | 18 | 24 | 23 | 69 | 66 | 66 | 114 |
| Interim Assistance (IA) | 93 | 131 | 225 | 231 | 185 | 155 | 85 |
| Women, Infants and Children (WIC) | 8,513 | 9,285 | 9,739 | 11,286 | 12,247 | No Data | No Data |
| Child Care Assistance Program (CC) | Unavail. | Unavail. | 1,688 | 2,115 | 2,255 | 2,090 | 2,540 |
| **Total Caseload** | **211,291** | **225,875** | **216,618** | **214,295** | **208,828** | **194,947** | **168,833** |

**Table 2. EXPENDITURES**

| Program | Oct-22 | Oct-21 | Oct-20 | Oct-19 | Oct-18 | Oct-17 | Oct-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $872,169 | $991,983 | $1,469,494 | $1,381,901 | $1,657,002 | $2,004,421 | $2,080,316 |
| APA | $4,640,878 | $4,867,628 | $5,140,266 | $5,027,290 | $5,117,978 | $5,081,761 | $5,027,895 |
| SNAP | Unavail. | $28,293,830 | $15,834,448 | $14,772,774 | $14,798,143 | $17,363,711 | $15,371,831 |
| SB | $1,582,106 | $1,766,338 | $1,727,205 | $1,677,696 | $1,752,971 | $1,687,487 | $1,796,755 |
| HAP | $238,431 | $649,375 | $0 | $564,450 | $922,380 | $1,120,599 | $891,610 |
| GA | $57,042 | $37,044 | $36,888 | $55,867 | $52,100 | $80,498 | $143,476 |
| IA | $34,440 | $43,680 | $64,960 | $76,604 | $64,564 | $79,720 | $28,560 |
| WIC | Unavail. | $741,146 | $525,478 | $768,716 | $550,104 | No Data | No Data |
| CC | Unavail. | Unavail. | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 141 | |
| APA only | 33 | |
| ME only | 187,876 | |
| SNAP only | 10,414 | |
| SB only | 2,340 | |
| HAP only | 0 | |
| GA only | 1 | |
| WIC only | 4,194 | |
| CC only | Unavail. | |
| TOTAL | 204,999 | 75% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **833** | **8,649** | **81,022** | **0** | **5,280** | **20** | **3,822** |
| Anchorage | 626 | 6,501 | 58,564 | Unavail. | 3,836 | 8 | 2,735 |
| Mat Su | 207 | 2,148 | 22,458 | Unavail. | 1,444 | 12 | 1,087 |
| **Coastal** | **138** | **2,481** | **26,662** | **0** | **2,043** | **5** | **2,247** |
| Aleutians East | 1 | 14 | 277 | Unavail. | 10 | 0 | 33 |
| Aleutians West | 1 | 23 | 304 | Unavail. | 17 | 0 | 27 |
| Bethel | 3 | 479 | 5,452 | Unavail. | 408 | 0 | 732 |
| Bristol Bay | 0 | 14 | 152 | Unavail. | 5 | 0 | 14 |
| Dillingham | 0 | 128 | 1,519 | Unavail. | 77 | 0 | 201 |
| Kenai | 120 | 1,397 | 13,573 | Unavail. | 1,179 | 4 | 495 |
| Kodiak | 13 | 207 | 2,286 | Unavail. | 186 | 1 | 200 |
| Kusilvak | 0 | 194 | 2,680 | Unavail. | 141 | 0 | 492 |
| Lake and Peninsula | 0 | 25 | 419 | Unavail. | 20 | 0 | 53 |
| **Northern** | **163** | **2,189** | **24,381** | **0** | **1,478** | **9** | **1,805** |
| Denali | 1 | 25 | 233 | Unavail. | 13 | 0 | 3 |
| Fairbanks N Star | 75 | 1,380 | 14,790 | Unavail. | 858 | 6 | 857 |
| Nome | 59 | 245 | 2,682 | Unavail. | 166 | 1 | 362 |
| North Slope | 9 | 51 | 1,515 | Unavail. | 18 | 0 | 167 |
| NW Arctic | 0 | 112 | 1,968 | Unavail. | 95 | 1 | 243 |
| SE Fairbanks | 19 | 169 | 1,336 | Unavail. | 162 | 1 | 84 |
| Yukon/Koyukuk | 0 | 207 | 1,857 | Unavail. | 166 | 0 | 89 |
| **Southeast** | **112** | **1,618** | **17,145** | **0** | **1,245** | **1** | **639** |
| Chugach | 7 | 76 | 1042 | Unavail. | 61 | 0 | 51 |
| Copper River | 8 | 76 | 781 | Unavail. | 81 | 0 | 21 |
| Haines | 2 | 58 | 600 | Unavail. | 86 | 0 | 23 |
| Hoonah/Angoon | 2 | 58 | 554 | Unavail. | 79 | 0 | 25 |
| Juneau | 25 | 588 | 5,832 | Unavail. | 318 | 1 | 198 |
| Ketchikan Gateway | 17 | 336 | 3,215 | Unavail. | 240 | 0 | 101 |
| Petersburg | 6 | 59 | 762 | Unavail. | 67 | 0 | 41 |
| Prince of Wales | 36 | 162 | 1,551 | Unavail. | 140 | 0 | 85 |
| Sitka | 7 | 136 | 1,988 | Unavail. | 84 | 0 | 68 |
| Skagway | 1 | 5 | 209 | Unavail. | 7 | 0 | 6 |
| Wrangell | 1 | 52 | 481 | Unavail. | 72 | 0 | 19 |
| Yakutat | 0 | 12 | 130 | Unavail. | 10 | 0 | 1 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 78.5% | of ATAP cases also on SNAP |
| 28.4% | of APA cases also on SNAP |
| 4.7% | of SNAP cases also on ATAP |
| 21.7% | of SNAP cases also on APA |
| 91.1% | of SNAP cases also on ME |
| 1.0% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 446 | 398 |
| APA | 922 | 1,495 |
| ME | 1,942 | 1,264 |
| SNAP | 3,134 | 2,798 |
| SB | 730 | 1,516 |
| HAP | 1,258 | 43 |
| GA | 1,070 | 1,405 |
| IA | 8 | 24 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Household**

| Program | Ave. Benefit |
|---|---|
| ATAP | $641.11 |
| APA | $308.77 |
| SNAP | $620.05 |
| SB | $154.70 |
| HAP | $1,097.00 |
| GA | $3,169.01 |
| IA | $280.00 |
| WIC | Unavail. |
| CC | Unavail. |

Monthly Caseload & Benefit Summary continued
October-22

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 68 | 9.1% |
| 60th month | 0 | 0.0% |
| 1-12 months | 73 | 9.8% |
| 13-24 months | 107 | 14.3% |
| 25-36 months | 116 | 15.5% |
| 37-48 months | 131 | 17.6% |
| 49-59 months | 251 | 33.6% |
| Total | 746 | 100.0% |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 255 | 20.37% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 418 |
| Cases in Exempt Native Villages | 103 |
| Total unduplicated exempt cases | 500 |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Househlds | Percentage |
|---|---|---|
| One Parent | 671 | 53.9% |
| Child Only | 418 | 33.5% |
| 3rd Trimester | 1 | 0.1% |
| Incapacitated | 17 | 1.4% |
| Two Parent | 139 | 11.2% |
| Total | 1,246 | 100.0% |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | Unavail. | Unavail. |
| Central Council of Tlingit & Haida Indian Tribes | Unavail. | Unavail. |
| Association of Village Council Presidents | Unavail. | Unavail. |
| Bristol Bay Native Association | Unavail. | Unavail. |
| Cook Inlet Tribal Council | Unavail. | Unavail. |
| Kodiak Area Native Association | Unavail. | Unavail. |
| Maniilaq Association | Unavail. | Unavail. |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 1 | $360 |
| Utilities | 3 | $262 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 14 | $56,420 |
| Total | 18 | $57,042 |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,954 | 21.8% |
| Children | 7,551 | 55.8% |
| Women - Pregnant | 966 | 7.1% |
| Women - Breastfeeding | 1,594 | 11.8% |
| Women - Other | 464 | 3.4% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 10 | 35.7% |
| Disabled | 14 | 50.0% |
| Young children (0-6) | 2 | 7.1% |
| Total Unduplicated | 19 | 67.9% |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 6,033 | 60.1% |
| 75 to 84 | 3,104 | 30.9% |
| 85 to 94 | 828 | 8.2% |
| 95 to 99 | 68 | 0.7% |
| 100+ | 13 | 0.1% |
| Total | 10,046 | 100.0% |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 65,976 | 44.2% |
| AK Native | 42,687 | 28.6% |
| Asian | 6,888 | 4.6% |
| Black | 6,002 | 4.0% |
| Pac. Islander | 4,784 | 3.2% |
| Amer. Ind. | 1,421 | 1.0% |
| Hispanic | 3,102 | 2.1% |
| 2+ races | 10,461 | 7.0% |
| Not Given | 7,889 | 5.3% |
| Total | 149,210 | 100.0% |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | Unavail. | #VALUE! |
| Married | Unavail. | #VALUE! |
| Divorced | Unavail. | #VALUE! |
| Separated | Unavail. | #VALUE! |
| Widowed | Unavail. | #VALUE! |
| Leg. Sep. | Unavail. | #VALUE! |
| Not Given | Unavail. | #VALUE! |
| Total | 0 | #VALUE! |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 11,957 | 84 | 12,041 |
| Couple both elig. living indpndntly | 829 | 0 | 829 |
| Couple one elig. living indpndntly | 453 | 4 | 457 |
| Individual in another's household | 635 | 4 | 639 |
| Couple both elig. another hsehold | 20 | 0 | 20 |
| Couple one elig. another hsehold | 9 | 0 | 9 |
| Individual, in assisted living | 887 | 0 | 887 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 49 | 1 | 50 |
| Total | 14,844 | 93 | 14,937 |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 25 | 3 | 28 | 0 | 28 |
| Aid to the Disabled | 7,172 | 2,733 | 9,905 | 93 | 9,998 |
| Old Age Assistance | 2,244 | 2,667 | 4,911 | 0 | 4,911 |
| Total | 9,441 | 5,403 | 14,844 | 93 | 14,937 |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 2 | 2.08% | 6.5 |


Case 3:23-cv-00044-SLG Document 7-13 Filed 03/13/23 Page 44 of 102

**Figure 1. DPA Caseloads SFY 2020 through SFY 2023**




Prepared by DPA Analysis Unit, 12/6/2022

Figure 1

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## September-22
## Statewide Program Information

**Table 1. CASELOADS**

| Program | Sep-22 | Sep-21 | Sep-20 | Sep-19 | Sep-18 | Sep-17 | Sep-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,325 | 1,595 | 2,362 | 2,288 | 2,605 | 3,133 | 3,133 |
| Native Family Assistance Programs (NFAPs) | 746 | 747 | 1,032 | 1,418 | 1,602 | 1,709 | 1,643 |
| Adult Public Assistance (APA) | 14,900 | 15,585 | 16,702 | 19,405 | 19,488 | 19,403 | 19,019 |
| Medicaid (ME) *(may vary from Health Care Services)* | 149,807 | 144,380 | 136,943 | 129,553 | 120,520 | 111,581 | 92,405 |
| Supplemental Nutrition Assistance Program (SNAP) | Unavail. | 41,257 | 38,803 | 38,312 | 37,673 | 44,061 | 35,556 |
| Senior Benefits (SB) | 10,512 | 11,433 | 11,342 | 10,413 | 11,349 | 11,297 | 11,595 |
| Heating Assistance Program (HAP) | 11 | 47 | 0 | 318 | 88 | 526 | 1,061 |
| General Relief Assistance (GA) | 15 | 23 | 33 | 78 | 82 | 117 | 147 |
| Interim Assistance (IA) | 96 | 125 | 240 | 226 | 178 | 134 | 85 |
| Women, Infants and Children (WIC) | 8,609 | 9,190 | 9,672 | 11,325 | 12,328 | 13,043 | No Data |
| Child Care Assistance Program (CC) | Unavail. | Unavail. | 1,715 | 2,113 | 2,240 | 2,148 | 2,558 |
| **Total Caseload** | **216,893** | **223,635** | **217,812** | **214,031** | **206,551** | **205,443** | **165,559** |

Sep-22

**Table 2. EXPENDITURES**

| Program | Sep-22 | Sep-21 | Sep-20 | Sep-19 | Sep-18 | Sep-17 | Sep-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $899,568 | $1,000,117 | $1,652,227 | $1,398,528 | $1,615,307 | $1,961,291 | $1,998,765 |
| APA | $4,634,385 | $4,860,172 | $5,146,356 | $5,031,964 | $5,079,407 | $5,073,750 | $5,032,318 |
| SNAP | Unavail. | $23,328,551 | $21,431,058 | $14,479,255 | $15,178,925 | $17,766,078 | $15,041,664 |
| SB | $1,649,965 | $1,763,064 | $1,759,129 | $4,697,534 | $1,729,394 | $1,679,230 | $1,652,271 |
| HAP | $189,338 | $79,545 | $0 | $313,390 | $69,300 | $515,047 | $786,510 |
| GA | $43,263 | $71,596 | $46,804 | $43,195 | $52,042 | $110,818 | $138,259 |
| IA | $30,520 | $40,320 | $70,280 | $68,320 | $64,680 | $56,282 | $26,402 |
| WIC | $290,521 | $687,836 | $1,201,670 | $956,643 | $1,043,845 | No Data | No Data |
| CC | Unavail. | Unavail. | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 137 | |
| APA only | 35 | |
| ME only | 180,865 | |
| SNAP only | 12,060 | |
| SB only | 2,477 | |
| HAP only | 4 | |
| GA only | 3 | |
| WIC only | 4,112 | |
| CC only | Unavail. | |
| TOTAL | 199,693 | 73% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **879** | **8,679** | **81,339** | **0** | **5,518** | **1,782** | **3,921** |
| Anchorage | 652 | 6,519 | 58,790 | Unavail. | 3,998 | 816 | 2,827 |
| Mat-Su | 227 | 2,160 | 22,549 | Unavail. | 1,520 | 966 | 1,094 |
| **Coastal** | **146** | **2,492** | **26,758** | **0** | **2,147** | **789** | **2,246** |
| Aleutians East | 1 | 14 | 279 | Unavail. | 12 | 0 | 33 |
| Aleutians West | 1 | 23 | 304 | Unavail. | 17 | 5 | 29 |
| Bethel | 3 | 480 | 5,461 | Unavail. | 426 | 7 | 734 |
| Bristol Bay | 0 | 14 | 156 | Unavail. | 5 | 0 | 13 |
| Dillingham | 0 | 128 | 1,525 | Unavail. | 81 | 0 | 209 |
| Kenai | 128 | 1,410 | 13,624 | Unavail. | 1,235 | 721 | 498 |
| Kodiak | 13 | 206 | 2,291 | Unavail. | 196 | 48 | 201 |
| Kusilvak | 0 | 192 | 2,699 | Unavail. | 154 | 0 | 475 |
| Lake and Peninsula | 0 | 25 | 419 | Unavail. | 21 | 8 | 54 |
| **Northern** | **174** | **2,200** | **24,487** | **0** | **1,544** | **1,352** | **1,809** |
| Denali | 1 | 25 | 236 | Unavail. | 14 | 12 | 3 |
| Fairbanks N Star | 82 | 1,388 | 14,840 | Unavail. | 891 | 619 | 876 |
| Nome | 62 | 247 | 2,696 | Unavail. | 175 | 287 | 373 |
| North Slope | 10 | 51 | 1,526 | Unavail. | 18 | 25 | 160 |
| NW Arctic | 0 | 113 | 1,982 | Unavail. | 99 | 290 | 225 |
| SE Fairbanks | 19 | 167 | 1,342 | Unavail. | 162 | 117 | 81 |
| Yukon/Koyukuk | 0 | 209 | 1,865 | Unavail. | 185 | 2 | 91 |
| **Southeast** | **120** | **1,625** | **17,223** | **0** | **1,303** | **328** | **633** |
| Chugach | 9 | 77 | 1052 | Unavail. | 64 | 36 | 54 |
| Copper River | 7 | 78 | 786 | Unavail. | 84 | 82 | 22 |
| Haines | 2 | 58 | 603 | Unavail. | 89 | 31 | 23 |
| Hoonah/Angoon | 2 | 58 | 557 | Unavail. | 80 | 15 | 23 |
| Juneau | 29 | 589 | 5,864 | Unavail. | 332 | 63 | 196 |
| Ketchikan Gateway | 18 | 341 | 3,219 | Unavail. | 254 | 37 | 99 |
| Petersburg | 6 | 57 | 764 | Unavail. | 68 | 14 | 38 |
| Prince of Wales | 36 | 164 | 1,556 | Unavail. | 150 | 12 | 82 |
| Sitka | 7 | 135 | 1,998 | Unavail. | 89 | 12 | 68 |
| Skagway | 1 | 5 | 209 | Unavail. | 7 | 10 | 6 |
| Wrangell | 3 | 51 | 484 | Unavail. | 74 | 16 | 21 |
| Yakutat | 0 | 12 | 131 | Unavail. | 12 | 0 | 1 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 80.4% | of ATAP cases also on SNAP |
| 31.8% | of APA cases also on SNAP |
| 4.4% | of SNAP cases also on ATAP |
| 20.9% | of SNAP cases also on APA |
| 90.8% | of SNAP cases also on ME |
| 0.9% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 491 | 400 |
| APA | 832 | 1,667 |
| ME | 1,564 | 1,299 |
| SNAP | 2,920 | 2,963 |
| SB | 873 | 2,146 |
| HAP | 174 | 11 |
| GA | 1,272 | 2,284 |
| IA | 11 | 22 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Household**

| Program | Ave. Benefit |
|---|---|
| ATAP | $632.14 |
| APA | $308.32 |
| SNAP | $546.67 |
| SB | $151.41 |
| HAP | $1,893.18 |
| GA | $2,884.19 |
| IA | $280.00 |
| WIC | $33.75 |
| CC | Unavail. |

Monthly Caseload & Benefit Summary continued
September-22

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 80 | 10.2% |
| 60th month | 1 | 0.1% |
| 1-12 months | 70 | 9.0% |
| 13-24 months | 116 | 14.8% |
| 25-36 months | 118 | 15.1% |
| 37-48 months | 127 | 16.2% |
| 49-59 months | 270 | 34.5% |
| Total | 782 | 100.0% |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 303 | 22.87% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 450 |
| Cases in Exempt Native Villages | 109 |
| Total unduplicated exempt cases | 537 |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Househlds | Percentage |
|---|---|---|
| One Parent | 698 | 52.9% |
| Child Only | 450 | 34.1% |
| 3rd Trimester | 3 | 0.2% |
| Incapacitated | 17 | 1.3% |
| Two Parent | 151 | 11.4% |
| Total | 1,319 | 100.0% |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 69 | $42,571 |
| Central Council of Tlingit & Haida Indian Tribes | 137 | $93,522 |
| Association of Village Council Presidents | 206 | $188,736 |
| Bristol Bay Native Association | 37 | $24,390 |
| Cook Inlet Tribal Council | 238 | $169,099 |
| Kodiak Area Native Association | 22 | $19,358 |
| Maniilaq Association | 37 | $21,184 |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 1 | $50 |
| Utilities | 1 | $100 |
| Food | 0 | $0 |
| Miscellaneous | 1 | $514 |
| Burial | 12 | $42,599 |
| Total | 15 | $43,263 |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,917 | 21.2% |
| Children | 7,690 | 55.9% |
| Women - Pregnant | 1,026 | 7.5% |
| Women - Breastfeeding | 1,571 | 11.4% |
| Women - Other | 466 | 3.4% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 5 | 45.5% |
| Disabled | 3 | 27.3% |
| Young children (0-6) | 2 | 18.2% |
| Total Unduplicated | 9 | 81.8% |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 6,337 | 60.3% |
| 75 to 84 | 3,225 | 30.7% |
| 85 to 94 | 862 | 8.2% |
| 95 to 99 | 70 | 0.7% |
| 100+ | 17 | 0.2% |
| Total | 10,511 | 100.0% |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 66,179 | 44.2% |
| AK Native | 42,872 | 28.6% |
| Asian | 6,934 | 4.6% |
| Black | 6,024 | 4.0% |
| Pac. Islander | 4,807 | 3.2% |
| Amer. Ind. | 1,426 | 1.0% |
| Hispanic | 3,118 | 2.1% |
| 2+ races | 10,532 | 7.0% |
| Not Given | 7,915 | 5.3% |
| Total | 149,807 | 100.0% |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | Unavail. | #VALUE! |
| Married | Unavail. | #VALUE! |
| Divorced | Unavail. | #VALUE! |
| Separated | Unavail. | #VALUE! |
| Widowed | Unavail. | #VALUE! |
| Leg. Sep. | Unavail. | #VALUE! |
| Not Given | Unavail. | #VALUE! |
| Total | 0 | #VALUE! |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,005 | 87 | 12,092 |
| Couple both elig. living indpndntly | 832 | 0 | 832 |
| Couple one elig. living indpndntly | 457 | 5 | 462 |
| Individual in another's household | 634 | 3 | 637 |
| Couple both elig. another hsehold | 20 | 0 | 20 |
| Couple one elig. another hsehold | 9 | 0 | 9 |
| Individual, in assisted living | 892 | 1 | 893 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 46 | 0 | 46 |
| Total | 14,900 | 96 | 14,996 |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 25 | 3 | 28 | 0 | 28 |
| Aid to the Disabled | 7,207 | 2,756 | 9,963 | 96 | 10,059 |
| Old Age Assistance | 2,252 | 2,657 | 4,909 | 0 | 4,909 |
| Total | 9,484 | 5,416 | 14,900 | 96 | 14,996 |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 0 | 0.00% | 0 |

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## August-22
## Statewide Program Information

**Table 1. CASELOADS**

| Program | Aug-22 | Aug-21 | Aug-20 | Aug-19 | Aug-18 | Aug-17 | Aug-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,460 | 1,571 | 2,426 | 2,382 | 2,659 | 3,185 | 3,096 |
| Native Family Assistance Programs (NFAPs) | 759 | 722 | 798 | 1,449 | 1,665 | 1,828 | 1,634 |
| Adult Public Assistance (APA) | 14,968 | 15,598 | 16,745 | 19,453 | 19,527 | 19,412 | 18,958 |
| Medicaid (ME) *(may vary from Health Care Services)* | 149,727 | 144,630 | 136,356 | 129,561 | 120,764 | 110,828 | 90,770 |
| Supplemental Nutrition Assistance Program (SNAP) | 38,302 | 40,637 | 39,948 | 38,727 | 37,662 | 43,145 | 35,577 |
| Senior Benefits (SB) | 11,259 | 11,347 | 11,377 | 0 | 11,324 | 11,336 | 11,485 |
| Heating Assistance Program (HAP) | 63 | 73 | 0 | 3 | 5 | 2 | No Data |
| General Relief Assistance (GA) | 19 | 26 | 30 | 99 | 120 | 138 | 152 |
| Interim Assistance (IA) | 98 | 133 | 243 | 224 | 172 | 130 | 87 |
| Women, Infants and Children (WIC) | 8,719 | 9,345 | 9,708 | 11,394 | 12,376 | No Data | No Data |
| Child Care Assistance Program (CC) | Unavail. | Unavail. | 1,746 | 2,215 | 2,339 | 2,303 | 2,653 |
| **Total Caseload** | **224,615** | **223,360** | **218,579** | **204,058** | **206,948** | **190,479** | **162,778** |

**Table 2. EXPENDITURES**

| Program | Aug-22 | Aug-21 | Aug-20 | Aug-19 | Aug-18 | Aug-17 | Aug-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $979,124 | $983,788 | $1,683,197 | $1,444,496 | $1,692,261 | $2,023,437 | $1,955,510 |
| APA | $4,666,984 | $4,852,781 | $5,164,452 | $5,048,413 | $5,113,483 | $5,116,041 | $5,015,745 |
| SNAP | $29,722,063 | $38,586,007 | $24,849,747 | $14,746,093 | $14,909,193 | $17,601,207 | $15,330,815 |
| SB | $1,732,617 | $1,742,880 | $1,743,951 | $0 | $1,729,116 | $1,691,231 | $1,628,157 |
| HAP | $312,098 | $93,390 | $0 | $1,580 | $4,241 | $1,710 | No Data |
| GA | $33,214 | $37,920 | $25,475 | $97,728 | $86,398 | $113,265 | $152,480 |
| IA | $29,680 | $47,308 | $69,720 | $72,520 | $56,000 | $60,120 | $30,800 |
| WIC | $1,036,128 | $873,193 | $1,111,935 | $1,081,186 | $1,165,762 | No Data | No Data |
| CC | Unavail. | Unavail. | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 14 | |
| APA only | 5 | |
| ME only | 169,224 | |
| SNAP only | 13,739 | |
| SB only | 2,635 | |
| HAP only | 2 | |
| GA only | 8 | |
| WIC only | 4,011 | |
| CC only | 783 | |
| TOTAL | 189,638 | 69% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **969** | **8,715** | **81,295** | **20,511** | **5,839** | **1,777** | **3,988** |
| Anchorage | 713 | 6,556 | 58,762 | 15,359 | 4,218 | 813 | 2,901 |
| Mat-Su | 256 | 2,159 | 22,533 | 5,152 | 1,621 | 964 | 1,087 |
| **Coastal** | **155** | **2,503** | **26,733** | **7,590** | **2,302** | **788** | **2,249** |
| Aleutians East | 1 | 14 | 275 | 66 | 15 | 0 | 34 |
| Aleutians West | 0 | 23 | 305 | 62 | 19 | 5 | 31 |
| Bethel | 3 | 485 | 5,461 | 2,007 | 466 | 7 | 738 |
| Bristol Bay | 0 | 14 | 156 | 37 | 5 | 0 | 13 |
| Dillingham | 0 | 127 | 1,525 | 446 | 82 | 0 | 211 |
| Kenai | 137 | 1,418 | 13,610 | 3,257 | 1,314 | 720 | 502 |
| Kodiak | 14 | 206 | 2,297 | 467 | 201 | 48 | 202 |
| Kusilvak | 0 | 191 | 2,686 | 1,124 | 175 | 0 | 463 |
| Lake and Peninsula | 0 | 25 | 418 | 124 | 25 | 8 | 55 |
| **Northern** | **186** | **2,216** | **24,425** | **6,097** | **1,686** | **1,349** | **1,838** |
| Denali | 1 | 25 | 234 | 54 | 16 | 12 | 5 |
| Fairbanks N Star | 85 | 1,403 | 14,822 | 3,122 | 950 | 618 | 901 |
| Nome | 73 | 247 | 2,673 | 1,016 | 195 | 285 | 387 |
| North Slope | 8 | 51 | 1,517 | 319 | 22 | 25 | 152 |
| NW Arctic | 1 | 114 | 1,978 | 662 | 114 | 290 | 228 |
| SE Fairbanks | 17 | 167 | 1,332 | 323 | 180 | 117 | 76 |
| Yukon/Koyukuk | 1 | 209 | 1,869 | 601 | 209 | 2 | 89 |
| **Southeast** | **141** | **1,632** | **17,274** | **4,104** | **1,432** | **326** | **644** |
| Chugach | 10 | 77 | 1054 | 178 | 74 | 36 | 59 |
| Copper River | 9 | 77 | 787 | 196 | 90 | 82 | 22 |
| Haines | 2 | 59 | 599 | 105 | 102 | 31 | 23 |
| Hoonah/Angoon | 2 | 58 | 560 | 166 | 85 | 15 | 25 |
| Juneau | 30 | 596 | 5,871 | 1,413 | 351 | 62 | 201 |
| Ketchikan Gateway | 24 | 339 | 3,236 | 950 | 271 | 36 | 100 |
| Petersburg | 7 | 58 | 774 | 179 | 75 | 14 | 35 |
| Prince of Wales | 43 | 164 | 1,565 | 455 | 187 | 12 | 82 |
| Sitka | 10 | 135 | 1,997 | 319 | 101 | 12 | 69 |
| Skagway | 1 | 5 | 208 | 14 | 8 | 10 | 7 |
| Wrangell | 3 | 52 | 491 | 100 | 76 | 16 | 20 |
| Yakutat | 0 | 12 | 132 | 29 | 12 | 0 | 1 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 84.3% | of ATAP cases also on SNAP |
| 38.0% | of APA cases also on SNAP |
| 4.3% | of SNAP cases also on ATAP |
| 20.6% | of SNAP cases also on APA |
| 90.8% | of SNAP cases also on ME |
| 0.8% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 490 | 434 |
| APA | 871 | 1,682 |
| ME | 2,306 | 1,660 |
| SNAP | 3,058 | 3,132 |
| SB | 527 | 759 |
| HAP | 242 | 63 |
| GA | 986 | 1,203 |
| IA | 6 | 12 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Household**

| Program | Ave. Benefit |
|---|---|
| ATAP | $631.50 |
| APA | $308.29 |
| SNAP | $584.02 |
| SB | $152.28 |
| HAP | $2,682.50 |
| GA | $1,581.63 |
| IA | $280.00 |
| WIC | $118.84 |
| CC | Unavail. |

Monthly Caseload & Benefit Summary continued
August-22

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 86 | 9.9% |
| 60th month | 1 | 0.1% |
| 1-12 months | 79 | 9.1% |
| 13-24 months | 130 | 15.0% |
| 25-36 months | 143 | 16.5% |
| 37-48 months | 140 | 16.2% |
| 49-59 months | 287 | 33.1% |
| **Total** | **866** | **100.0%** |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 244 | 16.71% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 484 |
| Cases in Exempt Native Villages | 130 |
| **Total unduplicated exempt cases** | **585** |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Households | Percentage |
|---|---|---|
| One Parent | 776 | 53.5% |
| Child Only | 484 | 33.4% |
| 3rd Trimester | 4 | 0.3% |
| Incapacitated | 22 | 1.5% |
| Two Parent | 165 | 11.4% |
| **Total** | **1,451** | **100.0%** |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 61 | $37,757 |
| Central Council of Tlingit & Haida Indian Tribes | 150 | $159,010 |
| Association of Village Council Presidents | 214 | $193,048 |
| Bristol Bay Native Association | 40 | $26,558 |
| Cook Inlet Tribal Council | 236 | $172,329 |
| Kodiak Area Native Association | 21 | $1,369 |
| Maniilaq Association | 37 | $21,140 |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 5 | $580 |
| Utilities | 4 | $619 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 10 | $32,015 |
| **Total** | **19** | **$33,214** |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,919 | 21.1% |
| Children | 7,807 | 56.5% |
| Women - Pregnant | 1,058 | 7.7% |
| Women - Breastfeeding | 1,577 | 11.4% |
| Women - Other | 449 | 3.3% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 43 | 68.3% |
| Disabled | 18 | 28.6% |
| Young children (0-6) | 9 | 14.3% |
| Total Unduplicated | 38 | 60.3% |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 6,786 | 60.3% |
| 75 to 84 | 3,441 | 30.6% |
| 85 to 94 | 940 | 8.3% |
| 95 to 99 | 77 | 0.7% |
| 100+ | 15 | 0.1% |
| **Total** | **11,259** | **100.0%** |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 66,134 | 44.2% |
| AK Native | 42,839 | 28.6% |
| Asian | 6,927 | 4.6% |
| Black | 6,014 | 4.0% |
| Pac. Islander | 4,782 | 3.2% |
| Amer. Ind. | 1,429 | 1.0% |
| Hispanic | 3,129 | 2.1% |
| 2+ races | 10,559 | 7.1% |
| Not Given | 7,914 | 5.3% |
| **Total** | **149,727** | **100.0%** |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | 20,770 | 54.2% |
| Married | 5,378 | 14.0% |
| Divorced | 5,731 | 15.0% |
| Separated | 3,224 | 8.4% |
| Widowed | 1,576 | 4.1% |
| Leg. Sep. | 43 | 0.1% |
| Not Given | 1,580 | 4.1% |
| **Total** | **38,302** | **100.0%** |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,053 | 87 | 12,140 |
| Couple both elig. living indpndntly | 824 | 1 | 825 |
| Couple one elig. living indpndntly | 458 | 5 | 463 |
| Individual in another's household | 640 | 3 | 643 |
| Couple both elig. another hsehold | 22 | 0 | 22 |
| Couple one elig. another hsehold | 9 | 0 | 9 |
| Individual, in assisted living | 910 | 2 | 912 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 47 | 0 | 47 |
| **Total** | **14,968** | **98** | **15,066** |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 26 | 3 | 29 | 0 | 29 |
| Aid to the Disabled | 7,249 | 2,785 | 10,034 | 98 | 10,132 |
| Old Age Assistance | 2,250 | 2,655 | 4,905 | 0 | 4,905 |
| **Total** | **9,525** | **5,443** | **14,968** | **98** | **15,066** |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 1 | 1.00% | 14 |

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## July-22
## Statewide Program Information

**Table 1. CASELOADS**

| Program | Jul-22 | Jul-21 | Jul-20 | Jul-19 | Jul-18 | Jul-17 | Jul-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,603 | 1,603 | 2,388 | 2,415 | 2,669 | 3,223 | 3,083 |
| Native Family Assistance Programs (NFAPs) | 681 | 704 | 1,113 | 1,437 | 1,733 | 1,824 | 1,745 |
| Adult Public Assistance (APA) | 15,060 | 15,638 | 16,720 | 19,442 | 19,436 | 19,334 | 18,932 |
| Medicaid (ME) *(may vary from Health Care Services)* | 149,524 | 144,123 | 135,260 | 129,693 | 120,601 | 109,595 | 88,773 |
| Supplemental Nutrition Assistance Program (SNAP) | 45,273 | 39,978 | 39,068 | 38,862 | 37,801 | 41,717 | 35,180 |
| Senior Benefits (SB) | 11,876 | 11,319 | 11,306 | 0 | 11,168 | 11,357 | 11,541 |
| Heating Assistance Program (HAP) | 122 | 94 | 7 | 18 | 4 | 3 | 6 |
| General Relief Assistance (GA) | 17 | 24 | 41 | 109 | 96 | 111 | 143 |
| Interim Assistance (IA) | 100 | 139 | 246 | 219 | 172 | 125 | 89 |
| Women, Infants and Children (WIC) | 8,710 | 9,377 | 9,906 | 11,420 | 12,414 | 13,188 | No Data |
| Child Care Assistance Program (CC) | Unavail. | Unavail. | 1,757 | 2,161 | 2,277 | 2,202 | 2,568 |
| **Total Caseload** | **232,285** | **222,295** | **216,699** | **204,339** | **206,638** | **200,855** | **160,315** |

**Table 2. EXPENDITURES**

| Program | Jul-22 | Jul-21 | Jul-20 | Jul-19 | Jul-18 | Jul-17 | Jul-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $1,085,558 | $1,019,706 | $1,669,813 | $1,477,577 | $1,685,761 | $2,067,246 | $1,946,307 |
| APA | $4,659,381 | $4,856,526 | $5,151,413 | $5,056,815 | $5,093,370 | $5,074,560 | $5,003,256 |
| SNAP | $30,447,206 | $28,455,427 | $18,350,635 | $14,889,323 | $14,725,895 | $17,470,437 | $15,176,901 |
| SB | $1,822,002 | $1,733,772 | $1,729,658 | $0 | $1,715,033 | $1,703,625 | $1,484,059 |
| HAP | $432,687 | $167,970 | $6,580 | $18,480 | $2,250 | $2,320 | $10,920 |
| GA | $27,233 | $36,703 | $92,328 | $91,374 | $68,377 | $78,861 | $171,957 |
| IA | $34,440 | $46,480 | $72,240 | $68,122 | $64,680 | $53,120 | $36,602 |
| WIC | $752,532 | $754,726 | $720,390 | $1,151,491 | $1,339,757 | Unavail. | Unavail. |
| CC | Unavail. | Unavail. | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 47 | |
| APA only | 2 | |
| ME only | 157,067 | |
| SNAP only | 16,203 | |
| SB only | 2,799 | |
| HAP only | 10 | |
| GA only | 2 | |
| WIC only | 3,960 | |
| CC only | 732 | |
| TOTAL | 180,090 | 65% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **1,068** | **8,790** | **81,243** | **24,077** | **6,167** | **1,742** | **4,022** |
| Anchorage | 783 | 6,625 | 58,754 | 18,083 | 4,479 | 797 | 2,946 |
| Mat-Su | 285 | 2,165 | 22,489 | 5,994 | 1,688 | 945 | 1,076 |
| **Coastal** | **168** | **2,513** | **26,666** | **8,932** | **2,409** | **777** | **2,224** |
| Aleutians East | 1 | 14 | 276 | 86 | 16 | 0 | 33 |
| Aleutians West | 0 | 24 | 305 | 76 | 21 | 5 | 28 |
| Bethel | 2 | 488 | 5,439 | 2,399 | 493 | 6 | 730 |
| Bristol Bay | 0 | 14 | 158 | 50 | 6 | 0 | 12 |
| Dillingham | 0 | 131 | 1,526 | 526 | 87 | 0 | 212 |
| Kenai | 151 | 1,415 | 13,562 | 3,774 | 1,359 | 710 | 495 |
| Kodiak | 14 | 208 | 2,293 | 530 | 215 | 48 | 195 |
| Kusilvak | 0 | 194 | 2,687 | 1,347 | 186 | 0 | 462 |
| Lake and Peninsula | 0 | 25 | 420 | 144 | 26 | 8 | 57 |
| **Northern** | **202** | **2,216** | **24,371** | **7,361** | **1,772** | **1,336** | **1,831** |
| Denali | 1 | 25 | 235 | 66 | 17 | 12 | 4 |
| Fairbanks N Star | 95 | 1,403 | 14,793 | 3,752 | 994 | 612 | 941 |
| Nome | 78 | 247 | 2,665 | 1,213 | 202 | 282 | 349 |
| North Slope | 10 | 51 | 1,511 | 390 | 23 | 25 | 145 |
| NW Arctic | 1 | 113 | 1,967 | 795 | 121 | 288 | 227 |
| SE Fairbanks | 16 | 169 | 1,325 | 395 | 192 | 115 | 73 |
| Yukon/Koyukuk | 1 | 208 | 1,875 | 750 | 223 | 2 | 92 |
| **Southeast** | **153** | **1,641** | **17,244** | **4,903** | **1,528** | **322** | **633** |
| Chugach | 14 | 78 | 1058 | 211 | 75 | 35 | 61 |
| Copper River | 9 | 77 | 787 | 221 | 93 | 81 | 22 |
| Haines | 2 | 59 | 596 | 119 | 105 | 30 | 22 |
| Hoonah/Angoon | 3 | 58 | 560 | 197 | 94 | 15 | 26 |
| Juneau | 29 | 596 | 5,855 | 1,699 | 372 | 62 | 192 |
| Ketchikan Gateway | 27 | 347 | 3,240 | 1,127 | 294 | 35 | 97 |
| Petersburg | 8 | 58 | 772 | 216 | 80 | 14 | 37 |
| Prince of Wales | 46 | 165 | 1,552 | 554 | 200 | 12 | 80 |
| Sitka | 11 | 133 | 1,995 | 381 | 108 | 12 | 71 |
| Skagway | 1 | 5 | 207 | 19 | 9 | 10 | 7 |
| Wrangell | 3 | 53 | 490 | 126 | 82 | 16 | 17 |
| Yakutat | 0 | 12 | 132 | 33 | 16 | 0 | 1 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 88.5% | of ATAP cases also on SNAP |
| 42.9% | of APA cases also on SNAP |
| 4.2% | of SNAP cases also on ATAP |
| 20.1% | of SNAP cases also on APA |
| 91.0% | of SNAP cases also on ME |
| 0.8% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 421 | 450 |
| APA | 659 | 1,576 |
| ME | 2,216 | 1,543 |
| SNAP | 1,849 | 2,253 |
| SB | 348 | 1,429 |
| HAP | 198 | 122 |
| GA | 771 | 707 |
| IA | 5 | 12 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Househld**

| Program | Ave. Benefit |
|---|---|
| ATAP | $627.52 |
| APA | $307.63 |
| SNAP | $575.37 |
| SB | $151.24 |
| HAP | $1,889.15 |
| GA | $1,669.94 |
| IA | $280.00 |
| WIC | $86.40 |
| CC | Unavail. |

**Monthly Caseload & Benefit Summary continued**
**July-22**

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 89 | 9.4% |
| 60th month | 4 | 0.4% |
| 1-12 months | 81 | 8.5% |
| 13-24 months | 146 | 15.4% |
| 25-36 months | 161 | 17.0% |
| 37-48 months | 156 | 16.4% |
| 49-59 months | 312 | 32.9% |
| Total | 949 | 100.0% |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 255 | 15.91% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 538 |
| Cases in Exempt Native Villages | 136 |
| Total unduplicated exempt cases | 642 |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Households | Percentage |
|---|---|---|
| One Parent | 843 | 53.0% |
| Child Only | 538 | 33.8% |
| 3rd Trimester | 9 | 0.6% |
| Incapacitated | 23 | 1.4% |
| Two Parent | 178 | 11.2% |
| Total | 1,591 | 100.0% |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 60 | $35,204 |
| Central Council of Tlingit & Haida Indian Tribes | 151 | $133,907 |
| Association of Village Council Presidents | 196 | $179,850 |
| Bristol Bay Native Association | Unavail. | Unavail. |
| Cook Inlet Tribal Council | 256 | $148,455 |
| Kodiak Area Native Association | 18 | $14,825 |
| Maniilaq Association | Unavail. | Unavail. |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 7 | $680 |
| Utilities | 1 | $120 |
| Food | 0 | $0 |
| Miscellaneous | 1 | $514 |
| Burial | 8 | $25,919 |
| Total | 17 | $27,233 |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,895 | 21.1% |
| Children | 7,820 | 57.0% |
| Women - Pregnant | 1,048 | 7.6% |
| Women - Breastfeeding | 1,545 | 11.3% |
| Women - Other | 421 | 3.1% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 74 | 60.7% |
| Disabled | 27 | 22.1% |
| Young children (0-6) | 16 | 13.1% |
| Total Unduplicated | 71 | 58.2% |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 7,170 | 60.4% |
| 75 to 84 | 3,633 | 30.6% |
| 85 to 94 | 975 | 8.2% |
| 95 to 99 | 80 | 0.7% |
| 100+ | 17 | 0.1% |
| Total | 11,875 | 100.0% |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 66,047 | 44.2% |
| AK Native | 42,746 | 28.6% |
| Asian | 6,939 | 4.6% |
| Black | 6,013 | 4.0% |
| Pac. Islander | 4,773 | 3.2% |
| Amer. Ind. | 1,421 | 1.0% |
| Hispanic | 3,137 | 2.1% |
| 2+ races | 10,566 | 7.1% |
| Not Given | 7,882 | 5.3% |
| Total | 149,524 | 100.0% |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | 24,708 | 54.6% |
| Married | 6,321 | 14.0% |
| Divorced | 6,692 | 14.8% |
| Separated | 3,800 | 8.4% |
| Widowed | 1,831 | 4.0% |
| Leg. Sep. | 45 | 0.1% |
| Not Given | 1,876 | 4.1% |
| Total | 45,273 | 100.0% |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,132 | 89 | 12,221 |
| Couple both elig. living indpndntly | 830 | 1 | 831 |
| Couple one elig. living indpndntly | 459 | 5 | 464 |
| Individual in another's household | 652 | 3 | 655 |
| Couple both elig. another hsehold | 22 | 0 | 22 |
| Couple one elig. another hsehold | 9 | 0 | 9 |
| Individual, in assisted living | 904 | 2 | 906 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 47 | 0 | 47 |
| Total | 15,060 | 100 | 15,160 |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 27 | 4 | 31 | 0 | 31 |
| Aid to the Disabled | 7,296 | 2,802 | 10,098 | 100 | 10,198 |
| Old Age Assistance | 2,254 | 2,677 | 4,931 | 0 | 4,931 |
| Total | 9,577 | 5,483 | 15,060 | 100 | 15,160 |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 0 | 0.00% | 0 |

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## June-22
## Statewide Program Information

**Table 1. CASELOADS**

| Program | Jun-22 | Jun-21 | Jun-20 | Jun-19 | Jun-18 | Jun-17 | Jun-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,606 | 1,614 | 2,379 | 2,478 | 2,793 | 3,228 | 3,127 |
| Native Family Assistance Programs (NFAPs) | 839 | 492 | 1,062 | 1,217 | 1,694 | 1,864 | 1,665 |
| Adult Public Assistance (APA) | 15,125 | 15,685 | 16,722 | 19,389 | 19,405 | 19,245 | 18,887 |
| Medicaid (ME) *(may vary from Health Care Services)* | 149,758 | 143,849 | 134,805 | 128,808 | 120,198 | 108,561 | 87,251 |
| Supplemental Nutrition Assistance Program (SNAP) | 45,178 | 39,276 | 39,002 | 39,212 | 39,338 | 39,408 | 35,860 |
| Senior Benefits (SB) | 11,835 | 11,331 | 11,325 | 6,917 | 11,239 | 11,365 | 11,839 |
| Heating Assistance Program (HAP) | 310 | 100 | 75 | 73 | 31 | 23 | 49 |
| General Relief Assistance (GA) | 44 | 27 | 44 | 86 | 93 | 83 | 165 |
| Interim Assistance (IA) | 102 | 141 | 259 | 221 | 166 | 120 | 95 |
| Women, Infants and Children (WIC) | 8,742 | 9,490 | 10,132 | 11,523 | 12,437 | Unavail. | 13,765 |
| Child Care Assistance Program (CC) | Unavail. | Unavail. | 1,780 | 2,167 | 2,317 | 2,315 | 2,570 |
| **Total Caseload** | **232,700** | **221,513** | **216,523** | **210,874** | **208,017** | **184,348** | **173,608** |

Jun-22

**Table 2. EXPENDITURES**

| Program | Jun-22 | Jun-21 | Jun-20 | Jun-19 | Jun-18 | Jun-17 | Jun-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $2,585,802 | $1,028,824 | $1,682,410 | $1,605,816 | $1,853,784 | $2,144,718 | $2,097,987 |
| APA | $4,683,285 | $4,883,134 | $5,165,965 | $5,022,397 | $5,074,527 | $5,095,832 | $5,020,704 |
| SNAP | $32,785,420 | $23,465,439 | $21,115,618 | $14,825,527 | $15,327,366 | $16,909,655 | $15,435,843 |
| SB | $1,828,520 | $1,741,596 | $1,735,953 | $1,362,571 | $1,692,665 | $1,743,145 | $1,372,916 |
| HAP | $681,335 | $142,725 | $80,080 | $83,400 | $29,629 | $13,360 | $49,920 |
| GA | $92,586 | $41,162 | $88,464 | $71,161 | $59,461 | $71,312 | $203,338 |
| IA | $31,080 | $46,557 | $85,680 | $71,400 | $59,920 | $44,454 | $36,960 |
| WIC | $932,970 | $485,935 | $782,643 | $1,065,971 | $1,162,064 | Unavail. | Unavail. |
| CC | Unavail. | Unavail. | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 39 | |
| APA only | 2 | |
| ME only | 156,809 | |
| SNAP only | 15,854 | |
| SB only | 2,765 | |
| HAP only | 21 | |
| GA only | 7 | |
| WIC only | 3,928 | |
| CC only | 749 | |
| TOTAL | 179,425 | 65% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **1,077** | **8,830** | **81,372** | **24,031** | **6,154** | **1,681** | **4,043** |
| Anchorage | 788 | 6,666 | 58,836 | 18,085 | 4,480 | 764 | 2,995 |
| Mat-Su | 289 | 2,164 | 22,536 | 5,946 | 1,674 | 917 | 1,048 |
| **Coastal** | **173** | **2,514** | **26,706** | **8,913** | **2,383** | **758** | **2,214** |
| Aleutians East | 1 | 14 | 274 | 84 | 16 | 0 | 29 |
| Aleutians West | 0 | 24 | 305 | 74 | 21 | 5 | 30 |
| Bethel | 2 | 484 | 5,450 | 2,386 | 492 | 4 | 721 |
| Bristol Bay | 0 | 14 | 157 | 50 | 6 | 0 | 13 |
| Dillingham | 0 | 132 | 1,530 | 522 | 86 | 0 | 216 |
| Kenai | 155 | 1,418 | 13,584 | 3,774 | 1,337 | 693 | 487 |
| Kodiak | 15 | 209 | 2,293 | 538 | 214 | 48 | 193 |
| Kusilvak | 0 | 194 | 2,692 | 1,339 | 185 | 0 | 469 |
| Lake and Peninsula | 0 | 25 | 421 | 146 | 26 | 8 | 56 |
| **Northern** | **194** | **2,228** | **24,383** | **7,331** | **1,778** | **1,301** | **1,855** |
| Denali | 1 | 25 | 234 | 67 | 17 | 12 | 4 |
| Fairbanks N Star | 95 | 1,405 | 14,810 | 3,719 | 993 | 601 | 958 |
| Nome | 76 | 249 | 2,661 | 1,207 | 208 | 268 | 350 |
| North Slope | 9 | 52 | 1,506 | 389 | 25 | 22 | 149 |
| NW Arctic | 1 | 118 | 1,979 | 804 | 119 | 282 | 222 |
| SE Fairbanks | 11 | 171 | 1,321 | 393 | 196 | 114 | 70 |
| Yukon/Koyukuk | 1 | 208 | 1,872 | 752 | 220 | 2 | 102 |
| **Southeast** | **153** | **1,655** | **17,297** | **4,903** | **1,520** | **315** | **630** |
| Chugach | 13 | 77 | 1048 | 215 | 75 | 34 | 66 |
| Copper River | 10 | 81 | 788 | 230 | 95 | 80 | 22 |
| Haines | 2 | 60 | 598 | 117 | 103 | 29 | 22 |
| Hoonah/Angoon | 3 | 57 | 566 | 194 | 93 | 15 | 23 |
| Juneau | 28 | 603 | 5,872 | 1,694 | 367 | 61 | 183 |
| Ketchikan Gateway | 28 | 349 | 3,256 | 1,127 | 290 | 33 | 92 |
| Petersburg | 7 | 57 | 772 | 216 | 81 | 14 | 37 |
| Prince of Wales | 46 | 164 | 1,558 | 544 | 201 | 12 | 85 |
| Sitka | 12 | 138 | 2,004 | 389 | 108 | 12 | 74 |
| Skagway | 1 | 5 | 209 | 20 | 9 | 10 | 6 |
| Wrangell | 3 | 52 | 492 | 126 | 82 | 15 | 19 |
| Yakutat | 0 | 12 | 134 | 31 | 16 | 0 | 1 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 89.0% | of ATAP cases also on SNAP |
| 42.7% | of APA cases also on SNAP |
| 4.2% | of SNAP cases also on ATAP |
| 20.1% | of SNAP cases also on APA |
| 91.0% | of SNAP cases also on ME |
| 0.8% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 383 | 401 |
| APA | 605 | 1,428 |
| ME | 2,468 | 2,008 |
| SNAP | 2,125 | 2,273 |
| SB | 340 | 428 |
| HAP | 211 | 310 |
| GA | 832 | 896 |
| IA | 9 | 16 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Household**

| Program | Ave. Benefit |
|---|---|
| ATAP | $625.69 |
| APA | $307.49 |
| SNAP | $579.66 |
| SB | $151.23 |
| HAP | $2,197.85 |
| GA | $2,104.23 |
| IA | $280.00 |
| WIC | $106.72 |
| CC | Unavail. |

Monthly Caseload & Benefit Summary continued
June-22

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 83 | 8.7% |
| 60th month | 4 | 0.4% |
| 1-12 months | 89 | 9.3% |
| 13-24 months | 150 | 15.7% |
| 25-36 months | 167 | 17.5% |
| 37-48 months | 153 | 16.0% |
| 49-59 months | 311 | 32.5% |
| Total | 957 | 100.0% |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 294 | 18.31% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 538 |
| Cases in Exempt Native Villages | 133 |
| Total unduplicated exempt cases | 640 |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Households | Percentage |
|---|---|---|
| One Parent | 853 | 53.4% |
| Child Only | 538 | 33.7% |
| 3rd Trimester | 8 | 0.5% |
| Incapacitated | 21 | 1.3% |
| Two Parent | 177 | 11.1% |
| Total | 1,597 | 100.0% |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 63 | $40,526 |
| Central Council of Tlingit & Haida Indian Tribes | 242 | $161,666 |
| Association of Village Council Presidents | 192 | $167,694 |
| Bristol Bay Native Association | 39 | $25,218 |
| Cook Inlet Tribal Council | 242 | $161,666 |
| Kodiak Area Native Association | 16 | Unavail. |
| Maniilaq Association | 45 | $26,038 |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 15 | $2,150 |
| Utilities | 7 | $1,351 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 22 | $89,085 |
| Total | 44 | $92,586 |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,911 | 21.1% |
| Children | 7,842 | 56.8% |
| Women - Pregnant | 1,072 | 7.8% |
| Women - Breastfeeding | 1,536 | 11.1% |
| Women - Other | 439 | 3.2% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 201 | 64.8% |
| Disabled | 59 | 19.0% |
| Young children (0-6) | 36 | 11.6% |
| Total Unduplicated | 173 | 55.8% |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 7,151 | 60.4% |
| 75 to 84 | 3,612 | 30.5% |
| 85 to 94 | 974 | 8.2% |
| 95 to 99 | 80 | 0.7% |
| 100+ | 17 | 0.1% |
| Total | 11,834 | 100.0% |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 66,154 | 44.2% |
| AK Native | 42,824 | 28.6% |
| Asian | 6,956 | 4.6% |
| Black | 6,021 | 4.0% |
| Pac. Islander | 4,772 | 3.2% |
| Amer. Ind. | 1,431 | 1.0% |
| Hispanic | 3,137 | 2.1% |
| 2+ races | 10,574 | 7.1% |
| Not Given | 7,889 | 5.3% |
| Total | 149,758 | 100.0% |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | 24,627 | 54.5% |
| Married | 6,322 | 14.0% |
| Divorced | 6,689 | 14.8% |
| Separated | 3,808 | 8.4% |
| Widowed | 1,820 | 4.0% |
| Leg. Sep. | 46 | 0.1% |
| Not Given | 1,866 | 4.1% |
| Total | 45,178 | 100.0% |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,175 | 93 | 12,268 |
| Couple both elig. living indpndntly | 837 | 1 | 838 |
| Couple one elig. living indpndntly | 466 | 5 | 471 |
| Individual in another's household | 655 | 1 | 656 |
| Couple both elig. another hsehold | 21 | 0 | 21 |
| Couple one elig. another hsehold | 9 | 0 | 9 |
| Individual, in assisted living | 911 | 2 | 913 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 46 | 0 | 46 |
| Total | 15,125 | 102 | 15,227 |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 28 | 3 | 31 | 0 | 31 |
| Aid to the Disabled | 7,350 | 2,825 | 10,175 | 102 | 10,277 |
| Old Age Assistance | 2,550 | 2,669 | 5,219 | 0 | 5,219 |
| Total | 9,928 | 5,497 | 15,425 | 102 | 15,527 |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 4 | 3.74% | 25.25 |

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## May-22
### Statewide Program Information

**Table 1. CASELOADS**

| Program | May-22 | May-21 | May-20 | May-19 | May-18 | May-17 | May-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,611 | 1,682 | 2,362 | 2,542 | 2,866 | 3,236 | 3,121 |
| Native Family Assistance Programs (NFAPs) | 839 | 831 | 1,113 | 1,313 | 1,719 | 1,801 | 1,660 |
| Adult Public Assistance (APA) | 15,146 | 15,710 | 16,672 | 19,414 | 19,411 | 19,143 | 18,859 |
| Medicaid (ME) *(may vary from Health Care Services)* | 149,108 | 143,196 | 134,047 | 128,484 | 119,100 | 107,133 | 85,838 |
| Supplemental Nutrition Assistance Program (SNAP) | 44,916 | 38,561 | 38,479 | 39,111 | 39,335 | 38,695 | 35,693 |
| Senior Benefits (SB) | 11,746 | 11,257 | 11,261 | 6,922 | 11,318 | 11,381 | 11,860 |
| Heating Assistance Program (HAP) | 416 | 179 | 415 | 470 | 547 | 312 | 811 |
| General Relief Assistance (GA) | 41 | 21 | 44 | 90 | 107 | 62 | 189 |
| Interim Assistance (IA) | 107 | 138 | 238 | 222 | 165 | 118 | 99 |
| Women, Infants and Children (WIC) | 8,784 | 9,439 | 10,466 | 11,631 | 12,409 | Unavail. | 13,679 |
| Child Care Assistance Program (CC) | Unavail. | Unavail. | 1,809 | 2,218 | 2,341 | 2,378 | 2,638 |
| **Total Caseload** | **231,875** | **220,183** | **215,793** | **211,104** | **207,599** | **182,458** | **172,787** |

May-22

**Table 2. EXPENDITURES**

| Program | May-22 | May-21 | May-20 | May-19 | May-18 | May-17 | May-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $1,613,596 | $1,085,979 | $1,629,842 | $1,642,066 | $1,891,283 | $2,214,734 | $2,112,496 |
| APA | $4,681,928 | $4,914,973 | $5,129,123 | $5,037,592 | $5,073,387 | $5,093,669 | $4,992,116 |
| SNAP | $30,301,115 | $28,081,311 | $21,211,074 | $14,670,440 | $15,283,476 | $15,996,560 | $15,204,193 |
| SB | $1,803,366 | $1,742,758 | $1,724,842 | $1,362,794 | $1,727,551 | $1,706,253 | $1,403,245 |
| HAP | $1,616,592 | $303,270 | $472,850 | $481,231 | $526,312 | $261,000 | $850,880 |
| GA | $86,394 | $36,874 | $42,182 | $57,528 | $53,938 | $60,991 | $290,766 |
| IA | $32,760 | $47,040 | $79,520 | $73,360 | $58,520 | $51,128 | $43,960 |
| WIC | $720,848 | $470,448 | $874,902 | $1,076,617 | $1,224,139 | Unavail. | Unavail. |
| CC | Unavail. | Unavail. | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 39 | |
| APA only | 3 | |
| ME only | 156,320 | |
| SNAP only | 15,703 | |
| SB only | 2,741 | |
| HAP only | 22 | |
| GA only | 11 | |
| WIC only | 3,935 | |
| CC only | 650 | |
| TOTAL | 178,774 | 65% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **1,086** | **8,870** | **81,063** | **23,922** | **6,123** | **1,550** | **4,055** |
| Anchorage | 800 | 6,690 | 58,580 | 18,008 | 4,447 | 690 | 3,013 |
| Mat-Su | 286 | 2,180 | 22,483 | 5,914 | 1,676 | 860 | 1,042 |
| **Coastal** | **176** | **2,499** | **26,524** | **8,842** | **2,363** | **696** | **2,198** |
| Aleutians East | 1 | 14 | 270 | 85 | 16 | 0 | 30 |
| Aleutians West | 2 | 25 | 306 | 75 | 21 | 4 | 22 |
| Bethel | 1 | 482 | 5,419 | 2,365 | 487 | 1 | 734 |
| Bristol Bay | 0 | 15 | 158 | 51 | 6 | 0 | 11 |
| Dillingham | 0 | 131 | 1,525 | 522 | 83 | 0 | 212 |
| Kenai | 156 | 1,407 | 13,477 | 3,734 | 1,328 | 637 | 476 |
| Kodiak | 16 | 209 | 2,275 | 526 | 212 | 46 | 195 |
| Kusilvak | 0 | 192 | 2,674 | 1,336 | 184 | 0 | 462 |
| Lake and Peninsula | 0 | 24 | 420 | 148 | 26 | 8 | 56 |
| **Northern** | **192** | **2,216** | **24,274** | **7,260** | **1,749** | **1,200** | **1,914** |
| Denali | 2 | 24 | 231 | 66 | 17 | 12 | 7 |
| Fairbanks N Star | 96 | 1,394 | 14,754 | 3,701 | 972 | 561 | 985 |
| Nome | 74 | 248 | 2,653 | 1,202 | 207 | 243 | 355 |
| North Slope | 11 | 51 | 1,494 | 372 | 25 | 18 | 147 |
| NW Arctic | 0 | 118 | 1,964 | 785 | 116 | 260 | 244 |
| SE Fairbanks | 8 | 168 | 1,314 | 386 | 194 | 104 | 69 |
| Yukon/Koyukuk | 1 | 213 | 1,864 | 748 | 218 | 2 | 107 |
| **Southeast** | **151** | **1,668** | **17,247** | **4,892** | **1,511** | **299** | **617** |
| Chugach | 13 | 79 | 1049 | 212 | 74 | 31 | 64 |
| Copper River | 10 | 81 | 774 | 228 | 94 | 75 | 22 |
| Haines | 2 | 61 | 598 | 119 | 103 | 28 | 21 |
| Hoonah/Angoon | 2 | 57 | 567 | 197 | 94 | 13 | 21 |
| Juneau | 30 | 608 | 5,874 | 1,687 | 367 | 60 | 179 |
| Ketchikan Gateway | 28 | 349 | 3,226 | 1,119 | 287 | 32 | 96 |
| Petersburg | 5 | 58 | 770 | 212 | 81 | 14 | 33 |
| Prince of Wales | 47 | 162 | 1,548 | 547 | 198 | 11 | 79 |
| Sitka | 10 | 140 | 2,004 | 395 | 108 | 12 | 75 |
| Skagway | 1 | 5 | 212 | 20 | 9 | 10 | 6 |
| Wrangell | 3 | 56 | 490 | 125 | 81 | 13 | 19 |
| Yakutat | 0 | 12 | 135 | 31 | 15 | 0 | 2 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 88.6% | of ATAP cases also on SNAP |
| 42.7% | of APA cases also on SNAP |
| 4.2% | of SNAP cases also on ATAP |
| 20.2% | of SNAP cases also on APA |
| 91.1% | of SNAP cases also on ME |
| 0.8% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 422 | 401 |
| APA | 663 | 1,515 |
| ME | 2,619 | 2,275 |
| SNAP | 2,204 | 2,243 |
| SB | 430 | 341 |
| HAP | 302 | 416 |
| GA | 977 | 887 |
| IA | 9 | 14 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Househld**

| Program | Ave. Benefit |
|---|---|
| ATAP | $623.72 |
| APA | $306.97 |
| SNAP | $508.78 |
| SB | $151.36 |
| HAP | $3,886.04 |
| GA | $2,107.16 |
| IA | $280.00 |
| WIC | $82.06 |
| CC | Unavail. |

Monthly Caseload & Benefit Summary continued
May-22

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 84 | 8.8% |
| 60th month | 1 | 0.1% |
| 1-12 months | 99 | 10.4% |
| 13-24 months | 140 | 14.6% |
| 25-36 months | 179 | 18.7% |
| 37-48 months | 163 | 17.1% |
| 49-59 months | 290 | 30.3% |
| **Total** | **956** | **100.0%** |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 292 | 18.13% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 541 |
| Cases in Exempt Native Villages | 137 |
| **Total unduplicated exempt cases** | **649** |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Households | Percentage |
|---|---|---|
| One Parent | 849 | 52.9% |
| Child Only | 541 | 33.7% |
| 3rd Trimester | 11 | 0.7% |
| Incapacitated | 21 | 1.3% |
| Two Parent | 183 | 11.4% |
| **Total** | **1,605** | **100.0%** |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 67 | $43,240 |
| Central Council of Tlingit & Haida Indian Tribes | 239 | $159,670 |
| Association of Village Council Presidents | 199 | $180,365 |
| Bristol Bay Native Association | 31 | $21,497 |
| Cook Inlet Tribal Council | 239 | $159,670 |
| Kodiak Area Native Association | 16 | $7,513 |
| Maniilaq Association | 48 | $27,606 |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 13 | $2,892 |
| Utilities | 6 | $1,079 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 22 | $82,423 |
| **Total** | **41** | **$86,394** |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,942 | 21.2% |
| Children | 7,867 | 56.8% |
| Women - Pregnant | 1,064 | 7.7% |
| Women - Breastfeeding | 1,549 | 11.2% |
| Women - Other | 429 | 3.1% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 256 | 61.5% |
| Disabled | 96 | 23.1% |
| Young children (0-6) | 40 | 9.6% |
| Total Unduplicated | 234 | 56.3% |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 7,115 | 60.6% |
| 75 to 84 | 3,572 | 30.4% |
| 85 to 94 | 963 | 8.2% |
| 95 to 99 | 79 | 0.7% |
| 100+ | 16 | 0.1% |
| **Total** | **11,745** | **100.0%** |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 65,853 | 44.2% |
| AK Native | 42,632 | 28.6% |
| Asian | 6,936 | 4.7% |
| Black | 6,018 | 4.0% |
| Pac. Islander | 4,738 | 3.2% |
| Amer. Ind. | 1,424 | 1.0% |
| Hispanic | 3,140 | 2.1% |
| 2+ races | 10,512 | 7.0% |
| Not Given | 7,855 | 5.3% |
| **Total** | **149,108** | **100.0%** |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | 24,459 | 54.5% |
| Married | 6,302 | 14.0% |
| Divorced | 6,657 | 14.8% |
| Separated | 3,779 | 8.4% |
| Widowed | 1,818 | 4.0% |
| Leg. Sep. | 44 | 0.1% |
| Not Given | 1,857 | 4.1% |
| **Total** | **44,916** | **100.0%** |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,190 | 98 | 12,288 |
| Couple both elig. living indpndntly | 846 | 0 | 846 |
| Couple one elig. living indpndntly | 461 | 6 | 467 |
| Individual in another's household | 653 | 1 | 654 |
| Couple both elig. another hsehold | 21 | 0 | 21 |
| Couple one elig. another hsehold | 9 | 0 | 9 |
| Individual, in assisted living | 915 | 2 | 917 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 46 | 0 | 46 |
| Total | 15,146 | 107 | 15,253 |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 0 | 0 | 0 | 0 | 0 |
| Aid to the Disabled | 7,371 | 2,829 | 10,200 | 107 | 10,307 |
| Old Age Assistance | 2,257 | 2,659 | 4,916 | 0 | 4,916 |
| Total | 9,628 | 5,488 | 15,116 | 107 | 15,223 |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 2 | 1.80% | 5 |

## Alaska Department of Health & Social Services - Division of Public Assistance
### Monthly Caseload & Benefit Summary
### April-22
### Statewide Program Information

**Table 1. CASELOADS**

| Program | Apr-22 | Apr-21 | Apr-20 | Apr-19 | Apr-18 | Apr-17 | Apr-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,622 | 1,767 | 2,330 | 2,547 | 2,916 | 3,211 | 3,096 |
| Native Family Assistance Programs (NFAPs) | 851 | 868 | 1,308 | 1,465 | 1,751 | 1,736 | 1,668 |
| Adult Public Assistance (APA) | 15,148 | 15,741 | 16,674 | 19,455 | 19,367 | 19,008 | 18,834 |
| Medicaid (ME) *(may vary from Health Care Services)* | 148,667 | 142,436 | 133,690 | 127,338 | 118,239 | 105,632 | 84,168 |
| Supplemental Nutrition Assistance Program (SNAP) | 44,623 | 37,658 | 37,460 | 39,413 | 40,110 | 39,201 | 36,014 |
| Senior Benefits (SB) | 11,679 | 11,140 | 11,154 | 11,268 | 11,237 | 11,412 | 11,855 |
| Heating Assistance Program (HAP) | 596 | 447 | 708 | 931 | 814 | 529 | 1,069 |
| General Relief Assistance (GA) | 20 | 27 | 51 | 88 | 101 | 106 | 176 |
| Interim Assistance (IA) | 111 | 143 | 243 | 218 | 169 | 117 | 103 |
| Women, Infants and Children (WIC) | 8,766 | 9,435 | 10,695 | 11,707 | 12,427 | No Data | No Data |
| Child Care Assistance Program (CC) | Unavail. | 1,616 | 1,915 | 2,174 | 2,258 | 2,313 | 2,573 |
| **Total Caseload** | **231,020** | **220,410** | **214,920** | **215,139** | **207,638** | **181,529** | **157,888** |

**Table 2. EXPENDITURES**

| Program | Apr-22 | Apr-21 | Apr-20 | Apr-19 | Apr-18 | Apr-17 | Apr-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $1,071,596 | $1,185,950 | $1,582,938 | $1,634,130 | $1,975,882 | $2,164,038 | $2,113,258 |
| APA | $4,675,582 | $4,929,327 | $5,137,584 | $5,063,707 | $5,104,227 | $5,026,527 | $5,003,263 |
| SNAP | $29,121,668 | $28,767,681 | $20,413,621 | $14,757,099 | $15,846,848 | $16,617,580 | $15,524,524 |
| SB | $1,787,162 | $1,747,236 | $1,737,889 | $1,718,391 | $1,715,414 | $1,707,458 | $1,828,783 |
| HAP | $3,313,909 | $795,960 | $890,947 | $1,058,470 | $779,162 | $418,674 | $1,030,580 |
| GA | $19,643 | $81,115 | $57,770 | $77,684 | $93,359 | $124,752 | $266,855 |
| IA | $36,960 | $45,640 | $84,838 | $69,961 | $61,040 | $115,640 | $39,760 |
| WIC | $846,401 | $655,520 | $888,222 | $1,256,407 | $1,206,601 | No Data | No Data |
| CC | Unavail. | $0 | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 44 | |
| APA only | 4 | |
| ME only | 156,630 | |
| SNAP only | 15,916 | |
| SB only | 2,726 | |
| HAP only | 39 | |
| GA only | 2 | |
| WIC only | 3,984 | |
| CC only | Unavail. | |
| TOTAL | 179,345 | 65% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **1,085** | **8,866** | **80,840** | **23,806** | **6,089** | **1,375** | **4,050** |
| Anchorage | 794 | 6,685 | 58,439 | 17,914 | 4,430 | 605 | 3,013 |
| Mat-Su | 291 | 2,181 | 22,401 | 5,892 | 1,659 | 770 | 1,037 |
| **Coastal** | **180** | **2,502** | **26,441** | **8,773** | **2,339** | **626** | **2,205** |
| Aleutians East | 1 | 13 | 269 | 83 | 16 | 0 | 29 |
| Aleutians West | 2 | 25 | 309 | 77 | 21 | 4 | 26 |
| Bethel | 1 | 485 | 5,396 | 2,347 | 486 | 1 | 724 |
| Bristol Bay | 0 | 13 | 156 | 51 | 6 | 0 | 11 |
| Dillingham | 1 | 130 | 1,524 | 520 | 83 | 0 | 215 |
| Kenai | 159 | 1,409 | 13,411 | 3,712 | 1,315 | 575 | 470 |
| Kodiak | 16 | 209 | 2,277 | 522 | 203 | 39 | 201 |
| Kusilvak | 0 | 194 | 2,674 | 1,310 | 183 | 0 | 476 |
| Lake and Peninsula | 0 | 24 | 425 | 151 | 26 | 7 | 53 |
| **Northern** | **193** | **2,217** | **24,182** | **7,174** | **1,748** | **1,069** | **1,906** |
| Denali | 2 | 24 | 227 | 67 | 18 | 11 | 9 |
| Fairbanks N Star | 98 | 1,392 | 14,695 | 3,654 | 972 | 520 | 997 |
| Nome | 75 | 251 | 2,645 | 1,201 | 207 | 202 | 343 |
| North Slope | 11 | 53 | 1,490 | 376 | 25 | 16 | 143 |
| NW Arctic | 0 | 116 | 1,957 | 765 | 115 | 224 | 243 |
| SE Fairbanks | 6 | 167 | 1,313 | 376 | 195 | 94 | 66 |
| Yukon/Koyukuk | 1 | 214 | 1,855 | 735 | 216 | 2 | 105 |
| **Southeast** | **152** | **1,674** | **17,204** | **4,870** | **1,503** | **259** | **605** |
| Chugach | 13 | 80 | 1046 | 211 | 74 | 28 | 59 |
| Copper River | 9 | 79 | 774 | 232 | 92 | 66 | 19 |
| Haines | 2 | 59 | 596 | 116 | 102 | 22 | 20 |
| Hoonah/Angoon | 2 | 58 | 564 | 196 | 96 | 9 | 21 |
| Juneau | 32 | 615 | 5,855 | 1,678 | 362 | 56 | 172 |
| Ketchikan Gateway | 27 | 350 | 3,222 | 1,127 | 291 | 30 | 96 |
| Petersburg | 5 | 58 | 770 | 207 | 79 | 12 | 31 |
| Prince of Wales | 46 | 161 | 1,538 | 535 | 196 | 9 | 78 |
| Sitka | 11 | 139 | 2,007 | 387 | 107 | 9 | 77 |
| Skagway | 1 | 5 | 212 | 24 | 9 | 9 | 7 |
| Wrangell | 4 | 58 | 487 | 127 | 80 | 9 | 23 |
| Yakutat | 0 | 12 | 133 | 30 | 15 | 0 | 2 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 88.3% | of ATAP cases also on SNAP |
| 42.6% | of APA cases also on SNAP |
| 4.3% | of SNAP cases also on ATAP |
| 20.2% | of SNAP cases also on APA |
| 91.4% | of SNAP cases also on ME |
| 0.8% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 306 | 347 |
| APA | 554 | 1,229 |
| ME | 2,321 | 2,797 |
| SNAP | 1,922 | 2,059 |
| SB | 304 | 331 |
| HAP | 471 | 596 |
| GA | 705 | 739 |
| IA | 10 | 30 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Household**

| Program | Ave. Benefit |
|---|---|
| ATAP | $625.87 |
| APA | $306.51 |
| SNAP | $568.36 |
| SB | $151.28 |
| HAP | $5,560.25 |
| GA | $982.17 |
| IA | $280.00 |
| WIC | $96.56 |
| CC | Unavail. |

Monthly Caseload & Benefit Summary continued
April-22

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 84 | 8.7% |
| 60th month | 3 | 0.3% |
| 1-12 months | 100 | 10.4% |
| 13-24 months | 145 | 15.1% |
| 25-36 months | 176 | 18.3% |
| 37-48 months | 172 | 17.9% |
| 49-59 months | 283 | 29.4% |
| Total | 963 | 100.0% |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 278 | 17.14% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 540 |
| Cases in Exempt Native Villages | 137 |
| Total unduplicated exempt cases | 647 |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Households | Percentage |
|---|---|---|
| One Parent | 866 | 53.8% |
| Child Only | 540 | 33.5% |
| 3rd Trimester | 9 | 0.6% |
| Incapacitated | 18 | 1.1% |
| Two Parent | 177 | 11.0% |
| Total | 1,610 | 100.0% |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 66 | $41,945 |
| Central Council of Tlingit & Haida Indian Tribes | 248 | $161,505 |
| Association of Village Council Presidents | 191 | $168,540 |
| Bristol Bay Native Association | 38 | $26,154 |
| Cook Inlet Tribal Council | 248 | $161,505 |
| Kodiak Area Native Association | 19 | $10,148 |
| Maniilaq Association | 41 | $23,277 |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 9 | $1,230 |
| Utilities | 6 | $796 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 5 | $17,617 |
| Total | 20 | $19,643 |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,973 | 21.5% |
| Children | 7,832 | 56.7% |
| Women - Pregnant | 1,041 | 7.5% |
| Women - Breastfeeding | 1,534 | 11.1% |
| Women - Other | 433 | 3.1% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 351 | 58.9% |
| Disabled | 146 | 24.5% |
| Young children (0-6) | 53 | 8.9% |
| Total Unduplicated | 353 | 59.2% |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 7,072 | 60.6% |
| 75 to 84 | 3,554 | 30.4% |
| 85 to 94 | 957 | 8.2% |
| 95 to 99 | 79 | 0.7% |
| 100+ | 16 | 0.1% |
| Total | 11,678 | 100.0% |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 65,659 | 44.2% |
| AK Native | 42,508 | 28.6% |
| Asian | 6,933 | 4.7% |
| Black | 5,990 | 4.0% |
| Pac. Islander | 4,707 | 3.2% |
| Amer. Ind. | 1,422 | 1.0% |
| Hispanic | 3,144 | 2.1% |
| 2+ races | 10,499 | 7.1% |
| Not Given | 7,805 | 5.2% |
| Total | 148,667 | 100.0% |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | 24,278 | 54.4% |
| Married | 6,271 | 14.1% |
| Divorced | 6,649 | 14.9% |
| Separated | 3,777 | 8.5% |
| Widowed | 1,804 | 4.0% |
| Leg. Sep. | 43 | 0.1% |
| Not Given | 1,801 | 4.0% |
| Total | 44,623 | 100.0% |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,191 | 101 | 12,292 |
| Couple both elig. living indpndntly | 845 | 0 | 845 |
| Couple one elig. living indpndntly | 461 | 7 | 468 |
| Individual in another's household | 656 | 1 | 657 |
| Couple both elig. another hsehold | 20 | 0 | 20 |
| Couple one elig. another hsehold | 9 | 0 | 9 |
| Individual, in assisted living | 915 | 2 | 917 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 46 | 0 | 46 |
| Total | 15,148 | 111 | 15,259 |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 26 | 4 | 30 | 0 | 30 |
| Aid to the Disabled | 7,379 | 2,829 | 10,208 | 111 | 10,319 |
| Old Age Assistance | 2,262 | 2,648 | 4,910 | 0 | 4,910 |
| Total | 9,667 | 5,481 | 15,148 | 111 | 15,259 |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 5 | 4.59% | 15.8 |

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## March-22
## Statewide Program Information

**Table 1. CASELOADS**

| Program | Mar-22 | Mar-21 | Mar-20 | Mar-19 | Mar-18 | Mar-17 | Mar-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,637 | 1,823 | 2,235 | 2,515 | 2,897 | 3,218 | 3,038 |
| Native Family Assistance Programs (NFAPs) | 760 | 924 | 1,335 | 1,424 | 1,751 | 1,757 | 1,653 |
| Adult Public Assistance (APA) | 15,220 | 15,706 | 17,382 | 19,392 | 19,299 | 18,980 | 18,777 |
| Medicaid (ME) *(may vary from Health Care Services)* | 148,455 | 141,151 | 132,242 | 126,554 | 117,229 | 104,226 | 82,359 |
| Supplemental Nutrition Assistance Program (SNAP) | 44,275 | 36,629 | 35,471 | 38,950 | 40,077 | 38,190 | 35,424 |
| Senior Benefits (SB) | 11,656 | 10,989 | 10,962 | 11,504 | 11,177 | 11,445 | 11,851 |
| Heating Assistance Program (HAP) | 600 | 977 | 643 | 976 | 732 | 1,014 | 1,191 |
| General Relief Assistance (GA) | 35 | 29 | 84 | 109 | 102 | 167 | 188 |
| Interim Assistance (IA) | 109 | 145 | 238 | 215 | 157 | 85 | 104 |
| Women, Infants and Children (WIC) | 8,788 | 9,514 | 10,921 | 11,732 | 12,468 | No Data | 13,661 |
| Child Care Assistance Program (CC) | Unavail. | 1,607 | 2,097 | 2,203 | 2,203 | 2,352 | 2,576 |
| **Total Caseload** | **230,775** | **218,570** | **212,275** | **214,150** | **206,341** | **179,677** | **169,169** |

**Table 2. EXPENDITURES**

| Program | Mar-22 | Mar-21 | Mar-20 | Mar-19 | Mar-18 | Mar-17 | Mar-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $1,070,001 | $1,242,795 | $1,446,250 | $1,626,904 | $1,892,958 | $2,162,659 | $2,076,297 |
| APA | $4,673,913 | $4,915,186 | $5,156,716 | $5,041,982 | $5,078,337 | $5,048,319 | $4,999,780 |
| SNAP | $28,825,095 | $21,392,208 | $13,973,367 | $14,516,654 | $15,403,545 | $16,409,408 | $15,119,407 |
| SB | $1,778,036 | $1,711,219 | $1,685,341 | $1,718,199 | $1,679,524 | $1,692,200 | $1,561,712 |
| HAP | $3,007,834 | $1,506,698 | $815,500 | $1,087,472 | $723,981 | $818,910 | $1,278,608 |
| GA | $80,981 | $55,877 | $70,457 | $89,946 | $66,903 | $162,142 | $231,254 |
| IA | $35,083 | $46,885 | $81,843 | $72,602 | $54,040 | $54,320 | $42,280 |
| WIC | $774,243 | $626,937 | $1,084,184 | $1,099,316 | $1,190,929 | No Data | No Data |
| CC | Unavail. | $0 | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 39 | |
| APA only | 5 | |
| ME only | 155,597 | |
| SNAP only | 14,979 | |
| SB only | 2,703 | |
| HAP only | 36 | |
| GA only | 2 | |
| WIC only | 3,840 | |
| CC only | 636 | |
| TOTAL | 177,201 | 65% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **1,080** | **8,907** | **80,722** | **23,624** | **6,070** | **1,133** | **4,034** |
| Anchorage | 798 | 6,721 | 58,435 | 17,794 | 4,427 | 500 | 3,009 |
| Mat-Su | 282 | 2,186 | 22,287 | 5,830 | 1,643 | 633 | 1,025 |
| **Coastal** | **191** | **2,507** | **26,403** | **8,708** | **2,335** | **506** | **2,215** |
| Aleutians East | 1 | 13 | 267 | 84 | 16 | 0 | 31 |
| Aleutians West | 2 | 25 | 306 | 78 | 21 | 2 | 25 |
| Bethel | 1 | 481 | 5,393 | 2,329 | 484 | 1 | 737 |
| Bristol Bay | 0 | 16 | 154 | 50 | 6 | 0 | 11 |
| Dillingham | 1 | 133 | 1,524 | 518 | 83 | 0 | 217 |
| Kenai | 168 | 1,410 | 13,374 | 3,663 | 1,309 | 466 | 473 |
| Kodiak | 18 | 210 | 2,276 | 520 | 204 | 33 | 201 |
| Kusilvak | 0 | 195 | 2,681 | 1,312 | 185 | 0 | 470 |
| Lake and Peninsula | 0 | 24 | 428 | 154 | 27 | 4 | 50 |
| **Northern** | **196** | **2,235** | **24,126** | **7,101** | **1,748** | **877** | **1,911** |
| Denali | 3 | 24 | 222 | 66 | 18 | 8 | 9 |
| Fairbanks N Star | 97 | 1,397 | 14,666 | 3,615 | 967 | 454 | 985 |
| Nome | 76 | 256 | 2,631 | 1,200 | 208 | 156 | 341 |
| North Slope | 12 | 55 | 1,490 | 366 | 26 | 14 | 149 |
| NW Arctic | 0 | 119 | 1,952 | 755 | 119 | 164 | 257 |
| SE Fairbanks | 7 | 168 | 1,312 | 376 | 194 | 79 | 67 |
| Yukon/Koyukuk | 1 | 216 | 1,853 | 723 | 216 | 2 | 103 |
| **Southeast** | **152** | **1,680** | **17,204** | **4,842** | **1,503** | **217** | **618** |
| Chugach | 13 | 80 | 1040 | 201 | 74 | 24 | 59 |
| Copper River | 10 | 80 | 776 | 229 | 94 | 54 | 19 |
| Haines | 2 | 59 | 592 | 116 | 102 | 19 | 22 |
| Hoonah/Angoon | 2 | 58 | 564 | 192 | 96 | 8 | 21 |
| Juneau | 33 | 618 | 5,864 | 1,685 | 362 | 48 | 177 |
| Ketchikan Gateway | 27 | 351 | 3,227 | 1,128 | 292 | 28 | 94 |
| Petersburg | 5 | 59 | 769 | 208 | 79 | 9 | 35 |
| Prince of Wales | 44 | 161 | 1,535 | 524 | 197 | 6 | 79 |
| Sitka | 9 | 140 | 2,011 | 381 | 107 | 6 | 79 |
| Skagway | 3 | 4 | 209 | 23 | 9 | 7 | 6 |
| Wrangell | 4 | 58 | 485 | 125 | 78 | 8 | 25 |
| Yakutat | 0 | 12 | 132 | 30 | 13 | 0 | 2 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 88.4% | of ATAP cases also on SNAP |
| 42.4% | of APA cases also on SNAP |
| 4.4% | of SNAP cases also on ATAP |
| 20.3% | of SNAP cases also on APA |
| 91.3% | of SNAP cases also on ME |
| 0.8% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 365 | 338 |
| APA | 572 | 1,344 |
| ME | 2,717 | 2,487 |
| SNAP | 2,174 | 2,257 |
| SB | 350 | 324 |
| HAP | 637 | 600 |
| GA | 851 | 807 |
| IA | 20 | 39 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Household**

| Program | Ave. Benefit |
|---|---|
| ATAP | $618.36 |
| APA | $306.07 |
| SNAP | $575.56 |
| SB | $151.08 |
| HAP | $5,013.06 |
| GA | $2,313.73 |
| IA | $280.00 |
| WIC | $88.10 |
| CC | Unavail. |

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 83 | 8.6% |
| 60th month | 2 | 0.2% |
| 1-12 months | 94 | 9.7% |
| 13-24 months | 148 | 15.3% |
| 25-36 months | 184 | 19.0% |
| 37-48 months | 186 | 19.3% |
| 49-59 months | 269 | 27.8% |
| **Total** | **966** | **100.0%** |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 288 | 17.59% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 545 |
| Cases in Exempt Native Villages | 138 |
| **Total unduplicated exempt cases** | **653** |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Households | Percentage |
|---|---|---|
| One Parent | 866 | 53.5% |
| Child Only | 545 | 33.7% |
| 3rd Trimester | 9 | 0.6% |
| Incapacitated | 16 | 1.0% |
| Two Parent | 183 | 11.3% |
| **Total** | **1,619** | **100.0%** |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 75 | $50,024 |
| Central Council of Tlingit & Haida Indian Tribes | 156 | $126,190 |
| Association of Village Council Presidents | 181 | $175,033 |
| Bristol Bay Native Association | 41 | $24,886 |
| Cook Inlet Tribal Council | 256 | $179,949 |
| Kodiak Area Native Association | 14 | $6,055 |
| Maniilaq Association | 37 | $22,110 |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 11 | $1,670 |
| Utilities | 5 | $451 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 19 | $78,860 |
| **Total** | **35** | **$80,981** |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,958 | 21.5% |
| Children | 7,846 | 57.0% |
| Women - Pregnant | 1,030 | 7.5% |
| Women - Breastfeeding | 1,492 | 10.8% |
| Women - Other | 444 | 3.2% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 346 | 57.7% |
| Disabled | 157 | 26.2% |
| Young children (0-6) | 58 | 9.7% |
| **Total Unduplicated** | **377** | **62.8%** |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 7,044 | 60.4% |
| 75 to 84 | 3,551 | 30.5% |
| 85 to 94 | 965 | 8.3% |
| 95 to 99 | 78 | 0.7% |
| 100+ | 17 | 0.1% |
| **Total** | **11,655** | **100.0%** |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 65,504 | 44.1% |
| AK Native | 42,510 | 28.6% |
| Asian | 6,934 | 4.7% |
| Black | 5,998 | 4.0% |
| Pac. Islander | 4,696 | 3.2% |
| Amer. Ind. | 1,413 | 1.0% |
| Hispanic | 3,127 | 2.1% |
| 2+ races | 10,489 | 7.1% |
| Not Given | 7,785 | 5.2% |
| **Total** | **148,456** | **100.0%** |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | 24,063 | 54.3% |
| Married | 6,210 | 14.0% |
| Divorced | 6,607 | 14.9% |
| Separated | 3,748 | 8.5% |
| Widowed | 1,799 | 4.1% |
| Leg. Sep. | 45 | 0.1% |
| Not Given | 1,803 | 4.1% |
| **Total** | **44,275** | **100.0%** |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,248 | 102 | 12,350 |
| Couple both elig. living indpndntly | 857 | 0 | 857 |
| Couple one elig. living indpndntly | 461 | 4 | 465 |
| Individual in another's household | 659 | 0 | 659 |
| Couple both elig. another hsehold | 20 | 0 | 20 |
| Couple one elig. another hsehold | 9 | 0 | 9 |
| Individual, in assisted living | 915 | 3 | 918 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 46 | 0 | 46 |
| **Total** | **15,220** | **109** | **15,329** |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 26 | 4 | 30 | 0 | 30 |
| Aid to the Disabled | 7,415 | 2,833 | 10,248 | 109 | 10,357 |
| Old Age Assistance | 2,279 | 2,663 | 4,942 | 0 | 4,942 |
| **Total** | **9,720** | **5,500** | **15,220** | **109** | **15,329** |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 2 | 1.90% | 42 |

# Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## February-22
## Statewide Program Information



**Table 1. CASELOADS**

| Program | Feb-22 | Feb-21 | Feb-20 | Feb-19 | Feb-18 | Feb-17 | Feb-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,628 | 1,852 | 2,247 | 2,555 | 2,913 | 3,242 | 3,022 |
| Native Family Assistance Programs (NFAPs) | 676 | 970 | 1,416 | 1,459 | 1,711 | 1,711 | 1,608 |
| Adult Public Assistance (APA) | 15,297 | 15,722 | 18,138 | 19,428 | 19,276 | 19,023 | 18,784 |
| Medicaid (ME) *(may vary from Health Care Services)* | 147,653 | 139,966 | 131,215 | 125,927 | 116,320 | 102,049 | 79,904 |
| Supplemental Nutrition Assistance Program (SNAP) | 43,768 | 34,918 | 35,242 | 6,119 | 40,553 | 37,233 | 34,724 |
| Senior Benefits (SB) | 11,614 | 10,852 | 10,850 | 11,600 | 11,195 | 11,478 | 11,652 |
| Heating Assistance Program (HAP) | 511 | 829 | 616 | 763 | 754 | 757 | 1,159 |
| General Relief Assistance (GA) | 31 | 30 | 107 | 117 | 124 | 140 | 202 |
| Interim Assistance (IA) | 105 | 159 | 227 | 198 | 148 | 76 | 102 |
| Women, Infants and Children (WIC) | 8,766 | 9,516 | 11,075 | 11,793 | 12,515 | 13,362 | No Data |
| Child Care Assistance Program (CC) | Unavail. | 1,563 | 2,133 | 2,200 | 2,179 | 2,336 | 2,540 |
| **Total Caseload** | **229,373** | **215,407** | **211,850** | **180,700** | **205,977** | **189,696** | **152,089** |

**Table 2. EXPENDITURES**

| Program | Feb-22 | Feb-21 | Feb-20 | Feb-19 | Feb-18 | Feb-17 | Feb-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $1,078,786 | $1,283,818 | $1,441,422 | $1,661,802 | $1,945,223 | $2,214,806 | $2,076,601 |
| APA | $4,715,959 | $4,962,349 | $5,123,211 | $5,039,335 | $5,038,992 | $5,051,523 | $4,978,787 |
| SNAP | $27,339,766 | $20,976,438 | $13,885,508 | $2,377,550 | $15,556,280 | $15,558,464 | $14,871,819 |
| SB | $1,789,092 | $1,907,800 | $1,667,933 | $1,720,430 | $1,669,953 | $1,706,139 | $1,921,025 |
| HAP | $2,711,011 | $1,158,053 | $841,264 | $878,797 | $776,641 | $596,095 | $1,265,420 |
| GA | $46,875 | $41,769 | $71,940 | $92,973 | $87,086 | $125,752 | $328,502 |
| IA | $37,800 | $46,282 | $74,812 | $63,840 | $49,840 | $38,321 | $41,440 |
| WIC | $466,124 | $624,676 | $989,047 | $1,041,052 | $984,772 | No Data | No Data |
| CC | Unavail. | $0 | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 48 | |
| APA only | 14 | |
| ME only | 155,308 | |
| SNAP only | 15,556 | |
| SB only | 2,749 | |
| HAP only | 50 | |
| GA only | 4 | |
| WIC only | 3,937 | |
| CC only | Unavail. | |
| TOTAL | 177,666 | 66% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **1,073** | **8,928** | **80,218** | **23,352** | **6,041** | **876** | **4,036** |
| Anchorage | 786 | 6,732 | 58,081 | 17,619 | 4,401 | 392 | 3,019 |
| Mat-Su | 287 | 2,196 | 22,137 | 5,733 | 1,640 | 484 | 1,017 |
| **Coastal** | **189** | **2,524** | **26,259** | **8,601** | **2,331** | **402** | **2,186** |
| Aleutians East | 1 | 13 | 264 | 85 | 16 | 0 | 30 |
| Aleutians West | 2 | 24 | 304 | 80 | 20 | 2 | 26 |
| Bethel | 1 | 486 | 5,365 | 2,294 | 484 | 0 | 736 |
| Bristol Bay | 0 | 17 | 151 | 47 | 6 | 0 | 10 |
| Dillingham | 1 | 136 | 1,517 | 513 | 83 | 0 | 204 |
| Kenai | 167 | 1,417 | 13,277 | 3,620 | 1,307 | 371 | 462 |
| Kodiak | 17 | 207 | 2,273 | 517 | 201 | 26 | 198 |
| Kusilvak | 0 | 199 | 2,681 | 1,294 | 187 | 0 | 465 |
| Lake and Peninsula | 0 | 25 | 427 | 151 | 27 | 3 | 55 |
| **Northern** | **200** | **2,264** | **24,029** | **7,028** | **1,751** | **691** | **1,937** |
| Denali | 4 | 22 | 222 | 65 | 17 | 6 | 9 |
| Fairbanks N Star | 94 | 1,425 | 14,587 | 3,564 | 967 | 377 | 990 |
| Nome | 83 | 253 | 2,633 | 1,182 | 210 | 116 | 335 |
| North Slope | 12 | 55 | 1,486 | 364 | 27 | 11 | 153 |
| NW Arctic | 0 | 117 | 1,943 | 753 | 119 | 119 | 276 |
| SE Fairbanks | 6 | 173 | 1,307 | 371 | 197 | 60 | 67 |
| Yukon/Koyukuk | 1 | 219 | 1,851 | 729 | 214 | 2 | 107 |
| **Southeast** | **153** | **1,686** | **17,147** | **4,787** | **1,491** | **164** | **607** |
| Chugach | 14 | 81 | 1036 | 200 | 74 | 20 | 65 |
| Copper River | 11 | 78 | 772 | 231 | 97 | 43 | 20 |
| Haines | 2 | 58 | 592 | 110 | 102 | 14 | 19 |
| Hoonah/Angoon | 2 | 57 | 561 | 192 | 95 | 6 | 16 |
| Juneau | 32 | 621 | 5,846 | 1,653 | 361 | 33 | 174 |
| Ketchikan Gateway | 28 | 356 | 3,223 | 1,122 | 289 | 23 | 93 |
| Petersburg | 5 | 61 | 770 | 208 | 75 | 7 | 34 |
| Prince of Wales | 44 | 160 | 1,525 | 516 | 197 | 4 | 75 |
| Sitka | 9 | 139 | 2,002 | 379 | 104 | 5 | 77 |
| Skagway | 2 | 4 | 209 | 23 | 7 | 3 | 6 |
| Wrangell | 4 | 59 | 485 | 125 | 77 | 6 | 26 |
| Yakutat | 0 | 12 | 126 | 28 | 13 | 0 | 2 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 88.2% | of ATAP cases also on SNAP |
| 42.1% | of APA cases also on SNAP |
| 4.3% | of SNAP cases also on ATAP |
| 20.5% | of SNAP cases also on APA |
| 91.3% | of SNAP cases also on ME |
| 0.8% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 349 | 336 |
| APA | 532 | 1,343 |
| ME | 2,539 | 2,118 |
| SNAP | 2,000 | 1,942 |
| SB | 293 | 301 |
| HAP | 657 | 511 |
| GA | 717 | 716 |
| IA | 6 | 10 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Household**

| Program | Ave. Benefit |
|---|---|
| ATAP | $626.62 |
| APA | $305.89 |
| SNAP | $571.60 |
| SB | $151.20 |
| HAP | $5,305.31 |
| GA | $1,512.10 |
| IA | $280.00 |
| WIC | $53.17 |
| CC | Unavail. |



Case 3:23-cv-00044-SLG Document 7-13 Filed 03/13/23 Page 60 of 102

Monthly Caseload & Benefit Summary continued
February-22

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 81 | 8.5% |
| 60th month | 0 | 0.0% |
| 1-12 months | 101 | 10.5% |
| 13-24 months | 127 | 13.3% |
| 25-36 months | 188 | 19.6% |
| 37-48 months | 189 | 19.7% |
| 49-59 months | 272 | 28.4% |
| **Total** | **958** | **100.0%** |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 264 | 16.22% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 542 |
| Cases in Exempt Native Villages | 146 |
| **Total unduplicated exempt cases** | **657** |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Households | Percentage |
|---|---|---|
| One Parent | 862 | 53.4% |
| Child Only | 542 | 33.6% |
| 3rd Trimester | 10 | 0.6% |
| Incapacitated | 15 | 0.9% |
| Two Parent | 186 | 11.5% |
| **Total** | **1,615** | **100.0%** |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 72 | $47,319 |
| Central Council of Tlingit & Haida Indian Tribes | 140 | $106,827 |
| Association of Village Council Presidents | 144 | $120,268 |
| Bristol Bay Native Association | 41 | $19,425 |
| Cook Inlet Tribal Council | 229 | $162,211 |
| Kodiak Area Native Association | 16 | $8,274 |
| Maniilaq Association | 34 | $18,956 |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 9 | $870 |
| Utilities | 8 | $842 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 14 | $45,163 |
| **Total** | **31** | **$46,875** |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,954 | 21.6% |
| Children | 7,814 | 57.2% |
| Women - Pregnant | 990 | 7.2% |
| Women - Breastfeeding | 1,477 | 10.8% |
| Women - Other | 436 | 3.2% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 292 | 57.1% |
| Disabled | 121 | 23.7% |
| Young children (0-6) | 61 | 11.9% |
| **Total Unduplicated** | **316** | **61.8%** |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 7,015 | 60.4% |
| 75 to 84 | 3,542 | 30.5% |
| 85 to 94 | 959 | 8.3% |
| 95 to 99 | 81 | 0.7% |
| 100+ | 16 | 0.1% |
| **Total** | **11,613** | **100.0%** |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 65,157 | 44.1% |
| AK Native | 42,331 | 28.7% |
| Asian | 6,907 | 4.7% |
| Black | 5,984 | 4.1% |
| Pac. Islander | 4,662 | 3.2% |
| Amer. Ind. | 1,403 | 1.0% |
| Hispanic | 3,102 | 2.1% |
| 2+ races | 10,415 | 7.1% |
| Not Given | 7,692 | 5.2% |
| **Total** | **147,653** | **100.0%** |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | 23,742 | 54.2% |
| Married | 6,181 | 14.1% |
| Divorced | 6,536 | 14.9% |
| Separated | 3,717 | 8.5% |
| Widowed | 1,774 | 4.1% |
| Leg. Sep. | 43 | 0.1% |
| Not Given | 1,775 | 4.1% |
| **Total** | **43,768** | **100.0%** |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,306 | 99 | 12,405 |
| Couple both elig. living indpndntly | 861 | 0 | 861 |
| Couple one elig. living indpndntly | 472 | 3 | 475 |
| Individual in another's household | 660 | 0 | 660 |
| Couple both elig. another hsehold | 20 | 0 | 20 |
| Couple one elig. another hsehold | 9 | 1 | 10 |
| Individual, in assisted living | 919 | 2 | 921 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 45 | 0 | 45 |
| **Total** | **15,297** | **105** | **15,402** |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 27 | 4 | 31 | 0 | 31 |
| Aid to the Disabled | 7,449 | 2,862 | 10,311 | 105 | 10,416 |
| Old Age Assistance | 2,296 | 2,659 | 4,955 | 0 | 4,955 |
| **Total** | **9,772** | **5,525** | **15,297** | **105** | **15,402** |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 2 | 1.89% | 5 |

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## January-22
## Statewide Program Information

**Table 1. CASELOADS**

| Program | Jan-22 | Jan-21 | Jan-20 | Jan-19 | Jan-18 | Jan-17 | Jan-16 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,600 | 1,834 | 2,248 | 2,564 | 2,953 | 3,208 | 3,017 |
| Native Family Assistance Programs (NFAPs) | 677 | 1,014 | 1,225 | 1,387 | 1,606 | 1,693 | 1,616 |
| Adult Public Assistance (APA) | 15,381 | 15,568 | 18,931 | 19,457 | 19,266 | 19,053 | 18,757 |
| Medicaid (ME) *(may vary from Health Care Services)* | 147,371 | 139,198 | 131,520 | 124,849 | 115,707 | 100,580 | 76,739 |
| Supplemental Nutrition Assistance Program (SNAP) | 43,394 | 32,506 | 35,480 | 38,509 | 42,103 | 37,107 | 33,590 |
| Senior Benefits (SB) | 11,566 | 9,575 | 10,740 | 11,599 | 11,288 | 11,500 | 11,747 |
| Heating Assistance Program (HAP) | 517 | 681 | 1,148 | 759 | 1,051 | 866 | 1,345 |
| General Relief Assistance (GA) | 36 | 30 | 87 | 129 | 116 | 172 | 178 |
| Interim Assistance (IA) | 106 | 179 | 223 | 192 | 150 | 71 | 103 |
| Women, Infants and Children (WIC) | 8,808 | 9,601 | 11,120 | 11,911 | 12,660 | 13,444 | No Data |
| Child Care Assistance Program (CC) | Unavail. | 1,571 | 2,107 | 2,203 | 2,158 | 2,350 | 2,529 |
| **Total Caseload** | **228,779** | **210,743** | **213,604** | **212,172** | **207,452** | **188,351** | **148,000** |

Jan 22

**Table 2. EXPENDITURES**

| Program | Jan-22 | Jan-21 | Jan-20 | Jan-19 | Jan-18 | Jan-17 | Jan-16 |
|---|---|---|---|---|---|---|---|
| ATAP | $1,031,431 | $1,239,883 | $1,412,933 | $1,646,521 | $1,945,174 | $2,143,837 | $2,026,221 |
| APA | $4,786,431 | $4,906,624 | $5,081,371 | $5,056,608 | $5,053,239 | $5,040,442 | $4,949,718 |
| SNAP | $29,865,885 | $18,289,267 | $13,767,040 | $26,191,025 | $15,899,415 | $15,236,857 | $14,186,841 |
| SB | $1,776,170 | $1,550,561 | $1,661,959 | $1,717,750 | $1,685,094 | $1,672,169 | $1,930,975 |
| HAP | $2,549,674 | $987,629 | $1,741,082 | $1,075,080 | $1,139,738 | $767,100 | $1,607,190 |
| GA | $95,037 | $45,866 | $52,063 | $139,368 | $134,372 | $139,254 | $295,330 |
| IA | $35,560 | $53,236 | $72,882 | $66,360 | $55,686 | $28,840 | $33,600 |
| WIC | Unavail. | $548,844 | $1,033,707 | $1,251,817 | $1,263,380 | No Data | No Data |
| CC | Unavail. | $0 | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | |
|---|---|---|
| ATAP only | 40 | |
| APA only | 14 | |
| ME only | 155,044 | |
| SNAP only | 15,244 | |
| SB only | 2,738 | |
| HAP only | 50 | |
| GA only | 7 | |
| WIC only | 3,935 | % of Total |
| CC only | Unavail. | Recipients |
| TOTAL | 177,072 | 66% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **1,067** | **8,983** | **80,060** | **23,148** | **6,015** | **685** | **4,060** |
| Anchorage | 780 | 6,775 | 57,944 | 17,453 | 4,384 | 303 | 3,051 |
| Mat-Su | 287 | 2,208 | 22,116 | 5,695 | 1,631 | 382 | 1,009 |
| **Coastal** | **179** | **2,543** | **26,204** | **8,559** | **2,329** | **301** | **2,198** |
| Aleutians East | 1 | 13 | 266 | 83 | 16 | 0 | 33 |
| Aleutians West | 3 | 24 | 304 | 80 | 20 | 0 | 25 |
| Bethel | 1 | 490 | 5,367 | 2,292 | 481 | 0 | 756 |
| Bristol Bay | 0 | 17 | 150 | 44 | 6 | 0 | 9 |
| Dillingham | 1 | 141 | 1,523 | 515 | 84 | 0 | 204 |
| Kenai | 159 | 1,428 | 13,228 | 3,589 | 1,303 | 281 | 453 |
| Kodiak | 14 | 209 | 2,266 | 521 | 205 | 17 | 205 |
| Kusilvak | 0 | 196 | 2,677 | 1,286 | 187 | 0 | 455 |
| Lake and Peninsula | 0 | 25 | 423 | 149 | 27 | 3 | 58 |
| **Northern** | **193** | **2,267** | **23,986** | **6,981** | **1,742** | **502** | **1,944** |
| Denali | 4 | 22 | 218 | 64 | 17 | 6 | 9 |
| Fairbanks N Star | 91 | 1,423 | 14,544 | 3,540 | 959 | 287 | 997 |
| Nome | 82 | 256 | 2,628 | 1,177 | 212 | 80 | 329 |
| North Slope | 11 | 53 | 1,484 | 358 | 27 | 7 | 151 |
| NW Arctic | 0 | 122 | 1,956 | 754 | 121 | 80 | 284 |
| SE Fairbanks | 4 | 172 | 1,303 | 366 | 195 | 40 | 68 |
| Yukon/Koyukuk | 1 | 219 | 1,853 | 722 | 211 | 2 | 106 |
| **Southeast** | **146** | **1,694** | **17,121** | **4,706** | **1,480** | **134** | **606** |
| Chugach | 13 | 86 | 1039 | 202 | 76 | 16 | 65 |
| Copper River | 13 | 76 | 772 | 222 | 96 | 32 | 18 |
| Haines | 1 | 58 | 591 | 109 | 100 | 12 | 16 |
| Hoonah/Angoon | 2 | 57 | 556 | 189 | 95 | 5 | 16 |
| Juneau | 32 | 622 | 5,819 | 1,621 | 359 | 29 | 179 |
| Ketchikan Gateway | 24 | 359 | 3,229 | 1,102 | 289 | 17 | 94 |
| Petersburg | 5 | 61 | 771 | 209 | 73 | 6 | 34 |
| Prince of Wales | 42 | 160 | 1,526 | 504 | 194 | 4 | 74 |
| Sitka | 9 | 140 | 2,003 | 375 | 104 | 4 | 77 |
| Skagway | 1 | 4 | 206 | 22 | 7 | 3 | 6 |
| Wrangell | 4 | 59 | 484 | 124 | 74 | 6 | 26 |
| Yakutat | 0 | 12 | 125 | 27 | 13 | 0 | 1 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 88.2% | of ATAP cases also on SNAP |
| 41.8% | of APA cases also on SNAP |
| 4.3% | of SNAP cases also on ATAP |
| 20.8% | of SNAP cases also on APA |
| 91.3% | of SNAP cases also on ME |
| 0.9% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 381 | 418 |
| APA | 501 | 1,332 |
| ME | 3,949 | 2,500 |
| SNAP | 1,998 | 2,259 |
| SB | 291 | 338 |
| HAP | 674 | 517 |
| GA | 715 | 796 |
| IA | 9 | 26 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Househld**

| Program | Ave. Benefit |
|---|---|
| ATAP | $622.24 |
| APA | $307.30 |
| SNAP | $586.58 |
| SB | $151.95 |
| HAP | $4,931.67 |
| GA | $2,639.92 |
| IA | $280.00 |
| WIC | Unavail. |
| CC | Unavail. |

Prepared by the DPA Analysis Unit
on 2/24/2022

Monthly Caseload & Benefit Summary continued
January-22

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 81 | 8.7% |
| 60th month | 7 | 0.8% |
| 1-12 months | 102 | 11.0% |
| 13-24 months | 130 | 14.0% |
| 25-36 months | 186 | 20.0% |
| 37-48 months | 189 | 20.3% |
| 49-59 months | 234 | 25.2% |
| Total | 929 | 100.0% |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 251 | 15.69% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 543 |
| Cases in Exempt Native Villages | 144 |
| Total unduplicated exempt cases | 656 |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Households | Percentage |
|---|---|---|
| One Parent | 843 | 53.2% |
| Child Only | 543 | 34.3% |
| 3rd Trimester | 6 | 0.4% |
| Incapacitated | 17 | 1.1% |
| Two Parent | 176 | 11.1% |
| Total | 1,585 | 100.0% |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 72 | $43,708 |
| Central Council of Tlingit & Haida Indian Tribes | 138 | $100,702 |
| Association of Village Council Presidents | 171 | $157,014 |
| Bristol Bay Native Association | 37 | $22,925 |
| Cook Inlet Tribal Council | 210 | $142,290 |
| Kodiak Area Native Association | 15 | $7,715 |
| Maniilaq Association | 34 | $21,084 |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 5 | $710 |
| Utilities | 11 | $1,912 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 20 | $92,415 |
| Total | 36 | $95,037 |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,906 | 21.2% |
| Children | 7,888 | 57.6% |
| Women - Pregnant | 999 | 7.3% |
| Women - Breastfeeding | 1,438 | 10.5% |
| Women - Other | 453 | 3.3% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 319 | 61.7% |
| Disabled | 150 | 29.0% |
| Young children (0-6) | 42 | 8.1% |
| Total Unduplicated | 307 | 59.4% |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 6,976 | 60.3% |
| 75 to 84 | 3,540 | 30.6% |
| 85 to 94 | 951 | 8.2% |
| 95 to 99 | 83 | 0.7% |
| 100+ | 14 | 0.1% |
| Total | 11,564 | 100.0% |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 65,019 | 44.1% |
| AK Native | 42,300 | 28.7% |
| Asian | 6,903 | 4.7% |
| Black | 5,961 | 4.0% |
| Pac. Islander | 4,665 | 3.2% |
| Amer. Ind. | 1,399 | 0.9% |
| Hispanic | 3,101 | 2.1% |
| 2+ races | 10,366 | 7.0% |
| Not Given | 7,657 | 5.2% |
| Total | 147,371 | 100.0% |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | 23,492 | 54.1% |
| Married | 6,163 | 14.2% |
| Divorced | 6,495 | 15.0% |
| Separated | 3,681 | 8.5% |
| Widowed | 1,772 | 4.1% |
| Leg. Sep. | 41 | 0.1% |
| Not Given | 1,750 | 4.0% |
| Total | 43,394 | 100.0% |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,372 | 97 | 12,469 |
| Couple both elig. living indpndntly | 874 | 0 | 874 |
| Couple one elig. living indpndntly | 479 | 5 | 484 |
| Individual in another's household | 657 | 0 | 657 |
| Couple both elig. another hsehold | 20 | 0 | 20 |
| Couple one elig. another hsehold | 9 | 1 | 10 |
| Individual, in assisted living | 920 | 3 | 923 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 45 | 0 | 45 |
| Total | 15,381 | 106 | 15,487 |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 27 | 5 | 32 | 0 | 32 |
| Aid to the Disabled | 7,503 | 2,855 | 10,358 | 106 | 10,464 |
| Old Age Assistance | 2,321 | 2,670 | 4,991 | 0 | 4,991 |
| Total | 9,851 | 5,530 | 15,381 | 106 | 15,487 |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 3 | 2.78% | 14 |

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## December-21
## Statewide Program Information

**Table 1. CASELOADS**

| Program | Dec-21 | Dec-20 | Dec-19 | Dec-18 | Dec-17 | Dec-16 | Dec-15 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,597 | 1,925 | 2,198 | 2,496 | 2,983 | 3,164 | 2,988 |
| Native Family Assistance Programs (NFAPs) | 711 | 1,051 | 1,157 | 1,360 | 1,534 | 1,620 | 1,502 |
| Adult Public Assistance (APA) | 15,438 | 15,749 | 19,173 | 19,504 | 19,411 | 19,086 | 18,740 |
| Medicaid (ME) *(may vary from Health Care Services)* | 146,654 | 138,219 | 130,927 | 123,786 | 113,816 | 97,417 | 74,119 |
| Supplemental Nutrition Assistance Program (SNAP) | 42,778 | 33,159 | 37,139 | 37,937 | 43,691 | 36,885 | 33,830 |
| Senior Benefits (SB) | 11,553 | 10,173 | 10,784 | 11,599 | 11,322 | 11,632 | 11,746 |
| Heating Assistance Program (HAP) | 474 | 1,068 | 885 | 822 | 802 | 1,082 | 1,439 |
| General Relief Assistance (GA) | 17 | 44 | 87 | 69 | 80 | 146 | 145 |
| Interim Assistance (IA) | 108 | 198 | 217 | 184 | 152 | 74 | 111 |
| Women, Infants and Children (WIC) | 9,066 | 9,686 | 11,088 | 12,024 | No Data | No Data | 13,673 |
| Child Care Assistance Program (CC) | Unavail. | 1,595 | 2,056 | 2,162 | 2,128 | 2,372 | 2,615 |
| **Total Caseload** | **227,685** | **211,816** | **214,554** | **210,583** | **194,385** | **171,858** | **159,406** |

**Table 2. EXPENDITURES**

| Program | Dec-21 | Dec-20 | Dec-19 | Dec-18 | Dec-17 | Dec-16 | Dec-15 |
|---|---|---|---|---|---|---|---|
| ATAP | $1,020,769 | $1,293,794 | $1,388,447 | $1,622,152 | $1,951,635 | $2,146,728 | $2,000,986 |
| APA | $4,836,861 | $4,995,611 | $4,956,939 | $5,120,608 | $5,130,915 | $5,045,241 | $5,628,098 |
| SNAP | $28,978,835 | $15,413,682 | $14,106,092 | $14,319,623 | $16,584,067 | $15,545,020 | $14,258,276 |
| SB | $1,780,827 | $1,618,251 | $1,649,211 | $1,724,116 | $1,694,734 | $1,704,144 | $1,927,100 |
| HAP | $2,180,385 | $1,633,302 | $1,332,563 | $999,598 | $949,612 | $1,008,720 | $1,749,708 |
| GA | $26,281 | $70,692 | $69,154 | $60,830 | $78,415 | $116,678 | $237,575 |
| IA | $31,640 | $60,526 | $64,680 | $61,320 | $53,282 | $25,282 | $31,816 |
| WIC | $1,073,346 | $243,734 | $975,232 | $864,428 | $1,171,068 | No Data | No Data |
| CC | Unavail. | $0 | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients |
|---|---|
| ATAP only | 42 |
| APA only | 18 |
| ME only | 154,517 |
| SNAP only | 14,552 |
| SB only | 2,738 |
| HAP only | 29 |
| GA only | 7 |
| WIC only | 3,843 |
| CC only | Unavail. |
| TOTAL | 175,746 |

| % of Total Recipients |
|---|
| 65% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **1,059** | **9,016** | **79,643** | **22,800** | **6,007** | **476** | **4,142** |
| Anchorage | 772 | 6,802 | 57,631 | 17,152 | 4,385 | 221 | 3,125 |
| Mat-Su | 287 | 2,214 | 22,012 | 5,648 | 1,622 | 255 | 1,017 |
| **Coastal** | **182** | **2,555** | **26,117** | **8,459** | **2,329** | **209** | **2,265** |
| Aleutians East | 1 | 13 | 264 | 79 | 15 | 0 | 28 |
| Aleutians West | 3 | 23 | 302 | 78 | 19 | 0 | 24 |
| Bethel | 1 | 494 | 5,381 | 2,257 | 480 | 0 | 803 |
| Bristol Bay | 0 | 18 | 149 | 46 | 7 | 0 | 8 |
| Dillingham | 1 | 142 | 1,521 | 514 | 88 | 0 | 199 |
| Kenai | 160 | 1,428 | 13,137 | 3,542 | 1,302 | 198 | 459 |
| Kodiak | 16 | 212 | 2,264 | 513 | 203 | 11 | 189 |
| Kusilvak | 0 | 199 | 2,678 | 1,284 | 188 | 0 | 500 |
| Lake and Peninsula | 0 | 26 | 421 | 146 | 27 | 0 | 55 |
| **Northern** | **194** | **2,276** | **23,890** | **6,880** | **1,737** | **321** | **2,055** |
| Denali | 3 | 22 | 215 | 63 | 17 | 3 | 8 |
| Fairbanks N Star | 91 | 1,423 | 14,459 | 3,465 | 945 | 190 | 1,028 |
| Nome | 83 | 254 | 2,616 | 1,160 | 214 | 48 | 352 |
| North Slope | 13 | 54 | 1,488 | 360 | 26 | 5 | 160 |
| NW Arctic | 0 | 124 | 1,949 | 751 | 124 | 47 | 308 |
| SE Fairbanks | 3 | 176 | 1,306 | 355 | 194 | 26 | 80 |
| Yukon/Koyukuk | 1 | 223 | 1,857 | 726 | 217 | 2 | 119 |
| **Southeast** | **145** | **1,699** | **17,004** | **4,639** | **1,480** | **99** | **604** |
| Chugach | 16 | 89 | 1028 | 196 | 79 | 10 | 58 |
| Copper River | 11 | 76 | 758 | 217 | 97 | 18 | 19 |
| Haines | 0 | 58 | 582 | 102 | 97 | 9 | 16 |
| Hoonah/Angoon | 2 | 56 | 555 | 192 | 94 | 5 | 16 |
| Juneau | 30 | 620 | 5,790 | 1,597 | 360 | 22 | 186 |
| Ketchikan Gateway | 24 | 361 | 3,208 | 1,092 | 289 | 15 | 100 |
| Petersburg | 5 | 63 | 765 | 208 | 76 | 5 | 35 |
| Prince of Wales | 42 | 160 | 1,514 | 497 | 195 | 4 | 70 |
| Sitka | 9 | 141 | 1,991 | 368 | 103 | 3 | 75 |
| Skagway | 1 | 4 | 206 | 21 | 7 | 2 | 3 |
| Wrangell | 5 | 59 | 480 | 123 | 70 | 6 | 25 |
| Yakutat | 0 | 12 | 127 | 26 | 13 | 0 | 1 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 88.3% | of ATAP cases also on SNAP |
| 41.6% | of APA cases also on SNAP |
| 4.3% | of SNAP cases also on ATAP |
| 21.0% | of SNAP cases also on APA |
| 91.6% | of SNAP cases also on ME |
| 0.9% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 369 | 353 |
| APA | 474 | 1,263 |
| ME | 5,041 | 2,380 |
| SNAP | 1,930 | 1,841 |
| SB | 268 | 275 |
| HAP | 694 | 474 |
| GA | 663 | 640 |
| IA | 4 | 10 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Househld**

| Program | Ave. Benefit |
|---|---|
| ATAP | $600.38 |
| APA | $309.96 |
| SNAP | $584.37 |
| SB | $152.24 |
| HAP | $4,599.97 |
| GA | $1,545.95 |
| IA | $280.00 |
| WIC | $118.39 |
| CC | Unavail. |

Monthly Caseload & Benefit Summary continued
December-21

## ATAP Information

| Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt) | | |
|---|---|---|
| Months Remaining | Households | Percentage |
| Extended | 89 | 9.7% |
| 60th month | 2 | 0.2% |
| 1-12 months | 100 | 10.9% |
| 13-24 months | 134 | 14.6% |
| 25-36 months | 178 | 19.4% |
| 37-48 months | 197 | 21.5% |
| 49-59 months | 217 | 23.7% |
| Total | 917 | 100.0% |

| Table 9. ATAP CASES RECEIVING PASS-THRU | |
|---|---|
| Households | Percent of ATAP Caseload |
| 298 | 18.66% |

| Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT | |
|---|---|
| Child-only cases statewide | 546 |
| Cases in Exempt Native Villages | 147 |
| Total unduplicated exempt cases | 663 |

| Table 11. ATAP FAMILY TYPE | | |
|---|---|---|
| Family Type | Households | Percentage |
| One Parent | 850 | 53.8% |
| Child Only | 546 | 34.6% |
| 3rd Trimester | 3 | 0.2% |
| Incapacitated | 17 | 1.1% |
| Two Parent | 164 | 10.4% |
| Total | 1,580 | 100.0% |

## Tribal TANF (NFAP) Information

| Table 12. TRIBAL TANF PROVIDED BY NFAPS | | |
|---|---|---|
| NFAP | Cases | Expenditures |
| Tanana Chiefs Conference | 71 | $44,702 |
| Central Council of Tlingit & Haida Indian Tribes | 160 | $146,921 |
| Association of Village Council Presidents | 185 | $213,239 |
| Bristol Bay Native Association | 36 | $20,968 |
| Cook Inlet Tribal Council | 204 | $130,828 |
| Kodiak Area Native Association | 15 | $11,509 |
| Manillaq Association | 40 | $23,497 |

## GA Information

| Table 13. GA SUBTYPES | | |
|---|---|---|
| Subtype | Cases | Expenditures |
| Rent | 6 | $974 |
| Utilities | 4 | $808 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 7 | $24,499 |
| Total | 17 | $26,281 |

## CC Information

| Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE | | | |
|---|---|---|---|
| Category | Expenditures | Families | Children |
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

| Table 15. WIC PARTICIPATION TYPES | | |
|---|---|---|
| Participation Type | Recipients | Percentage Total Recipients |
| Infants | 2,709 | 19.1% |
| Children | 8,479 | 59.9% |
| Women - Pregnant | 1,023 | 7.2% |
| Women - Breastfeeding | 1,396 | 9.9% |
| Women - Other | 544 | 3.8% |

## HAP Information

| Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS | | |
|---|---|---|
| Vulnerable People | Cases | Percent of HAP Caseload |
| Elderly (age 60+) | 246 | 51.9% |
| Disabled | 144 | 30.4% |
| Young children (0-6) | 46 | 9.7% |
| Total Unduplicated | 334 | 70.5% |

## SB Information

| Table 17. SENIORS BY AGE GROUP | | |
|---|---|---|
| Age Group | Seniors | Percentage |
| 65 to74 | 6,924 | 59.9% |
| 75 to 84 | 3,564 | 30.9% |
| 85 to 94 | 965 | 8.4% |
| 95 to 99 | 84 | 0.7% |
| 100+ | 15 | 0.1% |
| Total | 11,552 | 100.0% |

## ME Information

| Table 18. Medicaid Household Race | | |
|---|---|---|
| Race | Households | Percentage |
| White | 64,564 | 44.0% |
| AK Native | 42,259 | 28.8% |
| Asian | 6,866 | 4.7% |
| Black | 5,949 | 4.1% |
| Pac. Islander | 4,637 | 3.2% |
| Amer. Ind. | 1,403 | 1.0% |
| Hispanic | 3,090 | 2.1% |
| 2+ races | 10,270 | 7.0% |
| Not Given | 7,616 | 5.2% |
| Total | 146,654 | 100.0% |

## SNAP Information

| Table 19. Marriage Status Family Head | | |
|---|---|---|
| Status | Recipients | Percentage |
| Never Mar | 23,063 | 53.9% |
| Married | 6,110 | 14.3% |
| Divorced | 6,430 | 15.0% |
| Separated | 3,650 | 8.5% |
| Widowed | 1,764 | 4.1% |
| Leg. Sep. | 38 | 0.1% |
| Not Given | 1,723 | 4.0% |
| Total | 42,778 | 100.0% |

## APA and IA Information

| Table 20. APA and IA HOUSEHOLD TYPE | | | |
|---|---|---|---|
| Household Type | APA Cases | IA Cases | TOTAL |
| Individual, living independently | 12,412 | 100 | 12,512 |
| Couple both elig. living indpndntly | 896 | 0 | 896 |
| Couple one elig. living indpndntly | 478 | 5 | 483 |
| Individual in another's household | 654 | 0 | 654 |
| Couple both elig. another hsehold | 18 | 0 | 18 |
| Couple one elig. another hsehold | 9 | 1 | 10 |
| Individual, in assisted living | 921 | 2 | 923 |
| Couple both elig. in assisted living | 4 | 0 | 4 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 45 | 0 | 45 |
| Total | 15,438 | 108 | 15,546 |

| Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE | | | | | |
|---|---|---|---|---|---|
| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
| Aid to the Blind | 26 | 6 | 32 | 0 | 32 |
| Aid to the Disabled | 7,520 | 2,861 | 10,381 | 108 | 10,489 |
| Old Age Assistance | 2,327 | 2,698 | 5,025 | 0 | 5,025 |
| Total | 9,873 | 5,565 | 15,438 | 108 | 15,546 |

| Table 22. IA Cases Converted to APA | | |
|---|---|---|
| IA Cases Converted | Percentage | Ave. Months on IA |
| 4 | 3.42% | 18 |

## Alaska Department of Health & Social Services - Division of Public Assistance
## Monthly Caseload & Benefit Summary
## November-21
## Statewide Program Information

Nov-21

**Table 1. CASELOADS**

| Program | Nov-21 | Nov-20 | Nov-19 | Nov-18 | Nov-17 | Nov-16 | Nov-15 |
|---|---|---|---|---|---|---|---|
| Alaska Temporary Assistance Program (ATAP) | 1,552 | 2,029 | 2,147 | 2,526 | 3,036 | 3,119 | 2,899 |
| Native Family Assistance Programs (NFAPs) | 609 | 883 | 1,188 | 1,444 | 1,579 | 1,539 | 1,442 |
| Adult Public Assistance (APA) | 15,487 | 16,172 | 19,280 | 19,523 | 19,413 | 19,069 | 18,803 |
| Medicaid (ME) *(may vary from Health Care Services)* | 145,428 | 137,870 | 130,453 | 122,999 | 113,942 | 96,134 | 70,593 |
| Supplemental Nutrition Assistance Program (SNAP) | 42,440 | 35,671 | 37,363 | 37,893 | 44,308 | 35,996 | 33,801 |
| Senior Benefits (SB) | 11,537 | 10,702 | 10,740 | 11,558 | 11,322 | 11,676 | 11,787 |
| Heating Assistance Program (HAP) | 487 | 249 | 699 | 724 | 1,016 | 1,001 | 1,012 |
| General Relief Assistance (GA) | 15 | 20 | 62 | 76 | 79 | 109 | 154 |
| Interim Assistance (IA) | 117 | 205 | 231 | 188 | 150 | 82 | 124 |
| Women, Infants and Children (WIC) | 9,159 | 9,721 | 11,188 | 12,165 | 12,822 | 13,604 | No Data |
| Child Care Assistance Program (CC) | Unavail. | 1,635 | 2,087 | 2,203 | 2,083 | 2,450 | 2,683 |
| **Total Caseload** | **226,222** | **214,274** | **214,250** | **209,855** | **208,171** | **183,240** | **141,856** |

**Table 2. EXPENDITURES**

| Program | Nov-21 | Nov-20 | Nov-19 | Nov-18 | Nov-17 | Nov-16 | Nov-15 |
|---|---|---|---|---|---|---|---|
| ATAP | $987,594 | $1,334,109 | $1,341,788 | $1,636,608 | $1,944,059 | $2,054,879 | $1,910,522 |
| APA | $4,859,473 | $5,055,296 | $4,987,950 | $5,091,411 | $5,091,048 | $5,035,712 | $4,969,436 |
| SNAP | $29,389,615 | $24,126,952 | $14,282,694 | $14,179,513 | $16,893,033 | $14,576,613 | $13,817,573 |
| SB | $1,774,190 | $1,654,844 | $1,649,654 | $1,726,225 | $1,688,735 | $1,699,572 | $1,934,075 |
| HAP | $2,052,761 | $363,660 | $1,072,680 | $884,093 | $1,295,434 | $931,870 | $1,156,740 |
| GA | $32,044 | $26,344 | $28,091 | $69,463 | $86,720 | $114,527 | $281,395 |
| IA | $33,040 | $61,122 | $76,160 | $68,846 | $43,202 | $26,880 | $37,684 |
| WIC | $581,629 | $1,217,460 | $1,051,499 | $1,071,388 | $1,116,893 | No Data | No Data |
| CC | Unavail. | $0 | $0 | $0 | $0 | $0 | $0 |

**Table 3. Recipients on Only One Program**

| Program | Recipients | % of Total Recipients |
|---|---|---|
| ATAP only | 58 | |
| APA only | 11 | |
| ME only | 153,733 | |
| SNAP only | 14,288 | |
| SB only | 2,743 | |
| HAP only | 36 | |
| GA only | 3 | |
| WIC only | 3,860 | |
| CC only | Unavail. | |
| TOTAL | 174,732 | 65% |

**Table 4. CASELOADS BY REGION AND CENSUS AREA**

| Region/Census Area | ATAP | APA and IA | ME | SNAP | SB | HAP | WIC |
|---|---|---|---|---|---|---|---|
| **Central** | **1,026** | **9,043** | **78,975** | **22,596** | **5,988** | **282** | **4,166** |
| Anchorage | 738 | 6,815 | 57,182 | 17,033 | 4,367 | 133 | 3,136 |
| Mat-Su | 288 | 2,228 | 21,793 | 5,563 | 1,621 | 149 | 1,030 |
| **Coastal** | **171** | **2,560** | **25,913** | **8,380** | **2,335** | **123** | **2,292** |
| Aleutians East | 1 | 13 | 263 | 79 | 15 | 0 | 28 |
| Aleutians West | 3 | 22 | 299 | 77 | 20 | 0 | 24 |
| Bethel | 1 | 496 | 5,360 | 2,252 | 485 | 0 | 821 |
| Bristol Bay | 0 | 19 | 151 | 46 | 7 | 0 | 10 |
| Dillingham | 1 | 145 | 1,503 | 518 | 88 | 0 | 194 |
| Kenai | 149 | 1,426 | 13,014 | 3,481 | 1,298 | 114 | 450 |
| Kodiak | 16 | 215 | 2,246 | 499 | 208 | 9 | 189 |
| Kusilvak | 0 | 199 | 2,662 | 1,283 | 188 | 0 | 518 |
| Lake and Peninsula | 0 | 25 | 415 | 145 | 26 | 0 | 58 |
| **Northern** | **201** | **2,291** | **23,688** | **6,873** | **1,737** | **174** | **2,106** |
| Denali | 2 | 22 | 214 | 62 | 17 | 2 | 7 |
| Fairbanks N Star | 94 | 1,426 | 14,316 | 3,466 | 942 | 111 | 1,054 |
| Nome | 84 | 260 | 2,607 | 1,159 | 213 | 18 | 357 |
| North Slope | 16 | 53 | 1,469 | 360 | 27 | 2 | 163 |
| NW Arctic | 0 | 128 | 1,941 | 751 | 123 | 30 | 321 |
| SE Fairbanks | 4 | 178 | 1,293 | 351 | 194 | 9 | 84 |
| Yukon/Koyukuk | 1 | 224 | 1,848 | 724 | 221 | 2 | 120 |
| **Southeast** | **136** | **1,710** | **16,852** | **4,591** | **1,477** | **52** | **594** |
| Chugach | 14 | 87 | 1011 | 192 | 78 | 5 | 59 |
| Copper River | 10 | 78 | 741 | 216 | 98 | 9 | 19 |
| Haines | 0 | 59 | 583 | 99 | 97 | 4 | 16 |
| Hoonah/Angoon | 1 | 56 | 550 | 188 | 94 | 3 | 19 |
| Juneau | 28 | 626 | 5,754 | 1,576 | 357 | 13 | 176 |
| Ketchikan Gateway | 22 | 362 | 3,173 | 1,087 | 289 | 7 | 97 |
| Petersburg | 5 | 64 | 770 | 205 | 76 | 3 | 34 |
| Prince of Wales | 41 | 161 | 1,512 | 497 | 196 | 3 | 72 |
| Sitka | 9 | 143 | 1,960 | 361 | 101 | 0 | 78 |
| Skagway | 1 | 4 | 203 | 22 | 7 | 0 | 2 |
| Wrangell | 5 | 59 | 470 | 122 | 71 | 5 | 21 |
| Yakutat | 0 | 11 | 125 | 26 | 13 | 0 | 1 |

**Table 5. Households Participating in Multiple Programs**

| | |
|---|---|
| 87.9% | of ATAP cases also on SNAP |
| 41.4% | of APA cases also on SNAP |
| 4.2% | of SNAP cases also on ATAP |
| 21.1% | of SNAP cases also on APA |
| 91.8% | of SNAP cases also on ME |
| 0.9% | of SNAP cases on ATAP, APA |

**Table 6. Initial Applications and Case Determinations**

| Program | APPS RECVD | CASE DETS. |
|---|---|---|
| ATAP | 326 | 377 |
| APA | 523 | 1,251 |
| ME | 4,902 | 2,081 |
| SNAP | 1,950 | 2,191 |
| SB | 338 | 329 |
| HAP | 897 | 487 |
| GA | 725 | 1,063 |
| IA | 11 | 5 |
| CC | Unavail. | Unavail. |

**Table 7. Average Benefit per Household**

| Program | Ave. Benefit |
|---|---|
| ATAP | $604.41 |
| APA | $310.13 |
| SNAP | $580.30 |
| SB | $152.00 |
| HAP | $4,215.11 |
| GA | $2,136.25 |
| IA | $280.00 |
| WIC | $63.50 |
| CC | Unavail. |

Monthly Caseload & Benefit Summary continued
November-21

## ATAP Information

**Table 8. MONTHS REMAINING OF ATAP LIFETIME LIMIT (For cases not exempt)**

| Months Remaining | Households | Percentage |
|---|---|---|
| Extended | 84 | 9.6% |
| 60th month | 6 | 0.7% |
| 1-12 months | 91 | 10.4% |
| 13-24 months | 126 | 14.4% |
| 25-36 months | 181 | 20.7% |
| 37-48 months | 186 | 21.3% |
| 49-59 months | 200 | 22.9% |
| Total | 874 | 100.0% |

**Table 9. ATAP CASES RECEIVING PASS-THRU**

| Households | Percent of ATAP Caseload |
|---|---|
| 316 | 20.36% |

**Table 10. CASES EXEMPT FROM ATAP LIFETIME LIMIT**

| | |
|---|---|
| Child-only cases statewide | 540 |
| Cases in Exempt Native Villages | 150 |
| Total unduplicated exempt cases | 660 |

**Table 11. ATAP FAMILY TYPE**

| Family Type | Househlds | Percentage |
|---|---|---|
| One Parent | 826 | 53.8% |
| Child Only | 540 | 35.2% |
| 3rd Trimester | 5 | 0.3% |
| Incapacitated | 20 | 1.3% |
| Two Parent | 143 | 9.3% |
| Total | 1,534 | 100.0% |

## Tribal TANF (NFAP) Information

**Table 12. TRIBAL TANF PROVIDED BY NFAPS**

| NFAP | Cases | Expenditures |
|---|---|---|
| Tanana Chiefs Conference | 72 | $43,555 |
| Central Council of Tlingit & Haida Indian Tribes | 166 | $334,472 |
| Association of Village Council Presidents | 58 | $42,386 |
| Bristol Bay Native Association | 37 | $22,772 |
| Cook Inlet Tribal Council | 217 | $142,685 |
| Kodiak Area Native Association | 16 | $10,566 |
| Maniilaq Association | 43 | $26,494 |

## GA Information

**Table 13. GA SUBTYPES**

| Subtype | Cases | Expenditures |
|---|---|---|
| Rent | 5 | $820 |
| Utilities | 3 | $319 |
| Food | 0 | $0 |
| Miscellaneous | 0 | $0 |
| Burial | 7 | $30,905 |
| Total | 15 | $32,044 |

## CC Information

**Table 14. FAMILIES RECEIVING CHILD CARE ASSISTANCE**

| Category | Expenditures | Families | Children |
|---|---|---|---|
| Pass I (TANF) | Unavail. | Unavail. | Unavail. |
| Pass II (Transition to Work) | Unavail. | Unavail. | Unavail. |
| Pass III (At Risk) | Unavail. | Unavail. | Unavail. |

## WIC Information

**Table 15. WIC PARTICIPATION TYPES**

| Participation Type | Recipients | Percentage Total Recipients |
|---|---|---|
| Infants | 2,482 | 17.3% |
| Children | 8,827 | 61.6% |
| Women - Pregnant | 1,035 | 7.2% |
| Women - Breastfeeding | 1,363 | 9.5% |
| Women - Other | 628 | 4.4% |

## HAP Information

**Table 16. HAP CASES WITH VULNERABLE INDIVIDUALS**

| Vulnerable People | Cases | Percent of HAP Caseload |
|---|---|---|
| Elderly (age 60+) | 251 | 51.5% |
| Disabled | 175 | 35.9% |
| Young children (0-6) | 43 | 8.8% |
| Total Unduplicated | 353 | 72.5% |

## SB Information

**Table 17. SENIORS BY AGE GROUP**

| Age Group | Seniors | Percentage |
|---|---|---|
| 65 to74 | 6,884 | 59.7% |
| 75 to 84 | 3,569 | 30.9% |
| 85 to 94 | 979 | 8.5% |
| 95 to 99 | 89 | 0.8% |
| 100+ | 15 | 0.1% |
| Total | 11,536 | 100.0% |

## ME Information

**Table 18. Medicaid Household Race**

| Race | Households | Percentage |
|---|---|---|
| White | 64,263 | 43.9% |
| AK Native | 42,257 | 28.9% |
| Asian | 6,856 | 4.7% |
| Black | 5,943 | 4.1% |
| Pac. Islander | 4,642 | 3.2% |
| Amer. Ind. | 1,399 | 1.0% |
| Hispanic | 3,082 | 2.1% |
| 2+ races | 10,240 | 7.0% |
| Not Given | 7,597 | 5.2% |
| Total | 146,279 | 100.0% |

## SNAP Information

**Table 19. Marriage Status Family Head**

| Status | Recipients | Percentage |
|---|---|---|
| Never Mar. | 22,852 | 53.8% |
| Married | 6,092 | 14.4% |
| Divorced | 6,387 | 15.0% |
| Separated | 3,614 | 8.5% |
| Widowed | 1,740 | 4.1% |
| Leg. Sep. | 36 | 0.1% |
| Not Given | 1,719 | 4.1% |
| Total | 42,440 | 100.0% |

## APA and IA Information

**Table 20. APA and IA HOUSEHOLD TYPE**

| Household Type | APA Cases | IA Cases | TOTAL |
|---|---|---|---|
| Individual, living independently | 12,473 | 107 | 12,580 |
| Couple both elig. living indpndntly | 901 | 0 | 901 |
| Couple one elig. living indpndntly | 477 | 5 | 482 |
| Individual in another's household | 654 | 1 | 655 |
| Couple both elig. another hsehold | 16 | 0 | 16 |
| Couple one elig. another hsehold | 8 | 1 | 9 |
| Individual, in assisted living | 912 | 3 | 915 |
| Couple both elig. in assisted living | 2 | 0 | 2 |
| Couple one elig. in assisted living | 1 | 0 | 1 |
| Nursing Home, personal needs | 43 | 0 | 43 |
| Total | 15,487 | 117 | 15,604 |

**Table 21. APA and IA CASELOADS BY PROGRAM SUBTYPE**

| Subtype | APA with SSI | APA w/o SSI | Total APA | Total IA | APA + IA Total |
|---|---|---|---|---|---|
| Aid to the Blind | 26 | 7 | 33 | 0 | 33 |
| Aid to the Disabled | 7,548 | 2,868 | 10,416 | 116 | 10,532 |
| Old Age Assistance | 2,345 | 2,693 | 5,038 | 1 | 5,039 |
| Total | 9,919 | 5,568 | 15,487 | 117 | 15,604 |

**Table 22. IA Cases Converted to APA**

| IA Cases Converted | Percentage | Ave. Months on IA |
|---|---|---|
| 3 | 2.29% | 27.67 |

# Exhibit 4

## Alaska DHSS – Division of Public Assistance
## Internal Performance Measures: Year-to-Date Performance

**Timely Application Actions – SFY23 YTD**

| Program | Percent Timely | Target | Difference |
|---|---|---|---|
| SNAP Expedite applications | 40.6% | 95.5% | -54.9% |
| SNAP Initial applications | 52.9% | 97.0% | -44.1% |
| SNAP Recert applications | 30.5% | 99.7% | -69.2% |
| ATAP Initial applications | 59.0% | 90.0% | -31.0% |
| ATAP Review applications | 82.6% | 98.0% | -15.4% |
| Medicaid Initial applications | 54.2% | 92.0% | -37.8% |
| Medicaid Review applications | 42.9% | 92.0% | -49.1% |
| APA Initial applications | 54.9% | 70.0% | -15.1% |
| APA Review applications | 42.9% | 96.0% | -53.1% |
| GA Initial applications | 75.2% | 99.7% | -24.5% |

**Application Decision Cycle Time – SFY23 YTD**

| Program | Average Days | Target | Difference |
|---|---|---|---|
| SNAP | 39 | 17 | -21.9% |
| ATAP | 29 | 19 | -9.7% |
| Medicaid without APA | 82 | 13 | -69.4% |
| Medicaid with APA | 85 | 52 | -32.6% |
| APA | 48 | 68 | 20.1% |
| SB | 26 | 30 | 4.0% |

**Timely Benefit Issuance – SFY23 YTD**

| Program | Percent Timely | Target | Difference |
|---|---|---|---|
| SNAP | 93.1% | 93.0% | 0.1% |
| Alaska Temporary Assistance Program | 89.1% | 91.0% | -1.9% |
| Medicaid | 96.8% | 94.0% | 2.8% |
| Adult Public Assistance | 99.0% | 97.0% | 2.0% |

**Work Services Performance Measures – SFY23 YTD**

| Performance Measure | Percent Meeting Measure | Target | Difference |
|---|---|---|---|
| Obtain employment within 90 days | 25.0% | 27.0% | -2.0% |
| Cases closed with earnings | 33.0% | 51.0% | -18.0% |
| Cases closed and not returned | 92.0% | 90.0% | 2.0% |
| All families work participation rate | 33.0% | 50.0% | -17.0% |
| Two-parent work participation rate | 40.0% | 90.0% | -50.0% |
| Job Development | 5.0% | 10.0% | -5.0% |

| | |
|---|---|
| *Timely Actions current through* | Nov-22 |
| *Application Decision Cycle Time current through* | Nov-22 |
| *Timely Benefit Issuance current through* | Oct-22 |
| *Work Services Perf Measures current through* | Oct-22 |

## Alaska DH&SS – Division of Public Assistance
## Internal Performance Measures: Historic Performace

**Timely Application Actions**

| Program | SFY18 | SFY19 | SFY20 | SFY21 | SFY22 | SFY23YTD |
|---|---|---|---|---|---|---|
| SNAP Expedite applications | 79.7% | 87.0% | 92.9% | 71.4% | 82.6% | 41% |
| SNAP Initial applications | 86.9% | 91.5% | 92.6% | 61.5% | 78.9% | 53% |
| SNAP Recert applications | 68.4% | 80.9% | 92.0% | 53.7% | 68.0% | 30% |
| ATAP Initial applications | 87.6% | 90.6% | 94.1% | 67.7% | 83.9% | 59% |
| ATAP Review applications | 88.0% | 91.6% | 94.9% | 65.1% | 81.3% | 83% |
| Medicaid Initial applications | 53.7% | 48.6% | 70.6% | 53.3% | 55.9% | 54% |
| Medicaid Review applications | 83.5% | 79.6% | 88.5% | 69.9% | 62.0% | 43% |
| APA Initial applications | 73.0% | 81.4% | 84.6% | 64.0% | 78.8% | 55% |
| APA Review applications | 89.5% | 93.7% | 97.5% | 60.7% | 81.9% | 43% |
| GA Initial applications | 91.0% | 95.1% | 96.5% | 77.4% | 88.3% | 75% |

**Application Decision Cycle Time**

| Program | SFY18 | SFY19 | SFY20 | SFY21 | SFY22 | SFY23YTD |
|---|---|---|---|---|---|---|
| SNAP | 18 | 12 | 9 | 20 | 25 | 39 |
| ATAP | 19 | 12 | 14 | 23 | 20 | 29 |
| Medicaid without APA | 169 | 171 | 34 | 29 | 57 | 82 |
| Medicaid with APA | 65 | 62 | 60 | 59 | 79 | 85 |
| APA | 43 | 29 | 31 | 24 | 36 | 48 |
| SB | - | 20 | 28 | 35 | 30 | 26 |

**Timely Ongoing Benefit Issuance**

| Program | SFY18 | SFY19 | SFY20 | SFY21 | SFY22 | SFY23 YTD |
|---|---|---|---|---|---|---|
| SNAP | 93.7% | 93.0% | 95.3% | 93.5% | 98.4% | 93.1% |
| ATAP | 91.8% | 92.2% | 92.4% | 91.3% | 94.7% | 89.1% |
| Medicaid | 93.8% | 94.6% | 95.5% | 94.4% | 96.9% | 96.8% |
| APA | 97.2% | 97.7% | 97.9% | 97.1% | 98.9% | 99.0% |

**Work Services Performance Measures**

| Performance Measure | SFY18 | SFY19 | SFY20 | SFY21 | SFY22 | SFY23 YTD |
|---|---|---|---|---|---|---|
| Obtain employment within 90 days | 32% | 31% | 27% | 21% | 23.0% | 25% |
| Cases closed with earnings | 44% | 36% | 37% | 27% | 25.0% | 33% |
| Cases closed and not returned | 85% | 83% | 83% | 85% | 95.0% | 92% |
| All families work participation rate | 42% | 49% | 43% | 32% | 29.0% | 33% |
| Two-parent work participation rate | 51% | 62% | 56% | 42% | 35.0% | 40% |
| Job Development[#] | - | 14% | 14% | 7% | 4.0% | 5% |

[#] *This performance measure started in SFY19*

**Timely Application Actions Performance by Program and Application Type**




| | SNAP Expedite | SNAP Initial | SNAP Recert | ATAP Initial | ATAP Review | ME Initial | ME Review | APA Initial | APA Review | GA Initial |
|---|---|---|---|---|---|---|---|---|---|---|
| SFY19 | 87.0% | 91.5% | 80.9% | 90.6% | 91.6% | 48.6% | 79.6% | 81.4% | 93.7% | 95.1% |
| SFY20 | 92.9% | 92.6% | 92.0% | 94.1% | 94.9% | 70.6% | 88.5% | 84.6% | 97.5% | 96.5% |
| SFY21 | 71.4% | 61.5% | 53.7% | 67.7% | 65.1% | 53.3% | 69.9% | 64.0% | 60.7% | 77.4% |
| SFY22 | 82.6% | 78.9% | 68.0% | 83.9% | 81.3% | 55.9% | 62.0% | 78.8% | 81.9% | 88.3% |
| SFY23 YTD | 40.6% | 52.9% | 30.5% | 59.0% | 82.6% | 54.2% | 42.9% | 54.9% | 42.9% | 75.2% |
| Target | 95.5% | 97.0% | 99.7% | 90.0% | 98.0% | 92.0% | 92.0% | 70.0% | 96.0% | 99.7% |

Prepared 12/22/2022

## Application Cycle Time Performance




| | SNAP | ATAP | ME w/o APA | ME with APA | APA | SB |
|---|---|---|---|---|---|---|
| SFY19 | 12 | 12 | 171 | 62 | 29 | 20 |
| SFY20 | 9 | 14 | 34 | 60 | 31 | 28 |
| SFY21 | 20 | 23 | 29 | 59 | 24 | 35 |
| SFY22 | 25 | 20 | 57 | 79 | 36 | 30 |
| SFY23 YTD | 39 | 29 | 82 | 85 | 48 | 26 |
| Target | 17 | 19 | 13 | 52 | 68 | 30 |

Prepared 12/22/2022

## Timely Benefit Issuance Performance by Program




| | SNAP | ATAP | Medicaid | APA |
|---|---|---|---|---|
| SFY19 | 93.0% | 92.2% | 94.6% | 97.7% |
| SFY20 | 95.3% | 92.4% | 95.5% | 97.9% |
| SFY21 | 93.5% | 91.3% | 94.4% | 97.1% |
| SFY22 | 98.4% | 94.7% | 96.9% | 98.9% |
| SFY23 YTD | 93.1% | 89.1% | 96.8% | 99.0% |
| Target | 93.0% | 91.0% | 94.0% | 97.0% |

Prepared 12/22/2022

## Work Services Performance Measure




| | Employed within 90 days | Cases closed with earnings | Cases closed and not returned | All families WPR | Two-parent WPR | Job Development |
|---|---|---|---|---|---|---|
| SFY19 | 31.0% | 36.0% | 83.0% | 49.0% | 62.0% | 14.0% |
| SFY20 | 27.0% | 37.0% | 83.0% | 43.0% | 56.0% | 14.0% |
| SFY21 | 21.0% | 27.0% | 85.0% | 32.0% | 42.0% | 7.0% |
| SFY22 | 23.0% | 25.0% | 95.0% | 29.0% | 35.0% | 4.0% |
| SFY23 YTD | 25.0% | 33.0% | 92.0% | 33.0% | 40.0% | 5.0% |
| Target | 27.0% | 51.0% | 90.0% | 50.0% | 90.0% | 10.0% |

Prepared 12/22/2022

# Exhibit 5

# LANGUAGE SPOKEN AT HOME

**Note: This is a modified view of the original table produced by the U.S. Census Bureau. This download or printed version may have missing information from the original table.**

| | Alaska | | |
|---|---|---|---|
| | Total | | Percent |
| Label | Estimate | Margin of Error | Estimate |
| Population 5 years and over | 686,475 | ±1,366 | (X) |
| Speak only English | 577,673 | ±6,122 | 84.2% |
| Speak a language other than English | 108,802 | ±5,889 | 15.8% |
| SPEAK A LANGUAGE OTHER THAN ENGLISH | | | |
| Spanish | 23,802 | ±3,061 | 3.5% |
| 5 to 17 years old | 4,035 | ±1,757 | 0.6% |
| 18 to 64 years old | 17,019 | ±2,196 | 2.5% |
| 65 years old and over | 2,748 | ±855 | 0.4% |
| Other Indo-European languages | 13,975 | ±2,660 | 2.0% |
| 5 to 17 years old | 1,530 | ±1,306 | 0.2% |
| 18 to 64 years old | 10,824 | ±2,193 | 1.6% |
| 65 years old and over | 1,621 | ±613 | 0.2% |
| Asian and Pacific Island languages | 42,590 | ±3,654 | 6.2% |
| 5 to 17 years old | 5,231 | ±1,390 | 0.8% |
| 18 to 64 years old | 31,021 | ±2,917 | 4.5% |
| 65 years old and over | 6,338 | ±1,143 | 0.9% |

## Table Notes

# LANGUAGE SPOKEN AT HOME

**Year:** 2021

**Estimates:** 1-Year

**Table ID:** S1601

Although the American Community Survey (ACS) produces population, demographic and housing unit estimates, it is the Census Bureau's Population Estimates Program that produces and disseminates the official estimates of the population for the nation, states, counties, cities, and towns and estimates of housing units for states and counties.

Supporting documentation on code lists, subject definitions, data accuracy, and statistical testing can be found on the American Community Survey website in the Technical Documentation section.

Sample size and data quality measures (including coverage rates, allocation rates, and response rates) can be found on the American Community Survey website in the Methodology section.

Source: U.S. Census Bureau, 2021 American Community Survey 1-Year Estimates

Data are based on a sample and are subject to sampling variability. The degree of uncertainty for an estimate arising from sampling variability is represented through the use of a margin of error. The value shown here is the 90 percent margin of error. The margin of error can be interpreted roughly as providing a 90 percent probability that the interval defined by the estimate minus the margin of error and the estimate plus the margin of error (the lower and upper confidence bounds) contains the true value. In addition to sampling variability, the ACS estimates are subject to nonsampling error (for a discussion of nonsampling variability, see ACS Technical Documentation). The effect of nonsampling error is not represented in these tables.

The 2021 American Community Survey (ACS) data generally reflect the March 2020 Office of Management and Budget (OMB) delineations of metropolitan and micropolitan statistical areas. In certain instances the names, codes, and boundaries of the principal cities shown in ACS tables may differ from the OMB delineations due to differences in the effective dates of the geographic entities.

Estimates of urban and rural populations, housing units, and characteristics reflect boundaries of urban areas defined based on Census 2010 data. As a result, data for urban and rural areas from the ACS do not necessarily reflect the results of ongoing urbanization.

Explanation of Symbols:

-

The estimate could not be computed because there were an insufficient number of sample observations. For a ratio of medians estimate, one or both of the median estimates falls in the lowest interval or highest interval of an open-ended distribution. For a 5-year median estimate, the margin of error associated with a median was larger than the median itself.

N

The estimate or margin of error cannot be displayed because there were an insufficient number of sample cases in the selected geographic area.

(X)

The estimate or margin of error is not applicable or not available.

median-

The median falls in the lowest interval of an open-ended distribution (for example "2,500-")

median+

The median falls in the highest interval of an open-ended distribution (for example "250,000+").

**

The margin of error could not be computed because there were an insufficient number of sample observations.

***

The margin of error could not be computed because the median falls in the lowest interval or highest interval of an open-ended distribution.

*****

A margin of error is not appropriate because the corresponding estimate is controlled to an independent population or housing estimate. Effectively, the corresponding estimate has no sampling error and the margin of error may be treated as zero.

# Exhibit 6







**Legend**

- State Boundaries
- Other Countries
- Water

**BOROUGHS - Total LEP for Less Than Very Well (ACS2015 5 YR)**

- <=1K
- >1K AND <=10K
- >10K AND <=50K
- >50K AND <=100K
- >100K AND <=250K
- >250K AND <=750K
- >750K
- No LEP

Prepared by
U.S. Department of Justice
Civil Rights Division
Washington D.C. 20530

*Pie Charts represent Counties with the highest percent of LEP individuals by languages spoken.

Source: U.S. Census 2011-2015 American Community Survey Data
Table B16001
LANGUAGE SPOKEN AT HOME
BY ABILITY TO SPEAK ENGLISH FOR THE POPULATION 5 YEARS AND OVER.
The estimates from the ACS are based on a sample survey and hence are subject to sampling error.

# Exhibit 7

# Educating All Students for Success in Life

educates nearly **43,500** students

encompasses nearly **2,000** square miles

has more than **130** schools and programs

## Building the ideal student experience

Student learning, achievement, and lifelong success are the focus of the Anchorage School District. Within the District, families have many academic choices to meet a variety of student needs. Equitable access and opportunity are keys to building a successful learning path for each student. ASD celebrates our differences and is committed to inclusion of all our community's languages, cultures, and perspectives.

Crossroads of the World

This map was made with Google My Maps. Create your own.




## Non-English languages spoken

Most ASD families — 80 percent — speak English at home. The remaining 20 percent speak 110 languages.

Top 5 languages spoken at ASD after English K-12, 2020:

- **Spanish: 1758**

- **Hmong: 1203**
- **Samoan: 1083**
- **Filipino: 965**
- **Korean: 181**

# Student diversity

A diverse student population provides students the ability to interact with peers from many different backgrounds, expanding their knowledge of other cultures and preparing for life in a global society. Anchorage has the some of the most diverse schools in the U.S. at all levels.

# Race and ethnicity

Minority students comprise more than 50 percent of the student population (43,500 students - Oct 2021).
African American: 4.9%
Alaska Native/American Indian: 8.5%
Biracial/Multiracial: 15.9%
Hispanic: 11.8%
Asian/Native Hawaiian/Pacific Islander: 18.5%
Caucasian: 40%

Want to know more about our enrollment? Click here to see the data dashboard.

# Increasing the Graduation Rate

Over the last 10 years, the graduation rate for Anchorage students has increased. Offering students maximum academic choices, high school graduates enjoy personal benefits such as better job opportunities, a sense of pride, college opportunities, and higher wages. According to United Way of Anchorage, ASD's partner in 90 by 2020, our community benefits by having better overall individual health, lower criminal activity, and lower welfare receipt.

# Demographics

The Demographics-GIS Services section contains enrollment numbers, race and ethnicity reports, capital improvement plans and school boundary information.

Demographics-GIS Services »

# Data Dashboard

At the Anchorage School Board's direction, the District created a public dashboard featuring data on student academic status, attendance, on track for graduation, and behavior/discipline.

Launch the Dashboard »

Last Modified on December 8, 2021

# Exhibit 8

# Languages



## Dena'ina

### Population and Speaker Statistics

The following table gives estimates of the population of speakers of Alaska Native languages in reference to the relevant community population. Numbers such as these should be interpreted with caution. As Krauss notes:

> *Arriving at statistics of number of speakers of indigenous languages out of total relevant population is complicated by two types of major factors. The first type is of course in the determination of who is a speaker, and the second is in counting who is a member of the indigenous community. (2007:408)*

More relevant to those wishing to understand the status of Alaska Native languages are the current and recent efforts at language documentation and revitalization.

The column labeled EGIDS refers to the Expanded Graded Intergenerational Disruption Scale, an attempt to measure language vitality by assessing how the language is used. The Alaska Native Language Center did not participate in these assessment and does not endorse them. They are provided as useful reference metrics. Because EGIDS has been applied across it can be used to compare language vitality in Alaska with that of other indigenous languages across the world. More information about EGIDS and language endangerment can be found on the Ethnologue website.

### Learn More:



Alaska is home to at least twenty distinct indigenous languages. More than just dialectal variants, these different languages reflect the diverse cultural heritage of Alaska's Native peoples. For more information about particular languages, click below.

Ahtna

Unangam Tunuu / Aleut

Alutiiq / Sugpiaq

Dena'ina

Deg Xinag

Eyak

Gwich'in

Haida

Han

Holikachuk

Inupiaq

Koyukon

Tanana

Tanacross

Tlingit

Tsimshian

Upper Kuskokwim

Upper Tanana

Central Alaskan Yup'ik

Siberian Yupik

| Language Family | Language Name | Population | Speakers | EGIDS | Populations and Speakers |
| --- | --- | --- | --- | --- | --- |
| **Eskimo-Aleut** | Ungangan (Aleut) | 2,300 | 150 | 7 (shifting) | |
| | (*Russia) | 200 | 5 | | |
| | Sugpiaq (Alutiiq) | 3,500 | 200 | 7 (shifting) | |
| | Central Yup'ik | 25,000 | 10,400 | 6b (threatened) | |
| | Siberian Yupik | 1,400 | 1,000 | 4 (educational) | |
| | (*Russia) | 900 | 300 | | |
| | Inupiaq (Inuit) | 15,700 | 2,144 | 6b (threatened) | |
| | (*Canada) | 30,500 | 24,500 | | |
| | (Greenland) | 47,000 | 47,000 | | |
| **Tsimshianic** | Coast Tsimshian | 1,400 | 30 | 7 (shifting) | |
| | (Canada) | 3,200 | <400 | | |
| | Nisga-Gitksan | <100 | 0? | | |
| | (Canada) | 5,400 | <1,000 | | |
| **Haida** | Northern Haida | 650 | 10 | 7 (shifting) | |
| | (Canada) | 1,100 | 30 | | |

| Language Family | Language Name | Population | Speakers | EGIDS |
|---|---|---|---|---|
| Athabascan-Eyak-Tlingit | Tlingit[†] | 10,000 | 175 | 8a (moribund) |
| | (Canada) | 1,000 | 25 | |
| | Eyak | | 0 | 9 (dormant) |
| | Ahtna | 650 | 25 | 8a (moribund) |
| | Dena'ina | 1,000 | 50 | 8a (moribund) |
| | Deg Xinag | 250 | 14 | 8a (moribund) |
| | Holikachuk | 180 | 5 | 8b (nearly extinct) |
| | Koyukon | 2,300 | 150 | 8a (moribund) |
| | Upper Kuskokwim | 100 | 25 | 8a (moribund) |
| | (Lower) Tanana | 400 | 25 | 8a (moribund) |
| | Tanacross | 200 | 50 | 8a (moribund) |
| | Upper Tanana | 300 | 55 | 7 (shifting) |
| | Han | 60 | 12 | 8b (nearly extinct) |
| | (Canada) | 250 | 7 | |
| | Gwich'in | 1,000 | 150 | 7 (shifting) |
| | (Canada) | 1,900 | 400 | |

Source: Krauss, Michael E. 2007. Native languages of Alaska. In: *The Vanishing Voices of the Pacific Rim*, ed. by Osahito Miyaoko, Osamu Sakiyama, and Michael E. Krauss. Oxford: Oxford University Press. (Table 21.1, page 408)

*The non-Alaskan numbers in the table come from the earlier work of Krauss 1997.

†Tlingit updated November 2013 (Twitchell, p.c.).

Contact us CRCD Campuses CRCD Departments CRCD Academics For Faculty & S

- Bristol Bay
- Chukchi
- CRCD Academic Programs
- Faculty & staff support

**College of Rural and Community Development**
uaf-crcd@alaska.edu
907-474-7143
1-866-478-2721
907-474-5824
8 a.m.-5 p.m., M-F

**Physical address:**
4th floor Brooks Building
1736 Tanana Loop

**Mailing address:**
P.O. Box 756500
Fairbanks, AK 99775



*The College of Rural and Community Development acknowledges the Alaska Native nations upon whose unceded traditional lands we are located. Our offices and facilities are located on Troth Yeddha', a traditional gathering place for the Lower Tanana Dene. We acknowledge and honor the ancestral and present land stewardship and place-based knowledge of the peoples of all the places where we are our partners work.*

Give to CRCD

#NanookNation

The University of Alaska Fairbanks is accredited by the Northwest Commission on Colleges and Universities.
UAF is an AA/EO employer and educational institution and prohibits illegal discrimination against any individual. Learn more about UA's notice of nondiscrimination.
UA is committed to providing accessible websites. Learn more about UA's notice of web accessibility.
Privacy Statement

For questions or comments regarding this page, contact uaf-web@alaska.edu | © UA

# Exhibit 9

ALASKA COURT SYSTEM
LANGUAGE ACCESS PLAN
January 2020

## I. Legal Background

The obligation to provide services to persons of limited English proficiency (LEP)[1] in the court system arises from the constitutional requirements of equal protection and due process of law, as well as Title VI of the Civil Rights Act of 1964, as amended (Title VI), 42 U.S.C. § 2000d, and the Omnibus Crime Control and Safe Streets Act of 1968, as amended (Safe Streets Act), 42 U.S.C. § 3789d(c)(1). Title VI of the Safe Streets Act prohibits recipients of Federal financial assistance from discriminating on the basis of national origin (among other bases) in funded programs or activities. As a result, and as explained by the United States Department of Justice (DOJ) regulations implementing Title VI and the Safe Streets Act, recipients of Federal financial assistance have a responsibility to ensure meaningful access to their programs and activities by LEP persons.

Executive Order 13166 directs every Federal agency that provides financial assistance to recipients to publish guidance about how those recipients can ensure meaningful access to their programs and activities by individuals who, as a result of national origin, are LEP. Executive Order No. 13166, 65 Fed. Reg. 50121 (August 16, 2000). Pursuant to Executive Order 13166, on June 18, 2002, DOJ published a guidance document for recipients regarding LEP issues. *Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons,* 67 Fed. Reg. 41455 (June 18, 2002) (DOJ Guidance). Courts receiving federal financial assistance are specifically addressed by the DOJ Guidance.

Funding recipients must take reasonable steps to ensure that LEP persons have meaningful access to their programs and activities. To satisfy this standard, the DOJ Guidance emphasizes the importance of balancing the following four factors: 1) the number or proportion of LEP persons served or encountered in the eligible service population; 2) the frequency with which LEP individuals come in contact with the program; 3) the nature and importance of the program, activity, or service provided by the program; and 4) the resources available to the recipient and costs. The DOJ Guidance further notes that recipients should develop a written plan to address the identified needs of the LEP populations they serve.

In response, the Alaska Court System (ACS) developed this Language Access Plan (LAP) to document the reasonable steps it is taking to ensure that all individuals have meaningful access to the court system, regardless of their national origin or limited ability to read, write, speak, or understand English. The LAP describes existing and contemplated programs and policies that provide language services to LEP persons.

## II. Historical Background

In 1997, the Alaska Supreme Court Fairness and Access Committee recommended four initiatives to improve language access in the courts:

1. The Alaska Court System should train judicial officers on the appointment and supervision of language interpreters in criminal and civil proceedings.

[1] LEP individuals are person who do not speak English as their primary language and who have a limited ability to read, write, speak, or understand English.

2. The Alaska Court System should recruit and train local interpreters of commonly used languages.

3. The Alaska Supreme Court should promulgate new court rules establishing qualifications and ethical standards for language interpreters in criminal and civil proceedings. The new rules should also govern appointment and payment of interpreters.

4. The Alaska Court System should work with justice agencies to determine the most efficient way to hire and pay for interpreters in civil and criminal proceedings.[2]

To implement these recommendations, the ACS worked with the National Center for State Courts and the Consortium for State Court Interpreter Certification (now the Consortium for Language Access in the Courts) to develop an interpreter training program. In addition, court administration embarked on a series of initiatives to:

- train professional interpreters;
- educate judicial officers, court staff, and the legal community on the role of interpreters;
- develop a statewide system to schedule and monitor interpreting services; and
- revise policies and court rules.

## III. LEP Population Needs Assessment

U.S. Census information published in 2011 (Table 4. Language Spoken at home and English Speaking Ability by State at www.census.gov/acs/www/), reports the following for Alaska.

| | Number | Percent |
|---|---|---|
| Population 5 years and over: | 668,687 | |
| Speak a language other than English at home: | 111,319 | 16.6 |
| Percent of the above's English-speaking ability: | | |
| Speak English "very well" | | 69.2 |
| Speak English "well" | | 20.9 |
| Speak English "not well" | | 8.6 |
| Speak English "not at all" | | 1.3 |

The Census data also reveals that Alaska's Pacific Islander population more than doubled over the last decade.

The Alaska Department of Labor and Workforce Development (DOLWD) reports that Alaska has the most diverse communities in the United States and more than 100 languages are spoken in local

[2] Alaska Supreme Court Advisory Committee on Fairness and Access, October 31, 1997

school districts. According to the DOLWD, more than 50,000 foreign-born "immigrants residing in Alaska, have a higher English proficiency than immigrants in the nation as a whole." [3]

Among Alaska immigrants older than five, four out of five speak a language other than English at home. About 60 percent speak an Asian or Pacific Island language and around 18 percent speak Spanish. Around 82 percent of Alaska immigrants say they speak English at least "well"; nationally the rate is around 70 percent. Only 4 percent of Alaskan immigrants speak no English at all, compared to 10 percent nationally. [4]

The Anchorage School District (ASD), the largest district in the state, reports that most ASD families—80 percent—speak English at home. The remaining 20 percent speak 110 languages. The top four languages spoken by those students are:

1. Spanish
2. Hmong
3. Samoan
4. Filipino (Tagalog)
5. Korean

Of course, immigration is not the only reason that English is not some Alaska residents' first language. According to figures assembled by the University of Alaska Fairbanks, there are about 10,000 Native speakers of Yup'ik in Alaska. It is the primary language for many residents in villages along the Yukon-Kuskokwim region.

In 2018 fiscal year, there were over 1,100 requests for interpreters, and interpretation or translation was needed in over forty different languages. The requests came in all case types—criminal, civil, child-in-need-of-aid, probate, delinquency, minor offenses, and others.[5]

In FY 2018, Spanish was the language most frequently requested. Other language most needed include Samoan, Korean, Hmong, Tagalog, Russian, and Arabic. There are also requests for interpreters in Alaska Native languages. In the 2018 fiscal year, Yup'ik interpreters were provided thirty-seven times and Inupiat, once.

---

[3] Alaska Department of Labor and Workforce Development Report: *Foreign-Born Alaskans: Where they originated and how immigration has shaped the state,* Eric Sandberg, March 2015, http://laborstats.alaska.gov/trends/mar15art1.pdf

[4] *Id.*

[5] Alaska Court System: Year in Review. Information located at http://public.courts.alaska.gov/web/admin/docs/fy18.pdf

**Use of Interpreters by the Court System, FY18**
**By Language**

| Language | Number of Requests | Language | Number of Requests | Language | Number of Requests |
|---|---|---|---|---|---|
| Spanish | 415 | Mandarin | 11 | Cambodian | 3 |
| Samoan | 116 | Cebuano | 11 | Bulgarian | 2 |
| Korean | 77 | Thai | 10 | Filipino | 2 |
| Hmong | 69 | Visayan | 9 | Triqui | 2 |
| Tagalog | 65 | Neur | 8 | Urdu | 2 |
| Russian | 45 | Ukrainian | 6 | Inupiat | 1 |
| Arabic | 40 | Amharic | 5 | Kinyarwanda | 1 |
| Somali | 37 | Chuukese | 5 | Mongolian | 1 |
| Yup'ik | 37 | Ilocano | 5 | Portuguese | 1 |
| Vietnamese | 33 | Tigrinya | 5 | Sudanese | 1 |
| Laotian | 27 | Tongan | 5 | Swedish | 1 |
| French | 16 | Cantonese | 4 | | |
| Swahili | 16 | Chamorro | 4 | | |
| Albanian | 15 | Panjabi | 4 | | |
| | | Romanian | 4 | Interpreters are provided for customer service events | |

**By Case Type**

| Case Type | Number of Requests |
|---|---|
| Criminal | 533 |
| Civil | 310 |
| CINA | 66 |
| Minor offense | 55 |
| Probate | 40 |
| Delinquency | 31 |
| Small Claims | 10 |
| Underage Consuming | 8 |
| No case type recorded | 20 |
| Translation | 6 |

## IV. The Court Interpreter Program

The court interpreter program is managed by the Language Services Director and the Interpreter Services Coordinator. The program develops and implements policies and procedures regarding interpreters and the provision of language services generally and manages their day-to-day administration. Additionally, the Interpreter Services Coordinator is responsible for the recruitment, testing, and certification of interpreter candidates, and for the maintenance of a registry of qualified

interpreters contracted to provide in-person, telephonic, and video remote interpreting for courtroom proceedings.[6]

### A. Court Interpreter Qualifications

The Alaska Court System has two spoken language interpreter categories: 1) Certified Interpreter; and 2) Qualified Interpreter. Interpreters in these two categories have:

- Completed the orientation program;
- Passed an oral proficiency inventory ;
- Passed a criminal background check;
- Passed the National Center for State Courts Written Proficiency Examination; and
- Agreed to abide by the Code of Professional Responsibility for Interpreters in the Judiciary.

In addition to the above requirements, a certified interpreter has passed the NCSC oral performance examination in his/her particular language with a minimum score of 70% in each of the exam's three sections: simultaneous, consecutive, and sight translation.

### B. Court Interpreters

ACS schedules qualified and approved interpreters for courtroom hearings and other events using these resources:

- Alaska Language Interpreter Center;[7]
- National Center for State Courts Interpreter Database;
- Freelance contracted interpreters;
- Staff court interpreters from other jurisdictions; and
- National vendors providing legally trained interpreters.

Due to the difficulty of obtaining qualified interpreters in Yup'ik and Samoan, bilingual court employees were trained and approved to interpret in the courtroom in limited matters until a more qualified Yup'ik or Samoan interpreter is unavailable.

## V. Services Provided to LEP Individuals

Judicial officers and court staff are trained to recognize the needs of LEP individuals and to err on the side of caution in determining when to provide interpreting services, given the importance of ensuring that all participants have meaningful access to the judicial process. The court provides interpreting services when a person involved in a court proceeding, including defendants, victims, or

---

[6] Information on the Alaska Court System's Interpreter Program is available on its homepage at http://www.courts.alaska.gov/language/index.htm

[7] http://www.akiip.org/language-interpreter-center/ The Language Interpreter Center provides trained and certified interpreters for medical, legal, and social service agencies.

witnesses, does not read, write, speak, or understand English sufficiently to participate in the proceedings. The court provides interpreters for all case types.

### A. Interpreter Assistance during Court Proceedings and Court Services

In 2016, the Alaska Supreme Court amended *Administrative Rule 6: Interpreter Services in Court Proceedings for Persons with* Limited *English Proficiency* to expand the services ACS provides. Effective October 15, 2016, the court system provides and pays for the necessary services of an interpreter during court proceedings for all parties, witnesses, and victims with limited English proficiency, regardless of ability to pay or representation status. The court also provides interpreters for parents of juveniles in delinquency cases, and for out-of-home care providers, tribal representatives, and grandparents in Children in Need of Aid (CINA) proceedings.

In providing interpreting assistance, the court system strives to schedule the most qualified interpreter available. Interpreters appear in-person, telephonically, or by video remote technology. The Statewide Interpreter Services Coordinator schedules qualified interpreters through the Language Interpreter Center, Language Link (a national telephonic vendor), freelance interpreters, and interpreters listed on the National Center for State Courts Interpreter Database.

Customer service staff has access to Language Link telephonic service at any point of contact with an LEP customer.

### B. Other Interpreting Resources

In addition to courtroom interpreters, the court system provides additional resources to the courts and customer service counters to communicate with LEP persons:

1. "I Speak" Poster

If a person appears at a court and it is unclear what language the person speaks, court personnel use the "I Speak" poster to identify the language spoken. [8] The "I Speak" poster contains the sentence "I speak (language)" translated from English into several foreign languages. The poster also features a map showing Alaska Native languages. LEP persons can point to their language so that an interpreter may be requested. The I Speak poster is available at http://www.courts.alaska.gov/language/poster-flags.pdf .

[8] "I Speak" is a publication of the Ohio Criminal Justice Services. The Alaska Court System also provides country flags to assist LEP persons who are unable to read or write. These and other resources are available at http://www.courts.alaska.gov/language/info-attorneys.htm and http://www.courts.alaska.gov/language/poster-flags.pdf


Arabic
انا اتحدث اللغة العربية
Bosnian
Ja govorim bosanski
Catalan
Parlo català
Croatian
Govorim hrvatski
Czech
Mluvím česky
Dutch
Ik spreek het Nederlands
French
Je parle français
German
Ich spreche Deutsch
Gujarati
હું ગુજરાતી બોલું છું
Haitian Creole
M pale kreyòl ayisyen
Hebrew
אני מדבר עברית
Hindi
मैं हिंदी बोलता हूं ।
Hmong
Kuv hais lus Hmoob
I speak...
Hungarian
Beszélek magyarul
Ilocano
Agsasaoak ti Ilokano
Italian
Parlo italiano
Korean
한국어 합니다
Kurdish
man Kurdît zeanim
Kurmanci
man Kurmaanjî zaanim
Latvian
Es runāju latviski
Lithuanian
Aš kalbu lietuviškai
Mam
Ban chiyola tq tiyol mam
Norwegian
Jeg snakker norsk
Persian
من فارسی صحبت می کنم
Polish
Mówię po polsku
Portuguese
Eu falo português do Brasil
Eu falo português de Portugal
Punjabi
Quiche
Romanian
Vorbesc românește
Slovak
Hovorím po slovensky
Somali
Waxaan ku hadlaa af-Soomaali
Spanish
Yo hablo español
Swahili
Ninaongea Kiswahili
Swedish
Jag talar svenska
Tagalog
Marunong akong mag-Tagalog
Thai
พูดภาษาไทย
Turkish
Türkçe konuşurum
Ukrainian
Urdu
Vietnamese
Tôi nói tiếng Việt
Welsh
Dw'n siarad
Xhosa
Ndithetha isiXhosa
Yoruba
Mo nso Yoruba
Zulu
Ngiyasikhuluma isiZulu
www.eeoc.gov
(800) 669-4000
TTY (800) 669-6820




2. Telephonic language interpretation

In addition to needing interpreters during court proceedings, persons coming to the court may require language assistance for other purposes, such as finding case information, information on court forms, or where to go for a particular courtroom event. To aid in providing such assistance, court personnel have access to a 24/7 telephonic service.

## VI. Training and Technical Assistance Regarding Provision of Languages Services

### A. Resources Provided to Judges

The Administrative Office's language service staff provides ongoing training for judicial officers on a one-on-one basis and at annual statewide judicial conferences. The Language Services Director and the Interpreter Services Coordinator are available to participate in prep-trial hearings about interpreter logistics to educate the parties and attorneys, provide information about interpreter ethics and best practices. These hearings are often used to ensure the LEP individual and the interpreter understand each other before the substantive hearing or trial occurs. The judge may use the hearing to conduct a voir dire of the interpreter's qualifications.

Other resources provided for judicial officers include:

- Website Frequently Asked Questions (FAQs) about Language Interpreters in the Courtroom
- Administrative Bulletin No. 82: Interpreter Fees
- Code of Professional Responsibility for Court Interpreters
- I Speak: Poster with Flags
- Interpreting Terminology
- Language Identification Flashcards
- Modes of Interpreting
- Policy for Providing Interpreter (Supreme Court Order 1896)
- Statewide Arraignment Scripts in Hmong, Spanish, Yup'ik, Russian, Korean, Tagalog
- Questions for Qualifying Non-Certified Interpreters
- Tips for Working with Interpreters in the Courtroom
- Bench Card: Guide to Proceedings Involving Interpreters and Persons of Limited English Proficiency
- Guide to Standards for Interpreted Proceedings
- Judges' Portal (New Mexico Center for Language Access)
- Sample Instructions for a Murder Trial
- National Center for State Courts (NCSC) Video Remote Resource Center

### B. Information Provided to Attorneys

The Administrative Office routinely updates information for attorneys on how the Alaska Court System provides language services. These resources are available on the court system's home page at http://www.courts.alaska.gov/language/info-attorneys.htm . Attorneys also have direct access to the court system's Interpreter Services Coordinator, who schedules interpreter services statewide.

### C. Information Provided to Court Personnel

The court system provides annual training to clerks of court at the statewide clerks' conference. Periodic updates are provided at monthly clerk of court teleconferences.

In addition, the following resources are provided for clerks of court and court personnel:

- Bench Card: Guide to Proceedings Involving Interpreters and Persons of Limited English Proficiency
- Language Services in the Courtroom
- I Speak Poster and Cards
- CTS LanguageLink Services
- Scheduling an Interpreter Through CourtView
- Modes of Interpreting in Courtroom Proceedings
- The Code of Professional Responsibility for Interpreters
- Policy for Providing Interpreter (Supreme Court Order No. 1896)

## V. Initiatives Implemented to Improve Language Access Services Statewide

### 1. Statewide Interpreter Services Coordinator

The Alaska Court System employs a full-time statewide Interpreter Services Coordinator who trains interpreter candidates and is responsible for the scheduling and payment of their services. The Interpreter Services Coordinator develops and maintains a statewide scheduling system using CourtView, the case management system (CMS). The Coordinator identifies the best method to provide interpreter services and educates judicial officers and attorneys about best practices.

### 2. CourtView

CourtView, the court's statewide case management system, provides a tool for trial courts to record an LEP person's language needs so that interpreter services can be provided more efficiently and in multiple cases with which the LEP individual may be involved. In the internal/non-public version of Courtview, the Interpreter Services Coordinator also documents the method to provide services and information specific to the interpreter so any court employee or judge can access the information and be apprised about the scheduled interpreter event.

CourtView Screen showing language dropdown box:



3. Addressing the Need for Yup'ik Interpreters

To meet the needs of the 10,000 Native speakers of Yup'ik in Alaska, the court system recently produced a Yup'ik language arraignment video that explains for defendants their rights in the criminal process, including the right to a lawyer, the nature of criminal pleas, bail, and extradition.

To further address this need, a Yup'ik/English speaking court employee completed the training and testing required for providing interpreting for courtroom events. The employee is available in an emergency and until a more experienced Yup'ik interpreter is scheduled.

Work has begun to develop a legal glossary in Yup'ik to provide accepted terminology. Not only is the structure of the language very different than English, but many words used in legal proceedings have no analogous term Yup'ik so the need exists to create an acceptable way to describe accurately the meanings.

To increase the number of trained Yup'ik interpreters, court administration will appoint a Bethel-based steering committee tasked with determining a way to train and qualify Yup'ik speakers for court interpreting. The committee will be chaired by a judicial officer familiar with the needs of the Bethel Region and be comprised of individuals from the legal entities and the local Native groups. Court system personnel will serve as a resource to the steering committee.

4. Administrative Rule 6

Under Rule 6, the court system provides and pays for the necessary services of an interpreter during court proceedings for all parties, witnesses, and victims with limited English proficiency, regardless of ability to pay or representation status. The court system also provides interpreters for the parents of juveniles in delinquency cases, and for out-of-home care providers, tribal representatives, and grandparents in CINA proceedings.

5. Administrative Bulletin No. 82: Interpreter Fees

Administrative Bulleting No. 82 outlines the court system's payment policies and rates for interpreters contracted to provide interpreter services. The interpreter services coordinator manages the scheduling and payment of interpreters for the Alaska Court System.

6. Tracking of Interpreting Needs

Systems are in place to track interpreter service needs. The interpreter services coordinator works collaboratively with the fiscal department to track language needs, interpreting costs, case type, and delivery methods. Quarterly statistics are also provided by district and court location.

7. National Database of Interpreters

The National Center for State Courts provides a database of qualified interpreters available to state courts. The Alaska Court System uses this database to meet its diverse interpreting

needs. Additionally, the Alaska Court System has contracted with several interpreters who interpreter in commonly needed languages and trained many of them to use the Alaska Court System's video remote system. This enables the court system to provide qualified state court interpreters from other jurisdictions.

8. Online Interpreter Training Program

The Alaska Court System maintains an online interpreter orientation program. This enables the court to introduce the interpreting profession to interpreter candidates on a statewide basis. The training sessions include: professional ethics, court terminology, ethical scenarios, and steps in the interpreting certification process. The online program offers self-tests and video demonstrations of professional court interpreters performing in the courtroom setting.

9. Sign Language Interpreters

The Alaska Court System contracts with RID (Registry of Interpreters for the Deaf) certified interpreters for courtroom proceedings and jury selection. Interpreters appear in-person or by video remote technology, when appropriate.

10. Video Remote Interpreting (VRI)

The Alaska Court System uses video remote technology to provide high-quality language interpretation to most court locations. VRI continues to expand as adequate bandwidth is made available. With sufficient bandwidth, video remote can also be used to provide sign language interpretation. VRI enables the court system to use court-trained interpreters from other jurisdictions.

In 2020, the Alaska Court System will use the National Center for State Courts (NCSC) online Video Remote Training Program to educate VRI interpreters about the courts' expectations of providing service using video remote technology. Through a NCSC grant, the Alaska Court System is also producing an additional VRI training module addressing our court-specific technology and professional expectations.

11. Translation

The court system continues to explore how to provide translations of the most requested forms or notices into the most commonly requested languages. As needed, translations of court documents are provided upon the request of judicial officers or court staff as a way to aid LEP individuals. For instance, court staff will use the LanguageLink to assist an LEP person to complete a form for a domestic violence protective order.

12. Language Access Task Force

The Language Access Task Force makes recommendations to the administrative director for improving access to Alaska courts for individuals with LEP. The task force responds to complaints about all aspects of interpreter services including, but not limited to, ethical violations, interpreter competency, and the logistics of providing interpreter services for

courtroom hearings. Each complaint is followed up, including audits of proceedings including reviews of interpreted events by a different qualified interpreter.

## VII. Revisions

This Language Access Plan is reviewed as needed and approved by the Administrative Director.

Contact for Language Access Plan:

Office of the Administrative Director
303 K Street
Anchorage, Alaska 99501
Phone: 907-264-0548

/s/
Stacey Marz, Administrative Director

December 31, 2019
Date

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

RECEIVED

JAN 30 2023

Attorney General's Office
Juneau

Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves and all those similarly situated,

Plaintiff(s),

vs.

Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health,

Defendant(s).

CASE NO. 3AN- 23-04259CI

**SUMMONS AND NOTICE TO BOTH PARTIES OF JUDICIAL ASSIGNMENT**

To Defendant: Heidi Hedberg, in her official capacity as commissioner of the Alaska Department of Health

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented) Northern Justice Project, LLC, whose address is: 406 G Street, Suite 207; Anchorage, AK 99502.

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

☑ This case has been assigned to Superior Court Judge Ramgren and to a magistrate judge.

☐ This case has been assigned to District Court Judge ________________.

CLERK OF COURT

SEAL OF THE TRIAL COURTS OF THE STATE OF ALASKA

1/20/23
Date

By: [signature]
Deputy Clerk

I certify that on 1/20/23 a copy of this Summons was ☐ mailed ☑ given to ☐ plaintiff ☑ plaintiff's counsel along with a copy of the ☐ Domestic Relations Procedural Order ☐ Civil Pre-Trial Order to serve on the defendant with the summons.

Deputy Clerk [initials]

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

FILED in the TRIAL COURTS
State of Alaska Third District

JAN 20 2023

Clerk of the Trial Courts
By______________Deputy

RECEIVED

JAN 30 2023

Attorney General's Office
Juneau

*Saima Akhtar (New York Bar No. 4661237)
*Jordan Berger (New York Bar No. 5847827)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org
Email: berger@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

*pro hac vice to be filed*

**Attorneys for Plaintiffs**

FILED in the TRIAL COURTS
State of Alaska Third District

JAN 20 2023

Clerk of the Trial Courts
By_______________Deputy

RECEIVED

JAN 30 2023

Attorney General's Office
Juneau

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,

*Plaintiffs*,

v.

Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.

*Defendant*.

Case No. 3AN-~~22~~ 23- 04259CI

**CLASS ACTION COMPLAINT**

## PRELIMINARY STATEMENT

1. John Andrew, Kayla Birch and Rose Carney are going hungry. Zoya Jenkins, Theresa Ferguson and Ronda Conover can't get enough to eat or feed their families. Troy Fender, Nataliia Moroz, Della Kamkoff and Autumn Ellanna are trying to figure out how to get food when prices are high and resources nonexistent. Like thousands of other Alaskans, these ten individuals struggle to eat because immense delays and chaos at the Alaska Department of Health ("DOH")

have prevented them from accessing Supplemental Nutrition Assistance Program ("SNAP") benefits, which they need to buy food.

2. Following copious press attention and criticism, the head of the Division of Public Assistance at the Alaska Department of Health stepped down on January 9, 2023, leaving unresolved the massive backlog of unprocessed SNAP cases that has left thousands of Alaskans without critical food assistance in the coldest months of the year.[1]

3. Defendant Heidi Hedberg ("Defendant") has subjected thousands of Alaskans to ongoing hunger and continues to do so. Defendant persistently fails to process SNAP applications and issue eligibility determinations within the time frames required by law, to ensure that SNAP applicants can file an application on the first day they contact the Department of Health ("DOH"), and to provide interpretation and translation services to people with limited English proficiency. Defendant's operational failures violate the federal SNAP Act, the United States Constitution, and the Alaska Constitution.

4. Plaintiffs bring this action on behalf of themselves and three proposed classes of similarly situated low-income Alaskans seeking preliminary and permanent injunctive relief and declaratory relief requiring Defendant to: (1) timely process new and recertification SNAP applications and render SNAP eligibility determinations to eligible households; (2) provide applicants with written notice of delays in processing their application that convey corresponding fair hearing rights; (3) provide applicants with written notice of their eligibility for assistance; (4) provide interpretation services and translated written materials to SNAP applicants and recipients;

---

[1] Claire Stremple, *Alaska's State Public Assistance Director Is No Longer in Her Post Following News of Months-Long Wwaits for Food Stamps*, Alaska Pub. Media (Jan. 10, 2023), https://alaskapublic.org/2023/01/10/alaskas-state-public-assistance-director-no-longer-in-job-following-food-stamp-backlog.

and (5) ensure that SNAP applicants can make an application for benefits on the date of their first contact with DOH.

## JURISDICTION

5. Jurisdiction over this action is conferred upon this Court by Alaska Stat. § 22.10.020(c) and (g).

6. Venue is proper under Alaska Stat. § 22.10.030 and Alaska Rule of Civil Procedure 3(c).

7. This action is brought under 42 U.S.C. § 1983 to redress the deprivation of federal statutory and constitutional rights.

## PARTIES

8. Plaintiff Della Kamkoff resides in Anchorage, Alaska.

9. Plaintiff John Andrew resides in Marshall, Alaska.

10. Plaintiff Kayla Birch resides in Petersburg, Alaska.

11. Plaintiff Rose Carney resides in Wasilla, Alaska.

12. Plaintiff Tereresa Ferguson resides in Anchorage, Alaska.

13. Plaintiff Zoya Jenkins resides in Bethel, Alaska.

14. Plaintiff Troy Fender resides in Wasilla, Alaska.

15. Plaintiff Rhonda Conover resides in Palmer, Alaska.

16. Plaintiff Autumn Ellanna resides in Nome, Alaska.

17. Plaintiff Nataliia Moroz resides in Delta Junction, Alaska.

18. Defendant Heidi Hedberg is the Commissioner of the Alaska Department of Health, the state agency responsible for, inter alia, administering the SNAP program in Alaska and

ensuring compliance with federal law relating to SNAP. *See* Alaska Stat. § 47.25.975.[2] This suit is brought against her in her official capacity.

## CLASS ALLEGATIONS

19. Plaintiffs bring this action pursuant to Rule 23(a) and 23(b)(2) of the Alaska Civil Rules on behalf of three separate but overlapping classes consisting of:

a. **An Untimely Eligibility Class**, represented by Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Nataliia Moroz and Rhonda Conover, comprised of all Alaska residents who since January 20, 2021 have applied, are applying, or will apply for SNAP benefits through an initial application or an application for recertification and did or will not receive an eligibility determination within the legally required timeframes;

b. **A Right to File Class**, represented by Autumn Ellanna, comprised of all Alaska residents who since January 20, 2021, were or will be denied the right to file a SNAP application the first time they contact the agency; and

c. **A Language Access Class**, represented by Nataliia Moroz, comprised of all Alaska residents with limited English proficiency who since January 20, 2021, did or will not receive application materials or vital eligibility documents in their primary language and/or access to oral interpretation services, as required by the SNAP Act.

20. The classes are so numerous that joinder of all members is impracticable.

---

[2] The DOH was previously a part of Department of Health and Social Services (DHSS), but became a separate Department on July 1, 2022. *See* Alaska Exec. Order No. 121, (Jan. 18, 2022) https://www.akleg.gov/PDF/32/EO/exor0121.pdf.

21. Thousands of people in Alaska apply for SNAP benefits each month, and each month thousands more must recertify their eligibility.

22. Furthermore, the classes as defined include future members, making joinder of all members impracticable at this time.

23. According to data maintained by the Food and Nutrition Service of the United States Department of Agriculture ("FNS"), 112,611 persons in Alaska received SNAP as of September 2022.[3]

24. In total, more than 27,000 new applications for SNAP were filed with DOH from November 2021 through October 2022.[4]

25. DOH has possession and control of all relevant records.

26. There are common questions of fact and law concerning whether the failures in Defendant's SNAP operations deprived members of all classes access to SNAP benefits.

27. There are numerous questions of fact and law common to each class concerning whether Defendant fails timely to provide eligibility determinations and issue SNAP benefits, whether Defendant fails to ensure that Alaskans can submit an application for SNAP on the first day that they contact the agency, and whether Defendant fails to provide translation and interpretation services to Alaskans with limited English proficiency.

28. The individuals seeking to represent the classes present claims that are typical of the claims of the classes given that the named Plaintiffs and absent members of the classes did not have their applications processed in a manner so as to ensure timely receipt of SNAP, could not

---

[3] *Supplemental Nutrition Assistance Program: Number of Persons Participating (Data as of December 9, 2022)*, FNS (Dec. 9, 2022), https://www.fns.usda.gov/sites/default/files/resource-files/29SNAPcurrPP-12.pdf.

[4] *Monthly Caseload & Benefit Summary*, DEP'T OF PUB. ASSISTANCE (Nov. 21, 2022), http://dpaweb.hss.state.ak.us/files/reports/Csld&BeneSumm.pdf.

file an application upon first contacting DOH, or did not receive necessary interpretation services or written document translations.

29. Declaratory and injunctive relief are appropriate with respect to the classes as a whole because Defendant has acted on grounds applicable to the classes.

30. The named plaintiffs are adequate class representatives.

31. The named plaintiffs and the proposed classes are represented by the Northern Justice Project, LLC, the National Center for Law and Economic Justice, and DLA Piper LLP, whose attorneys are experienced in class action litigation and will adequately represent the classes.

## STATUTORY AND REGULATORY SCHEME

### *Overview*

32. Congress established the federally funded, state-administered Food Stamp Program in 1964 to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." Pub. L. No. 88-525, § 2, 78 Stat. 703 (codified at 7 U.S.C. § 2011). In order to "alleviate . . . hunger and malnutrition," Congress enacted the Food Stamp Program to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." *Id.*

33. Effective October 1, 2008, the federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program ("SNAP") pursuant to the Food and Nutrition Act of 2008. Pub. L. No. 110-246, §§ 4001-02, 122 Stat. 1651, 1853-60.

34. The federal government provides funding to the states for 100% of all SNAP benefits and at least 50% of the states' administrative cost to operate the program. 7 U.S.C. §§ 2013(a), 2019, 2025(a); 7 C.F.R. §§ 277.1(b), 277.4.

35. Each state must designate a single state agency responsible for administering SNAP and complying with federal statutory and regulatory requirements. 7 U.S.C. § 2020(a), (d), and (e); 7 C.F.R. § 271.4(a). The state agency's responsibilities include the certification of eligible applicant households and the issuance of SNAP benefits to those households. 7 U.S.C. § 2020(a)(1), (e).

36. Alaska participates in SNAP and also refers to benefits obtained through the program as "Food Stamps."[5]

37. DOH is Alaska's single state agency responsible for administering SNAP in compliance with federal statutes and FNS regulations. Alaska Stat. §§ 47.25.975, 47.25.980.

***Initial Application, Interview, and Eligibility Verification Process***

38. Federal law requires that SNAP benefits "be furnished to all eligible households who make application for such participation." 7 U.S.C. § 2014(a).

39. A SNAP household consists of all individuals who live together and purchase and prepare the majority of their meals together. 7 C.F.R. § 273.1(a).

40. To apply for the SNAP Program, an individual must file an application with their name, address, and signature. 7 U.S.C. § 2020 (e)(2)(B)(iv); 7 C.F.R. § 273.2(c)(3)(i); Alaska SNAP Program Manual § 601.

41. DOH must allow applicants to file SNAP applications the same day they contact the local social services office. 7 U.S.C. § 2020 (e)(2)(B)(iii); 7 C.F.R. § 273.2(c)(2)(i).

42. In Alaska, SNAP applications are to be available in person, via phone from a DOH employee, or via a DOH-contracted fee agent.[6] *See* 7 C.F.R. § 272.7.

---

[5] SNAP and Food Stamps are terms used interchangeably throughout this Complaint.
[6] Fee agents are individuals with whom DOH contracts to assist individuals who live in communities that do not have a local DOH office. *See* 7 C.F.R. § 272.7(c).

43. DOH is required to make information regarding SNAP requirements and procedures generally available and must explain to SNAP applicants their rights and responsibilities concerning eligibility for benefits. 7 C.F.R. §§ 272.5(b)(2), 273.2(a)(1), (e)(1).

44. To receive SNAP, an applicant household must complete an interview. 7 C.F.R. § 273.2(e).

45. DOH must schedule an interview for all applicant households who are not interviewed on the day they submit their applications and must schedule all interviews as promptly as possible to ensure eligible households receive an opportunity to participate within 30 days after the application is filed. 7 C.F.R. § 273.2(e)(3); *see also* Alaska SNAP Manual § 601-3(A).[7]

46. For applicants who are not able to be interviewed on the day they submit an application, DOH policy requires the caseworker to provide a date and time for an interview appointment, and requires documentation that such information was provided to the applicant. Alaska SNAP Manual § 601-3(E).

47. DOH may conduct interviews required in connection with determining eligibility at the local social services office, other mutually acceptable location, or by telephone under specified circumstances. 7 C.F.R. § 273.2(e). Interviews may also be conducted by DOH-contracted fee agents for those applicants who reside in a community without a local DOH office. 7 C.F.R. § 272.7(d)(4)(iii); Alaska SNAP Manual § 601-3(C).

48. If a SNAP applicant household misses a scheduled interview, DOH must notify the household that the household is responsible for rescheduling the interview. 7 C.F.R. § 273.2(e)(3).

---

[7] The Alaska SNAP Manual can be found at http://dpaweb.hss.state.ak.us/manuals/fs/fsp.htm#t=title_page_alaska_fsp_manual.htm.

49. If the household contacts the administering agency within the 30-day period following submission of the application, the administering agency must reschedule the interview. Even if the household fails to appear for the first scheduled interview, the administering agency may not deny a household's application prior to the 30th day after an application is filed. 7 C.F.R. § 273.2(e)(3).

50. If the household contacts DOH within the 30-day application processing period, DOH must schedule a second interview. 7 C.F.R. § 273.2(e)(3).

51. If the household requests a second interview during the 30-day application processing period and is determined eligible, DOH must issue prorated benefits from the date of application. 7 C.F.R. § 273.2(e)(3).

52. In Alaska alone, federal regulations permit postponement of the SNAP interview until after the household is certified for benefits in the interest of making SNAP more widely available. 7 C.F.R. § 272.7(d)(6).

53. DOH must give each household at the time of application a notice of the verification requirements that the household must meet. 7 U.S.C. § 2020(e)(3). The notice must inform the household of the agency's responsibility to assist the household in obtaining verification provided the household is cooperating with the agency. 7 C.F.R. § 273.2(c)(5); *see also* 7 C.F.R. § 273.2(f)(5). And DOH must give households at least 10 days to provide the required verification. 7 C.F.R. § 273.2(f).

***Timely Processing Requirements for Initial Applications***

54. DOH must provide ongoing SNAP benefits to eligible applicants no later than 30 days after the date of application. 7 U.S.C. § 2020(e)(3); 7 C.F.R. §§ 273.2(a), (g)(1); 7 C.F.R. § 274.2(b).

55. Certain households qualify for expedited processing, including those with very low income and liquid resources, those whose housing costs exceed the sum of their income and liquid resources, and certain migrant and seasonal worker households. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i)(1). DOH must affirmatively identify households eligible for expedited service at the time the household requests assistance. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i)(2).

56. DOH must provide expedited issuance of SNAP benefits to these eligible households no later than the seventh day following the date an application is filed, following verification of the applicant's identity through a collateral contact or readily available documentary evidence, and after making reasonable efforts to verify certain other eligibility factors. *See* 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(f)(1), (i)(1) & (4). The applicant's identity must be verified, but the issuance of food stamps within the required seven days cannot be delayed solely due to lack of verification of other eligibility factors, e.g., household residency, income, or liquid resources. 7 C.F.R. § 273.2(i)(4)(i).

57. It is not sufficient for DOH to process an application and find a household eligible within the relevant statutory deadline. The applicant must have an opportunity to participate no later than 30 calendar days following the date the application was filed. An opportunity to participate consists of providing households with an active EBT card and PIN, and benefits that have been posted to the household's EBT account and are available for spending. *See* 7 C.F.R. § 274.2(b).

58. For those applications that DOH is delayed in processing, DOH must send a written notice to households informing the household that its application has not been completed, is still being processed, and conveying the household's right to request a fair hearing if they are aggrieved. 7 C.F.R. § 273.10(g)(1)(iii); *see also* 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15(a).

59. DOH must document the dates that applications are filed by recording the dates of receipt at the local social services offices. The length of time the agency has to deliver SNAP benefits is calculated from the dates the applications are received by the Department. 7 C.F.R. § 273.2(c)(1).

***Recertification Application Processing and Timeliness***

60. In order to continue to receive SNAP benefits, recipients must complete a recertification application prior to the end of the recipient's certification period. 7 U.S.C. 2020(e)(4); Alaska SNAP Manual § 604-2.

61. Prior to the end of a household's certification period, DOH must provide households with a Notice of Expiration ("NOE") containing the date the certification period expires and the date by which a household must submit an application in order to receive uninterrupted benefits. *See* 7 C.F.R. § 273.14(b)(1); 7 U.S.C. § 2020(e)(4). For applicants who have been certified for three months or longer, DOH policy requires the agency to send the NOE approximately 45 days before the end of the certification period. Alaska SNAP Manual § 604-1(B).

62. DOH must meet timeliness requirements when processing recertification applications.

63. If an eligible household submits their application no later than 15 days prior to the end of its existing certification period, DOH must provide the household's SNAP allotment no later than one month after the household receives its last allotment issued pursuant to the prior certification. *See* 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.14(d); Alaska SNAP Manual § 604-2(B)(1).

64. Caseworkers have 30 days to process a recertification submitted between the 16th of the month and the end of the month. Alaska SNAP Manual § 604-2(B).

65. When DOH is delayed in processing a recertification application, the agency must send a delay notice conferring fair hearing rights as described in paragraph 58. *See also* 7 C.F.R. § 273.10(g)(1)(iii); *see also* 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15(a).

66. SNAP households must be interviewed at least once every 12 months as part of the recertification process. *See* 7 C.F.R. § 273.14(b)(3); Alaska SNAP Manual § 601-3(A).

67. Recertification interviews must be scheduled "so that the household has at least 10 days after the interview in which to provide verification before the certification period expires." 7 C.F.R. § 273.14(b)(3)(iii); *see also* Alaska SNAP Manual § 604-2(C).

68. DOH must also provide the household with a notice of required verification and the due date for such verification and give the household at least 10 days to provide the required information. 7 C.F.R. § 273.14(b)(4).

69. A household whose eligibility is not determined by the end of its current certification period due to the time period allowed for submitting missing verification shall receive an opportunity to participate, if eligible, within five working days after the household submits the missing verification. *Id.*

***Delayed Processing Requirements***

70. If a state agency does not determine a household's eligibility for SNAP benefits or "provide an opportunity to participate" within 30 days following the date the application was filed, the state agency must determine the cause of the delay. 7 C.F.R. § 273.2(h)(1).

71. If the household failed to complete the application form, the state agency "must have offered, or attempted to offer, assistance in its completion." 7 C.F.R. § 273.2(h)(1)(i)(A).

72. If the household failed to appear for an interview, the state agency "must notify the household that it missed the scheduled interview and that the household is responsible for rescheduling a missed interview." Upon being contacted within the 30-day processing period, the state agency then must schedule a second interview and comply with additional notice requirements set forth in 7 C.F.R. § 273.2(h).

73. If the state agency does not comply with the aforementioned requirements in paragraphs 70, the processing delay is deemed to be the fault of the state agency. *See* 7 C.F.R. § 273.2(h)(1)(ii). The state agency must then: (i) take immediate action to correct those delays that it caused, (ii) notify the household "by the 30th day following the date the application was filed that its application is being held pending," (iii) "notify the household of any action it must take to complete the application process," and (iv) the agency must "not deny the application if it caused the delay," except in limited circumstances. 7 C.F.R. § 273.2(h)(3)(i).

74. Households that are found to be eligible during the second 30-day period are entitled to retroactive benefits. 7 C.F.R. § 273.2(h)(3)(ii).

***Language Access Requirements***

75. The SNAP Act and its implementing regulations contain language access provisions that require DOH to provide "appropriate bilingual personnel and printed materials in the administration of the program" in parts of the State in which a substantial number of members of low-income households speak a language other than English. 7 U.S.C. § 2020(e)(1)(B).

76. The information, certification materials (including, but not limited to, the SNAP application form, change report form, and notices to the household), and staff or interpreters that DOH is required to provide is based on the estimated total number of low-income households in a

project area that speak the same non-English language (a single-language minority). *See* 7 C.F.R. §§ 272.4(b), 272.5(a) & (b)(2).

77. DOH must monitor and develop estimates of the number of low-income single-language minority households, both participating and not participating in the program, for each project area and certification office by using census data and knowledge of project areas and areas serviced by certification offices. 7 C.F.R. § 272.4(b)(6).

78. DOH must also provide bilingual certification materials and bilingual staff or interpreters in each individual certification office that provides service to an area containing approximately 100 single-language minority low-income households. "Single-language minority" refers to households which speak the same non-English language and which do not contain adult(s) fluent in English as a second language. "Certification materials" include the Food Stamp application form, change report form, and notices to households." 7 C.F.R. § 272.4(b).

## FACTUAL ALLEGATIONS

### *DOH's Administration of the SNAP Program*

79. DOH'S Division of Public Assistance ("DPA") administers the State's SNAP Program.

80. DOH utilizes one 28-page application form for all of the public assistance programs it administers.

81. Paper copies of the application form can be obtained in the lobbies of district offices.

82. Applicants for SNAP can call the Virtual Contact Center ("VCC") to request a paper copy of the application be sent through the mail.

83. DOH's website indicates "[a]pplications can be submitted telephonically through the Virtual Contact Center (VCC) or in paper."

84. In late 2022, DOH posted a copy of the application document to the agency website. The form is now available to download and print. The form is available in English, Spanish, Tagalog, Russian, Korean and Hmong.

85. Many low-income households lack capacity to print a 28-page document.

86. No interactive online application is available to any person who cannot print the 28-page form.

87. For Alaskan SNAP applicants who cannot print a 28-page form, SNAP application documents are often very difficult to access due to lack of geographic access to offices, office closures, and excessive phone wait times.

*In Person Offices*

88. DOH maintains eleven district offices throughout the State where SNAP applicants and recipients can file initial or recertification applications.

89. In early 2020, DOH closed all district offices to the public due to the COVID-19 pandemic.

90. Currently, DOH's website states that physical offices are open daily from 9am to 3pm for "limited services."

91. The same website also says that offices are open Tuesday through Thursday from 9am to 4pm.

92. Moreover, for those offices that are "open," only the lobbies are accessible, meaning that clients can drop off paperwork, but in-person assistance is widely variable between

locations. Even for Alaskans who can physically reach an office, in-person interviewing, application assistance, or information about submitted applications is often not available.

93. District offices may also close without posted notice or warning to SNAP applicants and recipients who are looking for help.

94. Some hub cities in rural areas that had previously served areas of the State proximate to substantial indigenous communities no longer have any physical offices. DOH closed offices in Sitka and Kotzebue. Village residents who previously used those offices now require two plane rides and a two-day trip to reach a DOH office in person.

*Submitting Applications*

95. Completed SNAP applications may be submitted via mail, fax, email, direct secure messaging (requiring a DSM account), or drop boxes in district office lobbies.[8] DOH does not provide an online application submission system in spite of state law directing it to do so. Alaska Stat. § 47.25.980(a)(4).

96. Once an applicant files a SNAP application, the application must be registered in DOH's computer system. DOH staff do not begin processing the application until it is registered.

97. Applications submitted via drop boxes at the district office are frequently not registered for several days to several weeks.

98. DOH also does not confirm receipt of applications submitted via email or in drop boxes, nor do DOH staff reliably respond to email communications inquiring about application documents.

[8] DOH's website indicates that an application can also be submitted through a fee agent. However, the fee agent then submits the application to DOH through email or one of these other means.

*Virtual Contact Center*

99. DOH maintains the VCC, a single toll-free number through which applicants and recipients for many programs may contact the agency.

100. Due to the remote geography of much of the state and frequent office closures, the VCC is often the only way for Alaskans to contact the DOH.

101. DOH directs applicants to contact the VCC if they need assistance to complete their application, have questions about the status of their application, want to request a paper application be sent in the mail, need to replace a benefit card, or for any other inquiry. Notably, applicants must also contact the VCC to complete the required interview for SNAP benefits. However, the availability of assistance via the VCC is sporadic and applicants must wait hours to reach a worker, if they are able to speak with one at all.

*Interviews*

102. It is currently impossible to get an interview on the same day as an application is filed.

103. While DOH's own regulations contemplate the use of fee agents to complete interviews in more remote areas, many rural communities have no fee agent, and the capacity of fee agents is inconsistent.

104. Instead, DOH schedules all applicants for an interview appointment through the VCC and mails out interview notices containing the date and time of the interview.

105. For rural residents, the interview notice often arrives after the scheduled interview, causing them to miss their interviews through no fault of their own.

106. DOH does not call applicants to complete their interviews at the date and time of their appointment. Instead, on the appointed date, the applicant must call the VCC and follow phone tree prompts for a "confirmed scheduled interview."

107. The appointment dates and times specified on the interview notices are a fiction. Applicants are not reliably connected to a worker at their appointment time. Instead, they must wait in the VCC queue, regardless of their appointment time.

108. DOH encourages applicants to call into the VCC at least one hour prior to the VCC opening at 9:00 am so they may queue for the interview regardless of what time the interview is scheduled.

109. Many applicants wait in the queue for their interview for several hours or more, regardless of their assigned timeslot. Some applicants are never connected to a DOH worker.

110. The VCC has an option to request a callback, but DOH's follow up on these requests are unscheduled and unpredictable. The callback may never come.

111. If the applicant misses a callback, DOH considers it a "missed interview."

112. If the applicant misses a callback, the applicant must dial into the VCC and wait in the queue again.

113. DOH often fails to respond to requests for callbacks.

*Processing*

114. Applicants who call the VCC to inquire about the status of their pending applications or recertifications wait on hold in queue for hours and, should they ultimately speak with a DOH worker, are told to "wait their turn" for processing.

115. DOH does not issue the notice of delayed processing, conferring fair hearing rights, as required by federal law and state policy. *See* ¶¶ 58, 65, supra.

116. SNAP applicants have no recourse in the face of illegal application processing delays. They must simply wait an indefinite amount of time to receive essential food benefits.

117. Despite the strict statutory and regulatory timeliness requirements outlined in paragraphs 54-69 herein, DOH systematically fails to process SNAP applications and recertifications and issue SNAP benefits to eligible households in a timely manner.

118. DOH's own data demonstrates ongoing noncompliance with federal law requiring the timely processing of SNAP applications.

119. Initial SNAP applications in Alaska are timely processed only 52.9% of the time.[9]

120. Expedited application timely processing is even worse at 40.6%.[10]

121. Recertification applications are timely processed only 30.5% of the time.[11]

122. These failures have been of longstanding duration. Since Fiscal Year 2021, the DOH's data indicates persistent failure to process timely initial applications, expedited applications, and recertifications. As shown below, in 2021, DOH's timely processing rate for initial applications was 61.5%, for expedited applications was 71.4%, and for recertifications was 53.7%. For the current fiscal year, the Defendant's processing rate does not reach even 60% in any category.[12]

| Type of application | SFY21 | SFY22 | SFY23YTD |
|---|---|---|---|
| Expedited | 71.4% | 82.6% | 40.6% |
| Initial | 61.5% | 78.9% | 52.9% |
| Recertification | 53.7% | 68.0% | 30.5% |

[9] *Alaska DHSS–Division of Public Assistance Internal Performance Measures: Year-to-Date Performance*, DEP'T OF PUB. ASSISTANCE (Dec. 22, 2022), http://dpaweb.hss.state.ak.us/files/reports/DPA_All_Measures_YTD.pdf.
[10] *Id.*
[11] *Id.*
[12] *Alaska DH&SS–Division of Public Assistance Internal Performance Measures: Historic Performance*, DEP'T OF PUB. ASSISTANCE (Nov. 21, 2022), http://dpaweb.hss.state.ak.us/files/reports/DPA_All_Measures_YTD.pdf.

123. A May 7, 2018 report from the Alaska Ombudsman concluded after a systemic investigation that the Defendant's "Division of Public Assistance does not meet mandated timelines for processing applications and recertifications for program benefits [including SNAP] as required by state and federal law."[13] The Department of Public Assistance did not object to these findings.[14]

124. DOH's longstanding pattern of noncompliance with timeliness requirements has wrought a devastating impact on plaintiffs and members of the plaintiff class.

***DOH's Failure to Comply with Language Access Requirements***

125. DOH systematically fails to comply with the language access provisions set forth in the SNAP Act and its implementing regulations.

126. Data prepared by the federal Department of Justice in 2015 based upon mapping surveys in five areas of the State indicate that more than 33,000 individuals in Alaska identified as limited English Proficient or as speaking English less than very well. The most prevalent languages identified were: Tagalog, Spanish, Korean, Hmong and a combined category for Native American/Indigenous languages.[15]

127. The Anchorage School District serves 43,000 students and provides demographic and language information as to their student population on the District website. According to their data, 20% of families in the Anchorage School District speak a language other than English at

---

[13] Ombudsman Investigation Division of Public Assistance Department of Health & Social Services Public Report J2018-0001 at 6; *see also id.* at 3-6.
[14] *Id.* at 6.
[15] *2015 Alaska Mapping LEP Populations in Your Community-Number by County*, Dept. of Justice, https://www.lep.gov/node/521

home. The most commonly spoken languages in the district include Spanish, Hmong, Samoan, Filipino, and Korean.[16]

128. In 2007, the Alaska Native Language Center at the University of Alaska collected data on the number of people speaking various Alaska Native Languages and found that over 14,000 Alaskans speak a Native Language.[17]

129. For the first time, in late 2022, after posting the downloadable copy of the English-language application form on the DOH's website, DOH made available for download translated copies of the application form in Spanish, Tagalog, Russian, Korean, and Hmong. A limited number of other forms in the same languages are also available online. These include a change reporting form, an eligibility review form, a fair hearing request form, an information brochure about benefits from DOH and two SNAP informational pamphlets. DOH does not provide any notices in languages other than English.

130. These few translated written materials do not meet DOH's legal obligation to provide translated written information and interpretation services to Alaskan SNAP applicants and recipients with limited English proficiency. 7 C.F.R. § 272.4(b), 7 C.F.R. § 272.5(b)(2) and 7 U.S.C. § 2020(e)(1)(B).

131. DOH does not provide any written SNAP materials in any Alaskan Native Language.

132. Applicants can indicate that they speak a language other than English on their SNAP application form, but DOH usually does not provide translated written materials and vital

---

[16] *Anchorage School District: Our District*, ANCHORAGE SCH. DIST., https://www.asdk12.org/aboutasd/.

[17] *Dena'ina: Population and Speaker Statistics*, ALASKA NATIVE LANGUAGE CTR., https://www.uaf.edu/anlc/languages-move/pop.php.

documents even when provided with information regarding an applicant's language access needs.

133. If a SNAP recipient has their benefits reduced or terminated, DOH provides notice only in English, including to applicants and recipients who have alerted DOH that they need a spoken-language interpreter or document translation.

134. District offices, if they are open, routinely fail to provide bilingual personnel or interpretation services. Instead, they improperly rely on the family and friends of SNAP applicants for translation and interpretation.

135. DOH fails to provide adequate interpretation services through the VCC.

136. The VCC's recorded message and phone tree changes on a daily basis. Some days, the VCC offers alternative language options, and some days it does not.

137. When language options are available, they are: a menu in Spanish, a menu in Tagalog, or an interpreter for any other language.

138. When the option for any other language is selected, the caller must navigate all options in English and describe their need for an interpreter in English.

139. If a SNAP applicant can navigate the English language voice response system, and if they can request an interpreter in English, the applicant is connected with an external translation service. This connection is unstable and routinely drops either the interpreter or the client from the call.

140. The VCC does not provide interpretation services in any Alaskan Native language.

141. On the "Foreign Language Support" page of DOH's website, there is a list of "most frequently used languages," each with a direct line to an interpreter for that language. Not a single one of the nine phone numbers worked as of the date this Complaint is made.

142. Defendant has failed to produce estimates of the number of low-income single-language minority households for each project area and certification office, even though this process is required by law. DOH has not conducted a language survey or gathered data necessary to identify the single-language minority populations they are legally required to identify and serve. 7 C.F.R. §272.4(b)(6). Nor has Defendant adopted single-language minority population estimates produced by another source, as the regulation also permits. *Id.*

143. In January 2020, the Department of Health and Social Services ("DHHS"), the precursor agency to DOH, entered into a voluntary compliance agreement with the Civil Rights Division of the Food and Nutrition Service of the United States Department of Agriculture to address deficiencies identified in a program access review conducted by FNS in July and August of 2018.

144. The compliance concerns specifically identified that the state agency had failed to make information and materials accessible to persons with limited English proficiency (LEP), provided vital documents impacting program participation only in English, failed to conduct an assessment to determine the language needs of the eligible populations, and permitted use of minor children and family members as interpreters.

145. DHHS agreed to develop and implement a written plan to ensure compliance with applicable federal laws and regulations within specified time frames.

146. DOH has yet to remedy the issues FNS identified.

147. This continuing and persistent noncompliance with federal law has effectively barred many single-language minority low-income households from obtaining SNAP benefits to which they are entitled, in violation of Federal law.

## FACTS OF INDIVIDUAL NAMED PLAINTIFFS

***Plaintiff Della Kamkoff***

148. Plaintiff Della Kamkoff meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

149. Ms. Kamkoff lives with her husband and their four minor children. Her children are 2, 9, 11, and 14.

150. Ms. Kamkoff has received SNAP off and on since April 2020. She last received SNAP in October 2022.

151. Ms. Kamkoff did not receive a notice of expiration of her SNAP benefits nor a recertification packet by mail.

152. At the beginning of November, Ms. Kamkoff called the DOH to find out why she had not received her SNAP benefits. She was able to use the automated service to check the status of her application. The automated service informed her that her SNAP benefits had been terminated.

153. Throughout November 2022, Ms. Kamkoff and her husband each called the VCC multiple times to find out why their benefits had been terminated. Every time they called, there were long wait times of at least an hour. On one occasion, Ms. Kamkoff waited for an hour before her call was disconnected.

154. In the middle of November 2022, Ms. Kamkoff went to the SNAP office in Anchorage. She was not able to speak to anyone because the office was closed. She took a new application off the wall, filled it out, and submitted it in the drop box.

155. On November 28, 2022, Ms. Kamkoff spoke to Carrie Huck from the Alaska Food Bank. Ms. Huck directed her to file a recertification application for her benefits.

156. On November 28, 2022, Ms. Kamkoff submitted a recertification application through Ms. Huck.

157. On December 12, Ms. Kamkoff received a notice from the DOH with information about how to check on the status of her application through the VCC.

158. Without SNAP, Ms. Kamkoff is not able to buy enough food to feed her family.

159. Ms. Kamkoff has received some Alaskan Native food from her family when they come into town.

160. She has also been going to the Salvation Army foodbank twice a month to pick up food.

161. Occasionally the F.I.S.H. program also delivers food to her home.

162. On December 25, 2022, Ms. Kamkoff tried to go to the Salvation Army for dinner. The Salvation Army did not have any food. Fortunately, one of her Facebook friends was able to donate a ham to her family for dinner.

***Plaintiff John Andrew***

163. Plaintiff John Andrew meets all of the statutory requirements to qualify for SNAP. The only barrier to his receipt of SNAP benefits is Defendant's failure to timely process his recertification application.

164. Mr. Andrew lives with his three adult sons and his 8-year-old daughter. His 16-year-old daughter also lives with him sometimes.

165. Mr. Andrew is the only person in his household who is currently employed. He earns $32,000 per year as a transportation director.

166. Mr. Andrew does not have access to reliable transportation. His ATV is not operational, and he cannot afford to have it repaired.

167. Mr. Andrew had been receiving SNAP benefits for the past 26 years until the end of October 2022. He has never previously had any issues receiving SNAP benefits.

168. Mr. Andrew submitted his recertification application to DOH on October 11, 2022.

169. On October 11, 2022, Mr. Andrew called the VCC. He requested a call back. DOH called him back about five hours later to confirm that they had received his recertification application. They also informed him that the interview requirement would likely be waived.

170. Mr. Andrew called the VCC four to five additional times since he submitted his application. Each time, the person answering calls for the VCC confirmed that they received his application. Mr. Andrew was also informed that there were thousands of applications to be processed and very few case workers.

171. Mr. Andrew cannot visit a DPA office in person. The nearest office to his home is approximately 100 miles away in Bethel, Alaska. He would need to take a plane to get there, which would be very expensive.

172. Mr. Andrew and his children have now been without their SNAP benefits for more than two months.

173. Without SNAP, he and his family cannot afford healthy food and do not have enough food.

***Plaintiff Kayla Birch***

174. Plaintiff Kayla Birch meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

175. Ms. Birch is a single mother to her two sons. Her sons are 14 and 16 years old.

176. Ms. Birch works part time. She is not able to work full time due to her medical issues. Her annual income is $18,000 per year.

177. Ms. Birch began receiving SNAP benefits in May 2022.

178. Ms. Birch submitted her recertification application in or about September 2022.

179. Ms. Birch has not received her SNAP benefits since September 2022.

180. Ms. Birch has not heard anything from DOH since she submitted her recertification paperwork.

181. Every time Ms. Birch called the VCC until December 12, 2022, her phone call was disconnected after approximately two hours.

182. During the week of December 12, 2022, Ms. Birch called the VCC and chose the option to receive a callback. When the worker from the VCC called her back, the worker told Ms. Birch her recertification application was received on October 3, 2022 but she had to continue to wait in line for her benefits. She was also told that another employee would call her to schedule an interview.

183. Ms. Birch has not received any other communication from DOH since the December callback.

184. Ms. Birch lives over 100 miles from the nearest DOH office. She would have to take a plane to visit a DOH office. A round trip ticket would cost her over $400.

185. Ms. Birch and her sons have been struggling since losing their SNAP benefits.

186. Ms. Birch usually only eats one meal per day to ensure her sons can have more food throughout the day.

187. Since October, Ms. Birch and her sons have largely lived off of the deer meat that she hunted.

188. Ms. Birch does not have enough food to pack her sons' lunch for school. She is sometimes able to give them enough money for the paid school lunch. Other times their teenage friends take them off campus and buy them lunch.

189. On one occasion, Ms. Birch was able to receive help from the Salvation Army.

190. Ms. Birch and her sons were also able to eat on Thanksgiving and Christmas due to the generosity of their friends.

191. Without SNAP, Ms. Birch cannot afford to buy fresh produce. She uses her limited income to purchase premade microwavable meals to feed her and her sons.

192. Ms. Birch has had to prioritize using her limited income for buying food. As a result, she has been late to pay her electric, cell phone and internet bills.

***Plaintiff Rose Carney***

193. Plaintiff Rose Carney meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

194. Ms. Carney is permanently disabled and receives federal Supplemental Security Income benefits.

195. Ms. Carney has received SNAP benefits for the last seven years.

196. Ms. Carney is the only person in her SNAP household.

197. Ms. Carney submitted her recertification application for SNAP on or about October 29, 2022 at the Wasilla DOH office.

198. October 2022 was the last month that Ms. Carney received SNAP benefits.

199. Ms. Carney tried to visit the Wasilla DOH office on a Monday in November to find out the status of her SNAP benefits. The office was closed.

200. Ms. Carney has tried to call the VCC many times to get an update on her application. Each time she called the VCC, she reached an automated message directing her to call a different number.

201. Ms. Carney met a DOH employee in November 2022 when she went to the Joy Lutheran Church Food Bank. The employee checked on the status of her application and confirmed that her application had been submitted.

202. Ms. Carney has now been without SNAP benefits for over two months.

203. Without SNAP, Ms. Carney struggles to buy the food she needs to survive.

204. She is currently using the money she would ordinarily spend on other necessities such as gas, toilet paper, and laundry detergent to pay for food.

205. Ms. Carney has also been relying on different food banks to get enough food. She usually gets a monthly box of food from the Palmer Food Bank. Some months she has not been able to pick up the food because the roads are covered in snow.

206. Ms. Carney is also a volunteer at the Harvest Christian Fellowship Food Bank. Sometimes she is also able to get food from them when she is volunteering.

207. Although Ms. Carney prefers to eat vegetables and other healthy foods, she is currently surviving primarily on beans and potatoes as this is all that she can afford.

***Plaintiff Tereresa Ferguson***

208. Plaintiff Tereresa Ferguson meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

209. Ms. Ferguson lives with her husband and four children. Her children are 17, 15, 13, and 11 years old.

210. The family does not currently have any income. They have been using the money they received from last year's Permanent Fund Dividend to cover their rent and electricity.

211. Ms. Ferguson occasionally receives a little money from her sister when she watches her daughter. Ms. Ferguson's husband also tries to do odd jobs in the community to make a little money.

212. Ms. Ferguson received SNAP for the last 3 years.

213. Around November 15, 2022, Ms. Ferguson submitted her SNAP recertification application to DOH via the drop box at the Anchorage office.

214. Ms. Ferguson has not received any notification about the status of her application.

215. Ms. Ferguson has tried to call the VCC multiple times to get updates on her application.

216. She has never been able to speak to anyone at the VCC despite waiting on hold for up to 45 minutes.

217. Ms. Ferguson's sister brings meals over to feed Ms. Ferguson's family a few times a week.

***Plaintiff Zoya Jenkins***

218. Plaintiff Zoya Jenkins meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

219. Ms. Jenkins lives with her husband and two daughters. Her daughters are 15 years old and 1 year old.

220. Ms. Jenkins is currently unemployed and interviewing for a new job. In 2022, she made $21,000.

221. Ms. Jenkins has received SNAP benefits for approximately the last ten years.

222. She has not received SNAP benefits since September 2022.

223. She submitted her recertification application by both fax and e-mail on September 23, 2022.

224. In October 2022, she tried to call the VCC. She was given the option for a callback. No one ever returned her call.

225. Ms. Jenkins also e-mailed DOH in October 2022 to check on the status of her SNAP application. Approximately a month later, DOH responded and stated they would send her a letter if they needed anything else. Ms. Jenkins has not heard anything further from DOH.

226. Ms. Jenkins also tried to visit the Bethel District Office in either late October or early November. The door to the office was locked. Nobody answered the door.

227. Ms. Jenkins has also tried to call the Bethel office but no one answered her calls.

228. Without SNAP, Ms. Jenkins cannot buy enough food for her family.

229. Ms. Jenkins and her husband regularly skip meals to ensure they have enough food for the children.

230. The only store that Ms. Jenkins can shop at is the Alaska Commercial Company.

231. Buying all meat, except chicken, is really expensive at the Alaska Commercial Company. One steak cost approximately $20.

232. Other food items are also very expensive. For example, a gallon of milk is about $14 and a small jar of mayonnaise is about $8.

233. Ms. Jenkins's parents sometimes give her meat and fish to help them get by.

### *Plaintiff Troy Fender*

234. Plaintiff Troy Fender meets all of the statutory requirements to qualify for SNAP. The only barrier to his receipt of SNAP benefits is Defendant's failure to timely process his recertification application.

235. Mr. Fender lives with his girlfriend in his RV.

236. Mr. Fender is currently unemployed. He has no income.

237. He has been living off of his savings which he earned from being a truck driver.

238. He first applied for SNAP in April 2022.

239. In April 2022, he submitted his SNAP application through the drop box at the Matsu District Office in Wasilla.

240. He never heard anything after submitting his application.

241. In October 2022, Mr. Fender tried to apply for SNAP again by handing his application directly to a worker at the Matsu District Office.

242. He again did not hear anything after submitting his application.

243. In November 2022, Mr. Fender went back to the Matsu District Office to check on the status of his application.

244. He almost left without talking to someone because the office appeared empty. The lights were dim and it seemed like there was no one there. Eventually, an employee came out and was able to verify that his application had been submitted and was currently pending. The employee encouraged him to "be patient."

245. He has not heard anything else about his application.

246. Without SNAP, Mr. Fender is not able to buy enough food.

247. It costs approximately $300 per month for Mr. Fender to heat his RV. He has had to decide whether to prioritize buying the diesel fuel for heat or food.

248. He has also been relying on foodbanks and the good will of his family to survive.

***Plaintiff Rhonda Conover***

249. Plaintiff Rhonda Conover meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

250. Ms. Conover lives in one room of an extended family member's home with her 12-year-old daughter, 4-year-old son, and 2-year-old daughter. The father of her children also lives with them.

251. With the assistance of a representative from the Alaska Food Bank, Ms. Conover applied for SNAP on December 14, 2022.

252. Ms. Conover is eligible for expedited issuance of her SNAP benefits.

253. She does not have any money nor any income at this time.

254. Ms. Conover has not heard anything from DOH since she applied.

255. Ms. Conover has tried to call the VCC approximately 15 times since she applied. She was able to leave about a dozen messages. Other times she was disconnected before she was given that option.

256. On January 3, 2023, Ms. Conover e-mailed DOH to try to get a status update on her benefits.

257. DOH has not returned her phone calls or e-mail.

258. Without SNAP, Ms. Conover is not able to buy enough food to feed her family.

259. Ms. Conover has been relying on the generosity of her extended family to give her food.

260. Ms. Conover's family regularly skips meals due to not having enough to eat.

***Plaintiff Autumn Ellanna***

261. Plaintiff Autumn Ellanna meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

262. Ms. Ellanna lives with her 3-year-old daughter in a home with her parents and her younger brother.

263. In November 2022, Ms. Ellanna helped her father fill out his SNAP recertification application.

264. The only communication he received about the SNAP application was a written request for additional verification documents.

265. In the beginning of January 2022, her mother and father went to the Nome District Office to find out the status of the family's SNAP application. The worker informed them that their case had been closed due to missing the deadline for submitting additional pay stubs.

266. The family still has not received written notice of the denial of the recertification.

267. Her parents asked the worker for help while at the Nome District Office.

268. Instead of helping them, the worker directed them to apply for General Assistance at the Eskimo Community Center.

269. Ms. Ellanna decided to try to apply for SNAP separately on behalf of herself and her daughter.

270. On January 13, 2023, Ms. Ellanna called the VCC to ask for help with her application.

271. After waiting for approximately an hour to speak to someone, she reached a VCC employee who told her they would not help her over the phone. The only option they gave her was to have a SNAP application mailed or e-mailed to her.

272. Without SNAP, Ms. Ellanna is not able to buy enough food to feed herself and her young daughter.

273. When she called the VCC, she only had s $5.01 in her bank account. She is required to leave this money in her bank account or they will close her account.

274. On January 17, 2023, she went to the Nome District Office at 1:45pm to submit her paper application. She had to submit it via the drop box because the office was closed.

275. She purchases all of the food for her and her daughter using her WIC benefits. They mainly survive on cereal and eggs.

276. Sometimes Ms. Ellanna has to ask one of her other relatives for some money for food to feed her daughter.

***Plaintiff Nataliia Moroz***

277. Plaintiff Nataliia Moroz meets all of the statutory requirements to qualify for SNAP. The barriers to her receipt of SNAP benefits are Defendant's failure to timely process his recertification application and to provide her access to the program in Russian.

278. Ms. Moroz lives with her husband and two minor children. One of her children is 1 year old and the other is 3 years old.

279. Ms. Moroz's family currently does not have any income.

280. Ms. Moroz and her family began receiving SNAP in May 2022.

281. On September 4, 2022, Ms. Moroz received a notice of expiration and recertification packet in the mail. The notice indicated that she needed to submit her recertification application by September 5, 2022.

282. On or around September 13, 2022, an extended family member submitted Ms. Moroz's recertification application to the dropbox at the Fairbanks District Office.

283. At the end of October 2022, Ms. Moroz visited the Fairbanks office to check on the status of her application. An employee in the office told her to keep waiting.

284. On January 10, 2022, Ms. Moroz returned to the Fairbanks District Office. She was informed her application was still pending and that she had to keep waiting.

285. Ms. Moroz's primary language is Russian.

286. She is not comfortable speaking in English.

287. She uses translation features on her phone to read and write in English.

288. Ms. Moroz's husband is also not comfortable speaking in English.

289. Ms. Moroz's uncle's wife sometimes provides informal support in navigating the SNAP application process in English.

290. Ms. Moroz's uncle's wife helped Ms. Moroz to fill out her SNAP application in May 2022 and with her recertification application in September 2022 as the document was only in English.

291. She has also called the VCC two times to find out the status of Ms. Moroz's application since Ms. Moroz cannot navigate the English language prompts on the VCC.

292. On her May 2022 application, Ms. Moroz indicated English was not her first language. She said that she was not comfortable reading and writing in English.

293. Ms. Moroz cannot use the VCC due to her limited understanding of English.

294. Ms. Moroz also had difficulties communicating with the DOH representatives when she went to the Fairbanks office because there was not an interpreter present.

295. Ms. Moroz has never received any notices or other information about her SNAP benefits in Russian.

296. Without SNAP, Ms. Moroz is not able to buy enough food to feed her family.

## STATEMENT OF CLAIMS

### FIRST CLAIM (SNAP ACT-TIMELY PROCESSING)

297. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

298. Defendant causes Plaintiffs irreparable harm by the prevalent failure to process initial and recertification applications for SNAP within the times frames mandated by federal law, in violation of 7 U.S.C. § 2020(e)(3), (4), and (9), and implementing regulations, at 7 C.F.R. §§ 273.2(a)(2), (g)(1), (i)(2), (i)(3)(i) and, 273.14 and 7 U.S.C. § 2014(a).

### SECOND CLAIM (SNAP ACT-RIGHT TO APPLY)

299. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

300. Defendant causes Plaintiffs irreparable harm by the prevalent failure to ensure that Alaskans can submit an application for SNAP on the first day that they contact the agency, in violation of 7 U.S.C. § 2020(e)(2)(B) and implementing regulations at 7 C.F.R § 273.2(c).

### THIRD CLAIM (SNAP ACT-LANGUAGE ACCESS)

301. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

302. Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide interpretation services, bilingual personnel, or translated written certification materials necessary for SNAP participation, in violation of 7 U.S.C. § 2020(e)(1)(B), 7 C.F.R. § 272.4(b) and 7 C.F.R. § 272.5(b)(2).

## FOURTH CLAIM (SNAP ACT-NOTICE OF DELAYED PROCESSING)

303. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

304. Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide written notice and opportunity to request a fair hearing to SNAP applicants whose eligibility was not determined within legally mandated timeframes, in violation of 7 U.S.C. § 2020(e)(10) and implementing regulations 7 C.F.R. §§ 273.2(h)(3), 273.2(h)(4), 273.10(g)(1)(i)-(iii), and 273.15(a).

## FIFTH CLAIM (FEDERAL PROCEDURAL DUE PROCESS)

305. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

306. Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide timely and adequate written notice of eligibility or delayed processing for SNAP benefits and deprives Plaintiffs of access to a fair hearing to raise disputes concerning eligibility and delayed processing, in violation of the Due Process clause of the 14th Amendment to the Constitution, made actionable by 42 U.S.C. § 1983.

307. Defendant deprives Plaintiffs of fair access to SNAP benefits through use of a systemically inaccessible Virtual Contact Center, failure to timely render eligibility determinations, failure to provide required notice of delayed processing, and subjecting otherwise

eligible individuals to arbitrary deprivation of SNAP benefits in violation of the Due Process Clause of the 14th Amendment to the Constitution, made actionable by 42 U.S.C. § 1983.

**SIXTH CLAIM (STATE PROCEDURAL DUE PROCESS)**

308. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

309. Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide timely and adequate written notice of eligibility or delayed processing for SNAP benefits and deprives Plaintiffs of access to a fair hearing to raise disputes concerning eligibility and delayed processing, in violation of the Due Process clause of Article I, Section 7 of the Alaska Constitution.

310. Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide verbal interpretation or written translation of SNAP eligibility notices that confer fair hearing rights in violation of the due process clause of Article I, Section 7 of the Alaska Constitution.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and the class they represent as to all counts and:

A. Assume jurisdiction over this matter.

B. Certify three separate but overlapping classes of plaintiffs consisting of:

1. **An Untimely Eligibility Class**, represented by Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Nataliia Moroz and Rhonda Conover comprised of all Alaska residents who since January 20, 2021 have applied, are applying, or will apply for SNAP benefits through an initial application

or an application for recertification and did or will not receive an eligibility determination within the legally required timeframes;

2. **A Right to File Class**, represented by Autumn Ellanna, comprised of all Alaska residents who since January 20, 2021 were or will be denied the right to file a SNAP application the first time they contact the agency; and

3. **A Language Access Class**, represented by Nataliia Moroz, comprised of all Alaska residents with limited English proficiency who since January 20, 2021 did or will not receive application materials or vital eligibility documents in their primary language and/or access to oral interpretation services, as required by the SNAP Act.

C. Declare that Defendant has:

1. Violated the SNAP Act and its implementing regulations by failing to timely process initial applications for SNAP benefits; failing to provide required eligibility notices, including notice of delayed processing conveying fair hearing rights; and failing to issue SNAP benefits to those eligible within the time frames required by law pursuant to 7 U.S.C. §§ 2014(a), 2020(e)(3), and implementing regulations, 7 C.F.R. §§ 273.2(a)(2),(g)(i), and 273.10(g)(1).

2. Violated the SNAP Act and its implementing regulations by failing to timely process those applications for SNAP benefits entitled to expedited processing; failing to provide required eligibility notices,

including notice of delayed processing conveying fair hearing rights; and failing to issue SNAP benefits to those eligible within the time frames required by law pursuant to 7 U.S.C. §§ 2014(a), 2020(e)(9), and implementing regulations, 7 C.F.R. §§ 273.2(a)(2), (i)(2), (i)(3)(i), and 273.10(g)(1).

3. Violated the SNAP Act and its implementing regulations by failing to timely process recertification applications for SNAP benefits; failing to provide required eligibility notices, including notice of delayed processing conveying fair hearing rights; and failing to issue SNAP benefits to those eligible within the time frames required by law pursuant to 7 U.S.C. §§ 2014(a), 2020(e)(4), and implementing regulations, 7 C.F.R. §§ 273.2(a)(2), 273.10(g)(2), and 273.14.
4. Violated the SNAP Act and its implementing regulations by failing to allow households to apply for SNAP on the first day they contact the agency to be unlawful pursuant to 7 U.S.C. § 2020(e)(2)(B)(iii) and 7 C.F.R. § 273.2(c)(1)(iii);
5. Violated the SNAP Act and its implementing regulations by failing to translate necessary written notices, program informational materials, and provide verbal interpretation, to be unlawful pursuant to 7 U.S.C. § 2020(e)(1)(B), 7 C.F.R. §§ 272.4(b) and 272.5(b)(2).
6. Violated the Due Process Clause of the 14th Amendment to the Constitution by failing to issue timely and adequate written notice of

eligibility or delayed processing and access to a fair hearing; and ensure a fair eligibility process is available to SNAP applicants and recipients

7. Violated the Due Process Clause of Article I, Section 7 of the Alaska Constitution by failing to issue timely and adequate written notice of eligibility or delayed processing and access to a fair hearing; and failing to provide timely interpretation or written translation of SNAP notices conferring fair hearing rights.

D. Preliminarily enjoin Defendant to:

1. Allow applicants for SNAP to apply on the first day of contact with DOH by:

(a) Reopening and maintaining in-person DOH resource center operations sufficient to comply with the requirements of 7 U.S.C. § 2014(a) and 7 U.S.C. § 2020(e)(2)(B) of the SNAP Act and make face-to face interviews available to any applicant requesting one, consistent with the requirements of 7 C.F.R. § 273.2(e)(2);

(b) Checking agency drop boxes, mail, email and fax machines daily as necessary to ensure that SNAP applications are registered on the date they are submitted to the agency, consistent with the requirements of 7 C.F.R. § 273.2(c)(1)(iv);

(c) Accepting SNAP applications by telephone through the Virtual Contact Center as represented on the DOH website;

2. Provide required verbal interpretation services and written translations of certification materials to SNAP applicants and recipients by:

   (a) Conducting a language access survey or otherwise determining the number of low-income single-language minority households for project areas and certification offices in accordance with 7 C.F.R. § 272.4(b)(6) within 3 months of this Court's issuance of a preliminary injunction;

   (b) Modifying the Virtual Contact Center voice-response prompts to ensure that all callers are immediately asked if they require service in a language other than English and enable prompts for direct access to interpreter services;

   (c) Ensuring that interpretation telephone numbers identified on the DOH website are functional and staffed to receive calls from individuals with limited English Proficiency;

   (d) Providing written inserts with all vital documents related to SNAP eligibility determinations that inform applicants and recipients of the availability of verbal interpretation upon request within 3 months of this Court's issuance of a preliminary injunction, including mailings to Plaintiff Moroz;

   (e) Prominently posting information based upon relevant language access survey information advising applicants and recipients how to access interpreter services in all DOH offices;

3. Promptly processing SNAP applications and recertifications now pending beyond legally mandated-processing timeframes during the pendency of the litigation, and on an ongoing basis as well, and provide written notice and opportunity to request a fair hearing to those SNAP applicants who applications are not processed within the mandated timeframes, including individually Named Plaintiffs;

E. Permanently enjoin Defendant to:

1. Permit all SNAP applicants to file applications on the first day they contact the DOH;

2. Provide language-appropriate written application and certification materials, vital eligibility documents, and legal notices, as well as access to interpreters or bilingual staff as needed, to ensure that new and recertifying households can participate fully in SNAP regardless of their primary language;

3. Process initial SNAP applications and applications for recertification, render eligibility determinations, and provide written notice and opportunity to request a fair hearing within legally mandated timeframes; and

F. Award Plaintiffs litigation costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and Alaska Rule of Civil Procedure 82(a).

G. Grant such other, further, or different relief as this Court may deem just and proper.

DATED this 20th day of January, 2023 at Anchorage, Alaska.


*/s/ Nicholas Feronti*

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
*Jordan Berger (New York Bar No. 5847827)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org
Email: berger@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**

1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

*Attorneys for Plaintiffs*

TREG TAYLOR
ATTORNEY GENERAL
Lael A. Harrison
Assistant Attorney General
Alaska Bar No. 0811093
Alaska Department of Law
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: 907.465.3600
Facsimile: 907.465.3019
Email: lael.harrison@alaska.gov

Alex J Hildebrand
Chief Assistant Attorney General
Alaska Bar No. 0612104
Alaska Department of Law
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: 907 465-3600
Facsimile: 907.465.3019
Email: alexander.hildebrand@alaska.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health,<br><br>Defendant. | Case No.: ____________<br><br>**NOTICE OF REMOVAL** |

**DEFENDANT'S NOTICE OF REMOVAL**

The defendant, Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health, provides notice of the removal of the above-captioned case from the Superior Court for the State of Alaska, Third Judicial District at Anchorage (No. 3AN-23-04259CI) to this Court, under 28 U.S.C. §§ 1441(a), 1331 and 1446. The grounds for removal are as follows:

1. The complaint is styled as a class action and alleges various violations of 7 U.S.C. § 2020, and implementing regulations at 7 C.F.R. §§273.1 *et seq*. It also alleges violation of the Due Process clause of the 14th Amendment to the United States Constitution under 42 U.S.C. § 1983, arising out of the same set of operative factual allegations as the claim for violations of federal statute and regulation. It also alleges violation of the Due Process clause of Article I, Section 7 of the Alaska Constitution, arising out of the same set of operative factual allegations as the claim for violations of federal statute and regulation.
2. The defendant may properly remove this case to this Court pursuant to 28 U.S.C. § 1441(a) because this Court would have original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the Constitution, laws, or treaties of the United States.
3. This Court further has supplemental jurisdiction over the plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same operative

factual allegations as the plaintiffs' federal law claims. Therefore, the state law claims are so related to the federal law claims that they form part of the same case or controversy.

4. This Notice of Removal is timely filed within thirty days after completion of service on the Defendant, pursuant to 28 U.S.C. § 1446(b).
5. Written notice of this Notice of Removal will be promptly provided to plaintiffs' counsel, and a copy of this Notice promptly filed with the state court, pursuant to 28 U.S.C. § 1446(d).
6. Copies of all process, pleadings and orders filed in state court, as served on the Defendant, are filed with this Notice of Removal.
7. Venue is proper because the United States District Court, District of Alaska is the corresponding federal judicial district for the Superior Court of the State of Alaska, Third Judicial District at Anchorage, where the State Court action was filed.
8. Nothing in this removal waives any immunities the State of Alaska may have under the Eleventh Amendment or Alaska Statute 09.50.250.

DATED: March 1, 2023.

TREG TAYLOR
ATTORNEY GENERAL

By: *s/ Lael Harrison*
Lael A. Harrison
Assistant Attorney General
Alaska Bar No. 0811093
Alaska Department of Law
P.O. Box 110300

Juneau, AK 99811-0300
Telephone: 907.465.3600
Facsimile: 907.465.3019
Email: lael.harrison@alaska.gov

By: /s/ Alex J Hildebrand
Alex J Hildebrand
Chief Assistant Attorney General
Alaska Bar No. 0612104
Alaska Department of Law
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: 907 465-3600
Facsimile: 907.465.3019
Email:
alexander.hildebrand@alaska.gov

**CERTIFICATE OF SERVICE**

I certify that on March 1, 2023, the foregoing document was served on the following via email.

Goriune Dudukgian
Northern Justice Project
406 G Street, Suite 207
Anchorage, AK 99501
gdudukgian@njp-law.com

Nicholas Feronti
Northern Justice Project
406 G Street, Suite 207
Anchorage, AK 99501
nferonti@njp-law.com

CC all pleadings to:
Jim David - jdavis@njp-law.com

Saima Akhtar
National Center for Law and Economic Justice
50 Broadway, Suite 1500

New York, NY 10004
akhtar@nclej.org

Jordan Berger
National Center for Law and Economic Justice
50 Broadway, Suite 1500
New York, NY 10004
berger@nclej.org

Margaret D. Craig
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
maggie.craig@us.dlapiper.com

Kelsey Tavares
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
kelsey.tavares@us.dlapiper.com

Christopher M. Young
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
christopher.young@dlapiper.com

Micah A. Chavin
DLA Piper LLP (US)
1415 L Street, Suite 270
Sacramento, CA 95814-3976
micah.chavin@us.dlapiper.com

Bethany M. Bunge
DLA Piper LLP (US)
845 Texas Avenue, Suite 3800
Houston, Texas 77002
bethany.bunge@us.dlapiper.com

s/Nomi R. Saxton
Nomi R. Saxton, Law Office Assistant

# UNITED STATES DISTRICT COURT

**FOR THE DISTRICT OF** ALASKA

## Form 1. Notice of Appeal from a Judgment or Order of a United States District Court

U.S. District Court case number: 3:23-cv-00044-SLG

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: 03/01/2023

Date of judgment or order you are appealing: 05/28/2026

Docket entry number of judgment or order you are appealing: 148

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

◉ Yes ○ No ○ IFP was granted by U.S. District Court

---

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

John Andrew, Tereresa Ferguson, and Autumn Ellanna, on behalf of themselves and all those similarly situated.

Is this a cross-appeal? ○ Yes ◉ No

If yes, what is the first appeal case number? N/A

Was there a previous appeal in this case? ○ Yes ◉ No

If yes, what is the prior appeal case number? N/A

Your mailing address (if pro se):

N/A

N/A

City: N/A State: N/A Zip Code: N/A

Prisoner Inmate or A Number (if applicable): N/A

**Signature** /s/ Nicholas Feronti **Date** 06/25/2026

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

John Andrew, Tereresa Ferguson, and Autumn Ellanna, on behalf of themselves and all those similarly situated.

Name(s) of counsel (if any):

Goriune Dudukgian, Nicholas Feronti, Miye D'Oench, Saima Akhtar, Margaret D. Craig, Kelsey Tavares, Christopher M. Young, Sean P. Fulton, and Constance I. Du.

Address: 406 G Street, Suite 207, Anchorage, AK 99501

Telephone number(s): (907) 308-3395

Email(s): gdudukgian@njp-law.com, nferonti@njp-law.com, akhtar@nclej.org, n

Is counsel registered for Electronic Filing in the 9th Circuit? (•) Yes ( ) No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health.

Name(s) of counsel (if any):

Lael A. Harrison, Justin D. Nelson, and David Wilkinson.

Address: PO Box 110300, Juneau, AK 99811

Telephone number(s): (907) 465-3600

Email(s): lael.harrison@alaska.gov, justin.nelson@alaska.gov, and david.wilkins

*To list additional parties and/or counsel, use next page.*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit? ○ Yes ○ No

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Query Reports Utilities Help Log Out

APPEAL,CLOSED

# U.S. District Court
# United States District Court for the District of Alaska (Anchorage)
# CIVIL DOCKET FOR CASE #: 3:23-cv-00044-SLG

Andrew et al v. Hedberg
Assigned to: Sharon L. Gleason
Case in other court: 9CCA, 26-04167
State of Alaska, 3rd Judicial District, 3AN-23-04259CI
State of Alaska, 3rd Judicial District, 3AN-23-05707CI
Cause: 28:1441 Petition for Removal

Date Filed: 03/01/2023
Date Terminated: 05/28/2026
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Della Kamkoff**
*on behalf of themselves, and all those similarly situated*
*TERMINATED: 04/07/2025*

represented by

**Bethany Bunge**
DLA Piper LLP US
845 Texas Avenue
Suite 3800
Houston, TX 77002
713-425-8446
Fax: 713-300-6003
Email: bethany.bunge@dlapiper.com
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Christopher Munro Young**
Dla Piper
4365 Executive Drive
Suite 1100
San Diego, CA 92121-2133
619-699-4748
Fax: 619-764-6748
Email: christopher.young@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**
Northern Justice Project, LLC
406 G Street
Ste 207
Anchorage, AK 99501
907-308-3395
Fax: 866-813-8645
Email: gdudukgian@njp-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
Northern Justice Project, LLC
406 G Street
Ste 207
Anchorage, AK 99501
907-308-3395
Email: jdavis@njp-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
National Center for Law and Economic Justice
50 Broadway, Suite 1500
New York, NY 10004
646-680-8906
Email: berger@nclej.org
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
DLA Piper LLP US
33 Arch Street
Ste 26th Floor
Boston, MA 02110-1447
617-406-6052
Fax: 617-406-6179
Email: kelsey.tavares@us.dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Ste 26th. Floor
Boston, MA 02110-1447
617-406-6050
Fax: 617-406-6050
Email: maggie.craig@us.dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
Foley & Lardner LLP
One Market Plaza 55 Spear Street
Suite 1900
San Francisco, CA 94105
415-434-4484
Fax: 415-434-4507
Email: micah.chavin@foley.com
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**

Northern Justice Project, LLC
406 G Street, Suite 207
Anchorage, AK 99501
907-330-4070
Email: nferonti@njp-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**
National Center for Law and Economic Justice
50 Broadway, Suite 1500
New York, NY 10004
212-633-6967
Email: akhtar@nclej.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
DLA Piper LLP US
444 West Lake Street
Suite 900
Chicago, IL 60606
312-368-8921
Fax: 312-630-7321
Email: constance.du@us.dlapiper.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
DLA Piper LLP (US)
1900 North Pearl Street
Ste 2200
Dallas, TX 75201-4629
214-743-4572
Fax: 212-558-3588
Email: sean.fulton@us.dlapiper.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Andrew**
*on behalf of themselves, and all those similarly situated*

represented by

**Bethany Bunge**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Christopher Munro Young**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
(See above for address)
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kayla Birch**
*on behalf of themselves, and all those similarly situated*

represented by **Bethany Bunge**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Christopher Munro Young**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
(See above for address)
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rose Carney**
*on behalf of themselves, and all those similarly situated*

represented by

**Bethany Bunge**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Christopher Munro Young**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
(See above for address)
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tereresa Ferguson**
*on behalf of themselves, and all those similarly situated*

represented by

**Bethany Bunge**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Christopher Munro Young**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
(See above for address)
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Zoya Jenkins**
*on behalf of themselves, and all those similarly situated*

represented by

**Bethany Bunge**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Christopher Munro Young**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
(See above for address)
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Troy Fender**
*on behalf of themselves, and all those similarly situated*

represented by

**Bethany Bunge**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Christopher Munro Young**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
(See above for address)
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rhonda Conover**
*on behalf of themselves, and all those similarly situated*

represented by

**Bethany Bunge**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Christopher Munro Young**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
(See above for address)
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Autumn Ellanna**
*on behalf of themselves, and all those similarly situated*

represented by

**Bethany Bunge**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Christopher Munro Young**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
(See above for address)
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nataliia Moroz**
*on behalf of themselves, and all those similarly situated*

represented by **Bethany Bunge**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Christopher Munro Young**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Goriune Dudukgian**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Davis , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan Rebecca Berger**
(See above for address)
*TERMINATED: 04/24/2023*
*LEAD ATTORNEY*

**Kelsey Andrea Tavares**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret D. Craig**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Aaron Chavin**
(See above for address)
*TERMINATED: 03/11/2025*
*LEAD ATTORNEY*

**Nicholas Clark Feronti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Saima A Akhtar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constance Iris Du**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Patrick Fulton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Heidi Hedberg**<br>*in her official capacity as Commissioner of the Alaska Department of Health* | represented by | **Alexander J. Hildebrand**<br>State of Alaska, Department of Law (Juneau)<br>PO Box 110300<br>Juneau, AK 99811-0300<br>907-465-6724<br>Email: alexander.hildebrand@alaska.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**David A. Wilkinson**<br>State of Alaska<br>1031 W. 4th Ave.<br>Ste. 200<br>Anchorage, AK 99501<br>907-269-5100<br>Email: david.wilkinson@alaska.gov<br>*TERMINATED: 07/28/2026*<br>*LEAD ATTORNEY*<br><br>**Justin D. Nelson**<br>State of Alaska<br>100 Cushman Street<br>Suite 400<br>Fairbanks, AK 99701<br>907-451-2973<br>Email: justin.nelson@alaska.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Lael A. Harrison**<br>State of Alaska Department of Law (Juneau)<br>123 4th Street 6th Floor<br>Juneau, AK 99811-0300<br>907-465-3600<br>Fax: 907-465-2539<br>Email: lael.harrison@alaska.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Jeffrey G. Pickett**<br>Attorney General's Office (Anch)<br>1031 W. 4th Avenue, Suite 200<br>Anchorage, AK 99501<br>907-269-5275<br>Fax: 907-276-3697<br>Email: jeff.pickett@alaska.gov<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 03/01/2023 | 1 | NOTICE OF REMOVAL by Heidi Hedberg from SUPERIOR COURT FOR THE STATE OF ALASKA THIRD JUDICIAL DISTRICT AT ANCHORAGE, case number 3AN-23- |

| | | |
|---|---|---|
| | | 04259CI. ( Filing fee $ 402 receipt number AAKDC-3401772), filed by Heidi Hedberg. (Attachments: # 1 Exhibit)(Harrison, Lael) (Entered: 03/01/2023) |
| 03/01/2023 | 2 | Civil Cover Sheet. (Attachments: # 1 Supplement)(Harrison, Lael) (Entered: 03/01/2023) |
| 03/02/2023 | 3 | ORDER to Petitioner Subsequent to Removal: Service list due within 10 days. State Court documents due within 20 days. (PXS, COURT STAFF) (Entered: 03/02/2023) |
| 03/10/2023 | 4 | NOTICE OF FILING STATE COURT SERVICE LIST by Heidi Hedberg (Harrison, Lael) (Entered: 03/10/2023) |
| 03/10/2023 | 5 | NOTICE of Appearance by Lael A. Harrison on behalf of Heidi Hedberg (Harrison, Lael) (Entered: 03/10/2023) |
| 03/10/2023 | 6 | STIPULATION *For Stay* by Heidi Hedberg.(Harrison, Lael) (Entered: 03/10/2023) |
| 03/13/2023 | 7 | NOTICE *of Filing Copies of State Court Filings* by Heidi Hedberg re 3 Order to Petitioner Subsequent to Removal (Attachments: # 1 Affidavit of Autumn Ellanna, # 2 Affidavit of Della Kamkoff, # 3 Affidavit of John Andrew, # 4 Affidavit of Kayla Birch, # 5 Affidavit of Nataliia Moroz, # 6 Affidavit of Rhonda Conover, # 7 Affidavit of Rose Carney, # 8 Affidavit of Tereresa Ferguson, # 9 Affidavit of Troy Fender, # 10 Affidavit of Zoya Jenkins, # 11 Bethany Bunge's Motion to Appear Pro Hac Vice, # 12 Christopher Young's Motion to Appear Pro Hac Vice, # 13 Declaration of Nicholas Feronti in Support of Plaintiff's Motions for Class Certification and Preliminary Injunction, # 14 Entry of Appearance for Lael Harrison, # 15 Jordan Berger's Motion for Pro Hac Vice Appearance as Counsel, # 16 Kelsey Tavares's Motion to Appear Pro Hac Vice, # 17 Margaret Craig's Motion to Appear Pro Hac Vice, # 18 Memorandum of Law in Support of Motion for Class Certification, # 19 Memorandum of Law in Support of Motion for Preliminary Injunction, # 20 Micah Chavin's Motion to Appear Pro Hac Vice, # 21 Motion for Class Certification, # 22 Motion for Preliminary Injunction, # 23 Notice to State Court of Removal, # 24 Plaintiff's Notice of Change of Judge, # 25 Request and Order for Reassignment, # 26 Saima Akhtar's Motion to Appear Pro Hac Vice, # 27 Summons and Complaint - Della Kamkoff, et al. v. Heidi Hedberg)(Harrison, Lael) Modified on 3/14/2023 to change to motion event to track motions. (RMC, COURT STAFF). (Entered: 03/13/2023) |
| 03/14/2023 | 8 | **ORDER** granting 6 Stipulation for Stay. Case stayed until 5/1/2023. (See PDF for details). Signed by Judge Sharon L. Gleason on 3/14/23. (RMC, COURT STAFF) (Entered: 03/14/2023) |
| 03/17/2023 | 9 | **ORDER** re Motions by Non-Resident Attorneys to Appear Pro Hac Vice. The filings in the record demonstrate that the named plaintiffs are not able to pay a filing fee. Therefore, the motions are each GRANTED. Signed by Judge Sharon L. Gleason on 3/17/23. (RMC, COURT STAFF) (Entered: 03/17/2023) |
| 04/20/2023 | 10 | MOTION to Withdraw as Attorney *Unopposed Motion to Withdraw Jordan Berger* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Proposed Order Proposed Order)(Berger, Jordan ) (Entered: 04/20/2023) |
| 04/24/2023 | 11 | **SLG TEXT ORDER**: Plaintiffs Unopposed Motion to Allow Withdrawal of Attorney at Docket 10 is GRANTED. Pursuant to Local Civil Rule of Procedure 11.1(c), Jordan Berger is withdrawn as counsel of record for plaintiffs in this matter. (CFR, CHAMBERS STAFF) (Entered: 04/24/2023) |
| 05/02/2023 | 12 | Second STIPULATION *For Stay and Order* by Heidi Hedberg.(Harrison, Lael) (Entered: 05/02/2023) |

| | | |
|---|---|---|
| 05/02/2023 | 13 | STIPULATION *on Class Certification* by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Harrison, Lael) (Entered: 05/02/2023) |
| 05/09/2023 | 14 | **SLG TEXT ORDER**: The Court has reviewed and ACCEPTS the parties Second Stipulation for Stay and Order at Docket 12 . This case is STAYED for a period of six months to run from May 1, 2023. The parties shall abide by the conditions of their stipulation. (CFR, CHAMBERS STAFF) (Entered: 05/09/2023) |
| 05/09/2023 | 15 | **ORDER** re 13 Stipulation on Class Certification. Signed by Judge Sharon L. Gleason on 5/9/23. (RMC, COURT STAFF) (Entered: 05/09/2023) |
| 11/06/2023 | 16 | NOTICE of Appearance by Justin D. Nelson on behalf of Heidi Hedberg (Nelson, Justin) (Entered: 11/06/2023) |
| 11/09/2023 | 17 | MOTION to Stay by Heidi Hedberg. (Attachments: # 1 Exhibit 1, 2, 3, 4, 5, 6, 7, # 2 Affidavit Aff. of Deb Etheridge, # 3 Affidavit Decl. of Tracie Dablemont, # 4 Proposed Order)(Nelson, Justin) (Entered: 11/09/2023) |
| 11/17/2023 | 18 | MOTION for Extension of Time to File Response/Reply *Unopposed* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Proposed Order)(Feronti, Nicholas) (Entered: 11/17/2023) |
| 11/20/2023 | 19 | **SLG TEXT ORDER**: Plaintiffs' Unopposed Motion for Extension of Time to File Opposition to Defendant's Motion for Stay at Docket 18 is GRANTED. Plaintiffs' Response to Defendant's Motion for Stay is due **December 4, 2023**. (RMC, COURT STAFF) (Entered: 11/20/2023) |
| 11/21/2023 | 20 | NOTICE *of Errata* by Heidi Hedberg (Nelson, Justin) Modified on 12/6/2023 to create relationship to dkt 17. (RMC, COURT STAFF). (Entered: 11/21/2023) |
| 11/21/2023 | 21 | Amended MOTION to Stay re 20 Notice (Other) *of Errata* by Heidi Hedberg. (Attachments: # 1 Affidavit Second Affidavit Deb Etheridge, # 2 Affidavit Second Declaration of Tracie Dablemont)(Nelson, Justin) (Entered: 11/21/2023) |
| 12/04/2023 | 22 | RESPONSE in Opposition re 21 Amended MOTION to Stay re 20 Notice (Other) *of Errata* filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Feronti, Nicholas) (Entered: 12/04/2023) |
| 12/11/2023 | 23 | REPLY to Response to Motion in Support re 17 MOTION to Stay filed by Heidi Hedberg. (Attachments: # 1 Exhibit Exhibit A)(Nelson, Justin) Modified on 12/14/2023 (RMC, COURT STAFF). (Entered: 12/11/2023) |
| 02/05/2024 | 24 | **ORDER** RE AMENDED MOTION FOR STAY, MOTION FOR CLASS CERTIFICATION, AND MOTION FOR PRELIMINARY INJUNCTION: Defendant's Amended Motion for Stay at Docket 21 is **DENIED**. Defendant shall file a response to the portion of Plaintiffs' Motion for Class Certification concerning the proposed Language Access Class at Docket [7-21] within **14 days** of the date of this order. Furthermore, Plaintiffs' Motion for Preliminary Injunction at Docket [7-22] is **DENIED without prejudice** to its renewal. Signed by Judge Sharon L. Gleason on 2/5/2024. (SCD, COURT STAFF) (Entered: 02/05/2024) |
| 02/20/2024 | 25 | RESPONSE TO ORDER *for Opposition to Motion for Class Certification Re: Language Access* by Heidi Hedberg. (Attachments: # 1 Exhibit Exhibit A, # 2 Proposed Order) (Nelson, Justin) Modified on 3/19/2024 to create relationship to dkt 7-21. (RMC, COURT STAFF). (Entered: 02/20/2024) |

| | | |
|---|---|---|
| 02/27/2024 | 26 | REPLY to Response to Motion re 13 STIPULATION *on Class Certification for a Language Access Class* filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Feronti, Nicholas) Modified on 3/19/2024 to create relationship to dkt 7-21. (RMC, COURT STAFF). (Entered: 02/27/2024) |
| 03/15/2024 | 27 | *Defendants'* ANSWER to Complaint *Class Action* by Heidi Hedberg.(Nelson, Justin) (Entered: 03/15/2024) |
| 03/19/2024 | 28 | **ORDER RE INITIAL SCHEDULING & PLANNING CONFERENCE REPORT**: Counsel for plaintiff shall serve and file the Rule 26 Meeting Report within 21 days of service of this order. Signed by Judge Sharon L. Gleason on 3/19/24. (RMC, COURT STAFF) (Entered: 03/19/2024) |
| 03/19/2024 | 29 | MOTION for Leave to Appear as Pro Hac Vice (Non-Resident ) Attorney Constance Iris Du. ( Pro Hac Vice Admission fee $250.00 paid. Receipt number AAKDC-3580600.) by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz.(Du, Constance) (Entered: 03/19/2024) |
| 03/20/2024 | 30 | CLERK'S NOTICE re 29 Application to Appear Pro Hac Vice. The Application to Appear Pro Hac Vice by Constance Iris Du, at docket 29 , is authorized under L.Civ.R. 83.1(d). (RMC, COURT STAFF) (Entered: 03/20/2024) |
| 04/08/2024 | 31 | REPORT of Rule 26(f) Planning Meeting. (Feronti, Nicholas) (Entered: 04/08/2024) |
| 04/10/2024 | 32 | **SCHEDULING AND PLANNING ORDER** : Discovery due by 1/15/2025. Dispositive Motions due by 6/16/2025. Signed by Judge Sharon L. Gleason on 4/10/24. (RMC, COURT STAFF) (Main Document 32 replaced on 4/10/2024 with signature. NEF regenerated. ) (RMC, COURT STAFF). (Entered: 04/10/2024) |
| 04/18/2024 | 33 | Joint MOTION for Protective Order *Governing Confidential Information* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz.(Akhtar, Saima) (Entered: 04/18/2024) |
| 05/03/2024 | 34 | **STIPULATED PROTECTIVE ORDER** granting 33 Motion for Protective Order. Signed by Judge Sharon L. Gleason on 5/3/24. (RMC, COURT STAFF) (Entered: 05/03/2024) |
| 05/08/2024 | 35 | MOTION for Preliminary Injunction *(Renewed)* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Memorandum in Support of Plaintiffs' Renewed Motion for Preliminary Injunction, # 2 Declaration of Nicholas Feronti in Support of Plaintiffs' Renewed Motion for Preliminary Injunction, # 3 Grant Declaration, # 4 Carney Declaration, # 5 Gaston Declaration, # 6 Younker Declaration, # 7 Jenkins Declaration, # 8 Proposed Order Proposed Order Granting Plaintiffs' Renewed Motion for Preliminary Injunction)(Feronti, Nicholas) (Entered: 05/08/2024) |
| 05/08/2024 | 36 | MOTION for Leave to File Excess Pages by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Proposed Order)(Feronti, Nicholas) (Entered: 05/08/2024) |
| 05/09/2024 | 37 | **SLG TEXT ORDER**: Plaintiffs' Motion for Leave to File a Memorandum in Excess of the Page Limit at Docket 36 is GRANTED. The Memorandum at Docket 35 is ACCEPTED as filed. (CFR, CHAMBERS STAFF) (Entered: 05/09/2024) |

| | | |
|---|---|---|
| 05/15/2024 | 38 | **ORDER** denying [7-21] Motion for Class Certification. Signed by Judge Sharon L. Gleason on 5/15/24. (RMC, COURT STAFF) (Entered: 05/15/2024) |
| 05/15/2024 | 39 | **SLG TEXT ORDER**: Pursuant to Local Civil Rule 5.1(a)(1) and (d) and the CM/ECF Electronic Filing Procedures Guide, all attorneys must participate in the CM/ECF system unless exempted. Attorneys Bethany M. Bunge and Kelsey Tavares of DLA Piper LLP (US) shall update their account information to include a valid email address and phone number for electronic service within 10 days of the date of this order or they shall be removed as counsel of record. (RMC, COURT STAFF) (Entered: 05/15/2024) |
| 05/20/2024 | 40 | MOTION for Extension of Time to File Response/Reply as to 35 MOTION for Preliminary Injunction *(Renewed) Unopposed Motion for Extension of Time* by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 05/20/2024) |
| 05/21/2024 | 41 | **SLG TEXT ORDER**: Defendant's Unopposed Motion for Extension of Time at Docket 40 is GRANTED. The deadline for Defendant to respond to Plaintiffs' Motion for Preliminary Injunction is reset to **June 5, 2024**. (JDS, COURT STAFF) (Entered: 05/21/2024) |
| 06/06/2024 | 42 | MOTION for Extension of Time to File Response/Reply by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Pickett, Jeffrey) (Entered: 06/06/2024) |
| 06/10/2024 | 43 | MOTION for Extension of Time to File Response/Reply as to 35 MOTION for Preliminary Injunction *(Renewed) Unopposed Motion for Extension of Time* by Heidi Hedberg. (Attachments: # 1 Proposed Order, # 2 Affidavit Affidavit of Counsel in Support of Unopposed Motion for Extension of Time)(Nelson, Justin) (Entered: 06/10/2024) |
| 06/10/2024 | 44 | **SLG TEXT ORDER**: The Motion to File Late Document and Declaration at Docket 42 and the Unopposed Motion for Extension of Time at Docket 43 are each GRANTED. The State of Alaska is granted to and including June 12, 2024, to oppose the plaintiffs' Renewed Motion for Preliminary Injunction (Dkt. 35). (CFR, CHAMBERS STAFF) (Entered: 06/10/2024) |
| 06/11/2024 | 45 | NOTICE *of Filing Executed Declarations and Affidavit* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz (Attachments: # 1 Affidavit Jenkins Declaration, # 2 Affidavit Moroz Declaration, # 3 Affidavit Birch Declaration, # 4 Affidavit Ferguson Declaration, # 5 Affidavit Andrew Declaration, # 6 Affidavit Conover Declaration, # 7 Affidavit Ellana Declaration, # 8 Kamkoff Affidavit)(Feronti, Nicholas) (Entered: 06/11/2024) |
| 06/12/2024 | 46 | RESPONSE in Opposition re 35 MOTION for Preliminary Injunction *(Renewed) Oral Argument Requested* filed by Heidi Hedberg. (Attachments: # 1 Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Affidavit Declaration of Deb Etheridge, # 9 Affidavit Declaration of Rebecca Stovall, # 10 Affidavit Declaration of Tracie Dablemont)(Nelson, Justin) (Entered: 06/12/2024) |
| 06/12/2024 | 47 | MOTION for Leave to File Excess Pages *Unopposed Motion to File Overlength Brief* by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 06/12/2024) |
| 06/13/2024 | 48 | **SLG TEXT ORDER**: The Unopposed Motion to File Overlength Brief at Docket 47 is GRANTED. The brief at Docket 46 is ACCEPTED as filed. (CFR, CHAMBERS STAFF) (Entered: 06/13/2024) |
| 06/14/2024 | 49 | Notice to Counsel re 45 Notice of Filing Executed Declarations and Affidavit filed by Troy Fender, Autumn Ellanna, Tereresa Ferguson, Rose Carney, Della Kamkoff, Nataliia Moroz, Rhonda Conover, John Andrew, Zoya Jenkins, Kayla Birch. Counsel is to provide |

| | | |
|---|---|---|
| | | the court with a CHAMBERS copy of your filing at dkt 45 as directed by Order at dkt 32 . (JDS, COURT STAFF) (Entered: 06/14/2024) |
| 06/14/2024 | 50 | Notice to Counsel re 46 Response in Opposition to Motion, filed by Heidi Hedberg. Counsel is to provide the court with a CHAMBERS copy of your filing at dkt 46 as directed by Order at dkt 32 . (JDS, COURT STAFF) (Entered: 06/14/2024) |
| 06/17/2024 | 51 | NOTICE *of Errata* by Heidi Hedberg (Attachments: # 1 Affidavit Errata Declaration of Rebecca Stovall)(Nelson, Justin) (Entered: 06/17/2024) |
| 06/20/2024 | 52 | REPLY to Response to Motion re 35 MOTION for Preliminary Injunction *(Renewed)* filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Affidavit Declaration of Cecelia Kamkoff, # 2 Affidavit Declaration of Julia Deutsch)(Akhtar, Saima) (Entered: 06/20/2024) |
| 06/20/2024 | 53 | MOTION for Leave to File Excess Pages *Unopposed* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Proposed Order)(Akhtar, Saima) (Entered: 06/20/2024) |
| 06/21/2024 | 54 | **SLG TEXT ORDER**: Plaintiffs' Unopposed Motion for Leave to File a Reply Memorandum in Excess of the Page Limit at Docket 53 is GRANTED. The reply brief at Docket 52 is ACCEPTED as filed. (CFR, CHAMBERS STAFF) (Entered: 06/21/2024) |
| 06/24/2024 | 55 | NOTICE *of Filing Certificate of Service re Declaration of Cecelia Kamkoff* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz (Feronti, Nicholas) (Entered: 06/24/2024) |
| 06/24/2024 | 56 | **ORDER:** Oral Argument on Plaintiffs' 35 Renewed Motion for Preliminary Injunction is set for **7/18/2024 at 2:00 PM** in Anchorage Courtroom 2 before Judge Sharon L. Gleason. Each side shall be accorded up to 20 minutes to present its arguments. Signed by Judge Sharon L. Gleason on 6/24/2024. (JDS, COURT STAFF) (Entered: 06/24/2024) |
| 07/17/2024 | 57 | MOTION re 56 Order,, Set Motion and R&R Deadlines/Hearings, *Parties' Joint Request for Public Listen Line for Oral Argument* by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 07/17/2024) |
| 07/17/2024 | 58 | **SLG TEXT ORDER**: The Parties' Joint Request for Public Listen Line for Oral Argument at Docket 57 is GRANTED. The public may listen to oral argument on July 18, 2024, at 2:00 p.m. by dialing 571-353-2301 and using Call ID 275666327. (SCD, COURT STAFF) (Entered: 07/17/2024) |
| 07/18/2024 | 59 | MINUTE ENTRY for proceedings held before Judge Sharon L. Gleason: Oral Argument on Renewed Motion for Preliminary Injunction 35 held 2:05 PM to 2:51 PM and recorded in Anchorage Courtroom 2 on 7/18/2024. Arguments heard on Plaintiffs' 35 Renewed Motion for Preliminary Injunction; **MATTER TAKEN UNDER ADVISEMENT**, written ruling to issue. APPEARANCES: Nicholas Clark Feronti and James J. Davis, Jr. for Plaintiffs; Lael A. Harrison and Justin D. Nelson for Defendant. (JDS, COURT STAFF) (Entered: 07/18/2024) |
| 08/21/2024 | 60 | NOTICE *of Supplemental Authority in Support of Renewed Motion for Preliminary Injunction* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz (Feronti, Nicholas) (Entered: 08/21/2024) |
| 08/23/2024 | 61 | MOTION - To Supplement Renewed Preliminary Injunction Filing by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa |

| | | |
|---|---|---|
| | | Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Declaration of Attorney Michah Chavin In Support, # 2 Proposed Order)(Chavin, Micah) (Entered: 08/23/2024) |
| 08/26/2024 | 62 | RESPONSE in Opposition re 61 MOTION - To Supplement Renewed Preliminary Injunction Filing *Partial Opposition to Plaintiffs' Motion to Supplement Their Renewed Motion for Preliminary Injunction* filed by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 08/26/2024) |
| 08/26/2024 | 63 | NOTICE *Response to Plaintiffs' Notice of Supplemental Authority* by Heidi Hedberg re 60 Notice (Other), (Nelson, Justin) (Entered: 08/26/2024) |
| 08/27/2024 | 64 | REPLY to Response to Motion re 61 MOTION - To Supplement Renewed Preliminary Injunction Filing filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Feronti, Nicholas) (Entered: 08/27/2024) |
| 09/26/2024 | 65 | Joint MOTION for Extension of Time to Complete Discovery by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Proposed Order) (Akhtar, Saima) (Entered: 09/26/2024) |
| 10/01/2024 | 66 | **ORDER** granting 65 Joint MOTION for Extension of Time to Complete Discovery. *See* Order for amended deadlines. Signed by Judge Sharon L. Gleason on 10/1/2024. (SCD, COURT STAFF) (Entered: 10/01/2024) |
| 10/08/2024 | 67 | MOTION Plaintiffs' Second Motion to Supplement Renewed Preliminary Injunction Filing by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Declaration of Attorney Nicholas Feronti in Support of Plaintiffs' Second Motion to Supplement Renewed Preliminary Injunction Filing, # 2 Proposed Order Granting Plaintiffs' Second Motion to Supplement Renewed Preliminary Injunction Filing)(Feronti, Nicholas) (Entered: 10/08/2024) |
| 10/21/2024 | 68 | RESPONSE in Opposition re 67 MOTION Plaintiffs' Second Motion to Supplement Renewed Preliminary Injunction Filing filed by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Harrison, Lael) (Entered: 10/21/2024) |
| 10/23/2024 | 69 | REPLY to Response to Motion re 67 MOTION Plaintiffs' Second Motion to Supplement Renewed Preliminary Injunction Filing filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Feronti, Nicholas) (Entered: 10/23/2024) |
| 11/22/2024 | 70 | MOTION for Leave to Appear as Pro Hac Vice (Non-Resident ) Attorney Sean P. Fulton. ( Pro Hac Vice Admission fee $250.00 paid. Receipt number AAKDC-3698654.) by Rose Carney, Tereresa Ferguson, Della Kamkoff, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, Nataliia Moroz, John Andrew, Kayla Birch.(Fulton, Sean) (Entered: 11/22/2024) |
| 11/22/2024 | 74 | CLERK'S NOTICE re 70 Application to Appear Pro Hac Vice. The Application to Appear Pro Hac Vice by Sean P. Fulton, at docket 70 , is authorized under L.Civ.R. 83.1(d). (SCD, COURT STAFF) (Entered: 12/06/2024) |
| 12/02/2024 | 71 | Third MOTION *to Supplement Renewed Preliminary Injunction Filing* by Rose Carney, Tereresa Ferguson, Della Kamkoff, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, Nataliia Moroz, John Andrew, Kayla Birch. (Attachments: # 1 Declaration of Attorney Nicholas Feronti in Support of Plaintiffs' Third Motion to Supplement Renewed Preliminary Injunction Filing, # 2 Proposed Order Proposed Order Granting Plaintiffs' |

| | | |
|---|---|---|
| | | Second Motion to Supplement Renewed Preliminary Injunction Filing)(Feronti, Nicholas) (Entered: 12/02/2024) |
| 12/04/2024 | 72 | RESPONSE in Opposition re 71 Third MOTION *to Supplement Renewed Preliminary Injunction Filing Defendant's Opposition to Plaintiffs' Third Motion to Supplement Renewed Preliminary Injunction Filing* filed by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 12/04/2024) |
| 12/05/2024 | 73 | REPLY to Response to Motion re 71 Third MOTION *to Supplement Renewed Preliminary Injunction Filing* filed by Rose Carney, Tereresa Ferguson, Della Kamkoff, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, Nataliia Moroz, John Andrew, Kayla Birch. (Feronti, Nicholas) (Entered: 12/05/2024) |
| 12/23/2024 | 75 | SUGGESTION OF DEATH Upon the Record as to Della Kamkoff by Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, Nataliia Moroz, John Andrew, Kayla Birch. (Attachments: # 1 Affidavit Declaration of Sara Lunden)(Akhtar, Saima) (Entered: 12/23/2024) |
| 12/23/2024 | 76 | CERTIFICATE OF SERVICE by Rose Carney, Tereresa Ferguson, Della Kamkoff, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, Nataliia Moroz, John Andrew, Kayla Birch (Du, Constance) (Entered: 12/23/2024) |
| 12/31/2024 | 77 | ****VACATED** per Order 147**: ORDER granting 35 Motion for Preliminary Injunction; granting 61 Motion to Supplement; granting 67 Second Motion to Supplement; granting 71 Third Motion to Supplement. Status Report due by 2/3/2025. Signed by Judge Sharon L. Gleason on 12/31/2024. (HJR, COURT STAFF) Modified on 12/31/2024 to include status report deadline. NEF regenerated. (HJR, COURT STAFF). Modified on 5/21/2026 to indicate Order Vacated. (ANM, COURT STAFF). (Entered: 12/31/2024) |
| 02/03/2025 | 78 | STATUS REPORT *Joint Status Report Regarding Informal Relief Process* by Rose Carney, Tereresa Ferguson, Della Kamkoff, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, Nataliia Moroz, Heidi Hedberg, John Andrew, Kayla Birch. (Nelson, Justin) (Entered: 02/03/2025) |
| 02/03/2025 | 79 | NOTICE *of Related Case with APA Case Stipulation* by Heidi Hedberg (Attachments: # 1 Exhibit Signed Stipulation of Parties)(Nelson, Justin) (Entered: 02/03/2025) |
| 02/03/2025 | 80 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Exhibit Report on Compliance with Court-Ordered Requirements)(Nelson, Justin) (Entered: 02/03/2025) |
| 02/05/2025 | 81 | **SLG TEXT ORDER:** The Court has reviewed and ACCEPTS the Joint Status Report at Docket 78 and the Division of Public Assistance's Court Report at Docket 80 . The parties shall continue to file status reports as required by the Court's order at Docket 77 . (JDS, COURT STAFF) (Entered: 02/05/2025) |
| 03/03/2025 | 82 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Exhibit Report on Compliance with Court-Ordered Requirements)(Nelson, Justin) (Entered: 03/03/2025) |
| 03/07/2025 | 83 | MOTION to Withdraw as Attorney *Micah Chavin and Bethany Bunge - Unopposed Motion* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz.(Tavares, Kelsey) (Entered: 03/07/2025) |
| 03/10/2025 | 84 | **SLG TEXT ORDER**: The Court has reviewed and ACCEPTS the Division of Public Assistance's Court Report at Docket 82 . Defendant shall continue to file status reports as |

| | | |
|---|---|---|
| | | required by the Court's order at Docket 77 . (SCD, COURT STAFF) (Entered: 03/10/2025) |
| 03/10/2025 | 85 | NOTICE of Appearance by David A. Wilkinson on behalf of Heidi Hedberg (Wilkinson, David) (Entered: 03/10/2025) |
| 03/11/2025 | 86 | **SLG TEXT ORDER**: The Unopposed Motion to Withdraw as Attorney at Docket 83 is GRANTED. Micah Chavin and Bethany Bunge are withdrawn as counsel for Plaintiffs. All other attorneys for Plaintiffs shall remain counsel of record. (JDS, COURT STAFF) (Entered: 03/11/2025) |
| 03/19/2025 | 87 | TRANSCRIPT REQUEST by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Tavares, Kelsey) (Entered: 03/19/2025) |
| 03/26/2025 | 88 | TRANSCRIPT of Proceedings; Oral Argument on Renewed Motion for Preliminary Injunction held on July 18, 2024 before Judge Sharon L. Gleason. Realtime Court Reporter: Sonja L. Reeves, RDR-CRR.<br><br>Any party needing a copy of the transcript to review for redaction or correction purposes may purchase a copy by calling Realtime Court Reporter, Sonja L. Reeves, RDR-CRR (202) 354-3246. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>The parties have seven (7) calendar days to file with the court a Motion Requesting Redactions or Corrections of this transcript. If no such motion is filed, the transcript may be made remotely electronically available to the public without redactions or corrections after Release of Transcript Restriction deadline of 6/24/2025. Ordered by: Kelsey Tavares (Reeves, Sonja) (Entered: 03/26/2025) |
| 04/01/2025 | 89 | NOTICE *of Filing* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Court Ordered Report) (Harrison, Lael) (Entered: 04/01/2025) |
| 04/02/2025 | 90 | Joint MOTION to Amend/Correct *Case Caption* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Proposed Order Proposed Order Granting Joint Motion to Amend the Case Caption)(Feronti, Nicholas) (Entered: 04/02/2025) |
| 04/02/2025 | 91 | **SLG TEXT ORDER**: The Court has reviewed and ACCEPTS the Division of Public Assistance's Court Report at Docket 89 . Defendant shall continue to file status reports as required by the Court's order at Docket 77 . (JDS, COURT STAFF) (Entered: 04/02/2025) |
| 04/07/2025 | 92 | **ORDER** granting 90 Joint Motion to Amend the Case Caption. Signed by Judge Sharon L. Gleason on 4/7/2025. (JDS, COURT STAFF) (Entered: 04/07/2025) |
| 04/15/2025 | 93 | MOTION to Amend/Correct 66 Order, Terminate Scheduling Order Deadlines, Set Deadlines, Set Scheduling Order Deadlines, Terminate Motions *Unopposed Motion to Amend Scheduling Order* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Nataliia Moroz. (Attachments: # 1 Proposed Order)(Akhtar, Saima) (Entered: 04/15/2025) |
| 04/16/2025 | 94 | **ORDER** granting 93 Unopposed Motion to Amend Scheduling Order. *See* Order for details. Signed by Judge Sharon L. Gleason on 4/16/2025. (JDS, COURT STAFF) (Entered: 04/16/2025) |

| | | |
|---|---|---|
| 05/01/2025 | 95 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements) (Nelson, Justin) (Entered: 05/01/2025) |
| 05/02/2025 | 96 | **SLG TEXT ORDER**: The Court has reviewed and ACCEPTS the Division of Public Assistances Court Report at Docket 95 . Defendant shall continue to file status reports as required by the Courts order at Docket 77 .(BJK, COURT STAFF) (Entered: 05/02/2025) |
| 06/02/2025 | 97 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements, # 2 Attachment 1, # 3 Attachment 2, # 4 Attachment 3, # 5 Attachment 4, # 6 Attachment 5, # 7 Attachment 6, # 8 Attachment 7)(Nelson, Justin) (Entered: 06/02/2025) |
| 06/26/2025 | 98 | **NOTICE TO COUNSEL**: Pursuant to the Court's order at Docket 32 requiring chambers copies of any filings greater than 50 pages in length, counsel is to provide the Court with a **CHAMBERS copy of your filing at Dkt. 97** as soon as possible. Chambers copies shall be an exact replica of the filed document, including the document footer assigned by the CM/ECF System; exhibits/attachments must be separately identified with readily visible tabs; and must be legible, single-sided, and two-hole punched at the center of the top page. (BJK, COURT STAFF) (Entered: 06/26/2025) |
| 07/01/2025 | 99 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements, # 2 Attachment 1, # 3 Attachment 2, # 4 Attachment 3, # 5 Attachment 4, # 6 Attachment 5, # 7 Attachment 6, # 8 Attachment 7)(Nelson, Justin) (Entered: 07/01/2025) |
| 07/31/2025 | 100 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements, # 2 Attachment 1, # 3 Attachment 2, # 4 Attachment 3, # 5 Attachment 4, # 6 Attachment 5, # 7 Attachment 6, # 8 Attachment 7)(Nelson, Justin) (Entered: 07/31/2025) |
| 08/01/2025 | 101 | **SLG TEXT ORDER**: The Court has reviewed and ACCEPTS the Alaska Department of Health's monthly Status Report at Docket 100 . (LMH, COURT STAFF) (Entered: 08/01/2025) |
| 09/02/2025 | 102 | MOTION for Summary Judgment by Heidi Hedberg. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Affidavit of Deb Etheridge, # 4 Affidavit of Jason Burke, # 5 Affidavit of Tracie Dablemont, # 6 Proposed Order, # 7 Certificate of Service)(Harrison, Lael) (Entered: 09/02/2025) |
| 09/02/2025 | 103 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 September DPA Court Report)(Harrison, Lael) (Entered: 09/02/2025) |
| 09/09/2025 | 104 | **NOTICE TO COUNSEL**: Pursuant to the Court's order at Docket 32 requiring chambers copies of any filings greater than 50 pages in length, counsel is to provide the Court with a **CHAMBERS copy of your filings at Dockets 102 and 103** as soon as possible. Chambers copies shall be an exact replica of the filed document, including the document footer assigned by the CM/ECF System; exhibits/attachments must be separately identified with readily visible tabs; and must be legible, single-sided, and two-hole punched at the center of the top page. (LMH, COURT STAFF) (Entered: 09/09/2025) |

| | | |
|---|---|---|
| 09/12/2025 | 105 | STIPULATION *Parties' Stipulated Summary Judgment Briefing Schedule* by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 09/12/2025) |
| 09/12/2025 | 106 | STIPULATION *Stipulation to Dismiss Language Access Claims* by Heidi Hedberg. (Nelson, Justin) (Entered: 09/12/2025) |
| 09/12/2025 | 107 | MOTION for Summary Judgment by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Attachments: # 1 Memorandum ISO Plaintiff's MJS)(Akhtar, Saima) (Entered: 09/12/2025) |
| 09/12/2025 | 108 | STATEMENT *of Material Facts ISO Plaintiffs' Motion for Summary Judgment* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz re 107 MOTION for Summary Judgment filed by Troy Fender, Autumn Ellanna, Tereresa Ferguson, Rose Carney, Della Kamkoff, Nataliia Moroz, Rhonda Conover, John Andrew, Zoya Jenkins, Kayla Birch. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20-01, # 21 Exhibit 20-02, # 22 Exhibit 20-03, # 23 Exhibit 20-04, # 24 Exhibit 20-05, # 25 Exhibit 20-06, # 26 Exhibit 21, # 27 Exhibit 22, # 28 Exhibit 23, # 29 Exhibit 24, # 30 Exhibit 25, # 31 Exhibit 26, # 32 27, # 33 Exhibit 28, # 34 Exhibit 29, # 35 Exhibit 30)(Akhtar, Saima) (Entered: 09/12/2025) |
| 09/15/2025 | 109 | MOTION for Partial Summary Judgment *Re: First-Contact-Filing Claim* by Heidi Hedberg. (Attachments: # 1 Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D Part One, # 6 Exhibit D Part Two, # 7 Exhibit E Part One, # 8 Exhibit E Part Two, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L)(Nelson, Justin) (Entered: 09/15/2025) |
| 09/15/2025 | 110 | MOTION for Partial Summary Judgment *Re: Constitutional Claims* by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 09/15/2025) |
| 09/16/2025 | 111 | **SLG TEXT ORDER**: The Court has reviewed the parties' Stipulation to Dismiss Language Access Claims at Docket 106. The claims brought by plaintiff Nataliia Moroz, in her personal capacity and on behalf of the language access class she sought to represent are DISMISSED. Each side shall bear its own attorneys' fees and costs related to those claims. Pursuant to Rule 23(e), Court approval of this dismissal is not required because this Court denied certification of a language class. (LMH, COURT STAFF) (Entered: 09/16/2025) |
| 09/16/2025 | 112 | **NOTICE TO COUNSEL**: Pursuant to the Court's order at Docket 32 requiring chambers copies of any filings greater than 50 pages in length, counsel is to provide the Court with a **CHAMBERS copy of your filing at Dkt. 108** as soon as possible. Chambers copies shall be an exact replica of the filed document, including the document footer assigned by the CM/ECF System; exhibits/attachments must be separately identified with readily visible tabs; and must be legible, single-sided, and two-hole punched at the center of the top page. (LMH, COURT STAFF) (Entered: 09/16/2025) |
| 09/16/2025 | 113 | **ORDER RE PARTIES' STIPULATED SUMMARY JUDGMENT BRIEFING SCHEDULE**: The Stipulation at 105 is **GRANTED**. See order for further details. Signed by Judge Sharon L. Gleason on 9/16/25. (LMH, COURT STAFF) (Entered: 09/16/2025) |
| 09/30/2025 | 114 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements, # |

| | | |
|---|---|---|
| | | 2 Attachment 1, # 3 Attachment 2, # 4 Attachment 3, # 5 Attachment 4, # 6 Attachment 5, # 7 Attachment 6, # 8 Attachment 7)(Nelson, Justin) (Entered: 09/30/2025) |
| 10/17/2025 | 115 | RESPONSE in Opposition re 102 MOTION for Summary Judgment filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Nataliia Moroz. (Akhtar, Saima) (Entered: 10/17/2025) |
| 10/24/2025 | 116 | RESPONSE in Opposition re 107 MOTION for Summary Judgment *Opposition to Plaintiffs' Motion for Summary Judgment (Oral Argument Requested)* filed by Heidi Hedberg. (Attachments: # 1 Proposed Order, # 2 Declaration of Rebecca Stovall in Support of Opposition to Plaintiffs' Motion for Summary Judgment, # 3 Exhibit A Part One, # 4 Exhibit A Part Two, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G)(Nelson, Justin) (Entered: 10/24/2025) |
| 10/24/2025 | 117 | RESPONSE in Opposition re 109 MOTION for Partial Summary Judgment *Re: First-Contact-Filing Claim* filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Nataliia Moroz. (Akhtar, Saima) (Entered: 10/24/2025) |
| 10/24/2025 | 118 | RESPONSE in Opposition re 110 MOTION for Partial Summary Judgment *Re: Constitutional Claims* filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Della Kamkoff, Nataliia Moroz. (Feronti, Nicholas) (Entered: 10/24/2025) |
| 11/03/2025 | 119 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements, # 2 Attachment 1, # 3 Attachment 2, # 4 Attachment 3, # 5 Attachment 4, # 6 Attachment 5, # 7 Attachment 6, # 8 Attachment 7)(Nelson, Justin) (Entered: 11/03/2025) |
| 11/07/2025 | 120 | REPLY in Support re 102 MOTION for Summary Judgment *Reply in Support of Defendant's Motion for Summary Judgment (Oral Argument Requested)* filed by Heidi Hedberg. (Attachments: # 1 Exhibit A)(Nelson, Justin) Modified on 11/12/2025 to correct dkt text to reply (JDS, COURT STAFF). (Entered: 11/07/2025) |
| 11/12/2025 | 121 | **SLG TEXT ORDER**: The Request for Oral Argument on the Motion for Summary Judgment at Docket 102 is GRANTED. Oral argument on all motions then pending is scheduled for **December 16, 2025, at 3:00 p.m.** in Anchorage Courtroom 2. Each side shall be accorded up to 20 minutes to present its arguments. (JDS, COURT STAFF) (Entered: 11/12/2025) |
| 11/17/2025 | 122 | RESPONSE in Support re 109 MOTION for Partial Summary Judgment *Re: First-Contact-Filing Claim Reply in Support of Defendant's Motion for Summary Judgment Re: First-Contact-Filing Claim (Oral Argument Requested)* filed by Heidi Hedberg. (Attachments: # 1 Declaration of Rebecca Stovall in Support of Defendant's Motion for Summary Judgment Re First-Contact-Filing, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(Nelson, Justin) (Entered: 11/17/2025) |
| 11/17/2025 | 123 | REPLY to Response to Motion re 107 MOTION for Summary Judgment filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Nataliia Moroz. (Akhtar, Saima) (Entered: 11/17/2025) |
| 11/17/2025 | 124 | REPLY in Support re 110 MOTION for Partial Summary Judgment *Re: Constitutional Claims Reply in Support of Defendant's Motion for Summary Judgment Re: Constitutional Claims (Oral Argument Requested)* filed by Heidi Hedberg. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Nelson, Justin) Modified on 12/2/2025 to change to reply (JDS, COURT STAFF). (Entered: 11/17/2025) |

| | | |
|---|---|---|
| 12/01/2025 | 125 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements, # 2 Attachment 1, # 3 Attachment 2, # 4 Attachment 3, # 5 Attachment 4, # 6 Attachment 5, # 7 Attachment 6, # 8 Attachment 7)(Nelson, Justin) (Entered: 12/01/2025) |
| 12/02/2025 | 126 | **SLG TEXT ORDER**: Due to a conflict in the Court's calendar, Oral Argument on all pending motions on December 16, 2025, is VACATED and rescheduled to **December 18, 2025, at 9:30 a.m.** in Anchorage Courtroom 2. Each side shall be accorded up to 20 minutes to present its arguments. (JDS, COURT STAFF) (Entered: 12/02/2025) |
| 12/09/2025 | 127 | MOTION for Leave to File Amicus Curiae Brief and Proposed Brief of Amicus Curiae filed by non-party filer Frederick E. Rapp. (ANM, COURT STAFF) (Entered: 12/15/2025) |
| 12/15/2025 | 128 | MOTION for Extension of Time to File *Unopposed Motion for Extension of Time* by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 12/15/2025) |
| 12/15/2025 | 129 | MOTION *Joint Request for Public Listen Line* by Heidi Hedberg re 126 Order,, Terminate Hearings,, Set Motion and R&R Deadlines/Hearings, (Attachments: # 1 Proposed Order)(Nelson, Justin) Modified on 12/16/2025 to change event to motion (JDS, COURT STAFF). (Entered: 12/15/2025) |
| 12/17/2025 | 130 | **SLG TEXT ORDER**: The Unopposed Motion for Extension of Time at Docket 128 is GRANTED. The deadline to file Defendants monthly court report is reset to **January 7, 2026.** (BJK, COURT STAFF) (Entered: 12/17/2025) |
| 12/17/2025 | 131 | **SLG TEXT ORDER**: The Joint Request for Public Listen Line for Oral Argument at Docket 129 is GRANTED. The public may listen to oral argument on December 18, 2025 at 9:30am by dialing 571-353-2301 and using Call ID 275666327. (BJK, COURT STAFF) (Entered: 12/17/2025) |
| 12/18/2025 | 132 | MINUTE ENTRY for proceedings held before Chief Judge Sharon L. Gleason: Motion Hearing held at 9:32 AM to 10:25 AM on 12/18/2025. Arguments heard re Motion for Summary Judgment 102 , Motion for Summary Judgment 107 , Motion for Partial Summary Judgment *Re: First-Contact-Filing Claim* 109 , and Motion for Partial Summary Judgment *Re: Constitutional Claims* 110 ; matters taken UNDER ADVISEMENT, written rulings to issue. APPEARANCES: Sean Patrick Fulton for Plaintiffs; Lael A. Harrison, David A. Wilkinson, and Justin D. Nelson for Defendant; Stacy M. Baldwin, Official Court Reporter. (SCD, COURT STAFF) (Entered: 12/18/2025) |
| 12/29/2025 | 133 | RESPONSE to Motion (Non-Opposition) re 127 MOTION Motion for Leave to File Amicus Curiae Brief filed by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Nataliia Moroz. (Du, Constance) (Entered: 12/29/2025) |
| 12/29/2025 | 134 | RESPONSE in Opposition re 127 MOTION Motion for Leave to File Amicus Curiae Brief *Opposition to Motion for Leave to File Brief of Amicus Curiae* filed by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 12/29/2025) |
| 01/07/2026 | 135 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements, # 2 Attachment 1, # 3 Attachment 2, # 4 Attachment 3, # 5 Attachment 4, # 6 Attachment 5, # 7 Attachment 6, # 8 Attachment 7)(Nelson, Justin) (Entered: 01/07/2026) |

| | | |
|---|---|---|
| 02/02/2026 | 136 | NOTICE *of Filing Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Exhibit February Court Report)(Harrison, Lael) (Entered: 02/02/2026) |
| 03/02/2026 | 137 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements) (Nelson, Justin) (Entered: 03/02/2026) |
| 03/17/2026 | 138 | NOTICE *OF FILING SIGNED DECLARATIONS* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Nataliia Moroz (Attachments: # 1 Exhibit A - Declaration of Autumn Ellanna, # 2 Exhibit B - Declaration of Nataliia Moroz, # 3 Exhibit C - Declaration of John Andrew) (Fulton, Sean) (Entered: 03/17/2026) |
| 03/17/2026 | 139 | NOTICE *OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF SUMMARY JUDGMENT* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Nataliia Moroz re 107 MOTION for Summary Judgment , 116 Response in Opposition to Motion,, (Fulton, Sean) (Entered: 03/17/2026) |
| 03/24/2026 | 140 | NOTICE *Defendant's Response to Plaintiffs' Notice of Supplemental Authority in Support of Summary Judgment* by Heidi Hedberg re 102 MOTION for Summary Judgment , 115 Response in Opposition to Motion, 120 Response in Support of Motion, (Wilkinson, David) (Entered: 03/24/2026) |
| 03/26/2026 | 141 | MOTION for Extension of Time to File *Unopposed Motion for Extension of Time* by Heidi Hedberg. (Attachments: # 1 Proposed Order)(Nelson, Justin) (Entered: 03/26/2026) |
| 03/30/2026 | 142 | **SLG TEXT ORDER**: The Unopposed Motion for Extension of Time at Docket 141 is GRANTED. Defendant's next monthly court report shall be filed on or before **April 8, 2026.** (ANM, COURT STAFF) (Entered: 03/30/2026) |
| 04/08/2026 | 143 | NOTICE *of Filing Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Exhibit) (Nelson, Justin) (Entered: 04/08/2026) |
| 04/28/2026 | 144 | NOTICE *of Filing Division of Public Assistance Court Report* by Heidi Hedberg re 77 Order on Motion for Preliminary Injunction,, Order on Motion for Miscellaneous Relief,,,,, (Attachments: # 1 Report on Compliance with Court-Ordered Requirements) (Nelson, Justin) (Entered: 04/28/2026) |
| 05/04/2026 | 145 | NOTICE *OF FILING SIGNED DECLARATIONS* by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Nataliia Moroz (Attachments: # 1 Exhibit D, # 2 Exhibit E)(Fulton, Sean) (Entered: 05/04/2026) |
| 05/21/2026 | 146 | NOTICE *of Supplemental Authority* by Heidi Hedberg (Nelson, Justin) (Entered: 05/21/2026) |
| 05/21/2026 | 147 | **ORDER ON ALL PENDING MOTIONS**: Mr. Rapp's Motion for Leave to File Amicus Curiae Brief at Docket 127 is DENIED. Defendant's Motion for Summary Judgment at Docket 102 is GRANTED; Motion for Summary Judgment at Docket 109 is DENIED as moot. Plaintiffs' Motion for Summary Judgment at Docket 107 is DENIED. Defendant's Motion for Summary Judgment at Docket 110 is GRANTED in part. Because the Court has found for Defendant as to Plaintiffs' federal claims, the Preliminary Injunction at Docket 77 is VACATED. See Order for details. Signed by Judge Sharon L. Gleason on 5/21/2026. (ANM, COURT STAFF) (Entered: 05/21/2026) |

| | | |
|---|---|---|
| 05/28/2026 | 148 | **JUDGMENT**: Court granted defendant's motions on all federal claims. Plaintiffs' state law claim is dismissed without prejudice. Signed by Judge Sharon L. Gleason on 5/28/2026. (ANM, COURT STAFF) (Entered: 05/28/2026) |
| 06/25/2026 | 149 | NOTICE OF APPEAL by John Andrew, Autumn Ellanna, Tereresa Ferguson. Filing fee $ 605, receipt number AAKDC-3959687. (Feronti, Nicholas) (Entered: 06/25/2026) |
| 06/30/2026 | 152 | USCA Case Number 26-4167 for 149 Notice of Appeal filed by Autumn Ellanna, Tereresa Ferguson, John Andrew. (JDV, COURT STAFF) (Entered: 07/21/2026) |
| 06/30/2026 | 153 | USCA Scheduling Order as to 149 Notice of Appeal filed by Autumn Ellanna, Tereresa Ferguson, John Andrew. 26-4167: Mediation Questionnaire due (Appellant) 7/6/2026, Appeal Opening Brief (No Transcript Due) (Appellant) 8/10/2026, Appeal Answering Brief (No Transcript Due) (Appellee) 9/8/2026. (JDV, COURT STAFF) (Entered: 07/21/2026) |
| 07/08/2026 | 150 | TRANSCRIPT REQUEST by John Andrew, Kayla Birch, Rose Carney, Rhonda Conover, Autumn Ellanna, Troy Fender, Tereresa Ferguson, Zoya Jenkins, Nataliia Moroz. (Du, Constance) (Entered: 07/08/2026) |
| 07/11/2026 | 151 | TRANSCRIPT of Proceedings: Transcript of Oral Argument held on December 18, 2025, before Judge Sharon L. Gleason. Realtime Court Reporter: Stacy M. Baldwin.<br><br>Any party needing a copy of the transcript to review for redaction or correction purposes may purchase a copy from the Court Reporter by calling Realtime Court Reporter, Stacy M. Baldwin, (907)677-6283. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>The parties have seven (7) calendar days to file with the court a Motion Requesting Redactions or Corrections of this transcript. If no such motion is filed, the transcript may be made remotely electronically available to the public without redactions or corrections after Release of Transcript Restriction deadline of 10/9/2026. Ordered by Constance Iris Du (SMB) (Entered: 07/11/2026) |
| 07/28/2026 | 154 | NOTICE *OF WITHDRAWAL OF COUNSEL (Wilkinson)* by Heidi Hedberg (Wilkinson, David) (Entered: 07/28/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/28/2026 15:09:03 | | | |
| **PACER Login:** | saralunden | **Client Code:** | saralunden |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00044-SLG |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |